LEE TRAN & LIANG LLP
 Steven C. Gonzalez (SBN 191756)
    steven.gonzalez@ltlattorneys.com
 Anthony Sbardellati (SBN 246431)
    anthony.sbardellati@ltlattorneys.com
 Lacey Rainwater (SBN 294710)
    lacey.rainwater@ltlattorneys.com
601 S. Figueroa Street, Suite 3900
Los Angeles, California 90017
Tel.: 213-612-8900
Fax: 213-612-3773

Attorneys for Defendant
Home Depot U.S.A., Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| PAUL HOFFMAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>HOME DEPOT U.S.A., INC., doing business as THE HOME DEPOT, a Delaware Corporation; BEATRIZ GONZALEZ, an individual; MORGAN GANTT, an individual; JESSIE SANTIAGO, an individual; ERIC GONZALEZ, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.:8:15-cv-887<br>[Removed from Orange County Superior Court, Case No. 30-2014-00733252-CU-WT-CJC]<br><br>**DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441**<br><br>*[Civil Cover Sheet; Certificate of Interested Parties; Notice of Pendency of Other Action; Corporate Disclosure Statement; Notice of Related Cases; Notice to Plaintiff; Declaration of Anthony Sbardellati; and Declaration of Jeff Meyer filed concurrently herewith]* |

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

1

2

## <u>TABLE OF CONTENTS</u>

3   I.   THE STATE COURT ACTION ........................................................ 1

4   II.  REMOVAL IS TIMELY ............................................................... 6

5   III. COMPLETE DIVERSITY EXISTS BETWEEN THE PARTIES .................... 7

6       A.   Plaintiff is a Citizen of the State of California .............................. 7

7       B.   Home Depot, the Only Remaining Named Defendant, is a Citizen of the

8          States of Delaware and Georgia ............................................... 8

9       C.   Claims against Beatriz Gonzalez, Morgan Gantt, Jessie Santiago, and Eric

10         Gonzalez were Dismissed; Therefore, Their Citizenship Is Not Considered ........ 9

11      D.   The Citizenship of "Doe" Defendants Must be Disregarded When

12         Evaluating Diversity Jurisdiction ............................................. 9

13  IV. THE JURISDICTIONAL MINIMUM AMOUNT IN CONTROVERSY IS

14       MET .................................................................................. 10

15  V.  THE NOTICE OF REMOVAL IS PROCEDURALLY PROPER .................. 11

16  VI. CONCLUSION ........................................................................ 11

17

18

19

20

21

22

23

24

25

26

27

28

i

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Anthony v. Security Pacific Financial Services, Inc.,*

4

   75 F.3d 311 (7th Cir. 1996) ..................................................................................... 10

5

*Arellano v. Home Depot U.S.A., Inc.,* 245 F. Supp. 2d 1102 (S.D. Cal. 2003) ........ 8

6

*Cohn v. Petsmart, Inc.,* 281 F.3d 837 (9th Cir. 2002) ................................................ 10

7

*Galt G/S v. JSS Scandinavia,* 142 F.3d 1150 (9th Cir. 1998) .................................... 10

8

*Harris v. Banker's Life and Cas. Co.,* 425 F.3d 689 (9th Cir. 2005) ........................ 6

9

*Hertz Corp. v. Friend,* 559 U.S. 77, 130 S.Ct. 1181 (2010) .................................... 8

10

*Kanter v. Pfizer, Inc.,* 265 F.3d 853 (9th Cir. 2001) ................................................. 7

11

*Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088 (9th Cir. 1983) ........................ 7

12

*Lew v. Moss,* 797 F.2d 747 (9th Cir. 1986) .............................................................. 7

13

*McCabe v. General Foods Corp.,* 811 F.2d 1336 (9th Cir. 1987) ............................ 9

14

*Miller v. Stauffer Chemical Co.,* 527 F. Supp. 775 (D. KS. 1981) ......................... 6

15

*Montrose Chemical v. American Motorists Ins. Co.,*

16

   117 F.3d 1128 (9th Cir. 1997) ............................................................................. 8

17

*Morris v. Princess Cruises, Inc.,* 236 F.3d 1061 (9th Cir. 2001) ............................. 9

18

*Muniz v. United Parcel Service, Inc.,* 738 F.3d 214 (9th Cir. 2013) ......................... 10

19

*Ritchey v. Upjohn,* 139 F.3d 1313 (9th Cir. 1998) ................................................... 9

20

*Sullivan v. Conway,* 157 F.3d 1092 (7th Cir. 1998) ................................................. 6

21

*Zogbi v. Federated Dept. Store,* 767 F. Supp. 1037 (C.D. Cal. 1991) ..................... 9

22

**Statutes**

23

28 U.S.C. § 1332 ......................................................................................... 9, 10, 11

24

28 U.S.C. § 1441 ............................................................................................. 10, 11

25

28 U.S.C. § 1446 ............................................................................................... 6, 11

26

27

28

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Home Depot U.S.A., Inc. ("Defendant" or "Home Depot") hereby removes this action from the Superior Court of the State of California for the County of Orange to the United States District Court for the Central District of California, Southern Division pursuant to 28 U.S.C. §§ 1332 and 1441(b) on the grounds that there is complete diversity of citizenship between Plaintiff Paul Hoffman ("Plaintiff"), a citizen of the State of California, and the only remaining defendant, Home Depot, a citizen of the States of Delaware and Georgia; that the amount in controversy exceeds the jurisdictional minimum of $75,000 set forth in Section 1332(a); and that the foregoing facts were true at the time the Complaint in this matter was filed and remain true as of the date of the filing of this Notice of Removal, as more fully set forth below.

## I.      THE STATE COURT ACTION

1.      On July 10, 2014, Plaintiff filed and initiated this action, entitled *Paul Hoffman, an individual, Plaintiff v. Home Depot U.S.A., Inc., doing business as The Home Depot, a Delaware Corporation; Beatriz Gonzalez, an individual; Morgan Gantt, an individual; Jessie Santiago, an individual; Eric Gonzalez, an individual; and DOES 1 through 50* in the Superior Court of California for the County of Orange, Case No. 30-2014-00733252-CU-WT-CJC (the "Action"). Attached hereto as **Exhibit A** is a true and correct copy of the Complaint.

2.      On or about July 17, 2015, Plaintiff served the Summons and Complaint on Defendant Home Depot's agent for service of process, Corporation Service Company, by personal service.  In addition to the Summons and Complaint, Plaintiff served the Civil Case Cover Sheet and Alternative Dispute Resolution (ADR) package.  Attached hereto as **Exhibit B** is a true and correct copy of the Summons, Civil Case Cover Sheet, Alternative Dispute Resolution

1  (ADR) package, and Proof of Service of Summons.  Exhibits A and B are

2  collectively referred to as the "Complaint Package."

3        3.     The original Complaint alleged that Defendant Home Depot, in

4  violation of the California Fair Employment and Housing Act ("FEHA"), harassed

5  Plaintiff on the basis of his age, actual or perceived disability and/or medical

6  condition, and for engaging in a protected activity; discriminated against him on

7  the basis of his age, actual or perceived disability and/or medical condition, and for

8  engaging in a protected activity; retaliated against him; wrongfully terminated him;

9  and failed to prevent discrimination, retaliation, and harassment.  The Complaint

10 also alleged that Home Depot, Beatriz Gonzalez, Morgan Gantt, Jessie Santiago,

11 and Eric Doe (collectively referred to as "Defendants") intentionally inflicted

12 emotional distress on Plaintiff.  Specifically, the causes of action were (1)

13 Harassment Based On Age in Violation of Govt. Code §12940 *et seq.*; (2)

14 Harassment Based Upon  Engaging in Protected Activity in Violation of  Govt.

15 Code §12940 *et seq.*; (3) Harassment Based Upon Actual or Perceived Disability

16 and/or Medical Condition in Violation of Govt. Code §12940 *et seq.*; (4)

17 Discrimination Based Upon Age in Violation of Govt. Code §12940 *et seq.*; (5)

18 Discrimination Based Upon Engaging in Protected Activity in Violation of  Govt.

19 Code §12940 *et seq.*; (6) Discrimination Based Upon Actual or Perceived Medical

20 Condition and/or Disability in Violation of Govt. Code §12940 *et seq.*; (7)

21 Retaliation in Violation of Govt. Code § 12940 *et seq.*; (8) Failure to Prevent

22 Harassment, Discrimination, and Retaliation in Violation of Govt. Code

23 §12940(k); (9) Wrongful Termination of Violation of Public Policy; and (10)

24 Intentional Infliction of Emotional Distress.  (Exh. A, Complaint.)

25        4.     On or about July 17, 2014, Plaintiff served the Complaint Package on

26 Defendant Beatriz Gonzalez.  Attached hereto as **Exhibit C** is a true and correct

27 copy of the Proof of Service of Summons served on Beatriz Gonzalez,

28 memorializing Plaintiff's service of the Complaint.

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

5.     On or about July 17, 2014, Plaintiff served the Complaint Package on Defendant Jessie Santiago.  Attached hereto as **Exhibit D** is a true and correct copy of the Proof of Service of Summons served on Jessie Santiago, memorializing Plaintiff's service of the Complaint Package.

6.     On or about July 17, 2014, Plaintiff served the Complaint Package on Defendant Morgan Gantt.  Attached hereto as **Exhibit E** is a true and correct copy of the Proof of Service of Summons served on Morgan Gantt, memorializing Plaintiff's service of the Complaint Package.

7.     After an August 2014 meet and confer process between counsel, Plaintiff agreed to amend his complaint and removed the Second and Fifth Causes of Action and added a new allegation for Violation of Labor Code §1102.5. Attached hereto as **Exhibit F** is a true and correct copy of the First Amended Complaint ("FAC") filed on August 22, 2014.

8.     On or about September 5, 2014, Home Depot served Form Interrogatories – General (set one) ("Form Interrogatories – General") on Plaintiff. Declaration of Anthony Sbardellati ("Sbardellati Decl."), Exhibit 1.

9.     On or about September 5, 2014, Home Depot served Form Interrogatories – Employment Law (set one) ("Form Interrogatories – Employment") on Plaintiff.  Sbardellati Decl., Exhibit 2.

10.     On September 18, 2014, Home Depot filed an Answer to Plaintiff's unverified FAC.  Attached hereto as **Exhibit G** is a true and correct copy of Defendant's Answer to Plaintiff's FAC.

11.     On September 18, 2014, Defendants Beatriz Gonzalez, Morgan Gantt, and Jessie Santiago filed their Demurrer to Plaintiff's FAC on the grounds that Plaintiff failed to allege facts sufficient to state a claim against them for Intentional Infliction of Emotional Distress ("IIED"), the Ninth Cause of Action in the FAC. Specifically, Defendants Beatriz Gonzalez, Morgan Gantt, and Jessie Santiago argued that Plaintiff's allegations against them are insufficient to state a claim for

3

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

1   IIED; that Plaintiff's claim for IIED is barred by the exclusivity provisions of the

2   Workers' Compensation Act; and Plaintiff's IIED claim is based on the same

3   allegations as those that are the basis of Plaintiff's claims pursuant to FEHA.  The

4   IIED cause of action was the only cause of action asserted against Beatriz

5   Gonzalez, Morgan Gantt, and Jessie Santiago.  Attached hereto as **Exhibit H** is a

6   true and correct copy of Defendants Beatriz Gonzalez's, Morgan Gantt's, and Jessie

7   Santiago's Demurrer to the FAC and Proposed Order.

8        12.    On or about November 3, 2014 Plaintiff served his responses to

9   Defendant's Form Interrogatories – General.  Sbardellati Decl., Exhibit 3.

10        13.    On or about November 3, 2014 Plaintiff served his responses to

11   Defendant's Form Interrogatories – Employment.  Sbardellati Decl., Exhibit 4.

12        14.    On November 5, 2014, Plaintiff filed an Amendment to Complaint,

13   having discovered the true name of designated Doe defendant, Eric Doe, as "Eric

14   Gonzalez".  Attached hereto as **Exhibit I** is a true and correct copy of Plaintiff's

15   Amendment to Complaint.

16        15.    On or about November 10, 2014, Plaintiff served the Complaint

17   Package on Defendant Eric Gonzalez.  Attached hereto as **Exhibit J** is a true and

18   correct copy of the executed Notice and Acknowledgement of Receipt served on

19   Eric Gonzalez, memorializing Plaintiff's service of the Complaint Package.

20        16.    On December 18, 2014, Defendant Eric Gonzalez filed his Demurrer

21   to Plaintiff's FAC on the same grounds as that of Defendants Beatriz Gonzalez

22   Morgan Gantt, and Jessie Santiago's Demurrer to Plaintiff's FAC, namely that

23   Plaintiff failed to allege facts sufficient to state a claim for IIED.  Attached hereto

24   as **Exhibit K** is a true and correct copy of defendant Eric Gonzalez's Demurrer to

25   the FAC.

26        17.    On December 29, 2014, Plaintiff filed his Opposition to Defendants'

27   Demurrer.  Attached hereto as **Exhibit L** is a true and correct copy of the

28   Opposition.

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

18.    On January 5, 2015, Defendants Beatriz Gonzalez, Morgan Gantt, and Jessie Santiago filed their Reply in Support of their Demurrer to Plaintiff's FAC. Attached hereto as **Exhibit M** is a true and correct copy of the Reply.

19.    On January 12, 2015, the Court adopted its tentative ruling sustaining Defendants' Demurrer with leave to amend.  Attached hereto as **Exhibit N** is a true and correct copy of the Notice of Ruling memorializing the Court's adoption of the January 12, 2015 tentative ruling regarding the Demurrer to the Complaint.

20.    On January 9, 2015, counsel for Plaintiff emailed counsel for Home Depot a letter dated January 9, 2014, which renewed Plaintiff's pre-litigation settlement demand for $2,000,000.00.  Sbardellati Decl., Exhibit 5.  The letter accompanying the pre-litigation demand indicated that the demand would remain open for ten days, until January 19, 2014, after which Plaintiff "will initiate the DFEH charge and will no longer be willing to settle for such a significantly reduced amount." *Id.*

21.    On February 2, 2015, Plaintiff filed his Second Amended Complaint ("SAC"), purporting to assert materially the same causes of action as in the FAC. Attached hereto as **Exhibit O** is a true and correct copy of the SAC.

22.    On March 3, 2015, Defendants Beatriz Gonzalez, Morgan Gantt, Jessie Santiago, and Eric Gonzalez (collectively, "Individual Defendants") filed a Demurrer to Plaintiff's SAC on the same grounds as Defendants' Demurrer to the FAC.  Attached hereto as **Exhibit P** is a true and correct copy of the Demurrer.

23.    On March 17, 2015, Plaintiff filed his Opposition to the Individual Defendants' Demurrer to the SAC.  Attached hereto as **Exhibit Q** is a true and correct copy of the Opposition.

24.    On March 23, 2015, the Individual Defendants filed their Reply in Support of the Demurrer to Plaintiff's SAC.  Attached hereto as **Exhibit R** is a true and correct copy of the Reply.

25.    On May 7, 2015, Defendant Home Depot filed an Answer to

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

1 Plaintiff's unverified SAC.  Attached hereto as **Exhibit S** is a true and correct copy
2 of Defendant's Answer to Plaintiff's SAC.

3      26.    On June 1, 2015, the Court heard the Individual Defendants'
4 Demurrer to Plaintiff's SAC.  The Court sustained the Demurrer with respect to the
5 Ninth Cause of Action for IIED without leave to amend.  Attached hereto as
6 **Exhibit T** is a true and correct copy of the Notice of Ruling memorializing the
7 Court's adoption of the June 1, 2015 tentative ruling regarding the Demurrer to the
8 SAC.

9      27.    Attached hereto as **Exhibit U** is a true and correct copy of the
10 Stipulated Protective Order entered on February 27, 2015.

11

12 **II.**    **REMOVAL IS TIMELY**

13      28.    A defendant must file its notice of removal within 30 days after
14 receipt of the first pleading in the state action that sets forth a removable claim.
15 Where, as here, removability is not possible based on the initial pleading, the 30-
16 day period is measured from the point at which defendant first has notice that the
17 action is removable.  28 U.S.C. § 1446(b)(3); *see Sullivan v. Conway*, 157 F.3d
18 1092, 1094 (7th Cir. 1998) (interpreting former 28 U.S.C. 1446(b)); *Miller v.*
19 *Stauffer Chemical Co.*, 527 F. Supp. 775, 555 (D. KS. 1981).  Removal based on
20 diversity must be effected within one year after the case is filed.  28 U.S.C. §
21 1446(c)(I); *Harris v. Banker's Life and Cas. Co.*, 425 F.3d 689, 694 (9th Cir.
22 2005).

23      29.    Here, the Complaint was filed on July 10, 2014, but the Action did not
24 become removable until June 1, 2015.  On June 1, 2015, the state court sustained
25 the Individual Defendants' Demurrer with respect to the Ninth Cause of Action for
26 IIED without leave to amend, making clear that Plaintiff did not state any claim
27 against any local defendant.  The Complaint, FAC, and SAC purported to allege
28 only one cause of action against the Individual Defendants for IIED.  Individual

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

1 | Defendants are alleged to be citizens of California. (Exh. O, SAC at ¶¶ 3, 4, 5, 6.)

2 | Diversity of citizenship could not and did not exist with a cause of action pending

3 | against the Individual Defendants. However, the IIED cause of action, and thus

4 | the Individual Defendants, were dismissed on June 1, 2015 pursuant to the Court's

5 | ruling on the Individual Defendants' Demurrer to Plaintiff's SAC, rendering this

6 | matter removable. Defendant Home Depot files this Removal within one year of

7 | the filing of the Complaint (June 30, 2014), and within 30 days of the date that the

8 | Action became removable (June 1, 2015).

9 |

10 | **III.   COMPLETE DIVERSITY EXISTS BETWEEN THE PARTIES**

11 |     **A.   Plaintiff is a Citizen of the State of California**

12 |     30.   "To show state citizenship for diversity purposes under federal

13 | common law a party must (1) be a citizen of the United States, and (2) be

14 | domiciled in the state." *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090

15 | (9th Cir. 1983). "The natural person's state citizenship is then determined by her

16 | state of domicile, not her state of residence. A person's domicile is her permanent

17 | home, where she resides with the intention to remain or to which she intends to

18 | return." *Kanter v. Pfizer, Inc.*, 265 F.3d 853, 857 (9th Cir. 2001). Moreover, "the

19 | existence of domicile for purposes of diversity is determined as of the time the

20 | lawsuit is filed." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

21 |     31.   In determining an individual's domicile, the courts consider a number

22 | of factors (with no single factor controlling), "including: current residence, voting

23 | registration and voting practices, location of personal and real property, location

24 | of brokerage and banks accounts, location of spouse and family, membership in

25 | unions and other organizations, place of employment or business, driver's license

26 | and automobile registration, and payment of taxes." *Id.*

27 |     32.   At the time that the Complaint was filed and mailed and at the time of

28 | filing this Notice of Removal, Plaintiff was and is domiciled in the County of

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

1  Orange.  (Exh. O, SAC at ¶ 1.)

2  **B.**  **Home Depot, the Only Remaining Named Defendant, is a Citizen**

3  **of the States of Delaware and Georgia**

4  33.  The Supreme Court recently established the proper test for

5  determining a corporation's principal place of business for purposes of diversity

6  jurisdiction.  *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S.Ct. 1181 (2010).  The

7  Court held that the "'principal place of business' [as contained in section 1332(c)]

8  is best read as referring to the place where a corporation's officers direct, control,

9  and coordinate the corporation's activities."  *Id*. at 1192.  The Court clarified that

10  the principal place of business was the place where the corporation "maintains its

11  headquarters – provided that the headquarters is the actual center of direction,

12  control and coordination."  *Id*.

13  34.  Home Depot's principal place of business is in Atlanta, Georgia as

14  Home Depot performs the vast majority of its executive and administrative

15  functions at its corporate headquarters in that location.  (Declaration of Jeff Meyer

16  ("Meyer Decl."), ¶ 3.)  Moreover, as a national corporation that conducts business

17  in 49 of 50 states, Home Depot's business activities do not substantially

18  predominate in a single state by virtue of doing more business in that state.  *See*

19  *Arellano v. Home Depot U.S.A., Inc.*, 245 F. Supp. 2d 1102, 1107 (S.D. Cal. 2003)

20  (denying motion to remand, holding that Home Depot was a citizen of Delaware

21  (state of incorporation) and Georgia (principal place of business), and complete

22  diversity of citizenship existed between it and plaintiff, a California citizen).

23  Accordingly, Home Depot does not perform a "substantial predominance" of

24  corporate operations in any single state.  *See Montrose Chemical v. American*

25  *Motorists Ins. Co.*, 117 F.3d 1128, 1134 (9th Cir. 1997) (holding that a

26  corporation's principal place of business is the state in which it performs a

27  substantial predominance of its corporate operations and, when no state contains a

28  substantial predominance of the corporation's business activities, then the

8

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

1  corporation's principal place of business is the state in which the corporation

2  performs its executive and administrative functions).

3          35.     If a party is a corporation, it is a citizen of both its state of

4  incorporation and the state where it has its principal place of business.  28 U.S.C. §

5  1332(c)(1).  Accordingly, Home Depot is, and was at the time of filing of the

6  Complaint, a citizen of the States of Delaware and Georgia.  (Meyer Decl., ¶ 3.)

7      **C.**    **Claims against Beatriz Gonzalez, Morgan Gantt, Jessie Santiago,**

8          **and Eric Gonzalez were Dismissed; Therefore, Their Citizenship Is Not**

9          **Considered**

10         36.     If a plaintiff fails to state a cause of action against a non-diverse

11 defendant, and the failure is obvious according to settled state law, then the joinder

12 is deemed fraudulent and removal based on diversity is proper.  *Morris v. Princess*

13 *Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *see Ritchey v. Upjohn*, 139 F.3d

14 1313 (9th Cir. 1998); *see also McCabe v. General Foods Corp.*, 811 F.2d 1336,

15 1339 (9th Cir. 1987) (individual defendants in employment lawsuit were

16 fraudulently joined and did not prevent removal); *Zogbi v. Federated Dept. Store*,

17 767 F. Supp. 1037, 1041 (C.D. Cal. 1991) (individual manager employees were

18 sham defendants whose presence did not destroy diversity).

19         37.     Plaintiff pleaded one cause of action against the Individual

20 Defendants, IIED.  (Exh. O, SAC at ¶¶ 143-147.)  The Orange County Superior

21 Court's June 1, 2015 ruling - sustaining the Individual Defendants' Demurrer to

22 the Ninth Cause of Action for IIED without leave - eliminated the only cause of

23 action asserted against Individual Defendants, resulting in a dismissal of the claims

24 asserted against them.  Therefore, this Court should not consider their citizenship

25 when considering removal jurisdiction.

26     **D.**    **The Citizenship of "Doe" Defendants Must be Disregarded When**

27         **Evaluating Diversity Jurisdiction**

28         38.     The citizenship of fictitiously-named "Doe" defendants is disregarded

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

1  for the purposes of removal.  28 U.S.C. § 1441(b)(1).

2      39.    Therefore, this Court has jurisdiction over this Action based on

3  diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), in that

4  Plaintiff is a citizen of California, and Home Depot is not a citizen of California,

5  but a citizen of Delaware and Georgia.

6

7  **IV.    THE JURISDICTIONAL MINIMUM AMOUNT IN CONTROVERSY**

8  **        IS MET**

9      40.    On November 3, 2014, Plaintiff served Defendant Home Depot with

10  his responses to Form Interrogatories – General and Form Interrogatories –

11  Employment.  Plaintiff's responses to Form Interrogatory – General No. 9.1 and

12  Form Interrogatory – Employment No. 213.1 demonstrate that Plaintiff seeks to

13  recover "in excess of $1,000,000.00" for each of category of recoverable damages.

14  (Sbardellati Decl., Exhibits 3 and 4).

15      41.    Moreover, Plaintiff's $2,000,000.00 settlement demand is relevant,

16  admissible evidence that may be relied upon to determine the amount in

17  controversy.  Sbardellati Decl., Exhibit 5; *Cohn v. Petsmart, Inc.*, 281 F.3d 837,

18  840 (9th Cir. 2002).

19      42.    Lastly, in addition to compensatory damages, Plaintiff seeks to

20  recover punitive damages and attorneys' fees, which may be considered in

21  calculating the amount in controversy when such sums are recoverable as a matter

22  of state law.  (Exh. O, SAC at Prayer for Relief); *Galt G/S v. JSS Scandinavia*, 142

23  F.3d 1150, 1155-56 (9th Cir. 1998) (attorneys' fees); *Anthony v. Security Pacific

24  Financial Services, Inc.*, 75 F.3d 311, 315 (7th Cir. 1996) (punitive damages); *see

25  also Muniz v. United Parcel Service, Inc.*, 738 F.3d 214, 218-19 (9th Cir. 2013).

26      43.    Because the damages sought by Plaintiff exceed the $75,000.00

27  threshold for diversity jurisdiction, removal is proper.

28

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

## V.    THE NOTICE OF REMOVAL IS PROCEDURALLY PROPER

44.    This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a), and is one that may be removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

45.    In accordance with the requirements of 28 U.S.C. § 1446(a), all "process, pleadings, and orders" served on Defendant in the state court action as of the filing of this Notice of Removal are attached hereto.

46.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of Orange.

47.    Pursuant to 28 U.S.C. § 1446(d), Defendant is providing written notice of this removal by serving Plaintiff's counsel of record with a complete copy thereof.

48.    No previous application has been made for the relief requested herein.

49.    This notice has been signed pursuant to Federal Rule of Civil Procedure 11.

50.

## VI.    CONCLUSION

51.    Because the Action is between citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs, Defendant Home Depot respectfully requests that this Court exercise its removal jurisdiction over this action.

52.    In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant Home Depot requests that it issue an Order to Show

///

///

///

11

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

1   Cause so that it may have an opportunity to more fully brief the Court on the basis

2   for this removal.

3

4   DATED:  June 5, 2015                    LEE TRAN & LIANG LLP

5

6                                            By: /s/ Steven C. Gonzalez

7                                                Steven C. Gonzalez
                                                 Anthony Sbardellati
8                                                Lacey Rainwater
                                                 Attorneys for Defendant Home Depot
9                                                U.S.A., Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL

# EXHIBIT A

1    John D. Younesi, Esq. (Bar No. 120339)
     Jan A. Yoss, Esq. (Bar No. 143978)
2    Kathleen E. Alparce, Esq. (Bar No. 230935)
     **YOUNESI & YOSS, LLP**
3    11355 W. Olympic Blvd., Suite 200
     Los Angeles, California 90064
4    Telephone: (310) 478-5722 ✦ Facsimile: (310) 478-5650
     Email: jdyounesi@younesi.com
5            jyoss@younesi.com
             kalparce@younesi.com
6
     Attorneys for Plaintiff, **PAUL HOFFMAN**
7

8

9                **SUPERIOR COURT OF CALIFORNIA**

10       **COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

<table>
<tr><td>11</td><td>PAUL HOFFMAN, an individual</td><td>Case No.: 30-2014-00733252-CU-WT-CJC<br>Judge Frederick P. Aguirre</td></tr>
<tr><td>12</td><td>Plaintiff,</td><td><u>Unlimited Jurisdiction</u></td></tr>
</table>

11   PAUL HOFFMAN, an individual

     Case No.: 30-2014-00733252-CU-WT-CJC
     Judge Frederick P. Aguirre

12          Plaintiff,

     <u>Unlimited Jurisdiction</u>

13      vs.

     **COMPLAINT FOR:**
14                                            **(1) HARRASSMENT BASED ON AGE IN**
     **HOME DEPOT U.S.A., INC.**, doing business    **VIOLATION OF GOV'T CODE SECTION**
15   as **THE HOME DEPOT**, a Delaware            **12940, ET. SEQ.**
     Corporation; **BEATRIZ GONZALEZ**, an      **(2)  HARRASSMENT BASED UPON**
16   individual; **MORGAN GANTT**, an           **ENGAGING IN PROTECTED ACTIVITY**
     individual; **JESSIE SANTIAGO**, an         **IN VIOLATION OF GOV'T CODE**
17   individual; **ERIC DOE**, an individual and  **SECTION 12940, ET SEQ.**
     DOES 1 to 50, Inclusive,                  **(3)  HARRASSMENT BASED UPON**
18                                            **ACTUAL OR PERCEIVED DISABILITY**
                                             **AND/OR MEDICAL CONDITION IN**
19          Defendants.                       **VIOLATION OF GOV'T CODE SECTION**
                                             **12940, ET SEQ.**
20                                            **(4)  DISCRIMIATION BASED UPON**
                                             **AGE IN VIOLATION OF GOV'T CODE**
21                                            **SECTION 12940 ET SEQ.**
                                             **(5)  DISCRIMINATION BASED UPON**
22                                            **ENGAGING IN PROTECTED ACTIVITY**
                                             **IN VIOLATION OF GOV'T CODE**
23                                            **SECTION 12940 ET. SEQ.**
                                             **(6)  DISCRIMINATION BASED UPON**
24                                            **ACUTAL OR PERCEIVED MEDICAL**
                                             **CONDITION AND/OR DISABILITY IN**
25                                            **VIOLATION OF GOV'T CODE SECTION**
                                             **12940 ET. SEQ.**
26                                            **(7)  RETALIATION IN VIOLATION OF**
                                             **GOV'T CODE SECTION 12940 ET SEQ.**
27                                            **(8)  FAILURE TO PREVENT**
                                             **HARRASSMENT, DISCRIMINATION**
28                                            **AND RETALIATION IN VIOLATION OF**
                                             **GOV'T CODE SECTION 12940 ET SEO.**

- 1 -

**COMPLAINT**

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

07/10/2014 at 10:47:12 AM

Clerk of the Superior Court
By Robert Renison, Deputy Clerk

(9)  **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY; AND**
(10)  **INTENTIONAL INFLICATION OF EMOTIONAL DISRESS**

*Demand for Jury Trial*

Plaintiff Paul Hoffman hereby complains against Defendants and alleges against them as follows:

## GENERAL ALLEGATIONS

1.    Plaintiff Paul Hoffman ("Hoffman" or "Plaintiff") is, and at all relevant times mentioned herein was, an individual and resident of the County of Orange, State of California.

2.    Defendant Home Depot U.S.A., Inc., doing business as The Home Depot ("Home Depot"), currently is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of Delaware.  Plaintiff is informed and believes and on that basis alleges that Home Depot is licensed to do business in the  State of California and has retail store locations throughout the State of California, including in the County of Orange.

3.    Defendant Beatriz Gonzalez is, and at all times mentioned herein was, an individual residing in the County of Orange, State of California.

4.    Defendant Morgan Gantt is, and at all times mentioned herein was, an individual residing in the County of Orange, State of California.

5.    Defendant Jessie Santiago is, and at all times mentioned herein was, an individual residing in the County of Orange, State of California.

6.    Defendant Eric Doe, is, and at all times mentioned herein was, an individual residing in the County of Orange, State of California.  The last name of Eric Doe is presently unknown and Plaintiff will amend this Complaint to identify the name when determined. Eric Doe was a manager at the Home Depot store in which Plaintiff worked at the time of Plaintiff's termination in August 2013.

- 2 -

**COMPLAINT**

1   7.   The true names and capacities, whether individual, corporate, associate or otherwise

2   of Defendants named here in as Does 1 through 10, inclusive, are unknown to Plaintiff who

3   therefore sue said Defendants by such fictitious names and Plaintiff will amend this complaint to

4   show their true names and capacities when the same have been ascertained.  Plaintiff is informed

5   and believes and thereon alleges, that said Doe Defendants, and each of them , participated in or is

6   responsible in some manner for the acts and occurrences herein alleged and for the damages

7   suffered by her.  The names of Does 1 through 10, inclusive, are incorporated by reference into all

8   allegations concerning the named Defendants with the same force and effect as though fully set

9   forth therein.

10   8.   Plaintiff is informed and on that basis alleges that each of the Defendants as acting

11   as an agent of the other Defendants with respect to all actions alleged herein.

12

13   **JURISDICTION AND VENUE**

14   9.   This action asserts claims under the California Fair Employment and Housing Act

15   *Gov. Code § 12900 et seq.*  The Court has jurisdiction over this action under article 6, § 10 of the

16   California Constitution and *Code of Civil Procedure* § 410.10

17   9.   Venue is proper in this County under *Code of Civil Procedure* § 395 because, *inter*

18   *alia*, one or more Defendants engages in business in this County and Defendants engaged in the

19   practices complaint of in this County and one or more individual Defendants resides in this

20   County.

21

22   **STATEMENT OF FACTS**

23   10.   Hoffman started working at Home Depot in March 1999 in the Santa Ana Store,

24   number 606.  Hoffman is an exceptional person.  He is hard-working, affable and well liked by

25   both fellow associates and customers.  Throughout the years, Hoffman received many accolades

26   and customer service awards.

27   11.   In or about early 2013, Hoffman was first targeted, along with several other workers

28   over 40 years old, for termination by the management of his store.  The management claimed that

-3-

**COMPLAINT**

1    Hoffman had been advanced to a position of a "specialist". Hoffman denied ever agreeing to such

2    advancement. Hoffman and these other over-40 employees were given criteria for sales and other

3    activity that they were supposed to meet in this role as a specialist.

4        12.    In late 2012, and early 2013, Hoffman saw the other older workers around him

5    being let go for failure to meet these new sales guidelines. It was clear by some of the comments

6    being made to Hoffman and the unreasonable sales and other benchmark criteria being foisted on

7    him, called the metrics, that Hoffman was similarly being singled-out for termination.

8        13.    In addition to being targeted for his age, Hoffman was also retaliated against by his

9    store's management for asserting his and other employee's rights to meal breaks pursuant to

10   company policy. In March 2013, the Santa Ana store manager, Beatriz Gonzalez, began requiring

11   all employees to take a one-hour off-the-clock lunch break, instead of the 30-minute break most of

12   them were taking. While Hoffman had taken an hour lunch break by choice most of the time he

13   had been with Home Depot, in 2012, he began taking only 30-minutes so he could end his shift 30-

14   minutes earlier and help his then-4th grade son with his homework.

15       14.    Others in the store also commented to Hoffman that the change in the policy to

16   require a 60-minute lunch break instead of allowing the employees to elect between a 30-minute

17   and a 60-minute lunch break was difficult for many of them with their other obligations, and that

18   the policy did not seem to make sense. The management was unresponsive.

19       15.    So, at the request of his fellow employees and to understand the company policy

20   better himself, Hoffman called corporate Human Resources to determine what the policy was.

21   Hoffman spoke with Rowanda Velonza. Ms. Velonza confirmed that the Home Depot policy was

22   that the associates were allowed to elect between a 30-minute and a 60-minute lunch. She also

23   confirmed that an individual store manager could not override this policy and require employees to

24   take only a 60-minute or only a 30-minute lunch. When Hoffman explained what was happening,

25   Ms. Velonza wanted him to transfer his to a manager. Afraid that the purported confidentiality of

26   the call would be compromised, Hoffman asked if she would call back.

27       16.    The next day, Gonzalez called Hoffman into his office and berated him saying,

28   "Oh, you're the only one who has to have a 30-minute lunch. I have to change all these schedules

- 4 -

**COMPLAINT**

1    just to accommodate you." Even when Hoffman began to fear for his job out of retaliation and

2    said he would take the 60-minute lunch, Gonzalez said, "Oh no, no it's too late now. It's already

3    done. We'll try it for a few months and see how it works." Hoffman explained to Gonzalez that

4    he was trying to help other associates who had asked him about the lunch policy, but she did not

5    want to hear anything about how the employees felt.   Again, Hoffman said, "Change my lunch

6    back to 60-minutes, I don't want to cause any problems." Again Gonzalez said, "No, no, no, too

7    late now."

8            17.   In retaliation, Gonzalez changed Hoffman's schedule.  Now, instead of leaving a

9    half-hour earlier to be able to help his son, Gonzalez simply had Hoffman come in a half-hour

10   later, take his 30-minute lunch, and then leave at his old shift time.  He was no longer able to help

11   his son with his school work.

12           18.   Gonzalez also scheduled Hoffman to work until 9:30 p.m. on Sunday nights.  On

13   Sunday, however, the store closed at 8 p.m. The other associates who worked the closing shift

14   stayed until 9:00 p.m. There was no night crew on Sunday night. Hoffman was the only associate

15   scheduled to 9:30 p.m. An associate could not work until 9:30 p.m. without obtaining a prior

16   written authorization, even if he was on the schedule until 9:30 p.m.. So, each Sunday, Hoffman

17   would have to fill out a form and have it signed by his manager, Brian Chang. When he did, Mr.

18   Chang would invariable tell him that no one could stay to 9:30 p.m. Mr. Chang would have

19   Hoffman come in a half hour earlier or just work 7 ½ hours.  If Hoffman forgot to get the

20   paperwork signed, or could not locate Mr. Chang, Hoffman would receive a demerit. His schedule

21   was completely uncertain each Sunday.

22           19.   This same game was played with another associate who was terminated shortly

23   after being moved to the phantom 9:30 p.m. shift end-time.   There is a pattern to Gonzalez's

24   discriminatory behavior.

25           20.   Still trying to terminate Hoffman for performance-based reasons and angered by his

26   reporting to corporate Human Resources his store's violation of company policy, in April 2013,

27   Hoffman received his first negative annual review in 14 years! Hoffman's review was curiously

28   given by a very young assistant manager, Morgan Gantt ("Gantt"), another assistant manager

- 5 -

**COMPLAINT**

1   named Mike, but whose last name Hoffman does not know, and Angela Gonzalez, a fellow

2   associate.   It is very odd that this associate was present in the review because having another

3   associate present does not comport with protocol and violates the confidentiality of the review

4   process.  Hoffman had only met Gantt once before the review in March of 2013.  He had never

5   worked with his at all during the preceding year.  In fact, Gantt had not even been in this particular

6   store in the prior year.

7         21.     When the review started, Gantt immediately began to tell Hoffman what a failure he

8   was and how he was not doing a good job or meeting the metric (the guidelines for specialists).

9   Home Depot has used the same rating system for the last 6-8 years (O=Outstanding, V=Valuable, I

10  or N=Needs Improvement). Despite the threshold for receiving O's being raised each year, without

11  fail, Hoffman was consistently an O or a V.  Even in this scathing and out-of-character review,

12  Hoffman received the identical glowing customer service survey comments as he did every year,

13  which comments generally garnered him an O.  Yet, Gantt rated Hoffman only a V.

14        22.     In response to the review being presented by someone who had no familiarity with

15  Hoffman's work, Hoffman asked who prepared the review and provided the comments.   Gantt

16  stated only, "Managers."  Despite being asked the question twice,  Gantt did not dignify Hoffman

17  with a proper response by providing the name of a single manager who provided feedback.

18  Hoffman asked if Brian Chang, the manager he had for the last several years, had weighed in on

19  the review.  Gantt would not respond.  Hoffman asked for the managers who prepared the review

20  to come to the meeting so he could discuss their comments which he felt to be completely false.

21  His entreaties were ignored.

22        23.     This callous behavior by Home Depot management was troubling to Hoffman.

23  Never, in 14 years, had he received such a scathing review.  It was even more distressful that the

24  review came from someone who was not even familiar with his work and who would not identify a

25  single manager who concurred in the rating.  Such inequitable conduct would be highly disturbing

26  to anyone.  Hoffman immediately had a severe panic attack.  He believed he was having a heart

27  attack as he buckled over on the floor and had difficulty breathing, feeling constriction in his chest.

28  Hoffman asked for medical assistance, but none was provided. Hoffman called for the store

- 6 -

**COMPLAINT**

1   manager, Gonzalez, who came to the room and asked everyone else to leave. From his bent over
2   posture on his knees, Hoffman pleaded with Gonzalez to call 911, but Gonzalez completely
3   ignored his entreaties.

4       24.     After about 20 minutes, Hoffman's breathing became more regulated. Hoffman
5   asked Gonzalez if she was aware of the nature of his review. She began to read the document.
6   Without responding, she simply said, they needed to get Morgan, Miguel and Angela back in the
7   room and continue the review. Incredibly, Gonzalez had a 14-year employee in front of his with
8   whom she had worked for many years and knew well, who was in very clear physical and
9   psychological distress, and all she wanted to do was continue the farcical review.

10      25.     When Morgan and Angela had returned, without addressing in any way the
11  concerns Hoffman had with the review and the way in which it was being given, Gonzalez said
12  that Hoffman had to sign-up one credit card a week, one measure a week, and one RSW
13  appointment a week for the next 90 days. She then told Hoffman that he had a lot of open quotes
14  in the system and most of them looked like "fluff quotes." Importantly, within the next week, one
15  of the quotes in the system, one Gonzalez called a fluff quote, was sold for $2,000. Hoffman
16  pointed this out to Gonzalez, who had no response. Then, without explanation, a week after the
17  review, Gantt told Hoffman that rather than signing up 1 credit card, 1 measure and 1 RSW lead a
18  week, Hoffman had to do 1 a day for the next 30 days! She said he was being placed on a
19  Performance Improvement Plan (PIP).

20      26.     It is clear that the managers behind this effort to rid the Santa Ana store of older
21  workers knew the PIP set for Hoffman would be deemed unreasonable and they knew that
22  Hoffman's performance was such that they could not justify his termination. So they had to figure
23  out something else.

24      27.     Unable to trump up some story of performance problems after 14 years of
25  exemplary service, the management got desperate and orchestrated some of the most bizarre set of
26  facts that we have ever heard in our collective greater than 50 years of legal practice. The
27  management at Home Depot concocted "events" between Hoffman and other employees in an
28  effort to evoke an altercation or inappropriate behavior from Hoffman designed to provide

- 7 -

**COMPLAINT**

1  management with a reason to fire him.  When Hoffman he did not respond, the management

2  engaged in actions that were contrived and intentionally malicious, designed intentionally to cause

3  Hoffman distress.

4      28.    The first event was on May 17, 2013.  One of the employees from the Pro Desk,

5  Art, asked Hoffman if he would help him with the new Milgard software.  Hoffman agreed and

6  went with Art to the Millworks Desk.  Hoffman saw that Art was in the wrong program altogether

7  and showed Art how to navigate the new custom designs software system that had been installed.

8  Once Hoffman finished showing Art how to use the program with a sample patio door, Art went to

9  get his customer and asked Hoffman to stay nearby so Art could turn to Hoffman if he had any

10  further questions.  Hoffman agreed to help.  While at the desk, Hoffman was barraged with

11  customer calls and customers who were physically present and he masterfully let them all know he

12  would get to them as soon as possible and then proceeded to address each one of their needs.

13  When Art returned to the Millwork Desk, he came with another associate, Veronica, and the

14  customer.  Art began working with the customer on the right computer of the Millwork Desk.

15      29.    Hoffman was on the left computer about 10 feet away. Hoffman was up and down

16  from the desk helping customers, showing them where things are, leaving to take customers to one

17  aisle or another to show them products, and then returning to answer the phone calls.  Hoffman

18  was involved with three or four separate matters when Art and Veronica turned and asked him a

19  question about the custom design Milgard software.  Hoffman was at least 8 feet away from their

20  computer at that time, but tried to look at the screen.  Hoffman had not come across the particular

21  option on the screen.  When Hoffman expressed that he was not yet familiar with the options being

22  shown, Veronica responded, in front of Art and their mutual customers,  "You mean you do not

23  know the software?!"

24      30.    At this time, Hoffman was far from the computer and engrossed with his own

25  customers and the service he needed to provide to them.  He was trying his best to help two

26  struggling employees in addition to everything else he was doing.  He could not simply drop the

27  customers he was helping.  Hoffman did not respond to Veronica's inappropriate comment in front

28  of a customer, but, instead, continued to try and help -- again from greater than 8 feet away from

- 8 -

**COMPLAINT**

1  the computer. Veronica then said again, "You mean you do not know the software! You use it

2  every day!" While Hoffman was still looking at the screen and occupied with yet another phone

3  call and the special custom order he was working on himself, Veronica said a third time, "You do

4  not know the software!"

5      31.    Rather than engage with Veronica, Hoffman determined it would be more

6  productive for him to assist his own customers and he left the desk so to do so. Just before he did,

7  Veronica called Gantt to come to the desk. Once Hoffman finished with the customer he was

8  helping, he returned to the Millworks desk to see if he could help now that he could devote his

9  undivided attention on Veronica's question on the Milgard software. When Hoffman returned to

10  the Millwork Desk, Gantt was there. She accused Hoffman of not giving customer service and not

11  helping out another associate. Gantt said in front of Veronica, Art, and the customer, that the new

12  software had been in the system for a year, and that this is one of the problems with Hoffman, that

13  he was not using the new software.

14      32.    The statement was categorically untrue in many ways. First, the software had not

15  been in the system for a year, but only a few weeks. Second, Hoffman did use the system

16  frequently, but apprised Gantt that it simply takes time to become familiar with all of the options

17  and features. What was lost in this whole exchange -- which again was inappropriately staged and

18  addressed in front of a customer -- was that neither Art, nor Veronica knew the system at all. What

19  is more, Gantt, the accuser and an assistant manager, did not know the system or how to help Art

20  or Veronica. The whole situation was contrived. Morgan then shouted, "Are you refusing to give a

21  customer service?" Hoffman immediately responded, "Absolutely not!" He tried to explain that he

22  had not seen this particular option before, but if given some time, he would likely be able to figure

23  it out. Gantt then asked Hoffman to come back to the office, deciding that helping this particular

24  customer now became secondary to reprimanding Hoffman.

25      33.    By the time they got to the office, Don, the Department Head, was already present.

26  Gantt again accused Hoffman of not helping Art and his customer. Hoffman attempted to explain

27  how he did help and was trying to help. He recounted how he had shown Art where the software

28  was located on the computer and how Hoffman had run a sample patio door for Hoffman to help

<div align="center">- 9 -</div>

<div align="center">**COMPLAINT**</div>

1  Art understand how to use the program. Hoffman even showed how he knew the answer to the

2  fixed window question that was on the screen, it was just taking him a few minutes to understand

3  the way in which the question was being asked in this new software program. Hoffman had

4  received a few computer product knowledge (PK) classes on the new software, but like all the

5  employees, he did not yet have a mastery for the program, which mastery can only be gained from

6  experience and use of the program over a period of time. Veronica and Gantt apparently believed

7  Hoffman was supposed to drop everything he was doing for other customers and place helping

8  Veronica and Gantt concerning their deficiencies with the program above all else. That is not the

9  definition of good customer service. After Hoffman explained what had happened from his

10  perspective, the confrontation ended.

11      34.    The next day, however, May 18, 2013, Hoffman came to work and Gantt called him

12  into the office again. Kim, a representative from Atlanta Human Resources, was on the phone and

13  wanted to know about everything that happened the prior day. It turns out that Gantt had written

14  Hoffman up for a "first and final" warning for being disrespectful and not helping another

15  associate. Hoffman explained the situation from his perspective and that seemed to be the end of

16  it. Such an incident clearly did not rise to the level of a "first and final" warning for a 14-year

17  employee.

18      35.    On August 11, 2013, management set up a situation designed to goad Hoffman into

19  an altercation, but Hoffman did not fall prey. Consequently, they fabricated the events in question

20  and used this and a perceived disability/medical condition, as a basis to terminate Hoffman's

21  employment.

22      36.    At around 7:30 p.m. on August 11, 2013, Hoffman was at the Millwork Desk using

23  the computer on the left side of the desk to assist customers with window and door orders. Miguel

24  Diaz, an associate in plumbing, was using the right side of the desk to address 2 full carts of mark-

25  downed product. An associate named Armando, who Hoffman had never seen before, but learned

26  later had been with Home Depot for about six months, approached the left side of the Millwork

27  Desk and stopped about three to four feet in front of Hoffman. He commanded Mr. Diaz to go to

28  Aisle 22 to help customers. Mr. Diaz responded that there were three other associates in plumbing

- 10 -

**COMPLAINT**

1   on duty and asked Armando if he could page one of them as Mr. Diaz was busy with the mark-

2   downs.

3       37.    Armando told Mr. Diaz again he had to go and turned to walk away.  Mr. Diaz got

4   up and went to help the customer. Hoffman then said to Armando, "You should follow him and

5   show him the customer that needs help."  Hoffman also said to Armando,  "You should stand

6   behind him and listen to what he's saying so if the same question comes up tomorrow or in the

7   future, then you may be able to answer it." Armando responded by walking toward Hoffman,

8   sticking his finger out and saying, "You don't fucking tell me what to do." Hoffman then said,

9   "Okay. I won't tell you what to do, I'll show you what to do." Hoffman picked up the phone in

10  front of him and dialed 126, which is the number for plumbing.  The phone was laying on the desk

11  on the right side where Miguel was sitting moments before. It rang and obviously no one was there

12  to answer it. Hoffman then said to Armando, "This will happen quite a bit, and when this happens,

13  this is what you do." Hoffman then dialed 676 to page overhead. Hoffman said, "Any associate in

14  plumbing, please call 325.  Any associate in plumbing, please call 325." Hoffman hung up the

15  phone and he pointed toward Mr. Diaz down the aisle.  Hoffman said to Armando, "If I was you,

16  that's where I would be right now, showing Miguel the specific customer that you said needed help

17  and trying to get PK (Product Knowledge) on whatever it is Miguel was talking about."

18      37.    Armando moved closer to Hoffman, lifted up the sleeve of his shirt to reveal a

19  tattoo on his arm and then he stuck his finger millimeters from Hoffman's nose and said, "You

20  don't want to fuck with this (referring to the tattoo), and you don't want to fuck with me." It

21  appeared that Armando was trying to signify that he had some sort of gang affiliation.  Hoffman

22  stuck his hands up in the air and said, "I don't own a gun, the only knife I use is to cut up

23  vegetables, but however you want to deal with this, you let me know."

24      38.    At about this time, a bald Asian man dressed in white who appeared to be a

25  religious monk that Hoffman had noticed earlier waiting to be helped walked very close by the

26  desk and looked at Hoffman and Armando.  Hoffman had seen this person's interaction earlier with

27  the other customers he was with.  It was clear that this customer was unable to speak much English

28  and he did not appear to understand much English either.

- 11 -

**COMPLAINT**

39.    The man had no interaction with Armando or Hoffman. He did not touch either one of them and said nothing to either of them. He simply passed by on his way to return to the others in his group. However, as soon as this man passed Hoffman and Armando, Armando changed his expression. Armando said, "Hey man, I'm sorry we're on the same team, we should be working together. We're cool right? We're cool right?" Hoffman stuck out both of his hands with his palms up and fists open and shook hands with Armando. Hoffman responded, "Yes we're cool. My name is Paul Hoffman, I work in the Millworks Department, which is Windows and Doors. and if you ever need help in this department, you can come to me because I know I'll be in your department cutting wood and helping people over there. Next time, you should take the time to listen to what Miguel has to say about anything in plumbing. He really knows his stuff and you could learn a lot from him." Armando said, "I have worked for Home Depot for a long time and I know what I'm doing." He walked away. That was all that had happened.

40.    After Armando left the area, Hoffman helped a family that had been waiting for assistance to understand the measurements they needed for their door order before turning to the guest described above who had walked by he and Armando earlier. Hoffman then helped these customers to buy a door and even helped them take the door to their car.

41.    When Hoffman returned to the store, Chris Pula, who is a Department Head, approached Hoffman and after Mr. Pula discussed some issues with Hoffman concerning Mr. Pula's daughter, Mr. Pula told Hoffman that he needed to go to training room. When Hoffman arrived, present was Gantt and Mr. Pula. Gantt said that Armando's shift had ended, and he was gone, but that he reported that he felt threatened by Hoffman.

42.    Gantt asked Hoffman to write down what had happened. Hoffman wrote the story down, although he did exclude the expletives that Armando used and his pointing to his tattoo, because Hoffman did not want to inflame the issues and cause Armando to get in trouble. Hoffman's shift was scheduled to end at 8:00 p.m. and he needed to leave immediately to get home to his children. He rushed through writing what had happened.

43.    Gantt, without even reviewing what Hoffman had written or noticing that it indicated that Armando was the only aggressive person in the encounter, said to Hoffman, "I'd like

- 12 -

**COMPLAINT**

1   you to leave the store." Hoffman noted that his shift was ending in a matter of minutes, as it was

2   then approximately 8:00 p.m. Gantt stated that she thought Hoffman was scheduled to work until

3   9:30 p.m. Gantt had not noticed that Mike, one of the store managers, had approved a shift change

4   for Hoffman several days before. Hoffman clocked out and left.

5       44.    The next day, August 12, 2013, Hoffman reported to work at 1:30 p.m. He was

6   immediately told to wait in the office. He did so for forty minutes. Then, Gantt came in and said,

7   "We're ready for you." She took Hoffman to another office where they held a telephone

8   conference with Kim in the Atlanta Human Resources office. After the call, where the issues of

9   the prior day were discussed, Kim very clearly said, "I'm comfortable with Hoffman going on the

10  floor and working." The manager-on-duty, Eric, and Gantt, both agreed and Hoffman went to

11  work.

12      45.    A full five hours later, Eric and another manager, Jesse Santiago, summoned

13  Hoffman into the office again. Santiago told Hoffman that they reviewed the issue *again* and that

14  they were going to put Hoffman on leave without pay. When Hoffman asked if he was being fired,

15  they said no, but told him that he had to call a person named Liz Waissman within 24 hours. The

16  managers told Hoffman that Ms. Waissman works for Care Solutions, the Employee Assistance

17  Program ("EAP"), and that she would help Hoffman get back to work.

18      46.    Hoffman, the dutiful employee that he is, and perhaps a bit naive, immediately

19  called Ms. Waissman. Hoffman began to answer Ms. Waissman's "assessment" questions,

20  although Ms. Waissman never told Hoffman the purpose of the questions. Then, the questions

21  turned very personal. Ms. Waissman asked Hoffman if he had ever been hospitalized for mental

22  illness. Hoffman told Ms. Waissman, unqualifiedly, that he had not ever been hospitalized for any

23  issue. Ms. Waissman then told Hoffman that it was absolutely unbelievable to his that Hoffman

24  had never been hospitalized and that he had some of the greatest "coping skills she had ever seen."

25      47.    Hoffman did not understand the nature of these questions and was not comfortable

26  speaking with someone about these personal and strange questions over the phone. Hoffman

27  wanted to meet with Ms. Waissman in person and look his in the eyes to understand the nature of

28  what was being asked. Ms. Waissman refused, but told Hoffman to meet with Jeffrey Kullman,

- 13 -

**COMPLAINT**

another EAP employee, who Ms. Waissman called his eyes and ears. Ms. Waissman still did not tell Hoffman the purpose of the questions she was asking or why Hoffman was speaking with her. Hoffman, ever trusting, went to meet with Mr. Kullman. The next day, he spoke with Ms. Waissman again.

48. Ms. Waissman then blurted out that Mr. Kullman diagnosed Hoffman as bipolar, with hypomania episodes. Mr. Kullman has no medical degree or training whatsoever.

49. Ms. Waissman told Hoffman that if he wanted his job back he had to go to his doctor, get a complete physical with blood tests, and get an appointment to see a psychiatrist. She also told him to Google hypomania episodes and do some research and see if Hoffman believed any of it applied to him. Ms. Waissman then callously stated to Hoffman that he had to  "man up and face it" (the "it" being she and Mr. Kullman's "diagnosis").  Ms. Waissman told Hoffman that his next appointment with Mr. Kullman was a few days later and Hoffman had to bring a doctor's card at that time that showed Hoffman was taking steps to see a psychiatrist.  Hoffman also had to bring his own research on hypomania. Hoffman, in a relative state of shock and still trusting Home Depot management, said he would do it if it would get him back to work.

50. On August 16, 2013, after Hoffman had scheduled an August 19, 2013 appointment with his own doctor and completed the online research he was told to do, he returned to Mr. Kullman. He obligingly told Mr. Kullman that he accepted their "diagnosis" and would work with him and the other doctors to "deal" with these issues.  Mr. Kullman told Hoffman to let Ms. Waissman know that Mr. Kullman said Hoffman was ready to return to work.

51. On August 19, 2013, Hoffman left a message in the morning for Ms. Waissman and then went to his appointment with his own doctor, Dr. John Lahey.  While Dr. Lahey has been Hoffman's doctor for greater than 15 years (and never diagnosed him as bipolar), it turns out that Dr. Lahey has been a workers' compensation doctor for Home Depot for greater than 10 years.  At this visit, Dr. Lahey told Hoffman, "I want you to go to Home Depot right now and tell them you're not sleeping well, you have shortness of breath, you have chest pains, and you need to see the company doctor." Dr. Lahey told Hoffman that Home Depot would send Hoffman back to Dr. Lahey and he will fill out all of the paperwork and put Hoffman on worker's compensation leave.

- 14 -

**COMPLAINT**

52.     Immediately thereafter, Hoffman went to his Home Depot store and saw Gonzalez, the store general manager. Hoffman explained that he was doing everything that was asked of him to return to his position and that the doctor that Ms. Waissman sent him to, Dr. Lahey, needed Hoffman to obtain approval from Home Depot for Hoffman to continue seeing Dr. Lahey. Gonzalez feigned that she did not know what was going on and said she would make some calls and get back to Hoffman. Hoffman then left the store. When he returned to his car, he had a message from Ms. Waissman. Ms. Waissman said she was going to call Mr. Kullman and then start the paperwork for Hoffman to return to work. She said that because Jesse Santiago was the manager that put Hoffman on leave, he would be the one to call and tell Hoffman when he could return to work. She told Hoffman not to go to Home Depot in the interim.

53.     Hoffman attempted to call Ms. Waissman for the next three to four hours to tell his what had transpired with Dr. Lahey and that Hoffman had already been to Home Depot. He never reached Ms. Waissman and she did not return his messages in this time period. Hoffman also tried to call Gonzalez to update his on what Ms. Waissman had said, but the phone was busy for an hour. Ultimately, Ms. Waissman called Hoffman back. It was clear she had spoken to Gonzalez, or someone at the Home Depot store. Ms. Waissman said to Hoffman, "There is no company doctor in this case." Ms. Waissman told Hoffman he had to wait to hear from Jesse Santiago. Gonzalez left a message at 6:45 p.m. that evening telling Hoffman that she would call him the next morning at 7 a.m.

54.     On August 20, 2013, Gonzalez did not call Hoffman in the morning. Now, Hoffman was suspicious as to what was happening. He called Home Depot's corporate Human Resources and spoke to a Sergio at (770) 433-8211. Sergio transferred Hoffman to a James, who was with the Associate's Advice and Counseling Group. A ticket number was assigned to the call/claim, 6025187. Hoffman spoke with James for about 20 minutes about what was going on. James put Hoffman on hold at 9:25 a.m. and the call was disconnected. At 9:46 a.m., Hoffman was able to reach two other people in the Atlanta Human Resources, Ed and Jay, and he was told that the store manager would be calling him by the end of the day with a final resolution.

55.     Gonzalez called around 5 p.m. and terminated Hoffman over the phone. She said

- 15 -

**COMPLAINT**

1   that their "finding" was that Armando and Hoffman had a physical fight and a customer had to

2   break it up.    Hoffman repeatedly asked Gonzalez if anyone consulted the cameras as this

3   accusation was simply not true.  Gonzalez did not respond in anyway concerning the cameras or

4   the videotape that would have shown that none of these accusations were accurate.  Instead, she

5   said that Hoffman had received a first and final warning from Gantt in May related to the alleged

6   failure to assist Art and Veronica with the computer and therefore they were terminating Hoffman.

7       56.    There is no written account from Armando as to what happened on this fateful day

8   and all of the other statements in Hoffman's file make no mention of a customer who was alleged

9   to have "broken up a fight," and certainly no identification as to the name of this purported

10  customer or any statement from him or her.

11      57.    The next day, August 21, 2013, Hoffman was called by Ms. Waissman who asked

12  him how he was doing. Ms. Waissman claimed not to know that Hoffman was terminated.  Rather

13  than address any of what had happened, Ms. Waissman stated was that she hoped Hoffman would

14  keep his last appointment with Mr. Kullman.

15      58.    As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer

16  general and special damages, including severe and profound pain and emotional distress, anxiety,

17  depression, headaches, tension, and other physical ailments, as well as medical expenses, expenses

18  for psychological counseling and treatment and past and future lost wages and benefits.

19      59.    As a result of the above alleged conduct, Plaintiff is entitled to past and future lost

20  wages, bonuses and benefits.

21      60.    Plaintiff claims general damages for emotional distress and aggravation in a sum in

22  to be determined at the time of trial, which sum Plaintiff alleges is excess of the jurisdictional

23  minimum of this court.

24      61.    Because the acts taken toward Plaintiff were carried out by managerial employees

25  acting in a deliberate, cold, callous, cruel and intentional manner, in conscious disregard of

26  Plaintiff's rights and in order to injure and damage him, Plaintiff requests that punitive damages be

27  levied against Defendants and each of them, in sums in excess of the jurisdictional minimum of

28  this Court.

**COMPLAINT**

**FIRST CAUSE OF ACTION**

**HARASSMENT BASED UPON AGE IN VIOLATION OF *GOV. CODE* § 12940 *ET SEQ***

(Against The Home Depot, Inc. and Does 1-40)

62.    Plaintiff hereby incorporates paragraphs 1 through 57 as though set forth in full herein to the extent consistent with this cause of action.

63.    The Home Depot is an employer subject to suit under the California Fair Employment and Housing Act (hereinafter "FEHA"), *Government Code* § 12940 *et seq.*

64.    Plaintiff has timely filed charges for harassment, discrimination and retaliation with the California Department of Fair Employment and Housing (hereinafter "DFEH") and he has properly requested and received his Right-To-Sue Notice from the DFEH. *See*, **Exhibit 1.**

65.    FEHA requires employers to refrain from harassing an employee on the basis of age, and to prevent harassment on the basis of age from occurring.

66.    Plaintiff is a member of a protected class as a person over the age of 40.

67.    Plaintiff is informed and believes that his age and/or some combination of his age with other protected characteristics set forth in the other causes of action herein under Government code sec. 12920 and 12926, et seq. were motivating reasons and/or factors in the decision to subject Plaintiff to the aforementioned harassment during the time Plaintiff was employed at the Home Depot, Inc.

68.    Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store in which he worked. As such their actions are attributed to Home Depot by the theory of respondeat superior. These actions constitute unlawful discrimination in employment on account of age in violation of FEHA, *Government Code* § 12900 *et seq.*, and the corresponding regulations of the Fair Employment and Housing Commission in that said Defendants created a hostile work environment. These acts were neither sporadic nor trivial and show a concerted pattern of harassment of a repeated, routine and/or generalized nature.

69.    Said conduct violates FEHA and such violations were the proximate cause in Plaintiff's damages as stated below.

- 17 -

**COMPLAINT**

70.     The damage allegations of paragraphs 58 to 61, inclusive, are herein incorporated by reference.

71.     The foregoing conduct of Defendants individually, or by and through their managing agents, was intended by Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

72.     Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

## SECOND CAUSE OF ACTION

## HARASSMENT BASED UPON RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY IN VIOLATION OF *GOV. CODE* § 12940 *ET SEQ*

(Against The Home Depot, Inc. and Does 1-40)

72.     Plaintiff hereby incorporates paragraphs 1 through 57 as though set forth in full herein to the extent consistent with this cause of action.

73.     The Home Depot is an employer subject to suit under the FEHA, *Government Code* § 12940 *et seq.*

74.     Plaintiff has timely filed charges for harassment, discrimination and retaliation with the DFEH and he has properly requested and received his Right-To-Sue Notice from the DFEH. *See*, Exhibit 1.

75.     FEHA requires employers to refrain from harassing an employee for engaging in protected activity and to prevent harassment of employees engaging in protected activity from occurring.

76.     Plaintiff is a member of a protected class as a person because he engaged in protected activity by asserting the legal rights of the employees by asking that the policies

- 18 -

**COMPLAINT**

1  concerning meal breaks be observed correctly by the management of his store.

2      77.     Plaintiff is informed and believes that his act of asserting his and the other

3  employees' legal and contractual rights and/or some combination of this reason with other

4  protected characteristics set forth in the other causes of action herein under Government code sec.

5  12920 and 12926, et seq. were motivating reasons and/or factors in the decision to subject Plaintiff

6  to the aforementioned harassment during the time Plaintiff was employed at the Home Depot, Inc.

7      78.     Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store

8  in which he worked.  As such their actions are attributed to Home Depot by the theory of

9  respondeat superior.  These actions constitute unlawful discrimination in employment on account

10  of protected activity in violation of FEHA, *Government Code § 12900 et seq.*, and the

11  corresponding regulations of the Fair Employment and Housing Commission in that said

12  Defendants created a hostile work environment.  These acts were neither sporadic nor trivial and

13  show a concerted pattern of harassment of a repeated, routine and/or generalized nature.

14      79.     The conduct identified above violates FEHA and such violations were the

15  proximate cause in Plaintiff's damages as stated below.

16      80.     The damage allegations of paragraphs 58 to 61, inclusive, are herein incorporated

17  by reference.

18      81.     The foregoing conduct of Defendants individually, or by and through their

19  managing agents, was intended  by Defendants to cause injury to the Plaintiff or was despicable

20  conduct carried on by the Defendants with a willful and conscious disregard of the rights of

21  Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

22  rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

23  entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

24  Defendants.

25      82.     Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

26  of attorneys' fees and costs, including expert fees pursuant to the FEHA.

27

28

- 19 -

**COMPLAINT**

## THIRD CAUSE OF ACTION FOR HARASSMENT

## BASED UPON DISABILITY/MEDICAL CONDITION AND/OR PERCEIVED

## DISABILITY/MEDICAL CONDITION IN VIOLATION OF *GOV. CODE* § 12940 *ET SEQ*

(Against The Home Depot, Inc. and Does 1-40)

83.     Plaintiff hereby incorporates paragraphs 1 through 57 as though set forth in full herein to the extent consistent with this cause of action.

84.     The Home Depot is an employer subject to suit under FEHA, *Government Code* § 12940 *et seq.*

85.     Plaintiff has timely filed charges for harassment, discrimination and retaliation with the DFEH and he has properly requested and received his Right-To-Sue Notice from the DFEH. *See*, **Exhibit 1.**

86.     FEHA requires employers to refrain from harassing employees on the basis of medical condition, disability and/or perceived disability, including psychological and mental disabilities and to prevent harassment on the basis of medical condition, disability and/or perceived disability or medical condition from occurring.  FEHA also prohibits and employer from asking questions of an employee that relate to a protected class or issue.

87.     Plaintiff is a member of a protected class as a person with a medical condition and/or disability or a perceived medical condition and disability, including psychological disability,  requiring an accommodation in order to perform the essential elements of his position.

88.     Plaintiff is informed and believes that his medical condition and/or disability or his perceived medical condition and/or disability and/or some combination of his actual or perceived medical condition and/or disability with other protected characteristics set forth in the other causes of action herein under Government code sec. 12920 and 12926,  et seq. were motivating reasons and/or factors in the decision to subject Plaintiff to the aforementioned harassment during the time Plaintiff was employed at the Home Depot, Inc.

89.     Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store in which he worked. Liz Waissman and Jeffrey Kullman were agents of Home Depot in that Home Depot supervisors required that Hoffman call them and comply with their questioning and

- 20 -

**COMPLAINT**

1  the requirements they imposed on Hoffman as a ruse to Hoffman being returned to work.  As such

2  their collective actions are attributed to Home Depot by the theory of respondeat superior.  These

3  actions constitute unlawful discrimination in employment on account of actual or perceived

4  medical condition and/or disability in violation of FEHA, *Government Code* § 12900 *et seq.*, and

5  the corresponding regulations of the Fair Employment and Housing Commission in that said

6  Defendants created a hostile work environment.  These acts were neither sporadic nor trivial and

7  show a concerted pattern of harassment of a repeated, routine and/or generalized nature.

8      90.    Said conduct violates FEHA and such violations were the proximate cause in

9  Plaintiff's damages as stated below.

10     91.    The damage allegations of paragraphs 58 to 61, inclusive, are herein incorporated

11  by reference.

12     92.    The foregoing conduct of Defendants individually, or by and through their

13  managing agents, was intended  by Defendants to cause injury to the Plaintiff or was despicable

14  conduct carried on by the Defendants with a willful and conscious disregard of the rights of

15  Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

16  rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

17  entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

18  Defendants.

19     93.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

20  of attorneys' fees and costs, including expert fees pursuant to the FEHA.

21

22              **FOURTH CAUSE OF ACTION**

23           **DISCRIMINATION BASED UPON AGE IN**

24        **VIOLATION OF *GOV. CODE* § 12940 *ET SEQ***

25            (Against The Home Depot, Inc. and Does 1-40)

26     94.    Plaintiff hereby incorporates paragraphs 1 through 57 as though set forth in full

27  herein to the extent consistent with this cause of action.

28     95.    The Home Depot is an employer subject to suit under FEHA, *Government Code* §

- 21 -

**COMPLAINT**

12940 *et seq.*

96.     Plaintiff has timely filed charges for harassment, discrimination and retaliation with the DFEH and he has properly requested and received his Right-To-Sue Notice from the DFEH. *See*, **Exhibit 1**.

97.     FEHA requires employers to refrain from discriminating against an employee on the basis of age, and to prevent discrimination on the basis of age from occurring.

98.     Plaintiff is a member of a protected class as a person over the age of 40.

99.     Plaintiff is informed and believes that his age and/or some combination of his age with other protected characteristics set forth in the other causes of action herein under Government code secs. 12920 and 12926, et seq. were motivating reasons and/or factors in the decision to subject Plaintiff to the aforementioned discrimination during the time Plaintiff was employed at the Home Depot, Inc.

100.     Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store in which he worked.  As such their actions are attributed to Home Depot by the theory of respondeat superior.  These actions constitute unlawful discrimination in employment on account of age in violation of FEHA, *Government Code § 12900 et seq.*, and the corresponding regulations of the Fair Employment and Housing Commission in that said Defendants created a hostile work environment.  These acts were neither sporadic nor trivial and show a concerted pattern of discrimination of a repeated, routine and/or generalized nature.

101.     Said conduct violates FEHA and such violations were the proximate cause in Plaintiff's damages as stated below.

102.     The damage allegations of paragraphs 58 to 61, inclusive, are herein incorporated by reference.

103.     The foregoing conduct of Defendants individually, or by and through their managing agents, was intended by Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

**COMPLAINT**

1  entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

2  Defendants.

3        104.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

4  of attorneys' fees and costs, including expert fees pursuant to the FEHA.

5

6  **FIFTH CAUSE OF ACTION**

7  **DISCRIMINATION BASED UPON RETALIATION FOR ENGAGING IN PROTECTED**

8  **ACTIVITY IN VIOLATION OF *GOV. CODE* § 12940 *ET SEQ***

9  (Against The Home Depot, Inc. and Does 1-40)

10        105.    Plaintiff hereby incorporates paragraphs 1 through 57 as though set forth in full

11  herein to the extent consistent with this cause of action.

12        106.    The Home Depot is an employer subject to suit under FEHA, *Government Code* §

13  12940 *et seq.*

14        107.    Plaintiff has timely filed charges for harassment, discrimination and retaliation

15  with the DFEH and he has properly requested and received his Right-To-Sue Notice from the

16  DFEH. **See, Exhibit 1.**

17        108.    FEHA requires employers to refrain from discriminating against an employee in

18  retaliation for an employee asserting his and other employee's legal rights, a protected activity and

19  to prevent retaliation for engaging in protected activity.

20        109.    Plaintiff is a member of a protected class of persons because he  engaged in

21  protected activity by asserted the legal rights of the employees by asking that the policies

22  concerning meal breaks be observed correctly by the management of his store.

23        110.    Plaintiff is informed and believes that his act of asserting his and the other

24  employees' legal and contractual rights and/or some combination of these acts with other protected

25  characteristics set forth in the other causes of action herein under Government code secs. 12920

26  and 12926, et seq. were motivating reasons and/or factors in the decision to subject Plaintiff to the

27  aforementioned harassment during the time Plaintiff was employed at the Home Depot, Inc.

28        111.    Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store

- 23 -

**COMPLAINT**

1  in which he worked.  As such their actions are attributed to Home Depot by the theory of

2  respondeat superior.  These actions constitute unlawful discrimination in employment on account

3  of engaging in protected activity in violation of FEHA, *Government Code* § 12900 *et seq.*, and the

4  corresponding regulations of the Fair Employment and Housing Commission in that said

5  Defendants created a hostile work environment.  These acts were neither sporadic nor trivial and

6  show a concerted pattern of discrimination of a repeated, routine and/or generalized nature.

7        112.    The conduct identified above violates FEHA and such violations were the

8  proximate cause in Plaintiff's damages as stated below.

9        113.    The damage allegations of paragraphs 58 to 61, inclusive, are herein incorporated

10  by reference.

11        114.    The foregoing conduct of Defendants individually, or by and through their

12  managing agents, was intended  by Defendants to cause injury to the Plaintiff or was despicable

13  conduct carried on by the Defendants with a willful and conscious disregard of the rights of

14  Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

15  rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

16  entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

17  Defendants.

18        115.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

19  of attorneys' fees and costs, including expert fees pursuant to the FEHA.

20

21        **SIXTH CAUSE OF ACTION FOR DISCRIMINATION**

22        **BASED UPON DISABILITY/MEDICAL CONDITION AND/OR PERCEIVED**

23  **DISABILITY/MEDICAL CONDITION IN VIOLATION OF *GOV. CODE* § 12940 *ET SEQ***

24                (Against The Home Depot, Inc. and Does 1-40)

25        116.    Plaintiff hereby incorporates paragraphs 1 through 57 as though set forth in full

26  herein to the extent consistent with this cause of action.

27        117.    The Home Depot is an employer subject to suit under FEHA, *Government Code* §

28  12940 *et seq.*

- 24 -

**COMPLAINT**

118.   Plaintiff has timely filed charges for harassment, discrimination and retaliation with the DFEH and he has properly requested and received his Right-To-Sue Notice from the DFEH. *See*, **Exhibit 1.**

119.   FEHA requires employers to refrain from discriminating against an employee on the basis of medical condition, disability and/or perceived disability, including psychological and mental disability, and to prevent discrimination on the basis of medical condition or disability and/or perceived disability or medical condition from occurring.

120.   Plaintiff is a member of a protected class as a person with a medical condition and/or disability or a perceived medical condition and/or disability requiring an accommodation in order to perform the essential elements of his position.

121.   Plaintiff is informed and believes that his medical condition and/or disability or his perceived medical condition and/or disability and/or some combination of his actual or perceived medical condition and/or disability with other protected characteristics set forth in the other causes of action herein under Government code secs. 12920 and 12926, et seq., were motivating reasons and/or factors in the decision to subject Plaintiff to the aforementioned harassment during the time Plaintiff was employed at the Home Depot, Inc.

122.   Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store in which he worked. As such their actions are attributed to Home Depot by the theory of respondeat superior. These actions constitute unlawful discrimination in employment on account of medical condition and/or disability and/or perceived medical condition or disability in violation of FEHA, *Government Code* § 12900 *et seq.*, and the corresponding regulations of the Fair Employment and Housing Commission in that said Defendants created a hostile work environment. These acts were neither sporadic nor trivial and show a concerted pattern of harassment of a repeated, routine and/or generalized nature.

123.   Said conduct violates FEHA and such violations were the proximate cause in Plaintiff's damages as stated below.

124.   The damage allegations of paragraphs 58 to 61, inclusive, are herein incorporated by reference.

- 25 -

**COMPLAINT**

125.    The foregoing conduct of Defendants individually, or by and through their managing agents, was intended by Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

126.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

## SEVENTH CAUSE OF ACTION

## FOR RETALIATION IN VIOLATION OF GOV'T CODE SECS. 12940 ET SEQ.

(Against Home Depot and Does 1 through 40)

128.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 57 above, as though set forth in full.

129.    At all times hereto, FEHA was in full force and effect and was binding upon Defendants and each of them.

130.    FEHA requires Defendants to refrain from retaliating against an employee for engaging in protected activity.

131.    Plaintiff engaged in the protected activities of exercising his legal and contractual right to take no more than a half hour lunch break and to assert the same rights of other employees at Home Depot.

132.    Plaintiff suffered the adverse employment actions of discrimination, harassment, failure to investigate, remedy and/or prevent discrimination, suspension, and termination, and was harmed thereby.

133.    Plaintiff is informed and believes that his exercise of his right to only a half hour meal break off the clock and enforcement of the contractual policy rights to same was a motivating reason and/or factor in the decisions to subject him to the aforementioned adverse employment

- 26 -

**COMPLAINT**

1   actions.

2      134.   Defendants violated the FEHA by retaliating against Plaintiff and terminating him

3   for attempting to exercise protected rights, as set forth above.

4      135.   Plaintiff is informed and believes, and based thereon alleges, that the above acts of

5   retaliation committed by Defendants were done with the knowledge, consent, and/or ratification of,

6   or at the direction of, each other Defendant and the other Managers.

7      136.   The above said acts of Defendants constitute violations of the FEHA, and were a

8   proximate cause in Plaintiff's damage as stated below.

9      137.   The damage allegations of Paragraphs 58 through 61, inclusive, are herein

10  incorporated by reference.

11     138.   The foregoing conduct of Defendants individually, or by and through their

12  managing agents, was intended  by Defendants to cause injury to the Plaintiff or was despicable

13  conduct carried on by the Defendants with a willful and conscious disregard of the rights of

14  Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

15  rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

16  entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

17  Defendants.

18     139.   Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

19  of attorneys' fees and costs, including expert fees pursuant to the FEHA.

20

21

22  **EIGHTH CAUSE OF ACTION**

23  **FAILURE TO EXERCISE REASONABLE CARE**

24  **TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION**

25  **IN VIOLATION OF GOV. CODE § 12940(k)**

26  (Against Home Depot and Does 1-40)

27     140.   Plaintiff hereby incorporates paragraphs 1 through 57 as though set forth in full

28  herein to the extent consistent with this cause of action.

- 27 -

COMPLAINT

141.   At all times mentioned in this Complaint, FEHA, and in particular, Gov. Code § 12940(k) was in full force and effect. This subsection requires defendants to take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring.  Home Depot violated this provision by failing to take all reasonable steps necessary to prevent discrimination and harassment from occurring, and by failing to take prompt remedial action after having actual and constructive knowledge of the hostile work environment that existed in Plaintiff's store.

142.   Plaintiff has timely filed charges for harassment, discrimination and retaliation with the DFEH and he has properly requested and received his Right-To-Sue Notice from the DFEH with respect to each Defendant.  The Right-To-Sue Notice is attached hereto as **Exhibit 1.**

143.   The above said acts of Defendants constitute violations of FEHA, and were a proximate cause in Plaintiff's damage as stated below.

144.   The damage allegations of Paragraphs 58 through 61, inclusive, are herein incorporated by reference.

145.   The foregoing conduct of Defendants individually, or by and through their managing agents, was intended  by Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

146.   Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

## NINTH CAUSE OF ACTION

## FOR WRONGFUL TERMINATION IN VIOLATION OF THE PUBLIC

(Against Home Depot and Does 1 through 40)

147.   Plaintiff hereby incorporates paragraphs 1 through 57 as though set forth in full herein to the extent consistent with this cause of action.

- 28 -

**COMPLAINT**

148.   At all times mentioned in this Complaint, FEHA was in full force and effect and was binding on Defendants.  The law requires Defendants to refrain from , among other things, discriminating against any employee on the basis of age, medical condition, disability and/or perceived disability, and from retaliating against any employee who engages in protected activity.

149.   At all times mentioned in this complaint, it was a fundamental policy of the State of California that Defendants cannot discriminate and/or retaliate against any employee on the basis of age, medical condition, disability and/or perceived disability, or engagement in protected activity.

150.   Plaintiff believes and thereon alleges that his age, medical condition disability and/or perceived disability, as well as his engaging in protected activities and/or some combination thereof, were factors in Defendants' conduct alleged hereinabove.

151.   Such harassment, discrimination and retaliation, resulting in the wrongful termination of Plaintiff's employment on the basis of medical condition, disability and/or perceived disability, Plaintiff's engagement in protected activity, and/some combination of these factors, were in proximate cause in Plaintiff's damages as stated below.

152.   The damage allegations of Paragraphs 58 through 61, inclusive, are herein incorporated by reference.

153.   The foregoing conduct of Defendants individually, or by and through their managing agents, was intended by the Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, such as to constitute malice, oppression or fraud under Civil Code sec. 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

COMPLAINT

## TENTH CAUSE OF ACTION

## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against Home Depot, Gonzalez, Gantt, Santiago, Eric Doe and Does 1 through 50)

154.    Plaintiff realleges and incorporates by reference paragraphs 1 through 57, inclusive, as though set forth in full herein.

155.    Defendants, and each of them, intentionally and with malice engaged in outrageous conduct that was outside the bounds of any reasonable employment relationship and which was calculated to cause Plaintiff to suffer humiliation, physical and mental anguish and emotional distress. This conduct included subjecting Plaintiff to a hostile and offensive work environment and retaliation against him for engaging in a statutorily protected activity. It also included subjecting Plaintiff to questions and analysis about his mental and psychological state that was inappropriate and was done by persons who did not even have qualifying medical educations to engage in such evaluation, much less to present their lay "diagnosis" in the abhorrent way that it was done.

156.    Defendants' hostile work environment and retaliation was committed with the knowledge that it would cause Plaintiff severe physical and emotional distress and was committed with a wanton and reckless disregard to the consequences to Plaintiff.

157.    As a direct and proximate result of the acts alleged above, Plaintiff has suffered, and continues to suffer, humiliation, mental anguish and severe emotional and physical distress and has been damaged thereby in an amount to be determined by the trier-of-fact, but which amount is alleged to be in excess of this Court's minimum jurisdiction.

158.    Defendants' conduct was willful, malicious and intended to oppress and cause injury to Plaintiff and, accordingly, he is entitled to an award of punitive damages under Civil Code section 3294.

WHEREFORE, Plaintiff prays as follows:

## ON THE FIRST THROUGH NINTH CAUSES OF ACTION

1.    For special damages in an amount to be proven at the time of trial including lost

- 30 -

**COMPLAINT**

1 | past and future wages, earnings, retirement benefits and other employment benefits, and all other
2 | sums of money together with interest on these amounts;
3 |     2.    For general damages in an amount to be proven at the time of trial for emotional
4 | distress and mental pain and anguish;
5 |     3.    For pre-judgment and post-judgment interest at the maximum legal rate;
6 |     4.    For punitive damages in an amount to be proven at the time of trial; and
7 |     5.    For an award of attorneys' fees and costs of suit.
8 | **ON THE TENTH CAUSE OF ACTION**
9 |     1.    For general damages in an amount to be proven at the time of trial for emotional
10 | distress and mental pain and anguish; and
11 |     2.    For punitive damages in an amount to be proven at the time of trial.
12 |
13 | **ON ALL CAUSES OF ACTION**
14 | For such further and other relief as this Honorable Court may deem just and proper.
15 | **YOUNESI & YOSS, LLP**
16 |
17 | Dated: July 10, 2014    By:
18 | Jan A. Yoss / Attorneys for Plaintiff, PAUL HOFFMAN
19 |
20 |
21 | **DEMAND FOR JURY TRIAL**
22 | As to the matters complained herein against Defendants Plaintiff Paul Hoffman demands a
23 | trial by jury.
24 | **YOUNESI & YOSS, LLP**
25 |
26 | Dated: July 10, 2014    By:
27 | Jan A. Yoss / Attorneys for Plaintiff, PAUL HOFFMAN
28 |

- 31 -

**COMPLAINT**

**EXHIBIT 1**



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TTY 800-700-2320
www.dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR.

DIRECTOR PHYLLIS W. CHENG

**AMENDED**

Jun 18, 2014

RE:  Notice of Filing of Discrimination Complaint
DFEH Matter Number: 274020-111001-R
Right to Sue: Hoffman / Home Depot U.S.A., Inc., Doing Business As The Home Depot

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair
Employment and Housing (DFEH) in accordance with Government Code section 12960. This
constitutes service of the complaint pursuant to Government Code section 12962. The complainant
has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is
being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for
your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

### BEFORE THE STATE OF CALIFORNIA

### DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

In the Matter of the Complaint of                    DFEH No. 274020-111001-R
Paul Hoffman, Complainant.

vs.

Home Depot U.S.A., Inc., Doing Business As The
Home Depot Respondent.
2455 PacesFerry Road
Atlanta, Georgia 30339

Complainant alleges:

1. Respondent **Home Depot U.S.A., Inc., Doing Business As The Home Depot** is a **Private Employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

2. On or around **Aug 20, 2013**, complainant alleges that respondent took the following adverse actions against complainant: **Discrimination, Harassment, Retaliation Asked impermissible non-job-related questions, Denied a good faith interactive process, Denied a work environment free of discrimination and/or retaliation, Terminated,** . Complainant believes respondent committed these actions because of their: **Age - 40 and over, Disability, Engagement in Protected Activity, Medical Condition - including Cancer** .

3. Complainant **Paul Hoffman** resides in the City of **Huntington Beach**, State of **California**. If complaint includes co-respondents please see below.

-1-
*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

1
2

**Co-Respondents:**

3      Beatriz Gonzalez
       3500 Macarthur Blvd.
4      Santa Ana  California 92704

5      Morgan Gantt
       3500 Macarthur Blvd.
6      Santa Ana  California 92704

7      Jesse Santiago
       3500 Macarthur Blvd.
8      Santa Ana  California 92704

9
       Eric Doe
10     3500 Macarthur Blvd.
       Santa Ana  California 92704

11
12
13
14
15
16
17
18
19
20
21
22

-2-
*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

1
2    **Additional Complaint Details:**
3
     I started working at Home Depot in March 1999 in the Santa Ana Store, number 606.
4    Throughout the fourteen years, I received many accolades and customer service
     awards. In or about early 2013, I was first targeted, along with several other workers
5    over 40 years old, for termination by the management of my store. The management
6    claimed that I had been advanced to a position of a "specialist". I denied ever agreeing
     to such advancement. These other over-40 employees and I were given criteria for
7    sales and other activity (like signing up people for credit cards) that we were supposed
     to meet in this role as a specialist. In late 2012, and early 2013, I saw the other older
8    workers around me being let go for failure to meet these new rigorous and unattainable
     guidelines. It was clear by some of the comments being made to me and the
9    unreasonable sales and other benchmark criteria being foisted on us, called the metrics,
10   that I was similarly being singled-out for termination. In addition to being targeted for
     my age, I was also retaliated against by my stores management for asserting my and
11   other employees rights to meal breaks pursuant to company policy. In March 2013, the
12   Santa Ana store manager, Beatrice Gonzalez, began requiring all employees to take a
     one-hour off-the-clock lunch break, instead of the 30-minute break most of them were
13   taking. While I had taken an hour lunch break by choice most of the time I had been
     with Home Depot, in 2012, I began taking only 30-minutes so I could end my shift 30-
14   minutes earlier and help my then-4th grade son with his homework. Other employees
     has similar concerns. As a result, at the request of my fellow employees and to
15   understand the company policy better myself, I called corporate Human Resources to
     determine what the policy was. I spoke with Rowanda Velonza. Ms. Velonza confirmed
16   that the Home Depot policy was that the associates were allowed to elect between a 30-
     minute and a 60-minute lunch. She also confirmed that an individual store manager
17   could not override this policy and require employees to take only a 60-minute or only a
     30-minute lunch. When I explained what was happening, Ms. Velonza wanted me to
18   transfer her to a manager. Afraid that the purported confidentiality of the call would be
     compromised, I asked if she would call back. The next day, Ms. Gonzalez called me
19   into her office and berated me saying, Oh, youre the only one who has to have a 30-
     minute lunch. I have to change all these schedules just to accommodate you." Even
20   when I began to fear for my job out of retaliation and said I would take the 60-minute
21   lunch, Ms. Gonzalez said, Oh no, no its too late now. Its already done. Well try it for a
     few months and see how it works."  I explained to Ms. Gonzalez that I was trying to
22   help other associates who had asked me about the lunch policy, but she did not want to
     hear anything about how the employees felt.  Again, I said, Change my lunch back to
     60-minutes, I dont want to cause any problems. Again Ms. Gonzalez said, No, no, no,
     too late now. In retaliation, Ms. Gonzalez changed my schedule.  Instead of leaving a

                                    -3-
                        *Complaint – DFEH No. 274020-111001-R*

     Date Filed: Jun 18, 2014

     Date Amended: Jul 03, 2014

half-hour earlier to be able to help my son, Ms. Gonzalez simply had me come in a half-hour later, take my 30-minute lunch, and then leave at my old shift time. Ms. Gonzalez also scheduled me to work until 9:30 p.m. on Sunday nights. On Sunday, however, the store closed at 8 p.m. The other associates who worked the closing shift stayed until 9:00 p.m. There was no night crew on Sunday night. I was the only associate scheduled to 9:30 p.m. An associate could not work until 9:30 p.m. without obtaining a prior written authorization, even if he was on the schedule until 9:30 p.m.. So, each Sunday, I would have to fill out a form and have it signed by my manager, Brian Chang. When I did, Mr. Chang would invariably tell me that no one could stay to 9:30 p.m. Mr. Chang would have me come in a half hour earlier or just work 7 hours. If I forgot to get the paperwork signed, or could not locate Mr. Chang, I would receive a demerit. This same game was played with another associate who was terminated shortly after being moved to the phantom 9:30 p.m. shift end-time. Then, in April 2013, I received my first negative annual review in 14 years! My review was curiously given by a very young and new assistant manager, Morgan Gantt, another assistant manager named Mike, but whose last name I do not know, and Angela Gonzalez, a fellow associate. It is very odd that this associate was present in the review because having another associate present does not comport with protocol and violates the confidentiality of the review process. I had only met Ms. Gantt once before the review in March of 2013. I had never worked with her at all during the preceding year. In fact, Ms. Gantt had not even been in this particular store in the prior year. When the review started, Ms. Gantt immediately began to tell me what a failure I was and how I was not doing a good job or meeting the metric (the guidelines for specialists). In response to the review being presented by someone who had no familiarity with my work, I asked who prepared the review and provided the comments. Ms. Gantt stated only, Managers. She would not give me any names. I asked if Brian Chang, the manager I had for the last several years, had weighed in on the review. Ms. Gantt would not respond. This conduct was disturbing to me. I immediately had a severe panic attack. I believed I was having a heart attack as I buckled over on the floor and had difficulty breathing, feeling constriction in my chest. I asked for medical assistance, but none was provided. I called for the store manager, Ms. Gonzalez, who came to the room and asked everyone else to leave. From my bent-over posture on my knees, I pleaded with Ms. Gonzalez to call 911, but Ms. Gonzalez completely ignored my entreaties. After about 20 minutes, my breathing became more regulated. I asked Ms. Gonzalez if she was aware of the nature of my review. She began to read the document. Without responding, she simply said, they needed to get Morgan, Miguel and Angela back in the room and continue the review. When Morgan and Angela had returned, without addressing in any way the concerns I had with the review and the way in which it was being given, Ms. Gonzalez said that I had to sign-up one credit card a week, one measure a week, and one RSW appointment a week for the next 90 days. She then told me that I had a lot of open quotes in the system and most of them looked like "fluff quotes." Importantly, within the next week, one of the quotes in the system, one Ms. Gonzalez called a fluff quote, was

-4-

sold for $2,000. I pointed this out to Ms. Gonzalez, who had no response. Then, without explanation, a week after the review, Ms. Gantt told me that rather than signing up 1 credit card, 1 measure and 1 RSW lead a week, I had to do 1 a day for the next 30 days! She said I was being placed on a Performance Improvement Plan (PIP). Then, the management at Home Depot concocted "events" between other employees and me in an effort to evoke an altercation or inappropriate behavior from me designed to provide management with a reason to fire me. The first event was on May 17, 2013. One of the employees from the Pro Desk, Art, asked me if I would help him with the new Milgard software. I agreed and went with Art to the Millworks Desk. I saw that Art was in the wrong program altogether and showed Art how to navigate the new custom designs software system that had been installed. Once I finished showing Art how to use the program with a sample patio door, Art went to get his customer and asked me to stay nearby so Art could turn to me if he had any further questions. I agreed to help. While at the desk, I was barraged with customer calls and customers who were physically present that required immediate attention. When Art returned to the Millwork Desk, he came with another associate, Veronica, and the customer. Art began working with the customer on the right computer of the Millwork Desk. I was on the left computer about 10 feet away. I was involved with three or four separate matters when Art and Veronica turned and asked me a question about the custom design Milgard software. I was at least 8 feet away from their computer at that time, but tried to look at the screen. I had not come across the particular option on the screen. When I expressed that I was not yet familiar with the options being shown, Veronica responded, in front of Art and their mutual customers, You mean you do not know the software?! At this time, I was far from the computer and engrossed with my own customers and the service I needed to provide to them. I was trying my best to help two struggling employees in addition to everything else I was doing. I could not simply drop the customers I was helping. I did not respond to Veronicas inappropriate comment in front of a customer, but, instead, continued to try and help -- again from greater than 8 feet away from the computer. Rather than engage with Veronica who was becoming agitated, I determined it would be more productive for me to assist my own customers and I left the desk so to do so. Just before I did, Veronica called Ms. Gantt to come to the desk. Once I finished with the customer I was helping, I returned to the Millworks desk to see if I could help now that I could devote my undivided attention on Veronicas question on the Milgard software. When I returned to the Millwork Desk, Ms. Gantt was there. She accused me of not giving customer service and not helping out another associate. Ms. Gantt said in front of Veronica, Art, and the customer, that the new software had been in the system for a year, and that this is one of the problems with me, that I was not using the new software. The statement was categorically untrue in many ways. First, the software had not been in the system for a year, but only a few weeks. Second, I did use the system frequently, but apprised Ms. Gantt that it simply takes time to become familiar with all of the options and features. Importantly, Ms. Gantt, a supposed supervisor, did not know the system or how to help Art or Veronica. The whole situation was contrived.

-5-

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

Morgan then shouted, Are you refusing to give a customer service? I immediately responded, ABSOLUTELY NOT! I tried to explain that I had not seen this particular option before, but if given some time, I would likely be able to figure it out. Ms. Gantt then asked me to come back to the office -- apparently helping this particular customer now became secondary to reprimanding me.    Conspicuously, by the time we arrived at the office, Don, the Department Head, was already present. Ms. Gantt again accused me of not helping Art and his customer. I attempted to explain how I did help and was trying to help. I recounted how I had shown Art where the software was located on the computer and how I had run a sample patio door for me to help Art understand how to use the program. I even showed how I knew the answer to the fixed window question that was on the screen, it was just taking me a few minutes to understand the way in which the question was being asked in this new software program. Veronica and Ms. Gantt apparently believed I was supposed to drop everything I was doing for other customers and place helping Veronica and Ms. Gantt concerning their deficiencies with the program above all else.  That is not the definition of good customer service.  After I explained what had happened from my perspective, the confrontation ended.  The next day, however, May 18, 2013, I came to work and Ms. Gantt called me into the office again.  Kim, a representative from Atlanta Human Resources, was on the phone and wanted to know about everything that happened the prior day.  It turns out that Ms. Gantt had written me up for a "first and final" warning for being disrespectful and not helping another associate.  I explained the situation from my perspective and that seemed to be the end of it.  It is really hard to imagine how the incident, no matter how it was recounted, could result in a first warning that was also a final warning for a 14-year employee with a stellar track record.  Nonetheless, I went about my work as usual, until the other shoe dropped. On August 11, 2013, management set up a situation designed to goad me into an altercation, but I did not fall prey.  Consequently, they fabricated the events in question and used this and a perceived medical condition, as a basis to terminate my employment.  At around 7:30 p.m. on August 11, 2013, I was at the Millwork Desk using the computer on the left side of the desk to assist customers with window and door orders.  Miguel Diaz, an associate in plumbing, was using the right side of the desk to address 2 full carts of marked-down product.  An associate named Armando, who I had never seen before, but learned later had been with Home Depot for about six months, approached the left side of the Millwork Desk and stopped about three to four feet in front of me.  He commanded Miguel to go to Aisle 22 to help customers.  Miguel responded that there were three other associates in plumbing on duty and asked Armando if he could page one of them as Miguel was busy with the mark-downs.  Armando told Miguel again he had to go and turned to walk away.  Miguel got up and went to help the customer. I then said to Armando, You should follow him and show him the customer that needs help.  I also said to Armando, You should stand behind him and listen to what hes saying so if the same question comes up tomorrow or in the future, then you may be able to answer it. Armando responded by walking toward me, sticking his finger out and saying, You dont fucking tell me what to do. I then said,

-6-

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

Okay. I wont tell you what to do, Ill show you what to do. I picked up the phone in front of him and dialed 126, which is the number for plumbing. The phone was laying on the desk on the right side where Miguel was sitting moments before. It rang and obviously no one was there to answer it. I then said to Armando, This will happen quite a bit, and when this happens, this is what you do. I then dialed 676 to page overhead. I said, Any associate in plumbing, please call 325. Any associate in plumbing, please call 325. I hung up the phone and I pointed toward Miguel down the aisle. I said to Armando, If I was you, thats where I would be right now, showing Miguel the specific customer that you said needed help and trying to get PK (Product Knowledge) on whatever it is Miguel was talking about." Armando moved closer to me, lifted up the sleeve of his shirt to reveal a tattoo on his arm and then he stuck his finger millimeters from my nose and said, You dont want to fuck with this (referring to the tattoo), and you dont want to fuck with me. It appeared that Armando was trying to signify that he had some sort of gang affiliation. I stuck my hands up in the air and said, I dont own a gun, the only knife I use is to cut up vegetables, but however you want to deal with this, you let me know. At about this time, a bald Asian man dressed in white who appeared to be a religious monk that I had noticed earlier waiting to be helped walked very close to the desk and looked at Armando and I. I had seen this persons interaction earlier with the other customers he was with and it was clear that the man was unable to speak much English and he did not appear to understand much English either. The man had no interaction with Armando or me. He did not touch either one of us and said nothing to either of us. He simply passed by on his way to return to the people he was with. However, as soon as this man passed Armando and me, Armando changed his expression. Armando said, Hey man, Im sorry were on the same team, we should be working together. Were cool right? Were cool right? I stuck out both of my hands with my palms up and fists open and shook hands with Armando. I responded, Yes were cool. My name is Paul Hoffman, I work in the Millworks Department, which is Windows and Doors, and if you ever need help in this department, you can come to me because I know Ill be in your department cutting wood and helping people over there. Next time, you should take the time to listen to what Miguel has to say about anything in plumbing. He really knows his stuff and you could learn a lot from him. Armando said, I have worked for Home Depot for a long time and I know what Im doing. He walked away. That was all that had happened. After Armando left the area, I helped a family that had been waiting for assistance to understand the measurements they needed for their door order before turning to the Asian couple who were with the installer. I then helped these customers to buy a door and even helped them take the door to their car. When I returned to the store, Chris Pula, who is a Department Head, approached me. Mr. Pula told me that I needed to go to training room. When I arrived, present was Ms. Gantt and Mr. Pula. Ms. Gantt said that Armandos shift had ended, and he was gone, but that Armando reported that he felt threatened by me. Ms. Gantt asked me to write down what had happened. I wrote the story down, although I did exclude the expletives and threat about the tattoo that Armando used, because I did not want to inflame the issues and

-7-

Complaint – DFEH No. 274020-111001-R

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

cause Armando to get in trouble. My shift was scheduled to end at 8:00 p.m. and I
needed to leave immediately to get home to my children. I rushed through writing what
had happened and did not include all of the detail. Ms. Gantt, without even reviewing
what I had written or noticing that it indicated that Armando was the only aggressive
person in the encounter, said to me, Id like you to leave the store. I noted that my shift
was ending in a matter of minutes, as it was then approximately 8:00 p.m. Ms. Gantt
stated that she thought I was scheduled to work until 9:30 p.m. Ms. Gantt had not
noticed that Mike, one of the store managers, had approved a shift change for me
several days before. I clocked out and left. The next day, August 12, 2013, I reported
to work at 1:30 p.m. I was immediately told to wait in the office. I did so for forty
minutes. Then, Ms. Gantt came in and said, "Were ready for you." She took me to
another office where they held a telephone conference with Kim in the Atlanta Human
Resources office. After the call, where the issues of the prior day were discussed, Kim
very clearly said, "Im comfortable with Paul going on the floor and working." The
manager-on-duty, Eric, and Ms. Gantt, both agreed and I went to work. A full five hours
later, Eric and another manager, Jesse Santiago, summoned me into the office again.
Mr. Santiago told me that they reviewed the issue again and that they were going to put
me on leave without pay. When I asked if I was being fired, they said no, but told me
that I he had to call a person named Liz Waissman within 24 hours. The managers told
me that Ms. Waissman works for Care Solutions, the Employee Assistance Program
("EAP"), and that she would help me get back to work. I immediately called Ms.
Waissman. I still did not understand what was really going on. I began to answer Ms.
Waissmans "assessment" questions. Bear in mind, Ms. Waissman never told me the
purpose of the questions. Then, the questions turned very personal. Ms. Waissman
asked me if I had ever been hospitalized for mental illness. I told Ms. Waissman,
unqualifiedly, that I had not ever been hospitalized for any issue. This repugnant
woman actually had the audacity to respond that it was absolutely unbelievable to her
that I had never been hospitalized and that I had some of the greatest "coping skills she
had ever seen." I did not understand the nature of these questions and was not
comfortable speaking with someone about these personal and strange questions over
the phone. I wanted to meet with Ms. Waissman in person and look her in the eyes to
understand the nature of what was being asked. Ms. Waissman refused, but told me to
meet with Jeffrey Kullman, another EAP employee, who Ms. Waissman called her eyes
and ears. Ms. Waissman still did not tell me the purpose of the questions she was
asking or why I was speaking with her. I, therefore, went to meet with Mr. Kullman. The
next day, I spoke with Ms. Waissman again. Ms. Waissman then blurted out that Mr.
Kullman diagnosed me as bipolar, with hypomania episodes. Bear in mind that Mr.
Kullman has no medical degree or training whatsoever. Ms. Waissman told me that if I
wanted my job back I had to go to my doctor, get a complete physical with blood tests,
and get an appointment to see a psychiatrist. She also told me to Google hypomania
episodes and do some research and see if I believed any of it applied to me. Then, this
woman, who just a few days before told me she was supposed to be helping me and

-8-

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

who spoke to me as if she actually cared about my employment status and mental health, told me that I had to "man up and face it." She told me that my next appointment with Mr. Kullman was a few days later and I had to bring a doctors card at that time that showed me that I was taking steps to see a psychiatrist. I also had to bring my own research on hypomania. In a relative state of shock and still trusting Home Depot management, I said I would do it if it would get me back to work. On August 16, 2013, after I had scheduled an August 19, 2013 appointment with my own doctor and completed the online research that I was told to do, I returned to Mr. Kullman. I obligingly told Mr. Kullman that I accepted their "diagnosis" and would work with him and the other doctors to "deal" with these issues. Mr. Kullman told me to let Ms. Waissman know that Mr. Kullman said I was ready to return to work. On August 19, 2013, I left a message in the morning for Ms. Waissman and then went to my appointment with my own doctor, Dr. John Lahey. While Dr. Lahey has been my doctor for greater than 15 years (and never diagnosed me as bipolar), it turns out that Dr. Lahey has been a workers compensation doctor for Home Depot for greater than 10 years. At this visit, Dr. Lahey told me, I want you to go to Home Depot right now and tell them youre not sleeping well, you have shortness of breath, you have chest pains, and you need to see the company doctor. Dr. Lahey told me that Home Depot would send me back to Dr. Lahey and he will fill out all of the paperwork and put me on workers compensation leave while I spoke with a lawyer about what Dr. Lahey perceived to be a strong employment case. In essence, Dr. Lahey saw what Home Depot was doing to me, both mentally and physically, and also the set-up that was happening in my job. Immediately thereafter, I went to my Home Depot store and saw Beatrice Gonzalez, the store general manager. I explained that I was doing everything that was asked of me to return to my position and that the doctor that Ms. Waissman sent me to, Dr. Lahey, needed me to obtain approval from Home Depot for me to continue seeing Dr. Lahey. Ms. Gonzalez feigned that she did not know what was going on and said she would make some calls and get back to me. I then left the store. When I returned to my car, I had a message from Ms. Waissman. Ms. Waissman said she was going to call Mr. Kullman and then start the paperwork for me to return to work. She said that because Jesse Santiago was the manager that put me on leave, he would be the one to call and tell me when I could return to work. She told me not to go to Home Depot in the interim. I attempted to call Ms. Waissman for the next three to four hours to tell her what had transpired with Dr. Lahey and that I had already been to Home Depot. I never reached Ms. Waissman and she did not return my messages in this time period. I also tried to call Ms. Gonzalez to update her on what Ms. Waissman had said, but the phone was busy for an hour. Ultimately, Ms. Waissman called me back. It was clear she had spoken to Ms. Gonzalez, or someone at the Home Depot store. Ms. Waissman said to me, There is no company doctor in this case. Ms. Waissman told me the I had to wait to hear from Jesse Santiago. Ms. Gonzalez left a message at 6:45 p.m. that evening telling me that she would call me the next morning at 7 a.m. On August 20, 2013, Ms. Gonzalez did not call me in the morning. Now, I was suspicious as to what was

-9-

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

happening. I called Home Depots corporate Human Resources and spoke to a Sergio at (770) 433-8211. Sergio transferred me to a James, who was with the Associates Advice and Counseling Group. A ticket number was assigned to the call/claim, 6025187. I spoke with James for about 20 minutes about what was going on. James put me on hold at 9:25 a.m. and the call was disconnected. At 9:46 a.m., I able to reach two other people in the Atlanta Human Resources, Ed and Jay, and I was told that the store manager would be calling me by the end of the day with a final resolution. Ms. Gonzalez called around 5 p.m. and terminated me over the phone. She said that their "finding" was that Armando and I had a physical fight and a customer had to break it up. I repeatedly asked Ms. Gonzalez if anyone consulted the cameras as this accusation was simply not true. Ms. Gonzalez did not respond in any way concerning the cameras or the videotape that would have shown that none of these accusations were accurate. Instead, she said that I had received a first and final warning from Ms. Gantt in May related to the alleged failure to assist Art and Veronica with the computer and therefore they were terminating me. There was no mention of this ruse and the charade that I had endured over the last week with Ms. Waissman and Mr. Kullman, that was designed to "return me to work". There was no discussion about my purported diagnosis as bipolar with hypomania and whether there was any accommodation that would enable me to perform the essential functions of my position. After 14 stellar years of employment, I was terminated over the phone after Human Resources in Atlanta said I should be returned to work, after I went to work for 5 hours the day after this bogus incident and after I jumped through every hoop that Home Depot put me through with regard to EAP and doctors. I have subsequently seen my personnel file and there is no statement in it from Armando and at an unemployment appeal hearing, there was an admission by Home Depot that they do not have one. There is no statement by any customer and the identity of this alleged customer that purportedly broke up a fight is nowhere in the records. Indeed, the statements by the various managers are all inconsistent as to what they claim happened. The cruel and tortured nature of what happened to me continued the next day, August 21, 2013, when I was called by Ms. Waissman who asked me how I was doing. Ms. Waissman claimed not to know that I was terminated. Rather than address the despicable nature of the termination in any way -- after all, just the Friday before Mr. Kullman told me to tell Ms. Waissman that I was okay to return to work and Ms. Waissman said I should hear from Mr. Santiago as to when I was to return -- all Ms. Waissman stated was that she hoped I would keep my last appointment with Mr. Kullman. While subsequent to these events, I saw a true psychiatrist who has found that I am not bipolar, because of the "diagnosis" of the EAP personnel from Home Depot, my termination was due, in part, to the perception of my medical condition and disability. My termination from Home Depot was both discriminatory and retaliatory. The management at the Santa Ana Home Depot wanted to get rid of all of the older, higher paid employees and made them "specialists," in order to set up stringent goals for them to meet. The management then systematically terminated those older workers for failure to meet these arbitrary

-10-

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

guidelines in a position many of them did not want. I proved too tough to terminate this way, because I generally met the benchmarks. When I championed the legal rights of all the employees related to the violation of meal breaks, I became an even bigger target for management who wanted to terminate me in retaliation -- at any cost. My personnel file identifies the attempts to trump up my dismissal. Local management attempted to terminate me on several occasions with either false reasons or trumped up ones, but either was unable to finish the hatchet job because they failed to follow some store protocol or the HR in the corporate office told them they had not properly documented matters for the termination. The local management kept at it doggedly, until they got the green light after the horrific events chronicled above.

-11-
*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

**VERIFICATION**

I, **Paul Hoffman**, am the Complainant in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On Jun 18, 2014, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

<div align="right">

**Huntington Beach, CA**
**Paul Hoffman**

</div>

-12-
*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                    DIRECTOR PHYLLIS W. CHENG
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TTY:800-700-2320                                    **AMENDED**
www.dfeh.ca.gov

Jun 18, 2014

Paul Hoffman
17706 Van Buren, #B
Huntington Beach California 92647

RE:  Notice of Case Closure and Right to Sue
DFEH Matter Number: 274020-111001-R
Right to Sue: Hoffman / Home Depot U.S.A., Inc., Doing Business As The Home Depot

Dear Paul Hoffman,

This letter informs you that the above-referenced complaint was filed with the Department of Fair
Employment and Housing (DFEH) has been closed effective Jun 18, 2014 because an immediate Right to
Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision
(b), a civil action may be brought under the provisions of the Fair employment and Housing Act against
the person, employer, labor organization or employment agency named in the above-referenced
complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity
Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure
or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    DIRECTOR PHYLLIS W. CHENG
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TTY 800-700-2320                    **AMENDED**
www.dfeh.ca.gov

Enclosures

cc: Beatriz Gonzalez

Morgan Gantt

Jesse Santiago

Eric Doe

1                            **PROOF OF SERVICE**

2   STATE OF CALIFORNIA     )

                                 )    ss.

3   COUNTY OF LOS ANGELES )

4        I am employed in the County of Los Angeles, State of California. I am over the age of eighteen
(18) and not a party to the within action; my business address is 11355 W. Olympic Blvd., Ste. 200, Los

5   Angeles, CA 90064.

6        On July 3, 2014, I served the foregoing document described as **COMPLAINT OF
DISCRIMINATION, NOTICE OF CASE CLOSURE AND RIGHT TO SUE** on the interested

7   parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:
**SEE ATTACHED SERVICE LIST**

8

9   [✓]    **(BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED: As indicated on the attached
Service List)** I am "readily familiar" with the firm's practice of collection and processing

10   correspondence for mailing. Under that practice it would be deposited with U.S. Postal service on
that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course

11   of business. I am aware that on motion of the party served, service is presumed invalid if postal
cancellation date or postage meter date is more than one day after date of deposit for mailing in
affidavit.

12

13   [  ]    **(BY OVERNIGHT COURIER: As indicated on the attached Service List)** I caused the above
referenced document(s) to be delivered to an overnight courier service, via **FEDERAL EXPRESS**,

14   for delivery to the address indicated on the attached Service List..

15   [  ]    **(BY EMAIL:** As indicated on the attached Service List) I caused such document to be sent
via email to the addressee and received a confirmed report indicating that this document

16   was successfully transmitted to the party named above.

17   [  ]    **(BY PERSONAL SERVICE)** I caused such envelopes to be personally delivered by GOLDEN
STATE MESSENGERS to the offices of the addressees.

18   [✓]    **(BY ELECTRONIC TRANSMISSION/COURT)** I transmitted a PDF version of this document
by electronic mail to the party(s) identified on the service list using he e-mail address(es) and

19   procedure provided pursuant to the Court's Electronic Filing Notification System, see, e.g., CCP
section 1010.6 and CRC Rule 2.251.

20        I declare under penalty of perjury under the laws of the State of California that the above is true and

21   correct. Executed on July 3, 2014 at Los Angeles, California.

22

23                                  *Shante Harris*
                                   Shante Harris

24

25

26

27

28

                                       1

1

2

3

*Hoffman v. The Home Depot, Inc.*

DFEH No. 274020-111001

**SERVICE LIST**

4  The Home Depot, Inc.
   2455 PacesFerry Road
5  Atlanta, GA 30339

6
   Beatriz Gonzalez
7  3500 Macarthur Blvd.
   Santa Ana, CA 92704
8

9  Morgan Gantt
   3500 Macarthur Blvd.
10 Santa Ana, CA 92704

11
   Jesse Santiago
12 3500 Macarthur Blvd.
   Santa Ana, CA 92704
13

14 Eric Doe
   3500 Macarthur Blvd.
15 Santa Ana, CA 92704

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:** Home Depot U.S.A., Inc., doing
*(AVISO AL DEMANDADO):* business as The Home Depot, a
Delaware Corporation; Beatriz Gonzalez, an
individual; Morgan Gantt, an individual; Jessie
Santiago, an individual; Eric Doe, an individual; and
Does 1 to 50 inclusive,

| FOR COURT USE ONLY |
| --- |
| *(SOLO PARA USO DE LA CORTE)* |
| **ELECTRONICALLY FILED** |
| Superior Court of California, |
| County of Orange |
| **07/10/2014** at 01:28:00 PM |
| Clerk of the Superior Court |
| By Robert Renison, Deputy Clerk |

**YOU ARE BEING SUED BY PLAINTIFF:** Paul Hoffman, an
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Orange County Superior Court
700 Civic Center Drive West
Santa Ana, CA 92701

| CASE NUMBER: *(Número del Caso):* | 30-2014-00733252-CU-WT-CJC |
| --- | --- |
| | Judge Frederick P. Aguirre |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jan A. Yoss (143978)                310-478-5722
Younesi & Yoss, LLP
11355 W. Olympic Blvd., Ste. 200
Los Angeles, CA 90064

DATE: 07/10/2014    ALAN CARLSON, Clerk of the Court    Clerk, by _____, Deputy
*(Fecha)*                                                *(Secretario)* Robert Renison    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [X] on behalf of *(specify)*: Home Depot U.S.A., Inc., doing business as The Home Depot, a Delaware corporation

under:
[X] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
[ ] other *(specify)*:
4. [ ] by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Jan A. Yoss (143978)<br>Younesi & Yoss, LLP<br>11355 W. Olympic Blvd., Ste. 200<br><br>Los Angeles, CA  90064<br>TELEPHONE NO.: 310-478-5722   FAX NO.: 310-478-5650<br>ATTORNEY FOR (Name): Plaintiff Paul Hoffman | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**07/10/2014** at 10:47:12 AM<br>Clerk of the Superior Court<br>By Robert Renison,Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME:   Paul Hoffman v. Home Depot U.S.A. Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>30-2014-00733252-CU-WT-CJC |
|---|---|---|
| [X] Unlimited   [ ] Limited<br>(Amount         (Amount<br>demanded      demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Frederick P. Aguirre<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [X] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties       d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence          f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive

4. Number of causes of action (specify): 10, incl.Harassment,Discrimination,Wrongful Termination,Retaliation, IIED

5. This case [ ] is [X] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: July 10, 2014

Jan A. Yoss (143978)
_____          ►_____
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal Solutions ⊕ Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach—Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
      Claim
    Other Civil Petition



*from the*
LOS ANGELES SUPERIOR COURT
**ADR DEPARTMENT**

If you have a general jurisdiction case involving one of these 6 subject matter areas:

- commercial
- employment
- medical malpractice
- real estate
- trade secrets
- unfair competition

### *Your case may be eligible for the court's pilot Early Neutral Evaluation (ENE) program.*

♦ **ENE can reduce litigation time and costs and promote settlement.**

♦ ENE is an informal process that offers a non-binding evaluation by an experienced neutral lawyer with expertise in the subject matter of the case. After counsel present their claims and defenses, the neutral evaluates the case based on the law and the evidence.

♦ **ENE is voluntary and confidential.**

♦ The benefits of ENE include helping to clarify, narrow or eliminate issues, identify areas of agreement, offer case-planning suggestions and, if requested by the parties, assist in settlement.

♦ **The first three (3) hours of the ENE session are free of charge.**

See back for a list of participating pilot courthouses and departments.

*For additional ENE information, visit the Court's web site at www.lasuperiorcourt.org/adr*

# PARTICIPATING PILOT COURTHOUSES:

**(General Jurisdiction Case Only)**

- ## Chatsworth
- ## Pomona
- ## Santa Monica
- ## Van Nuys
- ## Stanley Mosk (Departments listed below only.)

  Department 15

  Department 16

  Department 28

  Department 30

  Department 31

  Department 32

  Department 38

  Department 42

  Department 47

  Department 50

  Department 52

  Department 55

  Department 56

  Department 68

  Department 71

  Department 89

05/11/06

## NEUTRAL SELECTION

Parties may select a mediator or arbitrator from the Court Party Pay Panel or Pro Bono Panel or may hire someone privately, at their discretion. Parties are assigned to a settlement officer by court staff.

## COURT ADR PANELS

**PARTY PAY PANEL**   The Party Pay Panel consists of mediators and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the mediator or arbitrator if the parties consent in writing.

**PRO BONO PANEL**   The Pro Bono Panel consists of trained mediators and arbitrators who have not yet gained the experience to qualify for the Party Pay Panel and experienced mediators and arbitrators who make themselves available pro bono. Mediators and arbitrators donate their time to the courts as a way of supporting the judicial system. It is the policy of the Court that all pro bono volunteer mediators and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the mediator or arbitrator if the parties consent in writing.

**ENE**   The Court ENE Panel consists of experienced lawyers who have been trained to serve as neutral evaluators. The evaluators provide preparation time and three hours hearing time per case at no charge. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the evaluator if the parties consent in writing.

**PRIVATE NEUTRAL**   The market rate for private neutrals can range from $200-$1,000 per hour.

For additional information, visit the Court ADR web application at **www.lasuperiorcourt.org** (click on ADR).

Partially Funded by the Los Angeles County Dispute Resolution Program

## LOS ANGELES SUPERIOR COURT
## CIVIL ALTERNATIVE DISPUTE RESOLUTION (ADR) PROGRAMS
[CRC 3.221 Information about Alternative Dispute Resolution]

The plaintiff shall serve a copy of the ADR Information package on each defendant along with the complaint.

### ADR PROGRAMS

"Alternative Dispute Resolution (ADR)" is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes such as arbitration, mediation, early neutral evaluation (ENE), and settlement conferences, are less formal than court and provide opportunities for litigants to reach an agreement using a problem-solving approach rather than the more adversarial approach of litigation.

**MEDIATION**
A neutral third party called a "mediator" helps participants in the dispute create their own resolution. The mediator helps facilitate a discussion in which the parties reach a mutually agreed upon settlement. Therefore, mediation allows for more creative resolutions to disputes than other ADR processes.

The Court Mediation Program is governed by Code of Civil Procedure sections 1775-1775.15, California Rules of Court, Rules 3.850-3.868 and 3.870-3.878; Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, Chapter 12.

**ARBITRATION**
A neutral third party called an "arbitrator" listens to each side in the dispute present its case. The arbitrator, who is an attorney, issues a decision based on the evidence. Although evidence is presented, arbitration is a less formal process than litigation. The decision is non-binding unless the parties agree in writing to binding arbitration.

The Court Arbitration Program is governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, Rules 3.810-3.830, and Los Angeles Superior Court Rules, Chapter 12.

**ENE**
A neutral third party called an "evaluator" will provide the parties and their counsel, on a voluntary basis and in a confidential session, the opportunity to make summary presentations of their claims and defenses, including key evidence. After hearing the presentations, the evaluator, who is an experienced lawyer with subject-matter expertise, offers a non-binding evaluation.

The evaluator will also help clarify, narrow or eliminate issues, identify areas of agreement, offer case-planning suggestions, and, if requested by parties, settlement assistance. Although settlement is not the primary goal of ENE, the ENE process can reduce litigation time and costs and promote settlement.

The Court ENE Program is governed by Los Angeles Superior Court Rules, Chapter 12.

**SETTLEMENT CONFERENCE**
A neutral third party called a "settlement officer," who is also a retired judge, assists the parties in negotiating their own settlement and may evaluate the strengths and weaknesses of the case.

### JURISDICTIONAL LIMITATIONS

**MEDIATION, ARBITRATION & ENE**
Any case in which the amount in dispute is between $25,000-$50,000 per plaintiff, and was not previously referred to the Court ADR Program, can be sent to the Court ADR Program for mediation, arbitration, or ENE by stipulation, election by plaintiff or order of the court.

Parties may *voluntarily* request or initiate a mediation or arbitration proceeding, regardless of the amount in dispute.

**SETTLEMENT CONFERENCE**
Any case, regardless of the amount in dispute, may be ordered to a settlement conference. There is no monetary limit.

### REFERRAL INFORMATION

After the Court determines the suitability of a case for ADR, the Court directs the parties to the ADR Department to initiate the ADR process. Once the parties have completed the ADR intake forms, a Neutral may be selected.

**What is the goal of mediation?**

The goal is to assist the parties in reaching a mutually acceptable agreement or understanding on some or all of the issues. The parties jointly become the primary decision maker in how to resolve the issues as opposed to the traditional judge and/or jury system.

**Do I need an attorney for this?**

While it is recommended to have an attorney and/or receive legal advice before the mediation starts, you are not required to have representation. If you do have an attorney, they may participate in the mediation with you.

**How long does it take?**

Face-to-face mediations generally last one to three hours. Telephone conciliations, in which the parties do not meet face to face, vary from a few days to several weeks. Much depends on the number of parties involved and the complexities of the issues. When the mediation takes place depends on parties scheduling availability.

| A Mediator helps parties. . . | A Mediator does not… |
|---|---|
| ♦ Have productive discussions | ♦ Provide advice or opinions |
| ♦ Avoid or break impasses | ♦ Offer legal information |
| ♦ Defuse controversy | ♦ Make decisions for parties |
| ♦ Generate options that have potential for mutual gain | ♦ Represent or advocate for either side |
| ♦ Better understand each other's concerns and goals | ♦ Judge or evaluate anyone or anything |
| ♦ Focus on their interests rather than their positions | ♦ Conduct research |
| | ♦ "Take Sides" |

**What does it cost?**

The first three hours of any mediation are free. Thereafter, charges are based on income or revenue. All fees are waived for low-income individuals.

**Legal Advice/Information**

**If you want to retain an attorney,** a list of state certified referral services is at courtinfo.ca.gov which also has an on-line self help legal center.

**Self-Help Legal Access Centers** are at the Inglewood, Palmdale, Pomona, and Van Nuys courthouses. nls-la.org and lafla.org

**What is the difference between the contractors listed and the Superior Court ADR Office?**

The services offered by the contractors listed may be accessed immediately. Those offered by the Superior Court ADR Office, also a DRPA contractor, may not be accessed by parties until a court appearance, or at the directive of the judge assigned to the case.

**Court Personnel** can answer non-legal questions (forms, fees, fee waivers). lasuperiorcourt.org

**Low-income individuals** may qualify for help from non-profit legal organizations. Court Personnel and DRPA contractors have such listings.

**Dispute Resolution Programs Act (DRPA) Grants Administration Office**
**(213) 738-2621**
(The DRP Office is not a Superior Court Office. Consult your phone directory to locate the number of the Court Office on your summons.)

**THIS IS A TWO-SIDED DOCUMENT.**

ADR 007 07-04
LASC Approved

# LOS ANGELES COUNTY
# DISPUTE RESOLUTION PROGRAMS ACT (DRPA) CONTRACTORS

The following organizations provide mediation services under contract with the Los Angeles County Department of Community & Senior Services. Services are provided to parties in any civil case filed in the Los Angeles County Superior Court. Services are not provided under this program to family, probate, traffic, criminal, appellate, mental health, unlawful detainer/eviction or juvenile court cases.

**Asian-Pacific American Dispute Resolution Center**
**(213) 250-8190**
(Spanish & Asian languages capability)

**California Academy of Mediation Professionals**
**(818) 377-7250**

**Center for Conflict Resolution**
**(818) 380-1840**

**Inland Valleys Justice Center**
**(909) 397-5780**
(Spanish language capability)

**Office of the Los Angeles City Attorney Dispute Resolution Program**
**(213) 485-8324**
(Spanish language capability)

**Los Angeles County Bar Association Dispute Resolution Services**
**toll free number 1-877-4Resolve (737-6583) or (213) 896-6533**
(Spanish language capability)

**Los Angeles County Department of Consumer Affairs**
**(213) 974-0825**
(Spanish language capability)

**The Loyola Law School Center for Conflict Resolution**
**(213) 736-1145**
(Spanish language capability)

**Martin Luther King Legacy Association Dispute Resolution Center**
**(323) 290-4132**
(Spanish language capability)

**City of Norwalk**
**(562) 929-5603**

---

DRPA Contractors do not provide legal advice or assistance, including help with responding to summonses. Accessing these services does not negate any responsibility you have to respond to a summons or appear at any set court date. See the reverse side of this sheet for information on the mediation process and obtaining legal advice.

---

**THIS IS A TWO-SIDED DOCUMENT.**

ADR 007 07-04
LASC Approved

Page 1 of 2

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: |
|---|---|

The undersigned parties stipulate to participate in an Alternative Dispute Resolution (ADR) process in the above-entitled action, as follows:

☐ Mediation

☐ Non-Binding Arbitration

☐ Binding Arbitration

☐ Early Neutral Evaluation

☐ Settlement Conference

☐ Other ADR Process *(describe):* _____

Dated: _____

---

| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

☐ **Additional signature(s) on reverse**

**STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR)**

Cal. Rules of Court, rule 3.221<br>Page 1 of 2

| Short Title | Case Number |
|---|---|
|  |  |

| Name of Stipulating Party <br> ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| Name of Stipulating Party <br> ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party <br> ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party <br> ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party <br> ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party <br> ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party <br> ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party <br> ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party <br> Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party <br> Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

**STIPULATION TO PARTICIPATE IN**
**ALTERNATIVE DISPUTE RESOLUTION (ADR)**

Cal. Rules of Court, rule 3.221 <br> Page 2 of 2

| ATTORNEY OR PARTY WITHOUT ATTORNEY (name and Address)<br>JAN A. YOSS (143978)<br>YOUNESI & YOSS, LLP<br>11355 W. OLYMPIC BLVD., STE. 200<br>LOS ANGELES, CA 90064<br><br>TELEPHONE NO.: (310) 478-5722        FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional) :<br>ATTORNEY FOR (Name): | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br><br>**07/25/2014** at 02:30:00 PM<br>Clerk of the Superior Court<br>By Eleanor Sutter, Deputy Clerk |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>STREET ADDRESS: 700 CIVIC CENTER DRIVE WEST<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: SANTA ANA 92701<br>BRANCH NAME: CENTRAL JUSTICE CENTER | |
| PLAINTIFF/PETITIONER: PAUL HOFFMAN<br><br>DEFENDANT/RESPONDENT: HOME DEPOT U.S.A., INC., ET AL. | CASE NUMBER: **30-2014-00733252-CU-WT-CJC** |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: 906702BL MV |

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.
2.  I served copies of :
    a. ☒   Summons
    b. ☒   Complaint
    c ☒   Alternative Dispute Resolution (ADR) package
    d ☒   Civil Case Cover Sheet *(served in complex cases only)*
    e ☐   cross-complaint
    f. ☐   other *(specify documents):*

3.  a. Party served: *(specify name of party as shown on documents served):*
       HOME DEPOT U.S.A., INC., DOING BUSINESS AS THE HOME DEPOT, A DELAWARE CORPORATION
    b. Person served (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made)*(specify name and relationship to the party named in item 3a):*
       BECKY DEGEORGE, CSC-LAWYERS INCORPORATING SERVICE, PROCESS SPECIALIST
4.  Address where the party was served:   2710 GATEWAY OAKS ST., STE. 150N
                                          SACRAMENTO, CA 95833

5.  I served the party *(check proper box)*
    a. ☒  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* JULY 17, 2014   (2) at: *(time)* 1:55 PM

    b. ☐  **by substituted service.** On *(date):*        at: *(time)*        . I left the documents listed in item 2 with or in the presence of *(name and title or relationship to the person indicated in item 3):*
       (1) ☐   **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
       (2) ☐   **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
       (3) ☐   **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
       (4) ☐   I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
       (date):        (city):        **or** ☐ a declaration of mailing is attached.
       (5) ☐   I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLANTIFF/PETITIONER: PAUL HOFFMAN | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: HOME DEPOT U.S.A., INC., ET AL. | 30-2014-00733252-CU-WT-CJC |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) (date):        (1) (city):

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* (form 982(a)(4)) and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt *(form 982(a)(4).)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

    d. ☐ **by other means** (specify means of service and authorizing code section):

        ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

    a. ☐ as an individual defendant

    b. ☐ as the person sued under the fictitious name of (specify):

    c. ☒ on behalf of (specify): HOME DEPOT U.S.A., INC., DOING BUSINESS AS THE HOME DEPOT, A DELAWARE CORPORATION

        under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

    a. Name: ROBERT J. MASON

    b. Address: **800 W. 1ST STREET, SUITE 200-B**
       **LOS ANGELES, CALIFORNIA 90012**

    c. Telephone number: **(213) 607-9000**

    d. The fee for service was: $

    e. I am:

        (1) ☐ not a registered California process server.

        (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

        (3) ☒ registered California process server:

            (i) ☐ owner  ☐ Employee  ☒ independent contractor.

            (ii) ☒ Registration No.:03-007

            (iii) ☒ County: PLACER

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Or

9. ☐ I am a California sherif or marshal and I certify that the foregoing is true and correct.

Date: JULY 18, 2014

ROBERT J. MASON

_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHALL)

_____
(SIGNATURE)

Page 2 of 2

# EXHIBIT C

ATTORNEY OR PARTY WITHOUT ATTORNEY (name and Address)
JOHN D. YOUNESI, ESQ. (SBN 120339)
JAN A. YOSS, ESQ. (SBN 143978)
YOUNESI & YOSS, LLP
11355 W. OLYMPIC BLVD., SUITE 200
LOS ANGELES, CA 90064

TELEPHONE NO.: (310) 478-5722    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): PLAINTIFF

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 CIVIC CENTER DRIVE WEST
MAILING ADDRESS:
CITY AND ZIP CODE: SANTA ANA 92701
BRANCH NAME: CENTRAL JUSTICE CENTER

PLAINTIFF/PETITIONER: PAUL HOFFMAN, ET AL.

DEFENDANT/RESPONDENT: HOME DEPOT U.S.A., INC., ET AL.

| FOR COURT USE ONLY |
| --- |
| **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**07/25/2014** at 02:30:00 PM<br>Clerk of the Superior Court<br>By Eleanor Sutter,Deputy Clerk |

CASE NUMBER: 30-2014-00733252-CU-WT-CJC

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: 906701 MV |
| --- | --- |

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.
2.  I served copies of :
    a. ☒  Summons
    b. ☒  Complaint
    c. ☒  Alternative Dispute Resolution (ADR) package
    d. ☒  Civil Case Cover Sheet *(served in complex cases only)*
    e. ☐  cross-complaint
    f. ☐  other *(specify documents):*

3.  a. Party served: *(specify name of party as shown on documents served):*
       BEATRIZ GONZALEZ, AN INDIVIDUAL
    b. Person served (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made)*(specify name and relationship to the party named in item 3a):*

4.  Address where the party was served:   3500 MACARTHUR BLVD.
                                           SANTA ANA, CA 92704

5. I served the party *(check proper box)*
    a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*      (2) at: *(time)*

    b. ☒ **by substituted service.** On *(date):* JULY 21, 2014 at: *(time)* 9:00 AM . I left the documents listed in item 2 with or in the presence of *(name and title or relationship to the person indicated in item 3):* JASON REED, MANAGER
       (1) ☒   **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
       (2) ☐   **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
       (3) ☐    **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
       (4) ☒   I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* JULY 23, 2014    *(city):*LOS ANGELES   or ☐ a declaration of mailing is attached.
       (5) ☒   I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure § 417.10

| PLANTIFF/PETITIONER: PAUL HOFFMAN, ET AL. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: HOME DEPOT U.S.A., INC., ET AL. | 30-2014-00733252-CU-WT-CJC |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) (date):            (1) (city):

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* (form 982(a)(4)) and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt (form 982(a)(4).)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** (specify means of service and authorizing code section):

        ☐   Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☒ as an individual defendant

  b. ☐ as the person sued under the fictitious name of (specify):

  c. ☐ on behalf of (specify):

        under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

  a.  Name: JOHN ROBERT SHULTZ

  b.  Address: **800 W. 1ST STREET, SUITE 200-B**
      **LOS ANGELES, CALIFORNIA 90012**

  c.  Telephone number: **(213) 607-9000**

  d.  The fee for service was: $

  e.  I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☒ registered California process server:

      (i) ☐ owner ☐ Employee ☒ independent contractor.

      (ii) ☒ Registration No.:PSC2407

      (iii) ☒ County: ORANGE

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Or

9. ☐ I am a California sherif or marshal and I certify that the foregoing is true and correct.

Date: JULY 23, 2014

JOHN ROBERT SHULTZ

_____        _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHALL)        (SIGNATURE)

Page 2 of 2

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar Number and Address)*<br>JOHN D. YOUNESI, ESQ.  (SBN 120339)<br>JAN A. YOSS, ESQ.  (SBN 143978)<br>YOUNESI & YOSS, LLP<br>11355 W. OLYMPIC BLVD., SUITE 200<br>LOS ANGELES, CA  90064<br><br>ATTORNEY FOR *(Name):*  PLAINTIFF | TELEPHONE NO.:<br>(310) 478-5722<br><br>Ref. No. or File No.<br>906701MV | *FOR COURT USE ONLY* |
|---|---|---|
| Insert name of court and name of judicial and branch court, if any:<br><br><u>ORANGE COUNTY SUPERIOR COURT - CENTRAL JUSTICE CENTER</u><br>SHORT TITLE OF CASE:<br>PAUL HOFFMAN, ET AL. VS. HOME DEPOT U.S.A., INC., ET AL. | | |

| | HEARING DATE: | TIME: | DEPT./DIV.: | CASE NUMBER:<br>30-2014-00733252-CU-WT-CJC |
|---|---|---|---|---|
| **DECLARATION OF DILIGENCE** | | | | |

1. I attempted to serve the:
   a. **SUMMONS; COMPLAINT; ADR PACKAGE; CIVIL CASE COVER SHEET**
   b. on *(name):* BEATRIZ GONZALEZ, AN INDIVIDUAL
   c. by serving: JASON REED, MANAGER
   d. by delivery:  ☐ TO RESIDENCE      ☒ TO BUSINESS      ☐ OTHER ( )
      1. date: JULY 21, 2014
      2. time: 9:00 AM
      3. address: 3500 MACARTHUR BLVD.
         SANTA ANA, CA  92704
   e. ☒ by mailing
      1. date: JULY 23, 2014
      2. city: LOS ANGELES

2. Manner of service: SUBSTITUTE SERVICE

3. Previous Attempts:
   a. 7/16/14  4:10 PM- SUBJECT IS NOT IN AT THIS TIME.
   b. 7/18/14  9:45 AM- SUBJECT IS NOT IN AT THIS TIME.
   c. 7/18/14  9:45 AM- SUBJECT IS NOT IN AT THIS TIME.
   d. 7/21/14  9:00 AM- SUB SERVED JASON REED, MANAGER.

4. At the time of service/attempt(s), I was at least 18 years old and not a party to the action.

5. Person serving:
   JOHN ROBERT SHULTZ
   800 W. 1ST ST., SUITE 200-B
   LOS ANGELES, CA  90012
   (213) 607-9000

   ☐ Not A Registered California Process Server
   ☒ Registered California Process Server
      ☐ Owner  ☐ Employee  ☒ Independent Contractor
      ☒ Registration No.: PSC2407
      ☒ County: ORANGE  ☐ Fee for service: $

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on :


Date: JULY 23, 2014

Signature _____

# EXHIBIT D

| ATTORNEY OR PARTY WITHOUT ATTORNEY (name and Address) | FOR COURT USE ONLY |
|---|---|
| JOHN D. YOUNESI, ESQ. (SBN 120339)<br>JAN A. YOSS, ESQ. (SBN 143978)<br>YOUNESI & YOSS, LLP<br>11355 W. OLYMPIC BLVD., SUITE 200<br>LOS ANGELES, CA 90064 | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**07/25/2014** at 02:30:00 PM<br>Clerk of the Superior Court<br>By Eleanor Sutter,Deputy Clerk |
| TELEPHONE NO.: (310) 478-5722    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): PLAINTIFF | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>STREET ADDRESS: 700 CIVIC CENTER DRIVE WEST<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: SANTA ANA 92701<br>BRANCH NAME: CENTRAL JUSTICE CENTER | |
| PLAINTIFF/PETITIONER: PAUL HOFFMAN, ET AL.<br><br>DEFENDANT/RESPONDENT: HOME DEPOT U.S.A., INC., ET AL. | CASE NUMBER: 30-2014-00733252-CU-WT-CJC |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: 906699 MV |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of :
   - a. ☒ Summons
   - b. ☒ Complaint
   - c. ☒ Alternative Dispute Resolution (ADR) package
   - d. ☒ Civil Case Cover Sheet *(served in complex cases only)*
   - e. ☐ cross-complaint
   - f. ☐ other *(specify documents):*

3. a. Party served: *(specify name of party as shown on documents served):*
   JESSIE SANTIAGO, AN INDIVIDUAL
   b. Person served (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made)*(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:  3500 MACARTHUR BLVD.
   SANTA ANA, CA 92704

5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*    (2) at: *(time)*

   b. ☒ **by substituted service.** On *(date):* JULY 21, 2014 at: *(time)* 9:00 AM . I left the documents listed in item 2 with or in the presence of (name and title or relationship to the person indicated in item 3): JASON REED, MANAGER
   - (1) ☒ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
   - (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
   - (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
   - (4) ☒ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on (date): JULY 23, 2014    (city):LOS ANGELES   **or** ☐ a declaration of mailing is attached.
   - (5) ☒ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| | CASE NUMBER: |
|---|---|
| PLANTIFF/PETITIONER: PAUL HOFFMAN, ET AL. | |
| DEFENDANT/RESPONDENT: HOME DEPOT U.S.A., INC., ET AL. | 30-2014-00733252-CU-WT-CJC |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) (date):       (1) (city):

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* (form 982(a)(4)) and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt *(form 982(a)(4).)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** (specify means of service and authorizing code section):

    ☐    Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☒ as an individual defendant

  b. ☐ as the person sued under the fictitious name of (specify):

  c. ☐ on behalf of (specify):

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

  a.  Name: JOHN ROBERT SHULTZ

  b.  Address: 800 W. 1ST STREET, SUITE 200-B LOS ANGELES, CALIFORNIA 90012

  c.  Telephone number: **(213) 607-9000**

  d.  The fee for service was: $

  e.  I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☒ registered California process server:

      (i) ☐ owner  ☐ Employee  ☒ independent contractor.

      (ii) ☒ Registration No.:PSC2407

      (iii) ☒ County: ORANGE

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Or

9. ☐ I am a California sherif or marshal and I certify that the foregoing is true and correct.

Date: JULY 23, 2014

JOHN ROBERT SHULTZ

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHALL)

               (SIGNATURE)

Page 2 of 2

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure § 417.10

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar Number and Address):*<br>JOHN D. YOUNESI, ESQ.  (SBN 120339)<br>JAN A. YOSS, ESQ.  (SBN 143978)<br>YOUNESI & YOSS, LLP<br>11355 W. OLYMPIC BLVD., SUITE 200<br>LOS ANGELES, CA  90064 | TELEPHONE NO.:<br>(310) 478-5722 | FOR COURT USE ONLY |
|---|---|---|
| | Ref. No. or File No.<br>906699MV | |
| ATTORNEY FOR *(Name):*  PLAINTIFF | | |

| Insert name of court and name of judicial and branch court, if any:<br><u>ORANGE COUNTY SUPERIOR COURT - CENTRAL JUSTICE CENTER</u> |
|---|
| SHORT TITLE OF CASE:<br>PAUL HOFFMAN, ET AL. VS. HOME DEPOT U.S.A., INC., ET AL. |

| DECLARATION OF DILIGENCE | HEARING DATE: | TIME: | DEPT./DIV.: | CASE NUMBER:<br>30-2014-00733252-CU-WT-CJC |
|---|---|---|---|---|

1. I attempted to serve the:
   a. **SUMMONS; COMPLAINT; ADR PACKAGE; CIVIL CASE COVER SHEET**
   b. on *(name):*  JESSE SANTIAGO, AN INDIVIDUAL
   c. by serving:  JASON REED, MANAGER
   d. by delivery:  ☐ TO RESIDENCE     ☒ TO BUSINESS     ☐ OTHER ( )
      1. date:  JULY 21, 2014
      2. time:  9:00 AM
      3. address:  3500 MACARTHUR BLVD.
                SANTA ANA, CA  92704
   e. ☒ by mailing
      1. date:  JULY 23, 2014
      2. city:  LOS ANGELES

2. Manner of service:  SUBSTITUTE SERVICE

3. Previous Attempts:
   a. 7/16/14  4:10 PM- SUBJECT IS NOT IN AT THIS TIME.
   b. 7/18/14  9:45 AM- SUBJECT IS NOT IN AT THIS TIME.
   c. 7/18/14  9:45 AM- SUBJECT IS NOT IN AT THIS TIME.
   d. 7/21/14  9:00 AM- SUB SERVED JASON REED, MANAGER.

4. At the time of service/attempt(s), I was at least 18 years old and not a party to the action.

5. Person serving:
   JOHN ROBERT SHULTZ
   800 W. 1ST ST., SUITE 200-B
   LOS ANGELES, CA  90012
   (213) 607-9000

   ☐ Not A Registered California Process Server
   ☒ Registered California Process Server
      ☐ Owner ☐ Employee ☒ Independent Contractor
      ☒ Registration No.:  PSC2407
      ☒ County: ORANGE ☐ Fee for service: $

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on :

Date:  JULY 23, 2014          Signature _____

# EXHIBIT E

| ATTORNEY OR PARTY WITHOUT ATTORNEY (name and Address)<br>JOHN D. YOUNESI, ESQ.  (SBN 120339)<br>JAN A. YOSS, ESQ.  (SBN 143978)<br>YOUNESI & YOSS, LLP<br>11355 W. OLYMPIC BLVD., SUITE 200<br>LOS ANGELES, CA 90064<br><br>TELEPHONE NO.: (310) 478-5722      FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): PLAINTIFF | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br><br>**07/25/2014** at 02:30:00 PM<br>Clerk of the Superior Court<br>By Eleanor Sutter,Deputy Clerk |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>STREET ADDRESS: 700 CIVIC CENTER DRIVE WEST<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: SANTA ANA 92701<br>BRANCH NAME: CENTRAL JUSTICE CENTER | |
| PLAINTIFF/PETITIONER: PAUL HOFFMAN, ET AL.<br><br>DEFENDANT/RESPONDENT: HOME DEPOT U.S.A., INC., ET AL. | CASE NUMBER: 30-2014-00733252-CU-WT-CJC |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: 906700 MV |

(Separate proof of service is required for each party served.)

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of :
   - a.☒  Summons
   - b.☒  Complaint
   - c☒   Alternative Dispute Resolution (ADR) package
   - d☒   Civil Case Cover Sheet (served in complex cases only)
   - e.☐  cross-complaint
   - f.☐  other (specify documents):

3. a. Party served: (specify name of party as shown on documents served):
      MORGAN GANTT, AN INDIVIDUAL
   b. Person served (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made)(specify name and relationship to the party named in item 3a):

4. Address where the party was served:  3500 MACARTHUR BLVD.
                                        SANTA ANA, CA 92704

5. I served the party (check proper box)
   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date):      (2) at: (time)

   b. ☒ **by substituted service.** On (date): JULY 21, 2014 at: (time) 9:00 AM. I left the documents listed in item 2 with or in the presence of (name and title or relationship to the person indicated in item 3): JASON REED, MANAGER
      - (1) ☒  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      - (2) ☐  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      - (3) ☐  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      - (4) ☒  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on (date): JULY 23, 2014      (city):LOS ANGELES      or ☐ a declaration of mailing is attached.
      - (5) ☒  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLANTIFF/PETITIONER: PAUL HOFFMAN, ET AL. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: HOME DEPOT U.S.A., INC., ET AL. | 30-2014-00733252-CU-WT-CJC |

5.  c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) (date):            (1) (city):

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* (form 982(a)(4)) and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt (form 982(a)(4).)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** (specify means of service and authorizing code section):
      ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☒ as an individual defendant
  b. ☐ as the person sued under the fictitious name of (specify):
  c. ☐ on behalf of (specify):
      under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**
  a.  Name: JOHN ROBERT SHULTZ
  b.  Address: 800 W. 1ST STREET, SUITE 200-B
      LOS ANGELES, CALIFORNIA 90012
  c.  Telephone number: **(213) 607-9000**
  d.  The fee for service was: $
  e.  I am:
    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☒ registered California process server:
      (i) ☐ owner  ☐ Employee  ☒ independent contractor.
      (ii) ☒ Registration No.:PSC2407
      (iii) ☒ County: ORANGE

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
    Or
9. ☐ I am a California sherif or marshal and I certify that the foregoing is true and correct.

Date: JULY 23, 2014

JOHN ROBERT SHULTZ
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHALL)

                                   _____
                                            (SIGNATURE)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure § 417.10 |

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar Number and Address)*:<br>JOHN D. YOUNESI, ESQ.  (SBN 120339)<br>JAN A. YOSS, ESQ.  (SBN 143978)<br>YOUNESI & YOSS, LLP<br>11355 W. OLYMPIC BLVD., SUITE 200<br>LOS ANGELES, CA  90064<br><br>ATTORNEY FOR *(Name)*:  PLAINTIFF | TELEPHONE NO.<br>(310) 478-5722<br><br>Ref. No. or File No.<br>906700MV | FOR COURT USE ONLY |
|---|---|---|

| Insert name of court and name of judicial and branch court, if any:<br>ORANGE COUNTY SUPERIOR COURT - CENTRAL JUSTICE CENTER |
|---|
| SHORT TITLE OF CASE:<br>PAUL HOFFMAN, ET AL. VS. HOME DEPOT U.S.A., INC., ET AL. |

| **DECLARATION OF DILIGENCE** | HEARING DATE: | TIME: | DEPT./DIV.: | CASE NUMBER:<br>30-2014-00733252-CU-WT-CJC |
|---|---|---|---|---|

1. I attempted to serve the:
   a. **SUMMONS; COMPLAINT; ADR PACKAGE; CIVIL CASE COVER SHEET**

   b. on *(name)*:  MORGAN GANTT, AN INDIVIDUAL

   c. by serving:  JASON REED, MANAGER

   d. by delivery:  ☐ TO RESIDENCE    ☒ TO BUSINESS    ☐ OTHER ( )
      1. date: JULY 21, 2014
      2. time:  9:00 AM
      3. address: 3500 MACARTHUR BLVD.
                  SANTA ANA, CA  92704

   e. ☒ by mailing
      1. date: JULY 23, 2014
      2. city: LOS ANGELES

2. Manner of service:  SUBSTITUTE SERVICE

3. Previous Attempts:
   a. 7/16/14 4:10 PM- SUBJECT IS NOT IN AT THIS TIME.
   b. 7/18/14 9:45 AM- SUBJECT IS NOT IN AT THIS TIME.
   c. 7/18/14 9:45 AM- SUBJECT IS NOT IN AT THIS TIME.
   d. 7/21/14 9:00 AM- SUB SERVED JASON REED, MANAGER.

4. At the time of service/attempt(s), I was at least 18 years old and not a party to the action.

5. Person serving:
   JOHN ROBERT SHULTZ
   800 W. 1ST ST., SUITE 200-B
   LOS ANGELES, CA  90012
   (213) 607-9000

   ☐ Not A Registered California Process Server
   ☒ Registered California Process Server
      ☐ Owner ☐ Employee ☒ Independent Contractor
      ☒ Registration No.: PSC2407
      ☒ County: ORANGE ☐ Fee for service: $



   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on :

Date: JULY 23, 2014                    Signature _____

# EXHIBIT F

1   John D. Younesi, Esq. (Bar No. 120339)
    Jan A. Yoss, Esq. (Bar No. 143978)
2   YOUNESI & YOSS, LLP
    11355 W. Olympic Blvd., Suite 200
3   Los Angeles, California 90064
    Telephone: (310) 478-5722 ✦ Facsimile: (310) 478-5650
4   Email: jdyounesi@younesi.com
           jyoss@younesi.com
5
6   Attorneys for Plaintiff, **PAUL HOFFMAN**

7

8                   **SUPERIOR COURT OF CALIFORNIA**

9            **COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

10  **PAUL HOFFMAN,** an individual          Case No. 30-2014-00727891
                                             [Honorable Frederick P. Aguirre, Dept. C23]
11
              Plaintiff,                     **Unlimited Jurisdiction**
12
         vs.                                 **FIRST AMENDED COMPLAINT FOR:**
13                                           **(1)  HARRASSMENT BASED ON AGE IN
    **HOME DEPOT U.S.A., INC.,** doing business   VIOLATION OF GOV'T CODE SECTION
14  as **THE HOME DEPOT,** a Delaware        12940, ET. SEQ.**
    Corporation; **BEATRIZ GONZALEZ,** an    **(2)  VIOLATION OF LABOR CODE
15  individual; **MORGAN GANTT,** an         SECTION 1102.5**
    individual; **JESSIE SANTIAGO,** an      **(3)  HARRASSMENT BASED UPON
16  individual; **ERIC DOE,** an individual and   ACTUAL OR PERCEIVED DISABILITY
    DOES 1 to 50, Inclusive,                 AND/OR MEDICAL CONDITION IN
17                                           VIOLATION OF GOV'T CODE SECTION
                                             12940, ET SEQ.**
18            Defendants.                    **(4)  DISCRIMIATION BASED UPON
                                             AGE IN VIOLATION OF GOV'T CODE
19                                           SECTION 12940 ET SEQ.**
                                             **(5)  DISCRIMINATION BASED UPON
20                                           ACUTAL OR PERCEIVED MEDICAL
                                             CONDITION AND/OR DISABILITY IN
21                                           VIOLATION OF GOV'T CODE SECTION
                                             12940 ET. SEQ.**
22                                           **(6)  RETALIATION IN VIOLATION OF
                                             GOV'T CODE SECTION 12940 ET SEQ.**
23                                           **(7)  FAILURE TO PREVENT
                                             HARRASSMENT, DISCRIMINATION
24                                           AND RETALIATION IN VIOLATION OF
                                             GOV'T CODE SECTION 12940 ET SEQ.**
25                                           **(8)  WRONGFUL TERMINATION IN
                                             VIOLATION OF PUBLIC POLICY; AND
26                                           (9)  INTENTIONAL INFLICATION OF
                                             EMOTIONAL DISRESS**
27

28
                                   - 1 -
                          **FIRST AMENDED COMPLAINT**

Plaintiff Paul Hoffman hereby complains against Defendants and alleges against them as follows:

## GENERAL ALLEGATIONS

1.    Plaintiff Paul Hoffman ("Hoffman" or "Plaintiff") is, and at all relevant times mentioned herein was, an individual and resident of the County of Orange, State of California.

2.    Defendant Home Depot U.S.A., Inc., doing business as The Home Depot ("Home Depot"), currently is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of Delaware. Plaintiff is informed and believes and on that basis alleges that Home Depot is licensed to do business in the State of California and has retail store locations throughout the State of California, including in the County of Orange.

3.    Defendant Beatriz Gonzalez is, and at all times mentioned herein was, an individual residing in the County of Orange, State of California.

4.    Defendant Morgan Gantt is, and at all times mentioned herein was, an individual residing in the County of Orange, State of California.

5.    Defendant Jessie Santiago is, and at all times mentioned herein was, an individual residing in the County of Orange, State of California.

6.    Defendant Eric Doe, is, and at all times mentioned herein was, an individual residing in the County of Orange, State of California. The last name of Eric Doe is presently unknown and Plaintiff will amend this Complaint to identify the name when determined. Eric Doe was a manager at the Home Depot store in which Plaintiff worked at the time of Plaintiff's termination in August 2013.

7.    The true names and capacities, whether individual, corporate, associate or otherwise of Defendants named here in as Does 1 through 50, inclusive, are unknown to Plaintiff who therefore sue said Defendants by such fictitious names and Plaintiff will amend this complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges, that said Doe Defendants, and each of them , participated in or is

**FIRST AMENDED COMPLAINT**

1   responsible in some manner for the acts and occurrences herein alleged and for the damages

2   suffered by her.  The names of Does 1 through 50, inclusive, are incorporated by reference into all

3   allegations concerning the named Defendants with the same force and effect as though fully set

4   forth therein.

5          8.      Plaintiff is informed and on that basis alleges that each of the Defendants as acting

6   as an agent of the other Defendants with respect to all actions alleged herein.

7

8                              **JURISDICTION AND VENUE**

9          9.      This action asserts claims under the California Fair Employment and Housing Act

10  *Gov. Code § 12900 et seq.*  The Court has jurisdiction over this action under article 6, § 10 of the

11  California Constitution and *Code of Civil Procedure* § 410.10

12         10.     Venue is proper in this County under *Code of Civil Procedure* § 395 because, *inter*

13  *alia*, one or more Defendants engages in business in this County and Defendants engaged in the

14  practices complaint of in this County and one or more individual Defendants resides in this

15  County.

16

17                                **STATEMENT OF FACTS**

18         11.     Hoffman started working at Home Depot in March 1999 in the Santa Ana Store,

19  number 606.  Hoffman is an exceptional person.  He is hard-working, affable and well liked by

20  both fellow associates and customers.  Throughout the years, Hoffman received many accolades

21  and customer service awards.

22         12.     In or about early 2013, Hoffman was first targeted, along with several other workers

23  over 40 years old, for termination by the management of his store.  The management claimed that

24  Hoffman had been advanced to a position of a "specialist".  Hoffman denied ever agreeing to such

25  advancement.  Hoffman and these other over-40 employees were given criteria for sales and other

26  activity that they were supposed to meet in this role as a specialist.

27         13.     In late 2012, and early 2013, Hoffman saw the other older workers around him

28

**FIRST AMENDED COMPLAINT**

1  being let go for failure to meet these new sales guidelines. It was clear by some of the comments

2  being made to Hoffman and the unreasonable sales and other benchmark criteria being foisted on

3  him, called the metrics, that Hoffman was similarly being singled-out for termination.

4      14.   In addition to being targeted for his age, Hoffman was also retaliated against by his

5  store's management for asserting his and other employee's rights to meal breaks pursuant to

6  company policy. In March 2013, the Santa Ana store manager, Beatriz Gonzalez, began requiring

7  all employees to take a one-hour off-the-clock lunch break, instead of the 30-minute break most of

8  them were taking. While Hoffman had taken an hour lunch break by choice most of the time he

9  had been with Home Depot, in 2012, he began taking only 30-minutes so he could end his shift 30-

10  minutes earlier and help his then-4th grade son with his homework.

11     15.   Others in the store also commented to Hoffman that the change in the policy to

12  require a 60-minute lunch break instead of allowing the employees to elect between a 30-minute

13  and a 60-minute lunch break was difficult for many of them with their other obligations, and that

14  the policy did not seem to make sense. The management was unresponsive.

15     16.   So, at the request of his fellow employees and to understand the company policy

16  better himself, Hoffman called corporate Human Resources to determine what the policy was.

17  Hoffman spoke with Rowanda Velonza. Ms. Velonza confirmed that the Home Depot policy was

18  that the associates were allowed to elect between a 30-minute and a 60-minute lunch. She also

19  confirmed that an individual store manager could not override this policy and require employees to

20  take only a 60-minute or only a 30-minute lunch. When Hoffman explained what was happening,

21  Ms. Velonza wanted him to transfer his to a manager. Afraid that the purported confidentiality of

22  the call would be compromised, Hoffman asked if she would call back.

23     17.   The next day, Gonzalez called Hoffman into his office and berated him saying,

24  "Oh, you're the only one who has to have a 30-minute lunch. I have to change all these schedules

25  just to accommodate you." Even when Hoffman began to fear for his job out of retaliation and

26  said he would take the 60-minute lunch, Gonzalez said, "Oh no, no it's too late now. It's already

27  done. We'll try it for a few months and see how it works." Hoffman explained to Gonzalez that

28

- 4 -

FIRST AMENDED COMPLAINT

he was trying to help other associates who had asked him about the lunch policy, but she did not want to hear anything about how the employees felt.    Again, Hoffman said, "Change my lunch back to 60-minutes, I don't want to cause any problems." Again Gonzalez said, "No, no, no, too late now."

18.    In retaliation, Gonzalez changed Hoffman's schedule.  Now, instead of leaving a half-hour earlier to be able to help his son, Gonzalez simply had Hoffman come in a half-hour later, take his 30-minute lunch, and then leave at his old shift time.  He was no longer able to help his son with his school work.

19.    Gonzalez also scheduled Hoffman to work until 9:30 p.m. on Sunday nights.  On Sunday, however, the store closed at 8 p.m. The other associates who worked the closing shift stayed until 9:00 p.m. There was no night crew on Sunday night. Hoffman was the only associate scheduled to 9:30 p.m. An associate could not work until 9:30 p.m. without obtaining a prior written authorization, even if he was on the schedule until 9:30 p.m.. So, each Sunday, Hoffman would have to fill out a form and have it signed by his manager, Brian Chang.  When he did, Mr. Chang would invariably tell him that no one could stay to 9:30 p.m. Mr. Chang would have Hoffman come in a half hour earlier or just work 7 ½ hours.  If Hoffman forgot to get the paperwork signed, or could not locate Mr. Chang, Hoffman would receive a demerit.  His schedule was completely uncertain each Sunday.

20.    This same game was played with another associate who was terminated shortly after being moved to the phantom 9:30 p.m. shift end-time.  There is a pattern to Gonzalez's discriminatory behavior.

21.    Still trying to terminate Hoffman for performance-based reasons and angered by his reporting to corporate Human Resources his store's violation of company policy, in April 2013, Hoffman received his first negative annual review in 14 years!  Hoffman's review was curiously given by a very young assistant manager, Morgan Gantt ("Gantt"), another assistant manager named Mike, but whose last name Hoffman does not know, and Angela Gonzalez, a fellow associate.    It is very odd that this associate was present in the review because having another

**FIRST AMENDED COMPLAINT**

1    associate present does not comport with protocol and violates the confidentiality of the review

2    process. Hoffman had only met Gantt once before the review in March of 2013. He had never

3    worked with his at all during the preceding year. In fact, Gantt had not even been in this particular

4    store in the prior year.

5         22.     When the review started, Gantt immediately began to tell Hoffman what a failure he

6    was and how he was not doing a good job or meeting the metric (the guidelines for specialists).

7    Home Depot has used the same rating system for the last 6-8 years (O=Outstanding, V=Valuable, I

8    or N=Needs Improvement). Despite the threshold for receiving O's being raised each year, without

9    fail, Hoffman was consistently an O or a V. Even in this scathing and out-of-character review,

10   Hoffman received the identical glowing customer service survey comments as he did every year,

11   which comments generally garnered him an O. Yet, Gantt rated Hoffman only a V.

12        23.     In response to the review being presented by someone who had no familiarity with

13   Hoffman's work, Hoffman asked who prepared the review and provided the comments. Gantt

14   stated only, "Managers." Despite being asked the question twice, Gantt did not dignify Hoffman

15   with a proper response by providing the name of a single manager who provided feedback.

16   Hoffman asked if Brian Chang, the manager he had for the last several years, had weighed in on

17   the review. Gantt would not respond. Hoffman asked for the managers who prepared the review

18   to come to the meeting so he could discuss their comments which he felt to be completely false.

19   His entreaties were ignored.

20        24.     This callous behavior by Home Depot management was troubling to Hoffman.

21   Never, in 14 years, had he received such a scathing review. It was even more distressful that the

22   review came from someone who was not even familiar with his work and who would not identify a

23   single manager who concurred in the rating. Such inequitable conduct would be highly disturbing

24   to anyone. Hoffman immediately had a severe panic attack. He believed he was having a heart

25   attack as he buckled over on the floor and had difficulty breathing, feeling constriction in his chest.

26   Hoffman asked for medical assistance, but none was provided. Hoffman called for the store

27   manager, Gonzalez, who came to the room and asked everyone else to leave. From his bent over

28

**FIRST AMENDED COMPLAINT**

1   posture on his knees, Hoffman pleaded with Gonzalez to call 911, but Gonzalez completely
2   ignored his entreaties.

3        25.     After about 20 minutes, Hoffman's breathing became more regulated.  Hoffman
4   asked Gonzalez if she was aware of the nature of his review.  She began to read the document.
5   Without responding, she simply said, they needed to get Morgan, Miguel and Angela back in the
6   room and continue the review.  Incredibly, Gonzalez had a 14-year employee in front of his with
7   whom she had worked for many years and knew well, who was in very clear physical and
8   psychological distress, and all she wanted to do was continue the farcical review.

9        26.     When Morgan and Angela had returned, without addressing in any way the
10  concerns Hoffman had with the review and the way in which it was being given, Gonzalez said
11  that Hoffman had to sign-up one credit card a week, one measure a week, and one RSW
12  appointment a week for the next 90 days.  She then told Hoffman that he had a lot of open quotes
13  in the system and most of them looked like "fluff quotes."  Importantly, within the next week, one
14  of the quotes in the system, one Gonzalez called a fluff quote, was sold for $2,000.  Hoffman
15  pointed this out to Gonzalez, who had no response.  Then, without explanation, a week after the
16  review, Gantt told Hoffman that rather than signing up 1 credit card, 1 measure and 1 RSW lead a
17  week, Hoffman had to do 1 a day for the next 30 days!  She said he was being placed on a
18  Performance Improvement Plan (PIP).

19       27.     It is clear that the managers behind this effort to rid the Santa Ana store of older
20  workers knew the PIP set for Hoffman would be deemed unreasonable and they knew that
21  Hoffman's performance was such that they could not justify his termination. So they had to figure
22  out something else.

23       28.     Unable to trump up some story of performance problems after 14 years of
24  exemplary service, the management got desperate and orchestrated some of the most bizarre set of
25  facts that we have ever heard in our collective greater than 50 years of legal practice.  The
26  management at Home Depot concocted "events" between Hoffman and other employees in an
27  effort to evoke an altercation or inappropriate behavior from Hoffman designed to provide
28

- 7 -

**FIRST AMENDED COMPLAINT**

1  management with a reason to fire him.  When Hoffman he did not respond, the management

2  engaged in actions that were contrived and intentionally malicious, designed intentionally to cause

3  Hoffman distress.

4      29.    The first event was on May 17, 2013.  One of the employees from the Pro Desk,

5  Art, asked Hoffman if he would help him with the new Milgard software.  Hoffman agreed and

6  went with Art to the Millworks Desk.  Hoffman saw that Art was in the wrong program altogether

7  and showed Art how to navigate the new custom designs software system that had been installed.

8  Once Hoffman finished showing Art how to use the program with a sample patio door, Art went to

9  get his customer and asked Hoffman to stay nearby so Art could turn to Hoffman if he had any

10  further questions.  Hoffman agreed to help.  While at the desk, Hoffman was barraged with

11  customer calls and customers who were physically present and he masterfully let them all know he

12  would get to them as soon as possible and then proceeded to address each one of their needs.

13  When Art returned to the Millwork Desk, he came with another associate, Veronica, and the

14  customer.  Art began working with the customer on the right computer of the Millwork Desk.

15      30.    Hoffman was on the left computer about 10 feet away. Hoffman was up and down

16  from the desk helping customers, showing them where things are, leaving to take customers to one

17  aisle or another to show them products, and then returning to answer the phone calls.  Hoffman

18  was involved with three or four separate matters when Art and Veronica turned and asked him a

19  question about the custom design Milgard software.  Hoffman was at least 8 feet away from their

20  computer at that time, but tried to look at the screen.  Hoffman had not come across the particular

21  option on the screen.  When Hoffman expressed that he was not yet familiar with the options being

22  shown, Veronica responded, in front of Art and their mutual customers, "You mean you do not

23  know the software?!"

24      31.    At this time, Hoffman was far from the computer and engrossed with his own

25  customers and the service he needed to provide to them.  He was trying his best to help two

26  struggling employees in addition to everything else he was doing.  He could not simply drop the

27  customers he was helping.  Hoffman did not respond to Veronica's inappropriate comment in front

28

**FIRST AMENDED COMPLAINT**

of a customer, but, instead, continued to try and help -- again from greater than 8 feet away from the computer. Veronica then said again, "You mean you do not know the software! You use it every day!" While Hoffman was still looking at the screen and occupied with yet another phone call and the special custom order he was working on himself, Veronica said a third time, "You do not know the software!"

32.     Rather than engage with Veronica, Hoffman determined it would be more productive for him to assist his own customers and he left the desk so to do so. Just before he did, Veronica called Gantt to come to the desk. Once Hoffman finished with the customer he was helping, he returned to the Millworks desk to see if he could help now that he could devote his undivided attention on Veronica's question on the Milgard software. When Hoffman returned to the Millwork Desk, Gantt was there. She accused Hoffman of not giving customer service and not helping out another associate. Gantt said in front of Veronica, Art, and the customer, that the new software had been in the system for a year, and that this is one of the problems with Hoffman, that he was not using the new software.

33.     The statement was categorically untrue in many ways. First, the software had not been in the system for a year, but only a few weeks. Second, Hoffman did use the system frequently, but apprised Gantt that it simply takes time to become familiar with all of the options and features. What was lost in this whole exchange -- which again was inappropriately staged and addressed in front of a customer -- was that neither Art, nor Veronica knew the system at all. What is more, Gantt, the accuser and an assistant manager, did not know the system or how to help Art or Veronica. The whole situation was contrived. Morgan then shouted, "Are you refusing to give a customer service?" Hoffman immediately responded, "Absolutely not!" He tried to explain that he had not seen this particular option before, but if given some time, he would likely be able to figure it out. Gantt then asked Hoffman to come back to the office, deciding that helping this particular customer now became secondary to reprimanding Hoffman.

34.     By the time they got to the office, Don, the Department Head, was already present. Gantt again accused Hoffman of not helping Art and his customer. Hoffman attempted to explain

1   how he did help and was trying to help.  He recounted how he had shown Art where the software

2   was located on the computer and how Hoffman had run a sample patio door for Hoffman to help

3   Art understand how to use the program.  Hoffman even showed how he knew the answer to the

4   fixed window question that was on the screen, it was just taking him a few minutes to understand

5   the way in which the question was being asked in this new software program.  Hoffman had

6   received a few computer product knowledge (PK) classes on the new software, but like all the

7   employees, he did not yet have a mastery for the program, which mastery can only be gained from

8   experience and use of the program over a period of time.  Veronica and Gantt apparently believed

9   Hoffman was supposed to drop everything he was doing for other customers and place helping

10  Veronica and Gantt concerning their deficiencies with the program above all else.  That is not the

11  definition of good customer service.  After Hoffman explained what had happened from his

12  perspective, the confrontation ended.

13      35.     The next day, however, May 18, 2013, Hoffman came to work and Gantt called him

14  into the office again.  Kim, a representative from Atlanta Human Resources, was on the phone and

15  wanted to know about everything that happened the prior day.  It turns out that Gantt had written

16  Hoffman up for a "first and final" warning for being disrespectful and not helping another

17  associate.  Hoffman explained the situation from his perspective and that seemed to be the end of

18  it.  Such an incident clearly did not rise to the level of a "first and final" warning for a 14-year

19  employee.

20      36.     On August 11, 2013, management set up a situation designed to goad Hoffman into

21  an altercation, but Hoffman did not fall prey.  Consequently, they fabricated the events in question

22  and used this and a perceived disability/medical condition, as a basis to terminate Hoffman's

23  employment.

24      37.     At around 7:30 p.m. on August 11, 2013, Hoffman was at the Millwork Desk using

25  the computer on the left side of the desk to assist customers with window and door orders.  Miguel

26  Diaz, an associate in plumbing, was using the right side of the desk to address 2 full carts of mark-

27  downed product.  An associate named Armando, who Hoffman had never seen before, but learned

28

- 10 -

FIRST AMENDED COMPLAINT

1  later had been with Home Depot for about six months, approached the left side of the Millwork

2  Desk and stopped about three to four feet in front of Hoffman. He commanded Mr. Diaz to go to

3  Aisle 22 to help customers. Mr. Diaz responded that there were three other associates in plumbing

4  on duty and asked Armando if he could page one of them as Mr. Diaz was busy with the mark-

5  downs.

6      38.    Armando told Mr. Diaz again he had to go and turned to walk away. Mr. Diaz got

7  up and went to help the customer. Hoffman then said to Armando, "You should follow him and

8  show him the customer that needs help." Hoffman also said to Armando, "You should stand

9  behind him and listen to what he's saying so if the same question comes up tomorrow or in the

10  future, then you may be able to answer it." Armando responded by walking toward Hoffman,

11  sticking his finger out and saying, "You don't fucking tell me what to do." Hoffman then said,

12  "Okay. I won't tell you what to do, I'll show you what to do." Hoffman picked up the phone in

13  front of him and dialed 126, which is the number for plumbing. The phone was laying on the desk

14  on the right side where Miguel was sitting moments before. It rang and obviously no one was there

15  to answer it. Hoffman then said to Armando, "This will happen quite a bit, and when this happens,

16  this is what you do." Hoffman then dialed 676 to page overhead. Hoffman said, "Any associate in

17  plumbing, please call 325. Any associate in plumbing, please call 325." Hoffman hung up the

18  phone and he pointed toward Mr. Diaz down the aisle. Hoffman said to Armando, "If I was you,

19  that's where I would be right now, showing Miguel the specific customer that you said needed help

20  and trying to get PK (Product Knowledge) on whatever it is Miguel was talking about."

21      39.    Armando moved closer to Hoffman, lifted up the sleeve of his shirt to reveal a

22  tattoo on his arm and then he stuck his finger millimeters from Hoffman's nose and said, "You

23  don't want to fuck with this (referring to the tattoo), and you don't want to fuck with me." It

24  appeared that Armando was trying to signify that he had some sort of gang affiliation. Hoffman

25  stuck his hands up in the air and said, "I don't own a gun, the only knife I use is to cut up

26  vegetables, but however you want to deal with this, you let me know."

27      40.    At about this time, a bald Asian man dressed in white who appeared to be a

28

-11-

**FIRST AMENDED COMPLAINT**

religious monk that Hoffman had noticed earlier waiting to be helped walked very close by the desk and looked at Hoffman and Armando. Hoffman had seen this person's interaction earlier with the other customers he was with. It was clear that this customer was unable to speak much English and he did not appear to understand much English either.

41.     The man had no interaction with Armando or Hoffman. He did not touch either one of them and said nothing to either of them. He simply passed by on his way to return to the others in his group. However, as soon as this man passed Hoffman and Armando, Armando changed his expression. Armando said, "Hey man, I'm sorry we're on the same team, we should be working together. We're cool right? We're cool right?" Hoffman stuck out both of his hands with his palms up and fists open and shook hands with Armando. Hoffman responded, "Yes we're cool. My name is Paul Hoffman, I work in the Millworks Department, which is Windows and Doors. and if you ever need help in this department, you can come to me because I know I'll be in your department cutting wood and helping people over there. Next time, you should take the time to listen to what Miguel has to say about anything in plumbing. He really knows his stuff and you could learn a lot from him." Armando said, "I have worked for Home Depot for a long time and I know what I'm doing." He walked away. That was all that had happened.

42.     After Armando left the area, Hoffman helped a family that had been waiting for assistance to understand the measurements they needed for their door order before turning to the guest described above who had walked by he and Armando earlier. Hoffman then helped these customers to buy a door and even helped them take the door to their car.

43.     When Hoffman returned to the store, Chris Pula, who is a Department Head, approached Hoffman and after Mr. Pula discussed some issues with Hoffman concerning Mr. Pula's daughter, Mr. Pula told Hoffman that he needed to go to training room. When Hoffman arrived, present was Gantt and Mr. Pula. Gantt said that Armando's shift had ended, and he was gone, but that he reported that he felt threatened by Hoffman.

44.     Gantt asked Hoffman to write down what had happened. Hoffman wrote the story down, although he did exclude the expletives that Armando used and his pointing to his tattoo,

- 12 -

**FIRST AMENDED COMPLAINT**

1   because Hoffman did not want to inflame the issues and cause Armando to get in trouble.

2   Hoffman's shift was scheduled to end at 8:00 p.m. and he needed to leave immediately to get home

3   to his children. He rushed through writing what had happened.

4        45.   Gantt, without even reviewing what Hoffman had written or noticing that it

5   indicated that Armando was the only aggressive person in the encounter, said to Hoffman, "I'd like

6   you to leave the store." Hoffman noted that his shift was ending in a matter of minutes, as it was

7   then approximately 8:00 p.m. Gantt stated that she thought Hoffman was scheduled to work until

8   9:30 p.m. Gantt had not noticed that Mike, one of the store managers, had approved a shift change

9   for Hoffman several days before. Hoffman clocked out and left.

10        46.   The next day, August 12, 2013, Hoffman reported to work at 1:30 p.m. He was

11   immediately told to wait in the office. He did so for forty minutes. Then, Gantt came in and said,

12   "We're ready for you." She took Hoffman to another office where they held a telephone

13   conference with Kim in the Atlanta Human Resources office. After the call, where the issues of

14   the prior day were discussed, Kim very clearly said, "I'm comfortable with Hoffman going on the

15   floor and working." The manager-on-duty, Eric, and Gantt, both agreed and Hoffman went to

16   work.

17        47.   A full five hours later, Eric and another manager, Jesse Santiago, summoned

18   Hoffman into the office again. Santiago told Hoffman that they reviewed the issue *again* and that

19   they were going to put Hoffman on leave without pay. When Hoffman asked if he was being fired,

20   they said no, but told him that he had to call a person named Liz Waissman within 24 hours. The

21   managers told Hoffman that Ms. Waissman works for Care Solutions, the Employee Assistance

22   Program ("EAP"), and that she would help Hoffman get back to work.

23        48.   Hoffman, the dutiful employee that he is, and perhaps a bit naive, immediately

24   called Ms. Waissman. Hoffman began to answer Ms. Waissman's "assessment" questions,

25   although Ms. Waissman never told Hoffman the purpose of the questions. Then, the questions

26   turned very personal. Ms. Waissman asked Hoffman if he had ever been hospitalized for mental

27   illness. Hoffman told Ms. Waissman, unqualifiedly, that he had not ever been hospitalized for any

28

- 13 -

FIRST AMENDED COMPLAINT

1  issue. Ms. Waissman then told Hoffman that it was absolutely unbelievable to his that Hoffman

2  had never been hospitalized and that he had some of the greatest "coping skills she had ever seen."

3      49.    Hoffman did not understand the nature of these questions and was not comfortable

4  speaking with someone about these personal and strange questions over the phone.  Hoffman

5  wanted to meet with Ms. Waissman in person and look his in the eyes to understand the nature of

6  what was being asked.  Ms. Waissman refused, but told Hoffman to meet with Jeffrey Kullman,

7  another EAP employee, who Ms. Waissman called his eyes and ears.  Ms. Waissman still did not

8  tell Hoffman the purpose of the questions she was asking or why Hoffman was speaking with her.

9  Hoffman, ever trusting, went to meet with Mr. Kullman.  The next day, he spoke with Ms.

10  Waissman again.

11      50.    Ms. Waissman then blurted out that Mr. Kullman diagnosed Hoffman as bipolar,

12  with hypomania episodes. Mr. Kullman has no medical degree or training whatsoever.

13      51.    Ms. Waissman told Hoffman that if he wanted his job back he had to go to his

14  doctor, get a complete physical with blood tests, and get an appointment to see a psychiatrist. She

15  also told him to Google hypomania episodes and do some research and see if Hoffman believed

16  any of it applied to him.  Ms. Waissman then callously stated to Hoffman that he had to  "man up

17  and face it" (the "it" being she and Mr. Kullman's "diagnosis").   Ms. Waissman told Hoffman that

18  his next appointment with Mr. Kullman was a few days later and Hoffman had to bring a doctor's

19  card at that time that showed Hoffman was taking steps to see a psychiatrist.  Hoffman also had to

20  bring his own research on hypomania.  Hoffman, in a relative state of shock and still trusting

21  Home Depot management, said he would do it if it would get him back to work.

22      52.    On August 16, 2013, after Hoffman had scheduled an August 19, 2013 appointment

23  with his own doctor and completed the online research he was told to do, he returned to Mr.

24  Kullman.  He obligingly told Mr. Kullman that he accepted their "diagnosis" and would work with

25  him and the other doctors to "deal" with these issues.  Mr. Kullman told Hoffman to let Ms.

26  Waissman know that Mr. Kullman said Hoffman was ready to return to work.

27      53.    On August 19, 2013, Hoffman left a message in the morning for Ms. Waissman and

28

- 14 -

**FIRST AMENDED COMPLAINT**

1    then went to his appointment with his own doctor, Dr. John Lahey.  While Dr. Lahey has been

2    Hoffman's doctor for greater than 15 years (and never diagnosed him as bipolar), it turns out that

3    Dr. Lahey has been a workers' compensation doctor for Home Depot for greater than 10 years.  At

4    this visit, Dr. Lahey told Hoffman, "I want you to go to Home Depot right now and tell them

5    you're not sleeping well, you have shortness of breath, you have chest pains, and you need to see

6    the company doctor." Dr. Lahey told Hoffman that Home Depot would send Hoffman back to Dr.

7    Lahey and he will fill out all of the paperwork and put Hoffman on worker's compensation leave.

8         54.     Immediately thereafter, Hoffman went to his Home Depot store and saw Gonzalez,

9    the store general manager.  Hoffman explained that he was doing everything that was asked of him

10   to return to his position and that the doctor that Ms. Waissman sent him to, Dr. Lahey, needed

11   Hoffman to obtain approval from Home Depot for Hoffman to continue seeing Dr. Lahey.

12   Gonzalez feigned that she did not know what was going on and said she would make some calls

13   and get back to Hoffman.  Hoffman then left the store.  When he returned to his car, he had a

14   message from Ms. Waissman.  Ms. Waissman said she was going to call Mr. Kullman and then

15   start the paperwork for Hoffman to return to work.  She said that because Jesse Santiago was the

16   manager that put Hoffman on leave, he would be the one to call and tell Hoffman when he could

17   return to work.  She told Hoffman not to go to Home Depot in the interim.

18        55.     Hoffman attempted to call Ms. Waissman for the next three to four hours to tell his

19   what had transpired with Dr. Lahey and that Hoffman had already been to Home Depot.  He never

20   reached Ms. Waissman and she did not return his messages in this time period.   Hoffman also

21   tried to call Gonzalez to update his on what Ms. Waissman had said, but the phone was busy for an

22   hour.  Ultimately, Ms. Waissman called Hoffman back.  It was clear she had spoken to Gonzalez,

23   or someone at the Home Depot store.  Ms. Waissman said to Hoffman, "There is no company

24   doctor in this case."  Ms. Waissman told Hoffman he had to wait to hear from Jesse Santiago.

25   Gonzalez left a message at 6:45 p.m. that evening telling Hoffman that she would call him the next

26   morning at 7 a.m.

27        56.     On August 20, 2013, Gonzalez did not call Hoffman in the morning.  Now,

28

**FIRST AMENDED COMPLAINT**

1  Hoffman was suspicious as to what was happening.  He called Home Depot's corporate Human

2  Resources and spoke to a Sergio at (770) 433-8211.  Sergio transferred Hoffman to a James, who

3  was with the Associate's Advice and Counseling Group. A ticket number was assigned to the

4  call/claim, 6025187.  Hoffman spoke with James for about 20 minutes about what was going on.

5  James put Hoffman on hold at 9:25 a.m. and the call was disconnected.  At 9:46 a.m., Hoffman

6  was able to reach two other people in the Atlanta Human Resources, Ed and Jay, and he was told

7  that the store manager would be calling him by the end of the day with a final resolution.

8      57.    Gonzalez called around 5 p.m. and terminated Hoffman over the phone. She said

9  that their "finding" was that Armando and Hoffman had a physical fight and a customer had to

10  break it up.  Hoffman repeatedly asked Gonzalez if anyone consulted the cameras as this

11  accusation was simply not true.  Gonzalez did not respond in anyway concerning the cameras or

12  the videotape that would have shown that none of these accusations were accurate.  Instead, she

13  said that Hoffman had received a first and final warning from Gantt in May related to the alleged

14  failure to assist Art and Veronica with the computer and therefore they were terminating Hoffman.

15      58.    There is no written account from Armando as to what happened on this fateful day

16  and all of the other statements in Hoffman's file make no mention of a customer who was alleged

17  to have "broken up a fight," and certainly no identification as to the name of this purported

18  customer or any statement from him or her.

19      59.    The next day, August 21, 2013, Hoffman was called by Ms. Waissman who asked

20  him how he was doing. Ms. Waissman claimed not to know that Hoffman was terminated. Rather

21  than address any of what had happened, Ms. Waissman stated was that she hoped Hoffman would

22  keep his last appointment with Mr. Kullman.

23      60.    As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer

24  general and special damages, including severe and profound pain and emotional distress, anxiety,

25  depression, headaches, tension, and other physical ailments, as well as medical expenses, expenses

26  for psychological counseling and treatment and past and future lost wages and benefits.

27      61.    As a result of the above alleged conduct, Plaintiff is entitled to past and future lost

28

**FIRST AMENDED COMPLAINT**

1  wages, bonuses and benefits.

2     62.    Plaintiff claims general damages for emotional distress and aggravation in a sum in

3  to be determined at the time of trial, which sum Plaintiff alleges is excess of the jurisdictional

4  minimum of this court.

5     63.    Because the acts taken toward Plaintiff were carried out by managerial employees

6  acting in a deliberate, cold, callous, cruel and intentional manner, in conscious disregard of

7  Plaintiff's rights and in order to injure and damage him, Plaintiff requests that punitive damages be

8  levied against Defendants and each of them, in sums in excess of the jurisdictional minimum of

9  this Court.

10

11                        **FIRST CAUSE OF ACTION**

12  **HARASSMENT BASED UPON AGE IN VIOLATION OF *GOV. CODE* § 12940 *ET SEQ***

13                   (Against The Home Depot, Inc. and Does 1-40)

14     64.    Plaintiff hereby incorporates paragraphs 1 through 59 as though set forth in full

15  herein to the extent consistent with this cause of action.

16     65.    The Home Depot is an employer subject to suit under the California Fair

17  Employment and Housing Act (hereinafter "FEHA"), *Government Code* § 12940 *et seq.*

18     66.    Plaintiff has timely filed charges for harassment, discrimination and retaliation

19  with the California Department of Fair Employment and Housing (hereinafter "DFEH") and he has

20  properly requested and received his Right-To-Sue Notice from the DFEH. *See*, **Exhibit 1.**

21     67.    FEHA requires employers to refrain from harassing an employee on the basis of

22  age, and to prevent harassment on the basis of age from occurring.

23     68.    Plaintiff is a member of a protected class as a person over the age of 40.

24     69.    Plaintiff is informed and believes that his age and/or some combination of his age

25  with other protected characteristics set forth in the other causes of action herein under Government

26  code sec. 12920 and 12926, et seq. were motivating reasons and/or factors in the decision to

27  subject Plaintiff to the aforementioned harassment during the time Plaintiff was employed at the

28

                                - 17 -

1    Home Depot, Inc.

2       70.    Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store

3   in which he worked. As such their actions are attributed to Home Depot by the theory of

4   respondeat superior. These actions constitute unlawful discrimination in employment on account

5   of age in violation of FEHA, *Government Code* § 12900 *et seq.*, and the corresponding regulations

6   of the Fair Employment and Housing Commission in that said Defendants created a hostile work

7   environment. These acts were neither sporadic nor trivial and show a concerted pattern of

8   harassment of a repeated, routine and/or generalized nature.

9       71.    Said conduct violates FEHA and such violations were the proximate cause in

10   Plaintiff's damages as stated below.

11       72.    The damage allegations of paragraphs 60 to 63, inclusive, are herein incorporated

12   by reference.

13       73.    The foregoing conduct of Defendants individually, or by and through their

14   managing agents, was intended by Defendants to cause injury to the Plaintiff or was despicable

15   conduct carried on by the Defendants with a willful and conscious disregard of the rights of

16   Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

17   rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

18   entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

19   Defendants.

20       74.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

21   of attorneys' fees and costs, including expert fees pursuant to the FEHA.

22

23                  **SECOND CAUSE OF ACTION**

24         **VIOLATION OF LABOR CODE SECTION 1102.5**

25            (Against Home Depot and Does 1 through 40)

26       75.    Plaintiff hereby incorporates the allegations in paragraphs 1 through 59 above as

27   though set forth in full herein.

28

**FIRST AMENDED COMPLAINT**

76.    As set forth above, during Hoffman's employment, Gonzalez began requiring many employees to take a full hour meal break and work later shifts, instead of the half hour break mandated by law and the half hour break that employees could elect to take under Home Depot's policies. This practice not only violated Home Depot's policies and practices, but made many of the employees with children, particularly single parents like Hoffman, from attending to child care and education needs.

77.    Hoffman complained first to Gonzalez and the other management at his Home Depot store. When nothing was done about it, at the request of his fellow employees, Hoffman complained to corporate Human Resources at Home Depot, essentially going over Gonzalez' head. Hoffman complained both of the illegality of requiring a one-hour lunch period, rather than a half-hour period and he complained that forcing the one hour lunch period was illegal because it breached the agreement Home Depot had with its employees under its written policies that they could take a one hour or a half-hour lunch at their election.

78.    After Hoffman made this complaint, and Gonzalez was taken to task for engaging in the illegal activity, thereafter, Hoffman was harassed and then terminated, in part, as a result of retaliation for his making this complaint to Gonzalez's superiors and/or persons at Home Depot who were able to override Gonzalez's decisions.

79.    Labor Code §1102.5(b) provides "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to . . . , if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

80.    In retaliation for his complaints and refusal bringing the violation to the

- 19 -

FIRST AMENDED COMPLAINT

1  attention of Gonzalez's supervisors and persons in Human Resources at the corporate Home Depot

2  office attention, Plaintiff was first subjected to a unreasonably hostile work environment in which

3  no employee would be expected to work.  Then, Plaintiff was terminated.  These actions violated

4  Labor Code §1102.5(b) and (c).

5      81.    Plaintiff has been damaged as a result of Home Depot's violation of Labor Code

6  §1102.5(b) and(c) through the loss of past and future income and general damages.

7      82.    Home Depot's actions in terminating Plaintiff were intentional and constitute

8  harassment, fraud and oppression and Plaintiff is entitled to an award of punitive damages against

9  Home Depot.

10     83.    Plaintiff has brought this claim in the interest of the public good and safety and

11  is entitled to an award of attorneys' fees upon prevailing on his claims.

12            **THIRD CAUSE OF ACTION FOR HARASSMENT**

13   **BASED UPON DISABILITY/MEDICAL CONDITION AND/OR PERCEIVED**

14   **DISABILITY/MEDICAL CONDITION IN VIOLATION OF *GOV. CODE* § 12940 *ET SEQ***

15            (Against The Home Depot, Inc. and Does 1-40)

16     84.    Plaintiff hereby incorporates paragraphs 1 through 59 as though set forth in full

17  herein to the extent consistent with this cause of action.

18     85.    The Home Depot is an employer subject to suit under FEHA, *Government Code* §

19  12940 *et seq.*

20     86.    Plaintiff has timely filed charges for harassment, discrimination and retaliation

21  with the DFEH and he has properly requested and received his Right-To-Sue Notice from the

22  DFEH. *See*, **Exhibit 1.**

23     87.    FEHA requires employers to refrain from harassing employees on the basis of

24  medical condition, disability and/or perceived disability, including psychological and mental

25  disabilities and to prevent harassment on the basis of medical condition, disability and/or perceived

26  disability or medical condition from occurring.

27     88.    Plaintiff is a member of a protected class as a person with a medical condition

28

**FIRST AMENDED COMPLAINT**

1    and/or disability or a perceived medical condition and disability, including psychological

2    disability, requiring an accommodation in order to perform the essential elements of his position.

3         89.    Plaintiff is informed and believes that his medical condition and/or disability or his

4    perceived medical condition and/or disability and/or some combination of his actual or perceived

5    medical condition and/or disability with other protected characteristics set forth in the other causes

6    of action herein under Government code sec. 12920 and 12926, et seq. were motivating reasons

7    and/or factors in the decision to subject Plaintiff to the aforementioned harassment during the time

8    Plaintiff was employed at the Home Depot, Inc.

9         90.    Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store

10   in which he worked. As such their actions are attributed to Home Depot by the theory of

11   respondeat superior. These actions constitute unlawful discrimination in employment on account

12   of actual or perceived medical condition and/or disability in violation of FEHA, *Government Code*

13   *§ 12900 et seq.*, and the corresponding regulations of the Fair Employment and Housing

14   Commission in that said Defendants created a hostile work environment. These acts were neither

15   sporadic nor trivial and show a concerted pattern of harassment of a repeated, routine and/or

16   generalized nature.

17        91.    Said conduct violates FEHA and such violations were the proximate cause in

18   Plaintiff's damages as stated below.

19        92.    The damage allegations of paragraphs 60 to 63, inclusive, are herein incorporated

20   by reference.

21        93.    The foregoing conduct of Defendants individually, or by and through their

22   managing agents, was intended by Defendants to cause injury to the Plaintiff or was despicable

23   conduct carried on by the Defendants with a willful and conscious disregard of the rights of

24   Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

25   rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

26   entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

27   Defendants.

28

**FIRST AMENDED COMPLAINT**

94.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

## FOURTH CAUSE OF ACTION

### DISCRIMINATION BASED UPON AGE INVIOLATION OF *GOV. CODE § 12940 ET SEQ*

(Against The Home Depot, Inc. and Does 1-40)

95.    Plaintiff hereby incorporates paragraphs 1 through 59 as though set forth in full herein to the extent consistent with this cause of action.

96.    The Home Depot is an employer subject to suit under FEHA, *Government Code §* 12940 *et seq.*

97.    Plaintiff has timely filed charges for harassment, discrimination and retaliation with the DFEH and he has properly requested and received his Right-To-Sue Notice from the DFEH. *See*, **Exhibit 1.**

98.    FEHA requires employers to refrain from discriminating against an employee on the basis of age, and to prevent discrimination on the basis of age from occurring.

99.    Plaintiff is a member of a protected class as a person over the age of 40.

100.    Plaintiff is informed and believes that his age and/or some combination of his age with other protected characteristics set forth in the other causes of action herein under Government code secs. 12920 and 12926, et seq. were motivating reasons and/or factors in the decision to subject Plaintiff to the aforementioned discrimination during the time Plaintiff was employed at the Home Depot, Inc.

101.    Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store in which he worked. As such their actions are attributed to Home Depot by the theory of respondeat superior. These actions constitute unlawful discrimination in employment on account of age in violation of FEHA, *Government Code § 12900 et seq.*, and the corresponding regulations of the Fair Employment and Housing Commission in that said Defendants created a hostile work environment. These acts were neither sporadic nor trivial and show a concerted pattern of

- 22 -

**FIRST AMENDED COMPLAINT**

1    discrimination of a repeated, routine and/or generalized nature.

2        102.    Said conduct violates FEHA and such violations were the proximate cause in

3    Plaintiff's damages as stated below.

4        103.    The damage allegations of paragraphs 60 to 63, inclusive, are herein incorporated

5    by reference.

6        104.    The foregoing conduct of Defendants individually, or by and through their

7    managing agents, was intended by Defendants to cause injury to the Plaintiff or was despicable

8    conduct carried on by the Defendants with a willful and conscious disregard of the rights of

9    Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

10   rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

11   entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

12   Defendants.

13       105.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

14   of attorneys' fees and costs, including expert fees pursuant to the FEHA.

15

16   **FIFTH CAUSE OF ACTION FOR DISCRIMINATION**

17   **BASED UPON DISABILITY/MEDICAL CONDITION AND/OR PERCEIVED**

18   **DISABILITY/MEDICAL CONDITION IN VIOLATION OF _GOV. CODE_ § 12940 _ET SEQ_**

19        (Against The Home Depot, Inc. and Does 1-40)

20       106.    Plaintiff hereby incorporates paragraphs 1 through 59 as though set forth in full

21   herein to the extent consistent with this cause of action.

22       107.    The Home Depot is an employer subject to suit under FEHA, _Government Code_ §

23   12940 _et seq._

24       108.    Plaintiff has timely filed charges for harassment, discrimination and retaliation

25   with the DFEH and he has properly requested and received his Right-To-Sue Notice from the

26   DFEH. _See_, **Exhibit 1**.

27       109.    FEHA requires employers to refrain from discriminating against an employee on

28

- 23 -

1  the basis of medical condition, disability and/or perceived disability, including psychological and

2  mental disability, and to prevent discrimination on the basis of medical condition or disability

3  and/or perceived disability or medical condition from occurring.

4      110.   Plaintiff is a member of a protected class as a person with a medical condition

5  and/or disability or a perceived medical condition and/or disability requiring an accommodation in

6  order to perform the essential elements of his position.

7      111.   Plaintiff is informed and believes that his medical condition and/or disability or his

8  perceived medical condition and/or disability and/or some combination of his actual or perceived

9  medical condition and/or disability with other protected characteristics set forth in the other causes

10 of action herein under Government code secs. 12920 and 12926, et seq., were motivating reasons

11 and/or factors in the decision to subject Plaintiff to the aforementioned harassment during the time

12 Plaintiff was employed at the Home Depot, Inc.

13     112.   Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store

14 in which he worked.  As such their actions are attributed to Home Depot by the theory of

15 respondeat superior.  These actions constitute unlawful discrimination in employment on account

16 of medical condition and/or disability and/or perceived medical condition or disability in violation

17 of FEHA, *Government Code* § 12900 *et seq.*, and the corresponding regulations of the Fair

18 Employment and Housing Commission in that said Defendants created a hostile work

19 environment.  These acts were neither sporadic nor trivial and show a concerted pattern of

20 harassment of a repeated, routine and/or generalized nature.

21     113.   Said conduct violates FEHA and such violations were the proximate cause in

22 Plaintiff's damages as stated below.

23     114.   The damage allegations of paragraphs 60 to 63, inclusive, are herein incorporated

24 by reference.

25     115.   The foregoing conduct of Defendants individually, or by and through their

26 managing agents, was intended  by Defendants to cause injury to the Plaintiff or was despicable

27 conduct carried on by the Defendants with a willful and conscious disregard of the rights of

28

- 24 -

**FIRST AMENDED COMPLAINT**

1  Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

2  rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

3  entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

4  Defendants.

5      116.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

6  of attorneys' fees and costs, including expert fees pursuant to the FEHA.

7

8                      **SIXTH CAUSE OF ACTION**

9  **FOR RETALIATION IN VIOLATION OF GOV'T CODE SECS. 12940 ET SEQ.**

10                (Against Home Depot and Does 1 through 40)

11     117.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 59 above, as

12  though set forth in full.

13     118.    At all times hereto, FEHA was in full force and effect and was binding upon

14  Defendants and each of them.

15     119.    FEHA requires Defendants to refrain from retaliating against an employee for

16  engaging in protected activity.

17     120.    Plaintiff engaged in the protected activities of exercising his legal and contractual

18  right to take no more than a half hour lunch break and to assert the same rights of other employees

19  at Home Depot.

20     121.    Plaintiff suffered the adverse employment actions of discrimination, harassment,

21  failure to investigate, remedy and/or prevent discrimination, suspension, and termination, and was

22  harmed thereby.

23     122.    Plaintiff is informed and believes that his exercise of his right to  only a half hour

24  meal break off the clock and enforcement of the contractual policy rights to same was a motivating

25  reason and/or factor in the decisions to subject him to the aforementioned adverse employment

26  actions.

27     123.    Defendants violated the FEHA by retaliating against Plaintiff and terminating him

28

**FIRST AMENDED COMPLAINT**

1  for attempting to exercise protected rights, as set forth above.

2      124.    Plaintiff is informed and believes, and based thereon alleges, that the above acts of

3  retaliation committed by Defendants were done with the knowledge, consent, and/or ratification of,

4  or at the direction of, each other Defendant and the other Managers.

5      125.    The above said acts of Defendants constitute violations of the FEHA, and were a

6  proximate cause in Plaintiff's damage as stated below.

7      126.    The damage allegations of Paragraphs 60 through 63, inclusive, are herein

8  incorporated by reference.

9      127.    The foregoing conduct of Defendants individually, or by and through their

10  managing agents, was intended  by Defendants to cause injury to the Plaintiff or was despicable

11  conduct carried on by the Defendants with a willful and conscious disregard of the rights of

12  Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

13  rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

14  entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

15  Defendants.

16      128.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

17  of attorneys' fees and costs, including expert fees pursuant to the FEHA.

18

19

20              **SEVENTH CAUSE OF ACTION**

21          **FAILURE TO EXERCISE REASONABLE CARE**

22  **TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION**

23      **IN VIOLATION OF GOV. CODE § 12940(k)**

24              (Against Home Depot and Does 1-40)

25      129.    Plaintiff hereby incorporates paragraphs 1 through 59 as though set forth in full

26  herein to the extent consistent with this cause of action.

27      130.    At all times mentioned in this Complaint, FEHA, and in particular, Gov. Code §

28

**FIRST AMENDED COMPLAINT**

1    12940(k) was in full force and effect. This subsection requires defendants to take all reasonable

2    steps necessary to prevent discrimination, harassment and retaliation from occurring.  Home Depot

3    violated this provision by failing to take all reasonable steps necessary to prevent discrimination

4    and harassment from occurring, and by failing to take prompt remedial action after having actual

5    and constructive knowledge of the hostile work environment that existed in Plaintiff's store.

6           131.    Plaintiff has timely filed charges for harassment, discrimination and retaliation

7    with the DFEH and he has properly requested and received his Right-To-Sue Notice from the

8    DFEH with respect to each Defendant.  The Right-To-Sue Notice is attached hereto as **Exhibit 1.**

9           132.    The above said acts of Defendants constitute violations of FEHA, and were a

10   proximate cause in Plaintiff's damage as stated below.

11          133.    The damage allegations of Paragraphs 60 through 63, inclusive, are herein

12   incorporated by reference.

13          134.    The foregoing conduct of Defendants individually, or by and through their

14   managing agents, was intended  by Defendants to cause injury to the Plaintiff or was despicable

15   conduct carried on by the Defendants with a willful and conscious disregard of the rights of

16   Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

17   rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

18   entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

19   Defendants.

20          135.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

21   of attorneys' fees and costs, including expert fees pursuant to the FEHA.

22

23                             **EIGHTH CAUSE OF ACTION**

24   **FOR WRONGFUL TERMINATION IN VIOLATION OF THE PUBLIC**

25                      (Against Home Depot and Does 1 through 40)

26          136.    Plaintiff hereby incorporates paragraphs 1 through 59 as though set forth in full

27   herein to the extent consistent with this cause of action.

28

**FIRST AMENDED COMPLAINT**

137.    At all times mentioned in this Complaint, FEHA was in full force and effect and was binding on Defendants. The law requires Defendants to refrain from , among other things, discriminating against any employee on the basis of age, medical condition, disability and/or perceived disability, and from retaliating against any employee who engages in protected activity.

138.    At all times mentioned in this complaint, it was a fundamental policy of the State of California that Defendants cannot discriminate and/or retaliate against any employee on the basis of age, medical condition, disability and/or perceived disability, or engagement in protected activity.

139.    Plaintiff believes and thereon alleges that his age, medical condition disability and/or perceived disability, as well as his engaging in protected activities and/or some combination thereof, were factors in Defendants' conduct alleged hereinabove.

140.    Such harassment, discrimination and retaliation, resulting in the wrongful termination of Plaintiff's employment on the basis of medical condition, disability and/or perceived disability, Plaintiff's engagement in protected activity, and/some combination of these factors, were in proximate cause in Plaintiff's damages as stated below.

141.    The damage allegations of Paragraphs 60 through 63, inclusive, are herein incorporated by reference.

142.    The foregoing conduct of Defendants individually, or by and through their managing agents, was intended by the Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, such as to constitute malice, oppression or fraud under Civil Code sec. 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

- 28 -

FIRST AMENDED COMPLAINT

## NINTH CAUSE OF ACTION

## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against Home Depot, Gonzalez, Gantt, Santiago, Eric Doe and Does 1 through 50)

143.    Plaintiff realleges and incorporates by reference paragraphs 1 through 59, inclusive, as though set forth in full herein.

144.    Defendants, and each of them, intentionally and with malice engaged in outrageous conduct that was outside the bounds of any reasonable employment relationship and which was calculated to cause Plaintiff to suffer humiliation, physical and mental anguish and emotional distress.  This conduct included subjecting Plaintiff to a hostile and offensive work environment and retaliation against him for engaging in a statutorily protected activity.  It also included subjecting Plaintiff to questions and analysis about his mental and psychological state that was inappropriate and was done by persons who did not even have qualifying medical educations to engage in such evaluation, much less to present their lay "diagnosis" in the abhorrent way that it was done.

145.    Defendants' hostile work environment and retaliation was committed with the knowledge that it would cause Plaintiff severe physical and emotional distress and was committed with a wanton and reckless disregard to the consequences to Plaintiff.

146.    As a direct and proximate result of the acts alleged above, Plaintiff has suffered, and continues to suffer, humiliation, mental anguish and severe emotional and physical distress and has been damaged thereby in an amount to be determined by the trier-of-fact, but which amount is alleged to be in excess of this Court's minimum jurisdiction.

147.    Defendants' conduct was willful, malicious and intended to oppress and cause injury to Plaintiff and, accordingly, he is entitled to an award of punitive damages under Civil Code section 3294.

WHEREFORE, Plaintiff prays as follows:

- 29 -

**FIRST AMENDED COMPLAINT**

**ON THE FIRST THROUGH EIGHTH CAUSES OF ACTION**

1.      For special damages in an amount to be proven at the time of trial including lost past and future wages, earnings, retirement benefits and other employment benefits, and all other sums of money together with interest on these amounts;

2.      For general damages in an amount to be proven at the time of trial for emotional distress and mental pain and anguish;

3.      For pre-judgment and post-judgment interest at the maximum legal rate;

4.      For punitive damages in an amount to be proven at the time of trial; and

5.      For an award of attorneys' fees and costs of suit.

**ON THE NINTH CAUSE OF ACTION**

1.      For general damages in an amount to be proven at the time of trial for emotional distress and mental pain and anguish; and

2.      For punitive damages in an amount to be proven at the time of trial.

**ON ALL CAUSES OF ACTION**

For such further and other relief as this Honorable Court may deem just and proper.

**YOUNESI & YOSS, LLP**

Dated:  August 22, 2014      By: _____
                            Jan A. Yoss
           Attorneys for Plaintiff, **PAUL HOFFMAN**

**DEMAND FOR JURY TRIAL**

As to the matters complained herein against Defendants Plaintiff Paul Hoffman demands a trial by jury.

**YOUNESI & YOSS, LLP**

Dated:  August 22, 2014      By: _____
                            Jan A. Yoss
           Attorneys for Plaintiff, **PAUL HOFFMAN**

**FIRST AMENDED COMPLAINT**

# EXHIBIT 1

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    DIRECTOR PHYLLIS W. CHENG
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TTY 800-7002320                                    **AMENDED**
www.dfeh.ca.gov

Jun 18, 2014

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 274020-111001-R
Right to Sue: Hoffman / Home Depot U.S.A., Inc., Doing Business As The Home Depot

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair
Employment and Housing (DFEH) in accordance with Government Code section 12960. This
constitutes service of the complaint pursuant to Government Code section 12962. The complainant
has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is
being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for
your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

### BEFORE THE STATE OF CALIFORNIA

### DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
#### Under the California Fair Employment and Housing Act
#### (Gov. Code, § 12900 et seq.)

In the Matter of the Complaint of          DFEH No. 274020-111001-R
Paul Hoffman, Complainant.

vs.

Home Depot U.S.A., Inc., Doing Business As The
Home Depot Respondent.
2455 PacesFerry Road
Atlanta, Georgia 30339

Complainant alleges:

1. Respondent Home Depot U.S.A., Inc., Doing Business As The Home Depot is a Private Employer subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

2. On or around Aug 20, 2013, complainant alleges that respondent took the following adverse actions against complainant: Discrimination, Harassment, Retaliation Asked impermissible non-job-related questions, Denied a good faith interactive process, Denied a work environment free of discrimination and/or retaliation, Terminated, . Complainant believes respondent committed these actions because of their: Age - 40 and over, Disability, Engagement in Protected Activity, Medical Condition - including Cancer .

3. Complainant Paul Hoffman resides in the City of Huntington Beach, State of California. If complaint includes co-respondents please see below.

-1-
*Complaint – DFEH No. 274020-111001-R*

DFEH 902-1

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

Co-Respondents:

Beatriz Gonzalez
3500 Macarthur Blvd.
Santa Ana  California 92704

Morgan Gantt
3500 Macarthur Blvd.
Santa Ana  California 92704

Jesse Santiago
3500 Macarthur Blvd.
Santa Ana  California 92704

Eric Doe
3500 Macarthur Blvd.
Santa Ana  California 92704

-2-
*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

1
2      **Additional Complaint Details:**
3
       I started working at Home Depot in March 1999 in the Santa Ana Store, number 606.
4      Throughout the fourteen years, I received many accolades and customer service
       awards. In or about early 2013, I was first targeted, along with several other workers
5      over 40 years old, for termination by the management of my store. The management
       claimed that I had been advanced to a position of a "specialist". I denied ever agreeing
6      to such advancement. These other over-40 employees and I were given criteria for
       sales and other activity (like signing up people for credit cards) that we were supposed
7      to meet in this role as a specialist. In late 2012, and early 2013, I saw the other older
       workers around me being let go for failure to meet these new rigorous and unattainable
8      guidelines. It was clear by some of the comments being made to me and the
       unreasonable sales and other benchmark criteria being foisted on us, called the metrics,
9      that I was similarly being singled-out for termination. In addition to being targeted for
       my age, I was also retaliated against by my stores management for asserting my and
10     other employees rights to meal breaks pursuant to company policy. In March 2013, the
       Santa Ana store manager, Beatrice Gonzalez, began requiring all employees to take a
11     one-hour off-the-clock lunch break, instead of the 30-minute break most of them were
       taking. While I had taken an hour lunch break by choice most of the time I had been
12     with Home Depot, in 2012, I began taking only 30-minutes so I could end my shift 30-
       minutes earlier and help my then-4th grade son with his homework. Other employees
13     has similar concerns. As a result, at the request of my fellow employees and to
       understand the company policy better myself, I called corporate Human Resources to
14     determine what the policy was. I spoke with Rowanda Velonza. Ms. Velonza confirmed
       that the Home Depot policy was that the associates were allowed to elect between a 30-
15     minute and a 60-minute lunch. She also confirmed that an individual store manager
       could not override this policy and require employees to take only a 60-minute or only a
16     30-minute lunch. When I explained what was happening, Ms. Velonza wanted me to
       transfer her to a manager. Afraid that the purported confidentiality of the call would be
17     compromised, I asked if she would call back. The next day, Ms. Gonzalez called me
       into her office and berated me saying, Oh, youre the only one who has to have a 30-
18     minute lunch. I have to change all these schedules just to accommodate you." Even
       when I began to fear for my job out of retaliation and said I would take the 60-minute
19     lunch, Ms. Gonzalez said, Oh no, no its too late now. Its already done. Well try it for a
       few months and see how it works."  I explained to Ms. Gonzalez that I was trying to
20     help other associates who had asked me about the lunch policy, but she did not want to
       hear anything about how the employees felt.  Again, I said, Change my lunch back to
21     60-minutes, I dont want to cause any problems. Again Ms. Gonzalez said, No, no, no,
       too late now.In retaliation, Ms. Gonzalez changed my schedule. Instead of leaving a
22

-3-
*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

half-hour earlier to be able to help my son, Ms. Gonzalez simply had me come in a half-hour later, take my 30-minute lunch, and then leave at my old shift time.  Ms. Gonzalez also scheduled me to work until 9:30 p.m. on Sunday nights.  On Sunday, however, the store closed at 8 p.m. The other associates who worked the closing shift stayed until 9:00 p.m. There was no night crew on Sunday night. I was the only associate scheduled to 9:30 p.m. An associate could not work until 9:30 p.m. without obtaining a prior written authorization, even if he was on the schedule until 9:30 p.m..  So, each Sunday, I would have to fill out a form and have it signed by my manager, Brian Chang.  When I did, Mr. Chang would invariably tell me that no one could stay to 9:30 p.m. Mr. Chang would have me come in a half hour earlier or just work 7 hours.  If I forgot to get the paperwork signed, or could not locate Mr. Chang, I would receive a demerit.  This same game was played with another associate who was terminated shortly after being moved to the phantom 9:30 p.m. shift end-time.  Then, in April 2013, I received my first negative annual review in 14 years!  My  review was curiously given by a very young and new assistant manager, Morgan Gantt, another assistant manager named Mike, but whose last name I do not know, and Angela Gonzalez, a fellow associate. It is very odd that this associate was present in the review because having another associate present does not comport with protocol and violates the confidentiality of the review process.  I had only met Ms. Gantt once before the review in March of 2013.  I had never worked with her at all during the preceding year.  In fact, Ms. Gantt had not even been in this particular store in the prior year.  When the review started, Ms. Gantt immediately began to tell me what a failure I was and how I was not doing a good job or meeting the metric (the guidelines for specialists).  In response to the review being presented by someone who had no familiarity with my  work, I asked who prepared the review and provided the comments.  Ms. Gantt stated only,  Managers. She would not give me any names.  I asked if Brian Chang, the manager I had for the last several years, had weighed in on the review.  Ms. Gantt would not respond.  This conduct was disturbing to me.  I immediately had a severe panic attack.  I believed I was having a heart attack as I buckled over on the floor and had difficulty breathing, feeling constriction in my chest.  I asked for medical assistance, but none was provided. I called for the store manager, Ms. Gonzalez, who came to the room and asked everyone else to leave.  From my bent-over posture on my knees, I pleaded with Ms. Gonzalez to call 911, but Ms. Gonzalez completely ignored my entreaties.  After about 20 minutes, my breathing became more regulated.  I asked Ms. Gonzalez if she was aware of the nature of my review.  She began to read the document.  Without responding, she simply said, they needed to get Morgan, Miguel and Angela back in the room and continue the review.  When Morgan and Angela had returned, without addressing in any way the concerns I had with the review and the way in which it was being given, Ms. Gonzalez said that I had to sign-up one credit card a week, one measure a week, and one RSW appointment a week for the next 90 days.  She then told me that I had a lot of open quotes in the system and most of them looked like "fluff quotes."   Importantly, within the next week, one of the quotes in the system, one Ms. Gonzalez called a fluff quote, was

-4-
*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

sold for $2,000. I pointed this out to Ms. Gonzalez, who had no response. Then, without explanation, a week after the review, Ms. Gantt told me that rather than signing up 1 credit card, 1 measure and 1 RSW lead a week, I had to do 1 a day for the next 30 days! She said I was being placed on a Performance Improvement Plan (PIP). Then, the management at Home Depot concocted "events" between other employees and me in an effort to evoke an altercation or inappropriate behavior from me designed to provide management with a reason to fire me. The first event was on May 17, 2013. One of the employees from the Pro Desk, Art, asked me if I would help him with the new Milgard software. I agreed and went with Art to the Millworks Desk. I saw that Art was in the wrong program altogether and showed Art how to navigate the new custom designs software system that had been installed. Once I finished showing Art how to use the program with a sample patio door, Art went to get his customer and asked me to stay nearby so Art could turn to me if he had any further questions. I agreed to help. While at the desk, I was barraged with customer calls and customers who were physically present that required immediate attention. When Art returned to the Millwork Desk, he came with another associate, Veronica, and the customer. Art began working with the customer on the right computer of the Millwork Desk. I was on the left computer about 10 feet away. I was involved with three or four separate matters when Art and Veronica turned and asked me a question about the custom design Milgard software. I was at least 8 feet away from their computer at that time, but tried to look at the screen. I had not come across the particular option on the screen. When I expressed that I was not yet familiar with the options being shown, Veronica responded, in front of Art and their mutual customers, You mean you do not know the software?! At this time, I was far from the computer and engrossed with my own customers and the service I needed to provide to them. I was trying my best to help two struggling employees in addition to everything else I was doing. I could not simply drop the customers I was helping. I did not respond to Veronicas inappropriate comment in front of a customer, but, instead, continued to try and help -- again from greater than 8 feet away from the computer. Rather than engage with Veronica who was becoming agitated, I determined it would be more productive for me to assist my own customers and I left the desk so to do so. Just before I did, Veronica called Ms. Gantt to come to the desk. Once I finished with the customer I was helping, I returned to the Millworks desk to see if I could help now that I could devote my undivided attention on Veronicas question on the Milgard software. When I returned to the Millwork Desk, Ms. Gantt was there. She accused me of not giving customer service and not helping out another associate. Ms. Gantt said in front of Veronica, Art, and the customer, that the new software had been in the system for a year, and that this is one of the problems with me, that I was not using the new software. The statement was categorically untrue in many ways. First, the software had not been in the system for a year, but only a few weeks. Second, I did use the system frequently, but apprised Ms. Gantt that it simply takes time to become familiar with all of the options and features. Importantly, Ms. Gantt, a supposed supervisor, did not know the system or how to help Art or Veronica. The whole situation was contrived.

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

Morgan then shouted, Are you refusing to give a customer service? I immediately responded, ABSOLUTELY NOT! I tried to explain that I had not seen this particular option before, but if given some time, I would likely be able to figure it out. Ms. Gantt then asked me to come back to the office -- apparently helping this particular customer now became secondary to reprimanding me.    Conspicuously, by the time we arrived at the office, Don, the Department Head, was already present. Ms. Gantt again accused me of not helping Art and his customer. I attempted to explain how I did help and was trying to help. I recounted how I had shown Art where the software was located on the computer and how I had run a sample patio door for me to help Art understand how to use the program. I even showed how I knew the answer to the fixed window question that was on the screen, it was just taking me a few minutes to understand the way in which the question was being asked in this new software program. Veronica and Ms. Gantt apparently believed I was supposed to drop everything I was doing for other customers and place helping Veronica and Ms. Gantt concerning their deficiencies with the program above all else. That is not the definition of good customer service. After I explained what had happened from my perspective, the confrontation ended. The next day, however, May 18, 2013, I came to work and Ms. Gantt called me into the office again. Kim, a representative from Atlanta Human Resources, was on the phone and wanted to know about everything that happened the prior day. It turns out that Ms. Gantt had written me up for a "first and final" warning for being disrespectful and not helping another associate. I explained the situation from my perspective and that seemed to be the end of it. It is really hard to imagine how the incident, no matter how it was recounted, could result in a first warning that was also a final warning for a 14-year employee with a stellar track record. Nonetheless, I went about my work as usual, until the other shoe dropped. On August 11, 2013, management set up a situation designed to goad me into an altercation, but I did not fall prey. Consequently, they fabricated the events in question and used this and a perceived medical condition, as a basis to terminate my employment. At around 7:30 p.m. on August 11, 2013, I was at the Millwork Desk using the computer on the left side of the desk to assist customers with window and door orders. Miguel Diaz, an associate in plumbing, was using the right side of the desk to address 2 full carts of marked-down product. An associate named Armando, who I had never seen before, but learned later had been with Home Depot for about six months, approached the left side of the Millwork Desk and stopped about three to four feet in front of me. He commanded Miguel to go to Aisle 22 to help customers. Miguel responded that there were three other associates in plumbing on duty and asked Armando if he could page one of them as Miguel was busy with the mark-downs. Armando told Miguel again he had to go and turned to walk away. Miguel got up and went to help the customer. I then said to Armando, You should follow him and show him the customer that needs help. I also said to Armando, You should stand behind him and listen to what hes saying so if the same question comes up tomorrow or in the future, then you may be able to answer it. Armando responded by walking toward me, sticking his finger out and saying, You dont fucking tell me what to do. I then said,

-6-

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

Okay. I wont tell you what to do, Ill show you what to do. I picked up the phone in front of him and dialed 126, which is the number for plumbing.  The phone was laying on the desk on the right side where Miguel was sitting moments before. It rang and obviously no one was there to answer it. I then said to Armando, This will happen quite a bit, and when this happens, this is what you do. I then dialed 676 to page overhead. I said, Any associate in plumbing, please call 325.  Any associate in plumbing, please call 325. I hung up the phone and I pointed toward Miguel down the aisle.  I said to Armando, If I was you, thats where I would be right now, showing Miguel the specific customer that you said needed help and trying to get PK (Product Knowledge) on whatever it is Miguel was talking about."  Armando moved closer to me, lifted up the sleeve of his shirt to reveal a tattoo on his arm and then he stuck his finger millimeters from my nose and said, You dont want to fuck with this (referring to the tattoo), and you dont want to fuck with me. It appeared that Armando was trying to signify that he had some sort of gang affiliation.  I stuck my hands up in the air and said, I dont own a gun, the only knife I use is to cut up vegetables, but however you want to deal with this, you let me know. At about this time, a bald Asian man dressed in white who appeared to be a religious monk that I had noticed earlier waiting to be helped walked very close by the desk and looked at Armando and I.  I had seen this persons interaction earlier with the other customers he was with and it was clear that the man was unable to speak much English and he did not appear to understand much English either.  The man had no interaction with Armando or me.  He did not touch either one of us and said nothing to either of us.  He simply passed by on his way to return to the people he was with.  However, as soon as this man passed Armando and me, Armando changed his expression.  Armando said, Hey man, Im sorry were on the same team, we should be working together. Were cool right? Were cool right? I stuck out both of my hands with my palms up and fists open and shook hands with Armando.  I responded, Yes were cool. My name is Paul Hoffman, I work in the Millworks Department, which is Windows and Doors, and if you ever need help in this department, you can come to me because I know Ill be in your department cutting wood and helping people over there. Next time, you should take the time to listen to what Miguel has to say about anything in plumbing. He really knows his stuff and you could learn a lot from him. Armando said, I have worked for Home Depot for a long time and I know what Im doing. He walked away.  That was all that had happened.  After Armando left the area, I helped a family that had been waiting for assistance to understand the measurements they needed for their door order before turning to the Asian couple who were with the installer.  I then helped these customers to buy a door and even helped them take the door to their car. When I returned to the store, Chris Pula, who is a Department Head, approached me.   Mr. Pula told me  that I needed to go to training room.  When I arrived, present was Ms. Gantt and Mr. Pula.  Ms. Gantt said that Armandos shift had ended, and he was gone, but that Armando reported that he felt threatened by me. Ms. Gantt asked me to write down what had happened.  I wrote the story down, although I did exclude the expletives and threat about the tattoo that Armando used, because I did not want to inflame the issues and

<div align="center">-7-</div>

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

cause Armando to get in trouble. My shift was scheduled to end at 8:00 p.m. and I needed to leave immediately to get home to my children. I rushed through writing what had happened and did not include all of the detail. Ms. Gantt, without even reviewing what I had written or noticing that it indicated that Armando was the only aggressive person in the encounter, said to me, Id like you to leave the store. I noted that my shift was ending in a matter of minutes, as it was then approximately 8:00 p.m. Ms. Gantt stated that she thought I was scheduled to work until 9:30 p.m. Ms. Gantt had not noticed that Mike, one of the store managers, had approved a shift change for me several days before. I clocked out and left. The next day, August 12, 2013, I reported to work at 1:30 p.m. I was immediately told to wait in the office. I did so for forty minutes. Then, Ms. Gantt came in and said, "Were ready for you." She took me to another office where they held a telephone conference with Kim in the Atlanta Human Resources office. After the call, where the issues of the prior day were discussed, Kim very clearly said, "Im comfortable with Paul going on the floor and working." The manager-on-duty, Eric, and Ms. Gantt, both agreed and I went to work. A full five hours later, Eric and another manager, Jesse Santiago, summoned me into the office again. Mr. Santiago told me that they reviewed the issue again and that they were going to put me on leave without pay. When I asked if I was being fired, they said no, but told me that I he had to call a person named Liz Waissman within 24 hours. The managers told me that Ms. Waissman works for Care Solutions, the Employee Assistance Program ("EAP"), and that she would help me get back to work. I immediately called Ms. Waissman. I still did not understand what was really going on. I began to answer Ms. Waissmans "assessment" questions. Bear in mind, Ms. Waissman never told me the purpose of the questions. Then, the questions turned very personal. Ms. Waissman asked me if I had ever been hospitalized for mental illness. I told Ms. Waissman, unqualifiedly, that I had not ever been hospitalized for any issue. This repugnant woman actually had the audacity to respond that it was absolutely unbelievable to her that I had never been hospitalized and that I had some of the greatest "coping skills she had ever seen." I did not understand the nature of these questions and was not comfortable speaking with someone about these personal and strange questions over the phone. I wanted to meet with Ms. Waissman in person and look her in the eyes to understand the nature of what was being asked. Ms. Waissman refused, but told me to meet with Jeffrey Kullman, another EAP employee, who Ms. Waissman called her eyes and ears. Ms. Waissman still did not tell me the purpose of the questions she was asking or why I was speaking with her. I, therefore, went to meet with Mr. Kullman. The next day, I spoke with Ms. Waissman again. Ms. Waissman then blurted out that Mr. Kullman diagnosed me as bipolar, with hypomania episodes. Bear in mind that Mr. Kullman has no medical degree or training whatsoever. Ms. Waissman told me that if I wanted my job back I had to go to my doctor, get a complete physical with blood tests, and get an appointment to see a psychiatrist. She also told me to Google hypomania episodes and do some research and see if I believed any of it applied to me. Then, this woman, who just a few days before told me she was supposed to be helping me and

-8-

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

who spoke to me as if she actually cared about my employment status and mental health, told me that I had to "man up and face it." She told me that my next appointment with Mr. Kullman was a few days later and I had to bring a doctors card at that time that showed me that I was taking steps to see a psychiatrist. I also had to bring my own research on hypomania. In a relative state of shock and still trusting Home Depot management, I said I would do it if it would get me back to work. On August 16, 2013, after I had scheduled an August 19, 2013 appointment with my own doctor and completed the online research that I was told to do, I returned to Mr. Kullman. I obligingly told Mr. Kullman that I accepted their "diagnosis" and would work with him and the other doctors to "deal" with these issues. Mr. Kullman told me to let Ms. Waissman know that Mr. Kullman said I was ready to return to work. On August 19, 2013, I left a message in the morning for Ms. Waissman and then went to my appointment with my own doctor, Dr. John Lahey. While Dr. Lahey has been my doctor for greater than 15 years (and never diagnosed me as bipolar), it turns out that Dr. Lahey has been a workers compensation doctor for Home Depot for greater than 10 years. At this visit, Dr. Lahey told me, I want you to go to Home Depot right now and tell them youre not sleeping well, you have shortness of breath, you have chest pains, and you need to see the company doctor. Dr. Lahey told me that Home Depot would send me back to Dr. Lahey and he will fill out all of the paperwork and put me on workers compensation leave while I spoke with a lawyer about what Dr. Lahey perceived to be a strong employment case. In essence, Dr. Lahey saw what Home Depot was doing to me, both mentally and physically, and also the set-up that was happening in my job. Immediately thereafter, I went to my Home Depot store and saw Beatrice Gonzalez, the store general manager. I explained that I was doing everything that was asked of me to return to my position and that the doctor that Ms. Waissman sent me to, Dr. Lahey, needed me to obtain approval from Home Depot for me to continue seeing Dr. Lahey. Ms. Gonzalez feigned that she did not know what was going on and said she would make some calls and get back to me. I then left the store. When I returned to my car, I had a message from Ms. Waissman. Ms. Waissman said she was going to call Mr. Kullman and then start the paperwork for me to return to work. She said that because Jesse Santiago was the manager that put me on leave, he would be the one to call and tell me when I could return to work. She told me not to go to Home Depot in the interim. I attempted to call Ms. Waissman for the next three to four hours to tell her what had transpired with Dr. Lahey and that I had already been to Home Depot. I never reached Ms. Waissman and she did not return my messages in this time period. I also tried to call Ms. Gonzalez to update her on what Ms. Waissman had said, but the phone was busy for an hour. Ultimately, Ms. Waissman called me back. It was clear she had spoken to Ms. Gonzalez, or someone at the Home Depot store. Ms. Waissman said to me, There is no company doctor in this case. Ms. Waissman told me the I had to wait to hear from Jesse Santiago. Ms. Gonzalez left a message at 6:45 p.m. that evening telling me that she would call me the next morning at 7 a.m. On August 20, 2013, Ms. Gonzalez did not call me in the morning. Now, I was suspicious as to what was

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

happening. I called Home Depots corporate Human Resources and spoke to a Sergio at (770) 433-8211.  Sergio transferred me to a James, who was with the Associates Advice and Counseling Group. A ticket number was assigned to the call/claim, 6025187.  I spoke with James for about 20 minutes about what was going on.  James put me on hold at 9:25 a.m. and the call was disconnected.  At 9:46 a.m., I able to reach two other people in the Atlanta Human Resources, Ed and Jay, and I was told that the store manager would be calling me by the end of the day with a final resolution. Ms. Gonzalez called around 5 p.m. and terminated me over the phone. She said that their "finding" was that Armando and I had a physical fight and a customer had to break it up. I repeatedly asked Ms. Gonzalez if anyone consulted the cameras as this accusation was simply not true. Ms. Gonzalez did not respond in any way concerning the cameras or the videotape that would have shown that none of these accusations were accurate. Instead, she said that I had received a first and final warning from Ms. Gantt in May related to the alleged failure to assist Art and Veronica with the computer and therefore they were terminating me. There was no mention of this ruse and the charade that I had endured over the last week with Ms. Waissman and Mr. Kullman, that was designed to "return me to work". There was no discussion about my purported diagnosis as bipolar with hypomania and whether there was any accommodation that would enable me to perform the essential functions of my position. After 14 stellar years of employment, I was terminated over the phone after Human Resources in Atlanta said I should be returned to work, after I went to work for 5 hours the day after this bogus incident and after I jumped through every hoop that Home Depot put me through with regard to EAP and doctors. I have subsequently seen my personnel file and there is no statement in it from Armando and at an unemployment appeal hearing, there was an admission by Home Depot that they do not have one. There is no statement by any customer and the identity of this alleged customer that purportedly broke up a fight is nowhere in the records. Indeed, the statements by the various managers are all inconsistent as to what they claim happened.  The cruel and tortured nature of what happened to me continued the next day, August 21, 2013, when I was called by Ms. Waissman who asked me how I was doing. Ms. Waissman claimed not to know that I was terminated. Rather than address the despicable nature of the termination in any way -- after all, just the Friday before Mr. Kullman told me to tell Ms. Waissman that I was okay to return to work and Ms. Waissman said I should hear from Mr. Santiago as to when I was to return -- all Ms. Waissman stated was that she hoped I would keep my last appointment with Mr. Kullman.  While subsequent to these events, I saw a true psychiatrist who has found that I am not bipolar, because of the "diagnosis" of the EAP personnel from Home Depot, my termination was due, in part, to the perception of my medical condition and disability. My termination from Home Depot was both discriminatory and retaliatory. The management at the Santa Ana Home Depot wanted to get rid of all of the older, higher paid employees and made them "specialists," in order to set up stringent goals for them to meet. The management then systematically terminated those older workers for failure to meet these arbitrary

-10-

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

guidelines in a position many of them did not want. I proved too tough to terminate this way, because I generally met the benchmarks. When I championed the legal rights of all the employees related to the violation of meal breaks, I became an even bigger target for management who wanted to terminate me in retaliation -- at any cost. My personnel file identifies the attempts to trump up my dismissal. Local management attempted to terminate me on several occasions with either false reasons or trumped up ones, but either was unable to finish the hatchet job because they failed to follow some store protocol or the HR in the corporate office told them they had not properly documented matters for the termination. The local management kept at it doggedly, until they got the green light after the horrific events chronicled above.

-11-
*Complaint -- DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

**VERIFICATION**

I, **Paul Hoffman**, am the Complainant in the above-entitled complaint.   I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On Jun 18, 2014, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

<div align="right">

Huntington Beach, CA

Paul Hoffman
</div>

-12-

*Complaint -- DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency      GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**      DIRECTOR PHYLLIS W. CHENG

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TTY 800-700-2320
www.dfeh.ca.gov

**AMENDED**

Jun 18, 2014

Paul Hoffman
17706 Van Buren, #B
Huntington Beach California 92647

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 274020-111001-R
Right to Sue: Hoffman / Home Depot U.S.A., Inc., Doing Business As The Home Depot

Dear Paul Hoffman,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective Jun 18, 2014 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TTY 800-700-2320
www.dfeh.ca.gov

DIRECTOR PHYLLIS W. CHENG

**AMENDED**

Enclosures

cc: Beatriz Gonzalez

Morgan Gantt

Jesse Santiago

Eric Doe

**PROOF OF SERVICE**

STATE OF CALIFORNIA    )
                       )    ss.
COUNTY OF LOS ANGELES  )

      I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action; my business address is 11355 W. Olympic Blvd., Ste. 200, Los Angeles, CA 90064.

      On **August 22, 2014,** I served the foregoing document described **FIRST AMENDED COMPLAINT** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows: **SEE ATTACHED SERVICE LIST**

[✓]  **(BY MAIL: As indicated on the attached Service List)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]  **(BY OVERNIGHT COURIER: As indicated on the attached Service List)** I caused the above referenced document(s) to be delivered to an overnight courier service, via **FEDERAL EXPRESS**, for delivery to the address indicated on the attached Service List..

[ ]  **(BY EMAIL:** As indicated on the attached Service List) I caused such document to be sent via email to the addressee and received a confirmed report indicating that this document was successfully transmitted to the party named above.

[ ]  **(BY PERSONAL SERVICE)** I caused such envelopes to be personally delivered by GOLDEN STATE MESSENGERS to the offices of the addressees.

[ ]  **(BY FACSIMILE TRANSMISSION)** I caused such document to be sent via facsimile to the addressee and received a confirmed transmission report indicating that this document was successfully transmitted to the party named above.

[ . ]  **(BY ELECTRONIC TRANSMISSION/COURT)** I transmitted a PDF version of this document by electronic mail to the party(s) identified on the service list using he e-mail address(es) and procedure provided pursuant to the Court's Electronic Filing Notification System, see, e.g., CCP section 1010.6 and CRC Rule 2.251.

      I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on August 22, 2014 at Los Angeles, California.

_Koko Masako_
Koko Masako

- 31 -

*Hoffman v. Home Depot U.S.A., Inc.*

Case No. 30-2014-00727891

**SERVICE LIST**

Julie Choi
LEE TRAN & LIANG
601 S. Figueroa St., Ste. 3900
Los Angeles, CA  90017

- 32 -

**FIRST AMENDED COMPLAINT**

# EXHIBIT G

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**09/18/2014** at 01:35:00 PM
Clerk of the Superior Court
By Joseph Tran, Deputy Clerk

1   **LEE TRAN & LIANG LLP**
    Steven C. Gonzalez (Bar No. 191756)
2   Steven.gonzalez@ltlattorneys.com
    Kevin Rivera (Bar No. 244925)
3   Kevin.rivera@ltlattorneys.com
    Julie Choi (Bar No. 281100)
4   Julie.choi@ltlattorneys.com
5   601 S. Figueroa Street, Suite 3900
    Los Angeles, CA 90017
6   Tel: (213) 612-3737
    Fax: (213) 612-3773
7

8   Attorneys for Defendants
    HOME DEPOT U.S.A., INC., BEATRIZ GONZALEZ,
9   MORGAN GANTT, and JESSIE SANTIAGO

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                     **FOR THE COUNTY OF ORANGE**

12

13   PAUL HOFFMAN,                              CASE NO.: 37-2014-00733252-CU-WT-CJC

14              Plaintiff,                       [Assigned for all purposes to The Hon.
                                                 Frederick P. Aguirre]
15        vs.
                                                 **DEFENDANT HOME DEPOT, INC.'S**
16                                               **ANSWER TO PLAINTIFF'S UNVERIFIED**
     HOME DEPOT U.S.A., INC., doing business as  **FIRST AMENDED COMPLAINT**
17   THE HOME DEPOT, a Delaware Corporation,
     BEATRIZ GONZALEZ, an individual; MORGAN
18   GANTT, an individual; JESSIE SANTIAGO, an   Complaint Filed:     July 10, 2014
     individual; ERIC DOE, an individual and DOES 1   Trial:           None set
19   through 50, inclusive

20              Defendants.

21

22

23

24

25

26

27

28

Defendant Home Depot U.S.A., Inc. ("Defendant") hereby answers the unverified First Amended Complaint ("FAC") filed by Plaintiff Paul Hoffman ("Plaintiff") as follows:

## GENERAL AND SPECIFIC DENIALS

Pursuant to the provisions of California Code of Civil Procedure Section 431.30, Defendant denies, generally and specifically, each and every allegation contained in the FAC, and further denies that Plaintiff has been damaged in the amount or amounts alleged therein, or in any other amount, or at all, by reason of any act or omission on the part of Defendant, or by any act or omission by any agent or employee of Defendant. Defendant further denies, generally and specifically, that Plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Without admitting that it carries the burden of proof as to any of the issues raised thereby, Defendant asserts the following separate and distinct affirmative defenses to Plaintiff's FAC and each purported cause of action therein and prays for judgment as set forth below. Defendant also hereby gives notice that it intends to rely upon such other and further affirmative defenses as may become available during investigation and discovery in this action. Defendant reserves the right to amend this Answer to assert any such defenses based on such investigation and discovery.

## FIRST AFFIRMATIVE DEFENSE

### (FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED)

1. The FAC and each cause of action contained therein fails to state a claim upon which relief may be granted.

/ / /

/ / /

-1-

## SECOND AFFIRMATIVE DEFENSE

### (STATUTE OF LIMITATIONS)

2.   The FAC, and each alleged cause of action contained therein, is barred by the applicable statute of limitations, including, but not limited to, Government Code sections 12960(d) and 12965(b); Code of Civil Procedure Sections 335.1, 338 and 343.

## THIRD AFFIRMATIVE DEFENSE

### (UNCLEAN HANDS)

3.   Plaintiff's causes of action are barred, in whole or in part, pursuant to the doctrine of "unclean hands" because Plaintiff engaged in conduct which proximately caused or contributed to any and all injuries Plaintiff allegedly suffered.

## FOURTH AFFIRMATIVE DEFENSE

### (FAILURE TO MITIGATE DAMAGES)

4.   Plaintiff has failed to mitigate any damages allegedly caused to him by the acts in which Defendant allegedly engaged.

## FIFTH AFFIRMATIVE DEFENSE

### (FACTS INSUFFICIENT TO SUPPORT CLAIM FOR PUNITIVE DAMAGES)

5.   The FAC, and each and every purported cause of action alleged therein, fails to state facts sufficient to sustain the imposition of punitive damages against Defendant pursuant to California Civil Code § 3294.

## SIXTH AFFIRMATIVE DEFENSE

### (PUNITIVE DAMAGES UNCONSTITUTIONAL IN THIS ACTION)

6.   An award of punitive damages in this action would violate Defendant's due process and equal protection rights under the United States Constitution and the California Constitution.

-2-

1            **SEVENTH AFFIRMATIVE DEFENSE**

2                **(AFTER-ACQUIRED EVIDENCE)**

3         7.   Plaintiff is barred, in part or total, from recovery of any damages, based upon the

4 doctrine of after-acquired evidence.

5

6              **EIGHTH AFFIRMATIVE DEFENSE**

7                   **(ESTOPPEL)**

8         8.   Plaintiff is estopped, by reason of his conduct and actions, from asserting each and any

9 of his alleged claims herein.

10

11               **NINTH AFFIRMATIVE DEFENSE**

12                  **(WAIVER)**

13         9.   Plaintiff has waived the right, by reason of his conduct and actions, to assert his

14 alleged claims herein.

15

16               **TENTH AFFIRMATIVE DEFENSE**

17             **(CAUSATION BY PLAINTIFF)**

18        10. Plaintiff's causes of action are barred, in whole or in part, because any damages or

19 injuries that Plaintiff allegedly suffered were caused by Plaintiff's own conduct and actions, and

20 not because of any unlawful conduct or actions by Defendant.

21

22             **ELEVENTH AFFIRMATIVE DEFENSE**

23 **(LEGITIMATE, NON-DISCRIMINATORY OR NON-RETALIATORY BUSINESS**

24                      **REASON)**

25        11. Plaintiff's causes of action are barred, in whole or in part, because each employment

26 action of which Plaintiff complains, if it occurred, was taken for legitimate business reasons that

27 did not violate public policy or any statutory prohibition.

28

## TWELFTH AFFIRMATIVE DEFENSE

### (APPROPRIATE REMEDIAL ACTION)

12. Defendant alleges that Plaintiff's FAC and each purported cause of action therein are barred, in whole or in part, because Defendant took all reasonable steps to prevent any alleged discrimination, harassment and/or retaliation once Defendant was made aware of Plaintiff's complaint(s), if Plaintiff in fact complained.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (AVOIDABLE CONSEQUENCES)

13. Defendant denies that it acted improperly and further denies that Plaintiff incurred any harm. However, assuming, arguendo, that Plaintiff was harmed, Plaintiff unreasonably failed to use the preventive and corrective measures that Defendant provided, and the reasonable use of Defendant's procedures would have prevented some or all of the harm that Plaintiff allegedly suffered.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (AT-WILL EMPLOYMENT)

14. Plaintiff's claims are barred because Plaintiff's term of employment was terminable at will, with or without cause, pursuant to California Labor Code section 2922.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (GOOD CAUSE)

15. If it is found that Plaintiff had a contractual right not to be terminated except for good cause, which Defendant expressly denies, Plaintiff was terminated for good cause.

-4-

## SIXTEENTH AFFIRMATIVE DEFENSE

### (JUSTIFICATION, GOOD FAITH)

16. Any acts alleged to have been committed by Defendant were committed in the exercise of good faith, with probable cause, were not arbitrary or capricious, were based upon legitimate factors, and were reasonable and justified under the circumstances. At all times relevant, Defendant acted with honesty of purpose and without any improper motive, purpose or means, and without any hatred, ill will, malice, or intent to injure.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (ACTS OUTSIDE SCOPE OF EMPLOYMENT)

17. If Defendant's employees or any of them committed the acts alleged in the FAC, although such is not admitted hereby or herein, such acts were committed outside the scope of employment and not by agents of Defendant, and thus, Defendant is not liable for such acts.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (SAME ACTION REGARDLESS OF PROTECTED CONDUCT)

18. Defendant denies that it unlawfully discriminated or retaliated against Plaintiff for engaging in protected conduct. Assuming, arguendo, that Plaintiff proves Defendant relied upon an illegal motivation, Defendant would have taken the same action even if it had not relied upon the improper ground.

## NINETEENTH AFFIRMATIVE DEFENSE

### (LACK OF AUTHORIZATION, RATIFICATION)

19. Defendant did not authorize, direct or participate in any alleged wrongful conduct. Any recovery on the FAC, or any purported cause of action alleged therein, is barred in whole or in part because Defendant did not aid, abet, counsel or encourage the alleged act(s).

-5-

## TWENTIETH AFFIRMATIVE DEFENSE

### (FAILURE TO EXHAUST)

20. Plaintiff's claims are barred by Plaintiff's failure to exhaust administrative remedies and/or internal grievance procedures.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (LACK OF KNOWLEDGE AS TO DISCRIMINATION OR RETALIATION)

21. Defendant alleges that Plaintiff's FAC and each purported cause of action therein are barred, in whole or in part, as Defendant had no knowledge that Plaintiff was subject to discrimination, harassment and/or retaliation, if any, as alleged in Plaintiff's FAC.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (NEGLIGENCE OF PLAINTIFF)

22. Plaintiff did not exercise ordinary care on his own behalf, and his own acts and omissions proximately caused and/or contributed to the loss, injury, damage, or detriment alleged by Plaintiff, and Plaintiff's recovery from Defendant, if any, should be reduced in proportion to the percentage of Plaintiff's negligence or fault.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (COMPARATIVE FAULT)

23. Defendant is informed and believes and upon such information and belief alleges that the damage and injury, if any, allegedly suffered by Plaintiff was directly and proximately caused and/or contributed to by Plaintiff's own negligence and comparative fault, or the negligence and fault of other persons and entities and therefore, Plaintiff's recovery, if any there be against Defendant, should be offset, diminished and reduced in accord with the principles of comparative fault.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (EXCLUSIVITY OF WORKERS' COMPENSATION ACT)

24. Plaintiff's claims for emotional distress are barred, in whole or in part, by the exclusivity provisions of the California Workers' Compensation Act, Labor Code Section 3600 *et seq.*

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (PRE-EXISTING CONDITION)

25. To the extent Plaintiff suffered any symptoms of mental or emotional distress or injury, they were the result of a pre-existing psychological disorder or alternative concurrent cause, and not the result of any act or omission of Defendant.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (CIVIL CODE § 1431.2)

26. Defendant alleges that any alleged emotional, mental and/or physical injury suffered by Plaintiff was proximately caused by the acts and/or omissions of persons and entities other than Defendant.  Accordingly, Defendant is entitled to an allocation of any and all non-economic damages pursuant to California Civil Code § 1431.2.

/ / /

/ / /

-7-

1    **WHEREFORE**, Defendant prays as follows:

2        1. That Plaintiff take nothing by reason of the First Amended Complaint and that

3    judgment be rendered in favor of Defendant;

4        2. That Defendant be awarded its costs of suit and attorneys' fees incurred in

5    defense of this action; and

6        3. For such other and further relief as the Court deems proper.

7

8    DATED: September 18, 2014                LEE TRAN & LIANG LLP

9

10

11                                  By: _____

12                                      STEVEN C. GONZALEZ
                                        KEVIN RIVERA
13                                      JULIE CHOI
                                        Attorneys for Defendants
14                                      HOME DEPOT U.S.A.,
                                        INC., BEATRIZ GONZALEZ, MORGAN
15                                      GANTT, and JESSIE SANTIAGO

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-

1    **DEMAND FOR JURY TRIAL**

2        Defendants hereby demand a trial by jury on all matters entitled to a jury trial in the above-

3    entitled action.

4

5    DATED: September 18, 2014            LEE TRAN & LIANG LLP

6

7                                By: _____

8                                    STEVEN C. GONZALEZ
                                     KEVIN RIVERA
9                                    JULIE CHOI
10                                   Attorneys for Defendants
                                     HOME DEPOT U.S.A.,
11                                   INC., BEATRIZ GONZALEZ, MORGAN
                                     GANTT, and JESSIE SANTIAGO
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT HOME DEPOT U.S.A, INC.'S
ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT

**PROOF OF SERVICE**

**STATE OF CALIFORNIA -- COUNTY OF ORANGE**

I am employed in the county of Los Angeles State of California.  I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 3900, Los Angeles, CA 90017.

On **September 18, 2014**, I served the foregoing document(s) described as

**DEFENDANT HOME DEPOT, INC.'S**
**ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT**

on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof in a sealed envelope, as follows:

John D. Younesi, Esq.                    *Attorneys for Plaintiff Paul Hoffman*
Jan A. Yoss, Esq.
YOUNESI & YOSS, LLP
11355 W. Olympic Blvd., Suite 200
Los Angeles, California 90064
Telephone: (310) 478-5722
Facsimile: (310) 478-5650
Email: jdyounesi@younesi.com
       jyoss@younesi.com

[X]    **BY MAIL** I placed such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **September 18, 2014**, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
EDGAR MARTINEZ

# EXHIBIT H

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**09/18/2014** at 01:35:00 PM
Clerk of the Superior Court
By Joseph Tran, Deputy Clerk

1  **LEE TRAN & LIANG LLP**
   Steven C. Gonzalez (Bar No. 191756)
2  Steven.gonzalez@ltlattorneys.com
   Kevin Rivera (Bar No. 244925)
3  Kevin.rivera@ltlattorneys.com
   Julie Choi (Bar No. 281100)
4  Julie.choi@ltlattorneys.com
5  601 S. Figueroa Street, Suite 3900
   Los Angeles, CA 90017
6  Tel: (213) 612-3737
7  Fax: (213) 612-3773

8  Attorneys for Defendants
   HOME DEPOT U.S.A., INC., BEATRIZ GONZALEZ,
9  MORGAN GANTT, and JESSIE SANTIAGO

10           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                   **FOR THE COUNTY OF ORANGE**

12

| | |
|---|---|
| 13  PAUL HOFFMAN, | CASE NO.: 37-2014-00733252-CU-WT-CJC |
| 14            Plaintiff, | [Assigned for all purposes to The Hon. Frederick P. Aguirre] |
| 15      vs. | **DEFENDANTS BEATRIZ GONZALEZ'S, MORGAN GANTT'S, AND JESSIE SANTIAGO'S NOTICE OF HEARING ON DEMURRER; DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| 16  HOME DEPOT U.S.A., INC., doing business as THE HOME DEPOT, a Delaware Corporation, BEATRIZ GONZALEZ, an individual; MORGAN | |
| 17  GANTT, an individual; JESSIE SANTIAGO, an individual; ERIC DOE, an individual and DOES 1 | |
| 18  through 50, inclusive | |
| 19            Defendants. | [[Proposed] Order filed concurrently herewith] |
| 20 | Complaint Filed:    July 10, 2014<br>Trial:              None set |
| 21 | Date:   January 12, 2015 |
| 22 | Time:   1:30 p.m.<br>Dept.:  C23 |
| 23 | Reservation Number:  72027835 |

24

25

26

27

28

---

DEFENDANTS BEATRIZ GONZALEZ'S, MORGAN GANTT'S, AND JESSIE
SANTIAGO'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 12, 2015, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Department C23 of the above-titled Court located at 700 Civic Center Drive West, Santa Ana, CA 92701, Defendants Beatriz Gonzalez, Morgan Gantt, and Jessie Santiago (collectively referred to as "Defendants"), will, and hereby do, demur generally to the ninth cause of action (Intentional Infliction of Emotional Distress) of the First Amended Complaint ("FAC") of Plaintiff Paul Hoffman on file herein, on the ground it fails to state a cause of action against Defendants pursuant to Code of Civil Procedure section 430.010.

Defendants request that the Court sustain their Demurrer without leave to amend for the following reasons: First, Plaintiff's claim for Intentional Infliction of Emotional Distress ("IIED") is barred by the exclusivity provisions of the Workers' Compensation Act. Where workers' compensation relief is available to an employee, it serves as the sole and exclusive remedy of the employee. This provision covers claims for IIED. Also, all of Plaintiff's allegations constitute a normal part of the employment relationship. As such, Plaintiff has failed to establish that the alleged misconduct constitutes "outrageous conduct," as a matter of law.

Further, Plaintiff's IIED claim is based on the same allegations as those that are the basis of Plaintiff's claims pursuant to the California's Fair Employment and Housing Act ("FEHA"). As a matter of law, Plaintiff cannot assert a cause of action under FEHA against individual supervisors or co-workers who allegedly discriminate or retaliate against him or her. As such, Plaintiff cannot assert this claim against Defendants under the guise of IIED. Finally, Plaintiff fails to allege facts establishing that Defendants engaged in the alleged wrongful conduct with the intention of causing or reckless disregard of the probability of causing Plaintiff emotional distress. Further, Plaintiff fails to provide facts showing severe emotional distress.

///

///

DEFENDANTS BEATRIZ GONZAELZ'S, MORGAN GANTT'S, AND JESSIE SANTIAGO'S
DEMURRERTO PLAINTIFF'S FIRST AMENDED COMPLAINT

1        The Demurrer will be based on this notice of hearing, the attached Demurrer and

2   Memorandum of Points and Authorities, and such other pleadings and papers as may be presented

3   at or before the hearing.

4

5   DATED: September 18, 2014            LEE TRAN & LIANG LLP

6

7

8                                       By: _____
                                             STEVEN C. GONZALEZ
9                                            KEVIN RIVERA
                                             JULIE CHOI
10                                           Attorneys for Defendants
                                             HOME DEPOT U.S.A.,
11                                           INC., BEATRIZ GONZALEZ, MORGAN
                                             GANTT, and JESSIE SANTIAGO
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS BEATRIZ GONZALEZ'S, MORGAN GANTT'S AND JESSIE SANTIAGO'S
DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>DEMURRER</u>**

Defendants Beatriz Gonzalez ("Gonzalez"), Morgan Gantt ("Gantt"), and Jessie Santiago ("Santiago") hereby demurrer generally to the FAC filed by Plaintiff Paul Hoffman ("Plaintiff") on the following grounds:

**<u>NINTH CAUSE OF ACTION</u>**

1.    The cause of action for intentional infliction of emotional distress fails to state facts sufficient to constitute a cause of action (a general demurrer).  Cal. Civ. Proc. Code § 430.10(e).

DATED: September 18, 2014                    LEE TRAN & LIANG LLP


By: _____
        STEVEN C. GONZALEZ
        KEVIN RIVERA
        JULIE CHOI
        Attorneys for Defendants
        HOME DEPOT U.S.A.,
        INC., BEATRIZ GONZALEZ, MORGAN
        GANTT, and JESSIE SANTIAGO

DEFENDANTS BEATRIZ GONZAELZ'S, MORGAN GANTT'S, AND JESSIE SANTIAGO'S
DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

I.    **INTRODUCTION**

3

Plaintiff Paul Hoffman ("Plaintiff") brings this employment action against his former

4

employer, Defendant Home Depot U.S.A., Inc. ("Home Depot") and several managers including

5

Defendant Beatriz Gonzalez ("Gonzalez"), Defendant Morgan Gantt ("Gantt"), and Defendant

6

Jessie Santiago ("Santiago") (these three individual defendants collectively referred to as

7

"Defendants").  The underlying basis for the allegations in the First Amended Complaint ("FAC")

8

are Plaintiff's claims of discrimination and harassment based on age disability.

9

The FAC alleges the following causes of action:  (1) harassment based on age: (2)

10

violation of Labor Code section 1102.5; (3) harassment based on disability or medical condition;

11

(4) age discrimination; (5) disability discrimination; (6) retaliation; (7) failure to prevent

12

harassment and discrimination; (8) wrongful termination; and (9) intentional infliction of

13

emotional distress ("IIED").  The IIED claim is the only cause of action asserted against the three

14

individual Defendants who now bring this demurrer.

15

Defendants request that the Court sustain their Demurrer without leave to amend for the

16

following reasons:  First, Plaintiff's claim for IIED is barred by the exclusivity provisions of the

17

Workers' Compensation Act.  Where workers' compensation relief is available to an employee, it

18

serves as the sole and exclusive remedy of the employee.  This provision covers claims for IIED.

19

Also, Plaintiff's allegations all constitute a normal part of the employment relationship.  As such,

20

Plaintiff has failed to establish that the alleged misconduct constitutes "outrageous conduct," as a

21

matter of law.

22

Further, Plaintiff's IIED claim is based on the same allegations as those that are the basis

23

of Plaintiff's claims pursuant to the California's Fair Employment and Housing Act ("FEHA").

24

As a matter of law, Plaintiff cannot assert a cause of action under FEHA against individual

25

supervisors or co-workers who allegedly discriminate or retaliate against him or her.  As such,

26

Plaintiff cannot assert this claim against Defendants under the guise of IIED.  Finally, Plaintiff

27

fails to allege facts establishing that Defendants engaged in the alleged wrongful conduct with the

28

-1-

intention of causing or reckless disregard of the probability of causing Plaintiff emotional distress. Further, Plaintiff fails to provide facts showing severe emotional distress.

## II.    STATEMENT OF FACTS

The FAC's sole allegations against Defendants consist of the following:

- "In March 2013, the Santa Ana store manager, Beatriz Gonzalez, began requiring all employees to take a one-hour off-the-clock lunch break, instead of the 30-minute break most of them were taking." FAC, ¶ 14.

- "Gonzalez called Hoffman into his (sic) office and berated him saying, 'Oh, you're the only one who has to have a 30-minute lunch. I have to change all these schedules just to accommodate you.'" Plaintiff said he would take the 60-minute lunch, and Gonzalez said, "Oh no, no it's too late now. It's already done. We'll try it for a few months and see how it works." FAC, ¶ 17.

- Gonzalez changed Hoffman's schedule so that he started a half hour earlier, and worked until 9:30 p.m. on Sundays. FAC, ¶¶ 18, 19.

- Gantt met with Plaintiff to go over his allegedly "scathing" performance review, in which he received a "V" for "valuable" instead of "O" for "outstanding." FAC, ¶ 22.

- Gantt and Gonzalez did not tell Plaintiff which managers provided feedback for the review. FAC, ¶ 23.

- Plaintiff's "V-for-valuable" performance marks caused him to have a panic attack, and in response, Gonzalez asked everyone to leave the room. FAC, ¶ 24.

- After Plaintiff recovered from his panic attack, Gonzalez wanted to finish the performance review. FAC, ¶ 25.

- Gantt told Plaintiff he was being placed on a Performance Improvement Plan. FAC, ¶ 26.

- Gantt accused Plaintiff of "not giving customer service," not helping another associate and not using new software. FAC, ¶ 32.

- Gantt gave Plaintiff a "first and final" written warning due to performance issues. FAC, ¶ 35.

- After another associate reported that Plaintiff had physically threatened him, Gantt asked Plaintiff to leave the store minutes before his shift ended.  FAC, ¶ 45.

- Gantt and Santiago placed Plaintiff on a paid leave after an associate reported that Plaintiff had physically threatened him, and directed Plaintiff to call Home Depot's Employee Assistance Program.  FAC, ¶ 47.

- Gonzalez terminated Plaintiff's employment over the phone for engaging in a physical fight with an associate that was broken up by a customer.  FAC, ¶ 57.

## III.    ARGUMENT AND AUTHORITIES

### A.    Standard for Demurrer

A demurrer is proper when any grounds for objection to a complaint appear on its face or from any matter of which the court may take judicial notice.  Pursuant to Code of Civil Procedure "When any ground for objection to a complaint . . . appears on the face thereof, or from any matter of which the court is required to or may take judicial notice, the objection on that ground may be taken by a demurrer to the pleading."  Cal. Civ. Proc. Code § 430.30(a).

While a court ruling on a demurrer must accept facts properly pleaded as true, a demurrer should be sustained where the allegations are insufficient to state a cause of action or where they clearly disclose a defense or bar to recovery.  *See Crosstalk Productions, Inc. v. Jacobson*, 65 Cal. App. 4th 631, 635 (1998).  Where no liability exists as a matter of law, as is the case here, a demurrer should be sustained without leave to amend.  *See Schonfeldt v. State of California*, 61 Cal. App. 4th 1462, 1465 (1998).

///

///

///

DEFENDANTS BEATRIZ GONZAELZ'S, MORGAN GANTT'S, AND JESSIE SANTIAGO'S DEMURRERTO PLAINTIFF'S FIRST AMENDED COMPLAINT

**B.    The FAC Fails To State A Cause Of Action For Intentional Infliction of Emotional Distress**

i.    *Claims For Intentional Infliction of Emotional Distress Are Preempted By The Workers' Compensation Act*

Employee claims for intentional infliction of emotional distress are precluded by the exclusivity provisions of the Workers' Compensation Act ("WCA"). Under Section 3602 of the California Labor Code, where workers' compensation is available to an employee, "the right to recover such compensation is … the sole and exclusive remedy of the employee … against the employer." Cal. Lab. Code § 3602. This provision covers "any injury … arising out of the employment," including "purely emotional" injuries. *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 747-56 (1992). If the injury arises out of the employment relationship, "claims for intentional … infliction of emotional distress are preempted by the [WCA]." *Id.* at 747.

This includes emotional distress caused by the employer's conduct in employment actions involving termination, promotions, demotions, criticism of work practices, or negotiations as to grievances, etc. The employer's conduct is deemed "a normal part of the employment relationship" and hence barred by the exclusive remedy provisions of the workers' compensation law. *See Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160 (1987); *Miklosy v. Regents of Univ. of Calif.*, 44 Cal. 4th 876, 902 (2008). Plaintiff has alleged nothing more than termination, criticism of work practices and other personnel management decisions, which are all a normal part of the employment relationship. The cause of action is therefore barred.

ii.    *Personnel Management Decisions Are Not "Outrageous" Conduct As A Matter Of Law*

To state a *prima facie* case of intentional infliction of emotional distress, the plaintiff must allege: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Heller v. Pillsbury Madison & Sutro*, 50 Cal. App. 4th 1367, 1388 (1996). Whether conduct is outrageous is a question of law determined by

-4-

courts. *Berkley v. Dowds*, 152 Cal. App. 4th 518, 534 (2007); *see Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998) ("[A]ppellate courts have affirmed orders which sustained demurrers on the ground that the defendant's alleged conduct was not sufficiently outrageous.").

"Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982). "Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009).

Plaintiff's allegations against Defendants consist merely of personnel management activity, which is insufficient to support a claim for intentional infliction of emotional distress, even if improper motivation is alleged.

> Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the **employer** for **discrimination**.

*Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) (emphasis added).

Firing an employee does not constitute "outrageous" conduct, even if the firing was without cause. *Buscemi v. McDonnell Douglas Corp.* 736 F.2d 1348, 1352 (9th Cir. 1984) (applying California law). Discipline and criticism are a normal part of the employment relationship and do not constitute "outrageous" conduct, even if intentional and malicious. *See Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990) (supervisor allegedly saying he wanted to cause plaintiff "as much grief as possible" did not support claim for IIED); *Lawler v. Montblanc North America, LLC*, 704 F. 3d 1235, 1245-46 (9th Cir. 2013) (applying California law, holding that a CEO's gruff, abrupt and intimidating manner of communicating criticisms did not qualify as "outrageous" where conduct and criticisms related to store's business operations and employee's conduct as manager).

Plaintiff alleges that Defendants required employees to take a one hour lunch instead of a 30-minute lunch; changed his schedule so that he started and ended his shift 30 minutes earlier;

-5-

DEFENDANTS BEATRIZ GONZAELZ'S, MORGAN GANTT'S, AND JESSIE SANTIAGO'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1    gave him a positive performance review; asked employees to leave the room when Plaintiff

2    believed he was having a panic attack; placed him on a performance improvement plan; gave him

3    a written warning for performance issues; placed him on a **paid** leave after he threatened another

4    employee; and terminated his employment for fighting with an employee.  **None** of these

5    allegations are outrageous as a matter of law, as they are a normal part of the employment

6    relationship.  The cause of action therefore fails.

7                  iii.    *The IIED Claim Is Based On The Same Allegations That Are The Basis For*

8                        *Plaintiff's FEHA Claims, And Thus Cannot Be Asserted Against*

9                        *Defendants, Who Were Not Plaintiff's Employer*

10    "[I]nfliction of emotional distress claims are merely alternative legal theories for holding

11    defendants liable for the same conduct" that underlies a related intentional tort, and thus, such

12    claims are "redundant" and must stand or fall with the related claim.  *Wong v. Tai Jing*, 189 Cal.

13    App. 4th 1354, 1378-79 (2010).  Here, the allegations supporting Plaintiff's IIED claim are the

14    same allegations made in support of his FEHA claims against Home Depot for harassment based

15    on age, harassment based on disability or medical condition, age discrimination, disability

16    discrimination, retaliation, failure to prevent harassment and discrimination, and wrongful

17    termination.

18    Notably, Plaintiff did **not** assert those causes of action against Defendants, nor could he.

19    As a matter of law, an aggrieved employee may not maintain a cause of action under the FEHA

20    against individual supervisors or coworkers who allegedly discriminate or retaliate against him or

21    her.  The FEHA (California Government Code section 12940(h)) applies to retaliation by "any

22    employer ... or person," it is interpreted to be consistent with § 12940(a), which prohibits

23    discrimination by "an employer" and does not apply to supervisors and coworkers.  *Jones v. Lodge*

24    *at Torrey Pines Partnership*, 42 Cal. 4th 1158, 1167-68, 1173-74 (2008) (retaliation); *see also,*

25    *Reno v. Baird*, 18 Cal. 4th 640, 645 (1998) (discrimination).

26    Thus, Plaintiff cannot escape the FEHA's requirement that individuals may not be sued for

27    discrimination or retaliation by alleging the very same claims couched in terms of intentional

28    infliction of emotional distress.  "It would be absurd to forbid a plaintiff to sue a supervisor under

DEFENDANTS BEATRIZ GONZALEZ'S, MORGAN GANTT'S, AND JESSIE
SANTIAGO'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1 the FEHA, then allow essentially the same action under a different rubric." *Reno*, 18 Cal. 4th at

2 664. For example, in *Smith v. International Brotherhood of Electrical Workers*, 109 Cal. App. 4th

3 1637 (2003), the plaintiff sued his former union and a union manager for, among others, age and

4 disability discrimination under the FEHA, and intentional and negligent infliction of emotional

5 distress based on the same conduct. The court held that "because the emotional distress claims

6 arise out of conduct for which [the manager] cannot be held personally liable it follows he cannot

7 be held liable for the emotional distress claims either." *Id.* at 1658; *see also, Reno*, 18 Cal. 4th at

8 664 ("Because plaintiff may not sue [defendant] as an individual supervisor under the FEHA, she

9 may not sue her individually for wrongful discharge in violation of public policy.").

10    The same principles apply here. Because Plaintiff cannot maintain his FEHA claims

11 against Defendants, he may not maintain the same claims against Defendants under the guise of

12 IIED. Accordingly, the Court should sustain Defendants' demurrer *without* leave to amend.

13    iv.    *The First Amended Complaint Fails to Allege Intent Or Severe Emotional*

14    *Distress*

15    The IIED cause of action also fails because Plaintiff fails to allege facts establishing that

16 Defendants engaged in the alleged wrongful conduct with the intention of causing or reckless

17 disregard of the probability of causing Plaintiff emotional distress. There are simply no facts that

18 go to support how or why Defendants allegedly intended to injure Plaintiff. Further, Plaintiff fails

19 to provide facts showing severe emotional distress: "Severe emotional distress means …

20 emotional distress of such substantial quantity or enduring quality that no reasonable [person] in a

21 civilized society should be expected to endure it." *Girard v. Ball*, 125 Cal. App. 3d 772, 787–88

22 (1981). Here, Plaintiff does not allege that he suffered any particular injury as a result of

23 Defendants' alleged conduct. Instead, he merely alleges (in a conclusory and general manner) that

24 he suffered emotional distress due to a "hostile and offensive work environment and retaliation

25 against him for engaging in a statutorily protected activity," which allegedly included "subjecting

26 Plaintiff to questions and analysis about his mental and psychological state." FAC, ¶ 144.

27 Plaintiff also fails to sufficiently allege that his distress was of a substantial or enduring quality.

28 Accordingly, the Court should sustain Defendants' demurrer as to this cause of action.

## IV.    THE DEMURRER SHOULD BE SUSTAINED WITHOUT LEAVE TO AMEND

Generally, leave to amend a complaint should be granted if there is a "reasonable possibility that the defect in the complaint can be cured by amendment […]." *Hendy v. Losse*, 54 Cal. 3d 723, 742 (1991). "The burden is on the plaintiff, however, to demonstrate the manner in which the complaint might be amended." *Id.* Moreover, "[l]eave to amend *should* be denied where the facts are not in dispute and the nature of the claim is clear, but no liability exists under substantive law." *Lawrence v. Bank of Am.*, 163 Cal.App.3d 431, 436 (1985) (emphasis added); *see also, Schonfeldt v. State of Cal.*, 61 Cal. App. 4th 1462, 1465 (1998) ("If there is no liability as a matter of law, leave to amend should not be granted.").

Furthermore, denial of leave to amend is proper "when a complaint contains allegations that are fatal to a cause of action." *Banis Restaurant Design, Inc. v. Serrano*, 134 Cal. App. 4th 1035, 1044 (2005). "[A] plaintiff cannot avoid those defects simply by filing an amended complaint that omits the problematic facts or pleads facts inconsistent with those alleged earlier." *Id.* Here, Plaintiff has no basis for bringing an intentional infliction of emotional distress claim against Defendants. Even assuming that Defendants engaged in the conduct alleged by Plaintiff, Defendants would have been acting in their capacity as employees of Home Depot and not in their individual capacity. They cannot be found personally liable for the alleged conduct consisting merely of personnel management decisions. The only claims, if any at all, that Plaintiff has are against his employer and not Defendants. This is a fatal defect in his claim that Plaintiff cannot cure by amendment.

/ / /

/ / /

DEFENDANTS BEATRIZ GONZAELZ'S, MORGAN GANTT'S, AND JESSIE
SANTIAGO'S DEMURRERTO PLAINTIFF'S FIRST AMENDED COMPLAINT

V.    **CONCLUSION**

Pursuant to the foregoing discussion, Defendants Beatriz Gonzalez, Morgan Gantt, and Jessie Santiago respectfully request that this Court sustain its Demurrer without leave to amend.

DATED: September 18, 2014            LEE TRAN & LIANG LLP


By: _____
STEVEN C. GONZALEZ
KEVIN RIVERA
JULIE CHOI
Attorneys for Defendants
HOME DEPOT U.S.A.,
INC., BEATRIZ GONZALEZ, MORGAN
GANTT, and JESSIE SANTIAGO

1

## PROOF OF SERVICE

### STATE OF CALIFORNIA -- COUNTY OF ORANGE

2

3    I am employed in the county of Los Angeles State of California.  I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 3900, Los Angeles, CA 90017.

4

5    On **September 18, 2014**, I served the foregoing document(s) described as

6    **DEFENDANTS BEATRIZ GONZALEZ'S, MORGAN GANTT'S, AND JESSIE SANTIAGO'S NOTICE OF HEARING ON DEMURRER; DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES**

7

8

9    on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof in a sealed envelope, as follows:

10   John D. Younesi, Esq.                    *Attorneys for Plaintiff Paul Hoffman*
     Jan A. Yoss, Esq.
11   YOUNESI & YOSS, LLP
     11355 W. Olympic Blvd., Suite 200
12   Los Angeles, California 90064
     Telephone: (310) 478-5722
13   Facsimile: (310) 478-5650
     Email: jdyounesi@younesi.com
14          jyoss@younesi.com

15   **[X]    BY MAIL** I placed such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

16

17   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

18

19

20   Executed on **September 18, 2014**, at Los Angeles, California.

21

22   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23

24

25   _____
     EDGAR MARTINEZ

26

27

28

1

2

3

4

5

6

7

8

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9

**FOR THE COUNTY OF ORANGE**

10

11 | PAUL HOFFMAN,

12 |               Plaintiff,

13 |        vs.

14 | HOME DEPOT U.S.A., INC., doing business as
THE HOME DEPOT, a Delaware Corporation,

15 | BEATRIZ GONZALEZ, an individual;
MORGAN GANTT, an individual; JESSIE

16 | SANTIAGO, an individual; ERIC DOE, an
individual and DOES 1 through 50, inclusive

17 |               Defendants.

18

19

20

21

22

23

CASE NO.: 37-2014-00733252-CU-WT-CJC

[Assigned for all purposes to The Hon. Frederick P. Aguirre]

**[PROPOSED] ORDER RE: DEFENDANTS BEATRIZ GONZALEZ'S, MORGAN GANTT'S, AND JESSIE SANTIAGO'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

[Notice of Demurrer; Defendants' Demurrer to Plaintiff's First Amended Complaint filed concurrently herewith]

Complaint Filed:    July 10, 2014
Trial:              None set

Date:    January 12, 2015
Time:    1:30 p.m.
Dept.:   C23
Reservation Number: 72027835

24

25

26

27

28

1

[PROPOSED] ORDER REGARDING DEFENDANTS'
DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1

## **PROPOSED ORDER**

2      The Demurrer of Defendants Beatriz Gonzalez, Morgan Gantt, and Jessie Santiago

3 Defendant to the First Amended Complaint filed by Plaintiff Paul Hoffman and on file herein

4 ("FAC") came on for hearing in Department C23 of this Court, located at 700 Civic Center Drive

5 West, Santa Ana, California, 92701, on January 12, 2015, at 1:30 p.m.  Having considered all

6 papers filed in support of and in opposition to the Demurrer and the arguments of counsel at the

7 hearing, and GOOD CAUSE APPEARING THEREFORE,

8      IT IS ORDERED that Defendants Beatriz Gonzalez's, Morgan Gantt's, and Jessie

9 Santiago's Demurrer to Plaintiff's FAC is GRANTED in its entirety without leave to amend.

10

11      **IT IS SO ORDERED.**

12

13 DATED: _____          _____

14                                          HON. FREDERICK P. AGUIRRE
                                            JUDGE OF THE SUPERIOR COURT

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

[PROPOSED] ORDER REGARDING DEFENDANTS'
DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

**PROOF OF SERVICE**

**STATE OF CALIFORNIA -- COUNTY OF ORANGE**

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 3900, Los Angeles, CA 90017.

On **September 18, 2014**, I served the foregoing document(s) described as

**[PROPOSED] ORDER RE: DEFENDANTS BEATRIZ GONZALEZ'S, MORGAN GANTT'S, AND JESSIE SANTIAGO'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof in a sealed envelope, as follows:

John D. Younesi, Esq.                                  *Attorneys for Plaintiff Paul Hoffman*
Jan A. Yoss, Esq.
YOUNESI & YOSS, LLP
11355 W. Olympic Blvd., Suite 200
Los Angeles, California 90064
Telephone: (310) 478-5722
Facsimile: (310) 478-5650
Email: jdyounesi@younesi.com
        jyoss@younesi.com

**[X]**    **BY MAIL** I placed such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **September 18, 2014**, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
EDGAR MARTINEZ

# EXHIBIT I

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

| | FOR COURT USE ONLY |
|---|---|

NAME OF JUSTICE COURT DISTRICT OR OF BRANCH COURT, IF ANY
Orange County Superior Court
Central Justice Center

TITLE OF CASE (ABBREVIATED)
Hoffman v. Home Depot, USA

ATTORNEY(S) NAME AND ADDRESS
Jan A. Yoss (143978)
Younesi & Yoss, LLP
11355 W. Olympic Blvd., Ste. 200
Los Angeles, CA  90064
BAR NO.: 143978

CASE NUMBER
30-2014-00733252

TELEPHONE
(310)478-5722

ATTORNEY(S) FOR
Plaintiff Paul Hoffman

## AMENDMENT TO COMPLAINT

### FICTITIOUS NAME    (NO ORDER REQUIRED)

Upon filing the complaint here, plaintiff(s) being ignorant of the true name of a defendant and having designated said defendant in the complaint by the fictitious name of

Eric Doe

and having discovered the true name of the said defendant to be

Eric Gonzalez

hereby amends the complaint by inserting such true name in place and stead of such fictitious name wherever it appears in said complaint.

Jan A. Yoss

ATTORNEY(S) FOR PLAINTIFF(S)

Paul Hoffman

### INCORRECT NAME    (REQUIRES ORDER THEREON)

Plaintiff(s) having designated a defendant in the complaint by the incorrect name of

and having discovered the true name of the said defendant to be

hereby amends the complaint by inserting such true name in place and stead of such incorrect name wherever it appears in said complaint.

ATTORNEY(S) FOR PLAINTIFF(S)

### ORDER

Proper cause appearing, plaintiff(s) _____ allowed to file the above amendment to the complaint.
                                    (IS/ARE)

Date _____          _____
                                        JUDGE OF THE ABOVE ENTITLED COURT

AMENDMENT TO COMPLAINT

C.C.P 473, 474
OC-2413

F 0363-2413

## PROOF OF SERVICE

STATE OF CALIFORNIA    )
                        )   ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action; my business address is 11355 W. Olympic Blvd., Ste. 200, Los Angeles, CA 90064.

On **October 29, 2014,** I served the foregoing document described as **AMENDMENT TO COMPLAINT** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows: **SEE ATTACHED SERVICE LIST**

[✓]  **(BY MAIL: As indicated on the attached Service List)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]  **(BY OVERNIGHT COURIER: As indicated on the attached Service List)** I caused the above referenced document(s) to be delivered to an overnight courier service, via **FEDERAL EXPRESS**, for delivery to the address indicated on the attached Service List..

]  **(BY EMAIL:** As indicated on the attached Service List) I caused such document to be sent via email to the addressee and received a confirmed report indicating that this document was successfully transmitted to the party named above.

[ ]  **(BY PERSONAL SERVICE)** I caused such envelopes to be personally delivered by GOLDEN STATE MESSENGERS to the offices of the addressees.

[ ]  **(BY FACSIMILE TRANSMISSION)** I caused such document to be sent via facsimile to the addressee and received a confirmed transmission report indicating that this document was successfully transmitted to the party named above.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on October 29, 2014 at Los Angeles, California.

_____
Koko Masako

- 1 -

**CASE MANAGEMENT STATEMENT**

*Hoffman v. Home Depot U.S.A., Inc.*

Case No. 30-2014-00727891

**SERVICE LIST**

Julie Choi
LEE TRAN & LIANG
601 S. Figueroa St., Ste. 3900
Los Angeles, CA  90017

*Attorney for Defendants*

- 2 -

**CASE MANAGEMENT STATEMENT**

# EXHIBIT J

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Jan A. Yoss (143978)<br>Younesi & Yoss, LLP<br>11355 W. Olympic Blvd., Ste. 200<br><br>Los Angeles, CA 90064<br>TELEPHONE NO. (310)478-5722  FAX NO. *(Optional)*<br>E-MAIL ADDRESS *(Optional)*: jyoss@younesi.com<br>ATTORNEY FOR *(Name)*: Plaintiff Paul Hoffman | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

PLAINTIFF/PETITIONER: Paul Hoffman

DEFENDANT/RESPONDENT: Home Depot, USA, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>30-2014-00733252 |
|---|---|

TO *(insert name of party being served)*: Eric Gonzalez

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: November 10, 2014

Koko Masako
_____          ► _____
(TYPE OR PRINT NAME)                          (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. ☐ A copy of the summons and of the complaint.
2. ☒ Other: *(specify)*: Summons, First Amended Complaint, Amendment to Complaint, Civil Case Cover Sheet, ADR Package

*(To be completed by recipient)*:
Date this form is signed:

Danielle R. Claxton
_____          ► _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,      (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)             ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Legal<br>Solutions<br>Plus | Code of Civil Procedure,<br>§§ 415.30, 417.10 |

# EXHIBIT K

1  LEE TRAN & LIANG LLP
   Steven C. Gonzalez (SBN 191756)
2  steven.gonzalez@ltlattorneys.com
   Danielle R. Claxton (SBN 272003)
3  danielle.claxton@ltlattorneys.com
   Lacey Rainwater (SBN 294710)
4  lacey.rainwater@ltlattorneys.com
   601 S. Figueroa Street, Suite 3900
5  Los Angeles, CA 90017
   Tel: (213) 612-8900
6  Fax: (213) 612-3773

7  Attorneys for Defendants
   HOME DEPOT U.S.A., INC., BEATRIZ
8  GONZALEZ, MORGAN GANTT, JESSIE
   SANTIAGO, and ERIC GONZALEZ
9

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

12/18/2014 at 04:27:00 PM
Clerk of the Superior Court
By Fidel Ibarra,Deputy Clerk

10        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11              **FOR THE COUNTY OF ORANGE**

12

13  PAUL HOFFMAN,

            Plaintiff,
14
       vs.
15
   HOME DEPOT U.S.A., INC., doing business as
16  THE HOME DEPOT, a Delaware Corporation,
   BEATRIZ GONZALEZ, an individual; MORGAN
17  GANTT, an individual; JESSIE SANTIAGO, an
   individual; ERIC DOE, an individual and DOES 1
18  through 50, inclusive

19          Defendants.

20

21

22

23

24

25

26

27

28

CASE NO.: 37-2014-00733252-CU-WT-CJC

[Assigned for all purposes to The Hon.
Frederick P. Aguirre]

**DEFENDANT ERIC GONZALEZ'S
NOTICE OF HEARING ON
DEMURRER; DEMURRER TO
PLAINTIFF'S FIRST AMENDED
COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES**

[[Proposed] Order filed concurrently
herewith]

Complaint Filed:     July 10, 2014
Trial:  None set

Date:   March 30, 2015
Time:   1:30 p.m.
Dept.:  C23
Reservation Number: 72080737

---

DEFENDANT ERIC GONZALEZ'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1         TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS

2  OF RECORD:

3         PLEASE TAKE NOTICE that on March 30, 2015, at 1:30 p.m. or as soon thereafter as the

4  matter may be heard, in Department C23 of the above-titled Court located at 700 Civic Center

5  Drive West, Santa Ana, CA 92701, Defendant Eric Gonzalez ("Defendant"), will, and hereby

6  does, demur generally to the ninth cause of action for Intentional Infliction of Emotional Distress

7  as alleged in the First Amended Complaint ("FAC") of Plaintiff Paul Hoffman on file herein, on

8  the ground it fails to state a cause of action against Defendant pursuant to Code of Civil Procedure

9  section 430.010.

10        The Demurrer will be based on this notice of hearing, the attached Demurrer and

11  Memorandum of Points and Authorities, and such other pleadings and papers as may be presented

12  at or before the hearing.

13  DATED: December 18, 2014        LEE TRAN & LIANG LLP

14

15

16                     By: _____
                        STEVEN C. GONZALEZ

17                        DANIELLE R. CLAXTON
                        LACEY RAINWATER

18                        Attorneys for Defendants Home Depot U.S.A., Inc., The Home Depot, Inc., Beatriz Gonzalez, Jesse Santiago,

19                        Morgan Gantt, and Eric Gonzalez

20

21

22

23

24

25

26

27

28

DEFENDANT ERIC GONZALEZ'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1

### DEMURRER

2    Defendant Eric Gonzalez ("Eric Gonzalez" or "Defendant") hereby demurrers generally to

3    the FAC filed by Plaintiff Paul Hoffman ("Plaintiff") on the following grounds:

4

### NINTH CAUSE OF ACTION

5    1.    The cause of action for Intentional Infliction of Emotional Distress fails to state

6    facts sufficient to constitute a cause of action (a general demurrer).  Cal. Civ. Proc. Code §

7    430.10(e).

8

9    DATED: December 18, 2014        LEE TRAN & LIANG LLP

10

11

12    By: _____
      STEVEN C. GONZALEZ
13    DANIELLE R. CLAXTON
      LACEY RAINWATER
14    Attorneys for Defendants Home Depot U.S.A., Inc., The
      Home Depot, Inc., Beatriz Gonzalez, Jesse Santiago,
15    Morgan Gantt, and Eric Gonzalez

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Paul Hoffman's ("Plaintiff") "blame everyone" approach to pleading is not legally sufficient to state a claim against Defendant Eric Gonzalez, a former supervisor.  Plaintiff brings this employment action against his former employer, Defendant Home Depot U.S.A., Inc. ("Home Depot") and several managers including Defendants Beatriz Gonzalez, Morgan Gantt, Jessie Santiago, and Eric Gonzalez ("Mr. Gonzalez" or "Defendant").  The focus of the First Amended Complaint ("FAC") is discrimination based on age and disability.  The only cause of action alleged against Mr. Gonzalez is intentional infliction of emotional distress ("IIED").  The only facts alleged against Mr. Gonzalez are that he agreed with a statement that Plaintiff could return to work after he was involved in an altercation with another employee, and shortly thereafter, Mr. Gonzalez asked Plaintiff to come to an office.  In that office, Mr. Santiago, not Mr. Gonzalez, told Plaintiff that Home Depot conducted a further review of the altercation and decided to place Plaintiff on leave.  In essence, Plaintiff seeks to hold Mr. Gonzalez personally liable for agreeing with a statement (one that would have benefitted Plaintiff, no less) and then asking Plaintiff to enter an office for a meeting.

Plaintiff's accusations are wholly insufficient to state a claim.  Recovery for these claims is barred by the exclusivity provisions of the Workers' Compensation Act.  Assuming that recovery is not barred, Plaintiff still failed to plead facts to support the prima facie elements of IIED.  Mr. Gonzalez's alleged conduct of agreeing with someone and calling Plaintiff into an office was not "outrageous conduct."  Plaintiff does not sufficiently plead that Mr. Gonzalez engaged in the alleged conduct with the intention of causing or reckless disregard of the probability of causing emotional distress.  Plaintiff did not suffer harm, that is, severe emotional distress, as a result of any actionable conduct by Mr. Gonzalez.  In reality, the IIED claim against Mr. Gonzalez is Plaintiff's attempt to make an "end run" around the rule that an employee such as Mr. Gonzalez is not personally liable for discrimination or retaliation in violation of the California Fair Employment and Housing Act ("FEHA").  As a matter of law, individuals cannot be liable for such claims, asserted under the guise of IIED.

DEFENDANT ERIC GONZALEZ'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

## II.   STATEMENT OF FACTS

Plaintiff alleged two purported facts against Mr. Gonzalez.  According to the First Amended Complaint ("FAC"), Plaintiff got into a fight with another Home Depot employee on the sales floor.  (FAC ¶¶ 37-41.)  Kim, a Home Depot employee in the Atlanta, Georgia Human Resources office, allegedly said that she was comfortable with Plaintiff returning to the sales floor.  Mr. Gonzalez and Ms. Gantt were both present.  (FAC ¶ 46.)  Five hours later, Mr. Gonzalez and Mr. Santiago summoned Plaintiff into an office.  (FAC ¶ 47.)  Mr. Santiago then told Plaintiff that "they reviewed the issued *again* and that they were going to put Hoffman on leave without pay."  (FAC ¶ 47 (emphasis in original).)  Mr. Gonzalez is not alleged to have engaged in any conduct in this office.  (*See generally* FAC.)

Plaintiff asserted the IIED cause of action against Mr. Gonzalez and the other defendants on the following grounds:  "The conduct induced subjecting Plaintiff to a hostile and offensive work environment and retaliation against him for engaging in a statutorily protected activity.  It also included subjecting Plaintiff to questions and analysis about his mental and psychological state that was inappropriate."  (FAC ¶ 144.)  Mr. Gonzalez is not alleged to have subjected Plaintiff to the questioning about his mental and psychological state, and he is not a named defendant, or even mentioned, in Plaintiff's harassment cause of action.  (*See generally* FAC.)

## III.   ARGUMENT AND AUTHORITIES

### A.   Standard for Demurrer

Sections 430.30(a) and 430.50(a) of the Code of Civil Procedure allow a defendant to challenge a complaint by demurrer when the grounds for objection appear on the face of the complaint.  Grounds for a demurrer include failing to state facts sufficient to constitute a cause of action and stating uncertain facts.  Cal. Civ. Proc. Code § 430.10.  The demurrer admits the truth of all material facts properly pleaded but not the truth of "contentions, deductions or conclusions of law."  *Aubry v. Tri-City Hosp. Dist.*, 2 Cal. 4th 962, 967 (1992).  Conclusory averments and conclusions of law do not constitute a statement of fact upon which relief may be granted.  *See Davaloo v. State Farm Ins. Co.*, 135 Cal. App. 4th 409, 415 (2005).

DEFENDANT ERIC GONZALEZ'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

**B.     Claims for Intentional Infliction of Emotional Distress Is Subject to the Exclusive Remedy Provision of the Workers' Compensation Act**

Employee claims for IIED are subject to the exclusivity provisions of the Workers' Compensation Act ("WCA").  Where workers' compensation is available to an employee, "the right to recover such compensation is … the sole and exclusive remedy of the employee … against the employer." Cal. Lab. Code § 3602.  This provision covers "any injury… arising out of the employment," including "purely emotional" injuries.  *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 747-56 (1992).  If the injury arises out of the employment relationship, "claims for intentional … infliction of emotional distress are preempted by the [WCA]." *Id.* at 747.  This includes emotional distress caused by the employer's conduct in employment actions involving termination, promotions, demotions, criticism of work practices, or negotiations as to grievances, etc.  The employer's conduct is "a normal part of the employment relationship," and therefore, recovery is barred.  *See Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 160 (1987); *Miklosy v. Regents of Univ. of Calif.*, 44 Cal. 4th 876, 902 (2008).  Plaintiff only alleged innocuous facts as to Mr. Gonzalez, that is, his preliminary agreement with a statement regarding Plaintiff's ability to return to work after a fight with a co-worker, and his later request that Plaintiff enter an office for a meeting.   These facts are relevant only to criticism of work practices and other personnel management decisions, all of which are a normal part of the employment relationship.  Therefore, any recovery is limited to the exclusivity provision of the WCA, and Plaintiff cannot state a claim pursuant to which he is entitled to recover in superior court.

**C.     Plaintiff Failed to Allege Facts Sufficient to State a Cause of Action for IIED against Mr. Gonzalez**

**i.     *Mr. Gonzalez did not Engage in "Outrageous" Conduct***

To state a *prima facie* case for IIED, a plaintiff must allege: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Heller v. Pillsbury Madison & Sutro*, 50 Cal. App. 4th 1367, 1388 (1996).  Whether

DEFENDANT ERIC GONZALEZ'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1  conduct is outrageous is a question of law. *Berkley v. Dowds*, 152 Cal. App. 4th 518, 534 (2007);

2  *see Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998) ("[A]ppellate courts have affirmed

3  orders which sustained demurrers on the ground that the defendant's alleged conduct was not

4  sufficiently outrageous."). "Conduct to be outrageous must be so extreme as to exceed all bounds

5  of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal. 3d

6  197, 209 (1982). "Liability for intentional infliction of emotional distress does not extend to mere

7  insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hughes v. Pair*,

8  46 Cal. 4th 1035, 1051 (2009).

9       Plaintiff's allegations against Mr. Gonzalez, *at best*, consist of personnel management

10  activity, not outrageous conduct beyond the bounds of human decency. *See Janken v. GM Hughes*

11  *Elecs.*, 46 Cal. App. 4th 55, 80 (1996). Terminating an employee is not "outrageous," even if it

12  was without cause. *Buscemi v. McDonnell Douglas Corp.* 736 F.2d 1348, 1352 (9th Cir. 1984)

13  (applying California law). Discipline and criticism are a normal part of the employment

14  relationship and do not constitute "outrageous" conduct, even if intentional and malicious. *See*

15  *Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990) (supervisor allegedly saying he wanted to cause

16  plaintiff "as much grief as possible" did not support claim for IIED); *Lawler v. Montblanc North*

17  *America, LLC*, 704 F. 3d 1235, 1245-46 (9th Cir. 2013) (applying California law, holding that a

18  CEO's gruff, abrupt and intimidating manner of communicating criticisms did not qualify as

19  "outrageous" where conduct and criticisms related to store's business operations and employee's

20  conduct as manager). If personnel management decisions are improperly motivated, the remedy is

21  a suit against the ***employer*** for ***discrimination***. *Janken*, 46 Cal. App. 4th at 80. Here, Mr.

22  Gonzalez's alleged conduct is personnel management. Agreeing with an assessment that Plaintiff

23  may work on the sales floor after an altercation, and later asking Plaintiff to come to a meeting in

24  which a manager had reversed that decision after further review is reasonable and typical of a

25  supervisor who must manage a store and ensure that employees are not fighting with each other in

26  front of customers. As a matter of law, Mr. Gonzalez's conduct, as supervisor, is not outrageous.

27

28

DEFENDANT ERIC GONZALEZ'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

   ii. *Plaintiff Fails to Allege Facts to State the Elements of Intent to Cause Emotional Distress and Severe Emotional Distress*

   Plaintiff did not allege facts indicating that Mr. Gonzalez intended to cause or acted with the reckless disregard of the probability of causing emotional distress, a required element of stating an IIED cause of action. *Heller*, 50 Cal. App. 4th at 1388. There are no facts that support how or why Mr. Gonzalez allegedly intended to injure Plaintiff.

   Plaintiff did not allege facts showing that Plaintiff allegedly suffered severe emotional distress, another required element of an IIED cause of action. *Id.* "Severe emotional distress means ... emotional distress of such substantial quantity or enduring quality that no reasonable [person] in a civilized society should be expected to endure it." *Girard v. Ball*, 125 Cal. App. 3d 772, 787–88 (1981). Plaintiff did not allege that he suffered any injury as a result of Mr. Gonzalez's conduct. He merely alleges (in a conclusory and general manner) that he suffered emotional distress due to a hostile work environment. (FAC ¶ 144.)

**D. The IIED Claim Improperly Attempts to Hold Gonzalez Personally Liable for Discrimination and Retaliation under FEHA**

   An aggrieved employee cannot maintain a cause of action under FEHA against individual supervisors or coworkers who allegedly discriminated or retaliated against him or her. California Government Code section 12940(h) prohibits retaliation by "any employer ... or person," and is interpreted as consistent with section 12940(a), which prohibits discrimination by "an employer." *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1167-68, 1173-74 (2008) (retaliation); *see also Reno v. Baird*, 18 Cal. 4th 640, 645 (1998) (discrimination). Thus, Mr. Gonzalez cannot be held personally liable for discrimination or retaliation.

   The allegations supporting Plaintiff's IIED cause of action are the same allegations stated in support of the FEHA causes of action against Home Depot for harassment based on age, harassment based on disability or medical condition, age discrimination, disability discrimination, retaliation, failure to prevent harassment and discrimination, and wrongful termination. Plaintiff cannot avoid FEHA's prohibition against holding individuals liable for discrimination or retaliation by alleging the same facts in an IIED cause of action. "It would be absurd to forbid a

1  plaintiff to sue a supervisor under the FEHA, then allow essentially the same action under a

2  different rubric." *Reno*, 18 Cal. 4th at 664.  For example, in *Smith v. International Brotherhood of*

3  *Electrical Workers*, 109 Cal. App. 4th 1637 (2003), a plaintiff sued his former union and a union

4  manager for for age and disability discrimination under the FEHA as well as intentional and

5  negligent infliction of emotional distress based on the same set of facts.  The court held that

6  "because the emotional distress claims arise out of conduct for which [the manager] cannot be

7  held personally liable it follows he cannot be held liable for the emotional distress claims either."

8  *Id.* at 1658; *see also Reno*, 18 Cal. 4th at 664 ("Because plaintiff may not sue [defendant] as an

9  individual supervisor under the FEHA, she may not sue her individually for wrongful discharge in

10 violation of public policy.").  The same principles apply here.  Because Plaintiff cannot maintain

11 his FEHA claims against Mr. Gonzalez, he cannot assert liability using the same facts but under

12 the guise of IIED.

13 **IV.     THE DEMURRER SHOULD BE SUSTAINED WITHOUT LEAVE TO AMEND**

14        Generally, leave to amend should be granted if there is a "reasonable possibility that the

15 defect in the complaint can be cured by amendment [...]." *Hendy v. Losse*, 54 Cal. 3d 723, 742

16 (1991).  "The burden is on the plaintiff, however, to demonstrate the manner in which the

17 complaint might be amended."  *Id.*  Moreover, "[l]eave to amend *should* be denied where the facts

18 are not in dispute and the nature of the claim is clear, but no liability exists under substantive law."

19 *Lawrence v. Bank of Am.*, 163 Cal. App. 3d 431, 436 (1985) (emphasis added); *see also,*

20 *Schonfeldt v. State of Cal.*, 61 Cal. App. 4th 1462, 1465 (1998) ("If there is no liability as a matter

21 of law, leave to amend should not be granted.").  Denial of leave to amend is proper "when a

22 complaint contains allegations that are fatal to a cause of action."  *Banis Restaurant Design, Inc. v.*

23 *Serrano*, 134 Cal. App. 4th 1035, 1044 (2005).  "[A] plaintiff cannot avoid those defects simply

24 by filing an amended complaint that omits the problematic facts or pleads facts inconsistent with

25 those alleged earlier."  *Id.*

26        Here, Plaintiff has no factual basis for his IIED cause of action against Mr. Gonzalez.

27 Assuming that he engaged in the alleged conduct, he will still be found to have only engaged in

28 personnel management decisions, a requirement of his role as a supervisor and manager for Home

DEFENDANT ERIC GONZALEZ'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1   Depot.  Mr. Gonzalez cannot be held personally liable for this conduct, and Plaintiff should not be

2   allowed to amend his complaint unless he can explain what new facts he can allege, in good faith,

3   to cure this fatal defect.

4                    **V.    CONCLUSION**

5          Pursuant to the foregoing discussion, Defendant respectfully requests that this Court

6   sustain his Demurrer.  Defendant further asks that the Court sustain the Demurrer without leave to

7   amend unless Plaintiff can demonstrate a proper basis for amendment.

8

9   DATED: December 18, 2014          LEE TRAN & LIANG LLP

10

11                              By: _____

12                                  STEVEN C. GONZALEZ
                                    DANIELLE R. CLAXTON
13                                  LACEY RAINWATER
                                    Attorneys for Defendants Home Depot U.S.A., Inc., The
14                                  Home Depot, Inc., Beatriz Gonzalez, Jesse Santiago,
                                    Morgan Gantt, and Eric Gonzalez
15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT ERIC GONZALEZ'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

**PROOF OF SERVICE**

**STATE OF CALIFORNIA -- COUNTY OF ORANGE**

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 3900, Los Angeles, CA 90017.

On **December 18, 2014**, I served the foregoing document(s) described as

**DEFENDANT ERIC GONZALEZ'S NOTICE OF HEARING ON DEMURRER; DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof in a sealed envelope, as follows:

John D. Younesi, Esq.                          *Attorneys for Plaintiff Paul Hoffman*
Jan A. Yoss, Esq.
YOUNESI & YOSS, LLP
11355 W. Olympic Blvd., Suite 200
Los Angeles, California 90064
Telephone: (310) 478-5722
Facsimile: (310) 478-5650
Email: jdyounesi@younesi.com
jyoss@younesi.com

**[X]**    **BY MAIL** I placed such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **December 18, 2014**, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

EDGAR MARTINEZ

# EXHIBIT L

1  John D. Younesi, Esq. (Bar No. 120339)
   Jan A. Yoss, Esq. (Bar No. 143978)
2  **YOUNESI & YOSS, LLP**
   11355 W. Olympic Blvd., Suite 200
3  Los Angeles, California 90064
   Telephone:  (310) 478-5722 ✦ Facsimile:  (310) 478-5650
4  Email: jdyounesi@younesi.com
         jyoss@younesi.com
5
   Attorneys for Plaintiff, **PAUL HOFFMAN**
6

7

8              **SUPERIOR COURT OF CALIFORNIA**

9        **COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

10 **PAUL HOFFMAN,** an individual          Case No. 30-2014-00727891
                                            [Honorable Frederick P. Aguirre, Dept. C23]
11
                  Plaintiff,               **PLAINTIFF'S MEMORANDUM OF**
12                                         **POINTS AND AUTHORITIES IN**
            vs.                            **OPPOSITION TO DEMURRER TO**
13                                         **FIRST AMENDED COMPLAINT**
   **HOME DEPOT U.S.A., INC.,** doing business
14 as **THE HOME DEPOT,** a Delaware       *Demand for Jury Trial*
   Corporation; **BEATRIZ GONZALEZ,**  an
15 individual; **MORGAN GANTT,** an        Date:  January 12, 2015
   individual; **JESSIE SANTIAGO,** an     Time:  1:30 p.m.
16 individual; **ERIC DOE,** an individual and  Dept.:  C-23
   DOES 1 to 50, Inclusive,
17
18                Defendants.
19
20         Plaintiff Paul Hoffman ("Hoffman") hereby presents his opposition to the demurrer
21 of Home Depot, U.S.A., Inc., Beatriz Gonzalez, Morgan Gantt and Jesus Gonzalez (sued as Jessie
22 Gonzalez) (collectively, the "Demurring Defendants") as follows:
23
24
25
26
27
28
                                      - 1 -
              **OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT**

1

## TABLE OF CONTENTS

2

3    I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

4    II.    RELEVANT ALLEGATIONS OF THE COMPLAINT . . . . . . . . . . . . . . . . .    3

5    III.    LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

6        A.  A DEMURRER TESTS THE LEGAL SUFFICIENCY

7        OF THE ALLEGATIONS IN THE COMPLAINT AND

8        ACCEPTS AS TRUE THOSE ALLEGATIONS. . . . . . . . . . . . . . . . . . . . . . .    10

9

10        B.    CLAIMS FOR INTENTIONAL INFLICATION

11        OF EMOTIONAL DISTRESS ARE NOT BARRED BY THE

12        EXCLUSIVITY OF WORKERS' COMPENSATION OR FEHA. . . . . . . . . . .    11

13

14    IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT

## TABLE OF AUTHORITIES

### Cases

Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund (2001) 24 C4th 800 . . . . . . . . . . . . .11

Cole v. Fair Oaks Fire Protection Dist. 1987) 43 Cal.3d 148 . . . . . . . . . . . . . . . . . . . . . . . .11

Dell E. Webb Corp. v. Structural Materials Co. (1981) 123 Cal.App.3d 593 . . . . . . . . . . . . 10

Donabedian v. Mercury Ins. Co. (2004) 116 Cal.App.4th 968 . . . . . . . . . . . . . . . . . . . . . . . .10

Fermino v. Fedco (1994) 7 Cal.4th 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Fletcher v. Western National Life Ins. Co. (1970) 10 Cal.App.3d 376

Fundin v. Chicago Pneumatic Tool Co. (1984) 152 Cal.App.3d 951 . . . . . . . . . . . . . . . . . . .10

Kelly v. General Telephone Co. (1982) 136 Cal.App.3d 278 . . . . . . . . . . . . . . . . . . . . . . . . 12

Kovatch v. Cal. Casualty Mgmt (1998) 65 Cal.App.4th 1256  . . . . . . . . . . . . . . . . . . . . . . .13

McClung v. Employment Development Department (2004) 34 Cal.4th 467 . . . . . . . . . . . . . .13

Operating Engineers Local 3 v. Johnson (2003) 110 CA4th 180 . . . . . . . . . . . . . . . . . . . . . .12

Shoemaker v.Myers (1990) 52 Cal.3d 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..11

Unruh v. Truck Insurance Exchange (1972) 7 Cal.3d 616  . . . . . . . . . . . . . . . . . . . . . . . . . .11

Wayte v. Rollins International, Inc. (1985) 169 Cal.App.3d 1  . . . . . . . . . . . . . . . . . . . . . . .12

### Statutes

California Code of Civil Procedure § 452. . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . .10

Labor Code § 3600  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Labor Code §3602  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Labor Code §3850  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

- ii -

I.    **INTRODUCTION**

The Demurring Defendants have demurred to the Ninth Cause of Action for Intentional Infliction of Emotional Distress.  They contend that (1) the claim is preempted by the workers' compensation exclusivity provisions; (2) the allegations are not sufficient to establish the type of egregiousness necessary for an intentional infliction claim; and (3) the claim is identical to the FEHA claims and thus barred because FEHA claims cannot be asserted against an individual manager.  The arguments all fail.  Claims alleging conduct outside of the normal employment activity are not preempted by workers' compensation.  In general, claims that rise to the level of intentional infliction of emotional distress are outside the scope of the employment relationship.  Here, Hoffman alleges significantly egregious conduct by Defendants in lying to Hoffman about his employment status -- telling him he had not been fired, when, in truth he had.  By then telling Hoffman that if he contacted the EAP and followed their instructions, he would be allowed to return to work when this was categorically untrue.  Hoffman's privacy was invaded when, against his will, he had to participate in a farce where inquiries were made about his mental health and then he was told he was bipolar with manic episodes by two hacks that pretended to be doctors but were not.  Hoffman withstood this humiliation because he thought he was going to get his job back.  Indeed, the "hacks" told him he was "released to return to work," which only meant that they were then sending him back to be told he had been fired, some 9 days prior.  There is no reasonable person who would believe that such conduct falls within that which is normally expected in the work place.

The allegations relate specifically to the facts identified above concerning invasion of privacy, misconduct related to duping Hoffman into going to EAP and the false accusations of medical conditions.  These are not claims for discrimination and retaliation alleged in the other causes of action.  While these facts have relevance to identify the discriminatory and retaliatory motive, they are not identical claims.  What is more, claims for intentional misconduct by an individual are actionable, even if they are claims under FEHA.

**OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT**

II.     **RELEVANT ALLEGATIONS OF THE COMPLAINT**

The following is a summary of the relevant allegations in the First Amended Complaint relevant to the only claim that is attacked by the demurrer, the claim for Intentional Infliction of Emotional Distress:

Hoffman started working at Home Depot in March 1999 in the Santa Ana Store, number 606. Hoffman is an exceptional person. He is hard-working, affable and well liked by both fellow associates and customers. Throughout the years, Hoffman received many accolades and customer service awards. (Complaint, para. 11.) In or about early 2013, Hoffman was first targeted, along with several other workers over 40 years old, for termination by the management of his store. (Complaint, para. 12.) In late 2012, and early 2013, Hoffman saw the other older workers around him being let go for failure to meet these new sales guidelines. It was clear by some of the comments being made to Hoffman and the unreasonable sales and other benchmark criteria being foisted on him, called the metrics, that Hoffman was similarly being singled-out for termination. (Complaint, para. 13.)

In addition to being targeted for his age, Hoffman was also retaliated against by his store's management for asserting his and other employee's rights to meal breaks pursuant to company policy. In March 2013, the Santa Ana store manager, Beatriz Gonzalez, began requiring all employees to take a one-hour off-the-clock lunch break, instead of the 30-minute break most of them were taking. (Complaint, para. 14.) At the request of his fellow employees and to understand the company policy better himself, Hoffman called corporate Human Resources to report the issue. (Complaint, para. 16.) The next day, Gonzalez called Hoffman into his office and berated him saying, "Oh, you're the only one who has to have a 30-minute lunch. I have to change all these schedules just to accommodate you." Even when Hoffman began to fear for his job out of retaliation and said he would take the 60-minute lunch, Gonzalez said, "Oh no, no it's too late now. It's already done." (Complaint, para. 17.) We'll try it for a few months and see how it works." Gonzalez retaliated against Hoffman by changing his schedule so that he then was forced to work fewer hours, or lose valuable time helping his son with his homework. (Complaint, para.

**OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT**

18.)

Home Depot then brought in a new Assistant Manager over the Specialists -- a young woman in her 20's who targeted Hoffman even more directly and fabricated issues that did not exist and reported inaccurately events in the workplace to skew them against Hoffman -- in order to build a record. (Complaint, paras. 21 through 28.)

For instance, on May 17, 2013, one of the employees from the Pro Desk, Art, asked Hoffman if he would help him with the new Milgard software. Hoffman agreed and went with Art to the Millworks Desk. Hoffman saw that Art was in the wrong program altogether and showed Art how to navigate the new custom designs software system that had been installed. Once Hoffman finished showing Art how to use the program with a sample patio door, Art went to get his customer and asked Hoffman to stay nearby so Art could turn to Hoffman if he had any further questions. Hoffman agreed to help. While at the desk, Hoffman was barraged with customer calls and customers who were physically present and he had to assist each of them. When Art returned to the Millwork Desk, he came with another associate, Veronica, and the customer. (Complaint, para. 29.) At this time, Hoffman was working about 10 feet away, getting up and down to help other customers. Hoffman was involved with three or four separate matters when Art and Veronica turned and asked him a question about the custom design Milgard software. Hoffman was at least 8 feet away from their computer at that time, but tried to look at the screen. Hoffman had not come across the particular option on the screen. When Hoffman expressed that he was not yet familiar with the options being shown, Veronica responded, in front of Art and their mutual customers, "You mean you do not know the software?!" (Complaint, para. 30.) Veronica repeated this comment several times over the course of the next few minutes. (Complaint, para. 31.) Hoffman left the area to assist a customer. When Hoffman returned to the Millwork Desk, Gantt was there. She accused Hoffman of not giving customer service and not helping out another associate. Gantt said in front of Veronica, Art, and the customer, that the new software had been in the system for a year, and that this is one of the problems with Hoffman, that he was not using the new software. (Complaint, para. 32.) Gantt accused Hoffman of not wanting to give good customer

OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT

1   service in front of the customers and the other employees.  Gantt then asked Hoffman to come
2   back to the office, deciding that helping this particular customer now became secondary to
3   reprimanding Hoffman.  (Complaint, para. 33.) By the time they got to the office, Don, the
4   Department Head, was already present.  Gantt again accused Hoffman of not helping Art and his
5   customer. Hoffman attempted to explain how he did help and was trying to help.  After Hoffman
6   explained what had happened from his perspective, the confrontation ended for that day.
7   (Complaint, para. 34.) The next day, however, May 18, 2013, Hoffman came to work and Gantt
8   called him into the office again.  Kim, a representative from Atlanta Human Resources, was on the
9   phone and  wanted to know about everything that happened the prior day.  It turns out that Gantt,
10  along with Human Resources in Atlanta, had written Hoffman up for a "first and final" warning for
11  "treating a fellow associate, customer or vendor in an abusive, threatening, inflammatory or
12  disrespectful manner." Hoffman's inability to help Art, Veronica and Gantt certainly did not rise to
13  the level of any of these things.  (Even Gantt has admitted as much in her deposition in this case.)
14  Gantt was intentionally trumping up what had happened to "set the stage" to terminate Hoffman.
15  (Complaint, para. 35.)
16        On another occasion, at around 7:30 p.m. on August 11, 2013, Hoffman was at the
17  Millwork Desk using the computer on the left side of the desk to assist customers with window and
18  door orders.  Miguel Diaz, an associate in plumbing, was using the right side of the desk to address
19  2 full carts of mark-downed product.  An associate named Armando, who Hoffman had never seen
20  before, but learned later had been with Home Depot for about six months, approached the left side
21  of the Millwork Desk and stopped about three to four feet in front of Hoffman.  He commanded
22  Mr. Diaz to go to Aisle 22 to help customers.  Mr. Diaz responded that there were three other
23  associates in plumbing on duty and asked Armando if he could page one of them as Mr. Diaz was
24  busy with the mark-downs. (Complaint, para. 37.)  Armando told Mr. Diaz again he had to go and
25  turned to walk away.  Mr. Diaz got up and went to help the customer. Hoffman then said to
26  Armando, "You should follow him and show him the customer that needs help."  Hoffman also
27  said to Armando,  "You should stand behind him and listen to what he's saying so if the same
28

1    question comes up tomorrow or in the future, then you may be able to answer it." Armando

2    responded by walking toward Hoffman, sticking his finger out and saying, "You don't fucking tell

3    me what to do." Hoffman then said, "Okay. I won't tell you what to do, I'll show you what to do."

4    Hoffman picked up the phone in front of him and dialed 126, which is the number for plumbing.

5    The phone was laying on the desk on the right side where Miguel was sitting moments before. It

6    rang and obviously no one was there to answer it. Hoffman then said to Armando, "This will

7    happen quite a bit, and when this happens, this is what you do." Hoffman then dialed 676 to page

8    overhead. Hoffman said, "Any associate in plumbing, please call 325. Any associate in plumbing,

9    please call 325." Hoffman hung up the phone and he pointed toward Mr. Diaz down the aisle.

10    Hoffman said to Armando, "If I was you, that's where I would be right now, showing Miguel the

11    specific customer that you said needed help and trying to get PK (Product Knowledge) on

12    whatever it is Miguel was talking about." (Complaint, para. 38.)

13        Armando moved closer to Hoffman, lifted up the sleeve of his shirt to reveal a tattoo on his

14    arm and then he stuck his finger millimeters from Hoffman's nose and said, "You don't want to

15    fuck with this (referring to the tattoo), and you don't want to fuck with me." It appeared that

16    Armando was trying to signify that he had some sort of gang affiliation. Hoffman stuck his hands

17    up in the air and said, "I don't own a gun, the only knife I use is to cut up vegetables, but however

18    you want to deal with this, you let me know." (Complaint, para. 39.)

19        At about this time, a bald Asian man dressed in white who appeared to be a religious monk

20    that Hoffman had noticed earlier waiting to be helped walked very close by the desk and looked at

21    Hoffman and Armando. Hoffman had seen this person's interaction earlier with the other

22    customers he was with. (Complaint, para. 40.) The man had no interaction with Armando or

23    Hoffman. He did not touch either one of them and said nothing to either of them. He simply

24    passed by on his way to return to the others in his group. However, as soon as this man passed

25    Hoffman and Armando, Armando changed his expression. Armando said, "Hey man, I'm sorry

26    we're on the same team, we should be working together. We're cool right? We're cool right?"

27    Hoffman stuck out both of his hands with his palms up and fists open and shook hands with

28

- 6 -

OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT

1  Armando. Hoffman responded, "Yes we're cool. My name is Paul Hoffman, I work in the
2  Millworks Department, which is Windows and Doors. and if you ever need help in this
3  department, you can come to me because I know I'll be in your department cutting wood and
4  helping people over there. Next time, you should take the time to listen to what Miguel has to say
5  about anything in plumbing. He really knows his stuff and you could learn a lot from him."
6  Armando said, "I have worked for Home Depot for a long time and I know what I'm doing." He
7  walked away. That was all that had happened. (Complaint, para. 41.)

8      Later that evening, however, Chris Pula, who is a Department Head, approached Hoffman
9  and after Mr. Pula discussed some issues with Hoffman concerning Mr. Pula's daughter, Mr. Pula
10  told Hoffman that he needed to go to training room. When Hoffman arrived, present was Gantt
11  and Mr. Pula. Gantt said that Armando's shift had ended, and he was gone, but that he reported
12  that he felt threatened by Hoffman. (Complaint, para. 42.) Gantt asked Hoffman to write down
13  what had happened. Hoffman wrote the story down, although he did exclude the expletives that
14  Armando used and his pointing to his tattoo, because Hoffman did not want to inflame the issues
15  and cause Armando to get in trouble. Hoffman's shift was scheduled to end at 8:00 p.m. and he
16  needed to leave immediately to get home to his children. He rushed through writing what had
17  happened. (Complaint, para. 44.) Gantt, without even reviewing what Hoffman had written or
18  noticing that it indicated that Armando was the only aggressive person in the encounter, said to
19  Hoffman, "I'd like you to leave the store." It was the end of Hoffman's shift and so he clocked out
20  and left. (Complaint, para. 45.)

21      The next day, August 12, 2013, Hoffman reported to work at 1:30 p.m. He was
22  immediately told to wait in the office. He did so for forty minutes. Then, Gantt came in and said,
23  "We're ready for you." She took Hoffman to another office where they held a telephone
24  conference with Kim in the Atlanta Human Resources office. After the call, where the issues of
25  the prior day were discussed, Kim very clearly said, "I'm comfortable with Hoffman going on the
26  floor and working." The manager-on-duty, Eric Gonzalez, and Gantt, both agreed and Hoffman
27  went to work. (Complaint, para. 46.) A full five hours later, Eric and another manager, Jesse
28

**OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT**

1  Santiago, summoned Hoffman into the office again. Santiago told Hoffman that they reviewed the

2  issue *again* and that they were going to put Hoffman on leave without pay. *When Hoffman*

3  *asked if he was being fired, they said no,* but told him that he had to call a person named Liz

4  Waissman within 24 hours. The managers told Hoffman that Ms. Waissman works for Care

5  Solutions, the Employee Assistance Program ("EAP"), and that she would help Hoffman get back

6  to work. (Complaint, para. 47.)

7      Hoffman, the dutiful employee that he is, and perhaps a bit naive, immediately called Ms.

8  Waissman. Hoffman began to answer Ms. Waissman's "assessment" questions, although Ms.

9  Waissman never told Hoffman the purpose of the questions. Then, the questions turned very

10  personal. *Ms. Waissman asked Hoffman if he had ever been hospitalized for mental illness.*

11  Hoffman told Ms. Waissman, unqualifiedly, that he had not ever been hospitalized for any issue.

12  *Ms. Waissman then told Hoffman that it was absolutely unbelievable to her that Hoffman had*

13  *never been hospitalized and that he had some of the greatest "coping skills she had ever seen."*

14  (Complaint, para. 48.) Hoffman did not understand the nature of these questions and was not

15  comfortable speaking with someone about these personal and strange questions over the phone.

16  Hoffman wanted to meet with Ms. Waissman in person and look his in the eyes to understand the

17  nature of what was being asked. Ms. Waissman refused, but told Hoffman to meet with Jeffrey

18  Kullman, another EAP employee, who Ms. Waissman called her eyes and ears. Ms. Waissman

19  still did not tell Hoffman the purpose of the questions she was asking or why Hoffman was

20  speaking with her. Hoffman, ever trusting, went to meet with Mr. Kullman. The next day, he

21  spoke with Ms. Waissman again. (Complaint, para. 50.) *Ms. Waissman then blurted out that Mr.*

22  *Kullman diagnosed Hoffman as bipolar, with hypomania episodes.* Mr. Kullman has no medical

23  degree or training whatsoever. (Complaint, para. 51.) Ms. Waissman told Hoffman that if he

24  wanted his job back he had to go to his doctor, get a complete physical with blood tests, and get an

25  appointment to see a psychiatrist. She also told him to Google hypomania episodes and do some

26  research and see if Hoffman believed any of it applied to him. *Ms. Waissman then callously*

27  *stated to Hoffman that he had to "man up and face it" (the "it" being she and Mr. Kullman's*

28

**OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT**

1    *"diagnosis"*).   Ms. Waissman told Hoffman that his next appointment with Mr. Kullman was a
2    few days later and Hoffman had to bring a doctor's card at that time that showed Hoffman was
3    taking steps to see a psychiatrist.  Hoffman also had to bring his own research on hypomania.
4    Hoffman, in a relative state of shock and still trusting Home Depot management, said he would do
5    it if it would get him back to work. (Complaint, para. 51.)

6        Hoffman went to see his own doctor, which Kullman and Waissman told him he had to do
7    in order to return to Home Depot.  By this point, Hoffman was suffering from shortness of breath
8    and having difficulty sleeping.  (Complaint, para. 52.) Hoffman was confused by what had been
9    going on and troubled by this "psychological" diagnosis. (Complaint, para. 53.)
10   . Lahey and he will fill out all of the paperwork and put Hoffman on worker's compensation leave.

11       Hoffman went to his Home Depot store and saw Gonzalez, the store general manager.
12   Hoffman explained that he was doing everything that was asked of him to return to his position
13   and that the doctor that Ms. Waissman sent him to, Dr. Lahey, needed Hoffman to obtain approval
14   from Home Depot for Hoffman to continue seeing Dr. Lahey.  Gonzalez feigned that she did not
15   know what was going on and said she would make some calls and get back to Hoffman.  Hoffman
16   then left the store.  When he returned to his car, he had a message from Ms. Waissman.  Ms.
17   Waissman said she was going to call Mr. Kullman and then start the paperwork for Hoffman to
18   return to work.  (Complaint, para. 54.)

19       On August 20, 2013, Gonzalez did not call Hoffman in the morning.  Gonzalez called
20   around 5 p.m. and terminated Hoffman over the phone.  She said that their "finding" was that
21   Armando and Hoffman had a physical fight and *a customer had to break it up*.  Both of these
22   allegations, and certainly an allegation that a customer was involved in breaking up any fight, was
23   categorically false.  Gonzalez said that *Hoffman had received a first and final warning from*
24   *Gantt in May related to the alleged failure to assist Art and Veronica* with the computer and
25   therefore they were terminating Hoffman.  (Complaint, para. 57.)

26       This entire "set up" about Hoffman *not* being fired on August 12 and needing to go to EAP
27   to return to work.  EAP's heinous labeling of Hoffman as bipolar with manic episodes from two

28

**OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT**

1  persons where were not even certified health professionals was offensive.   The whole reason

2  Hoffman was told to go to EAP was *not*   to return him to work, which EAP had confirmed he

3  would do if he jumped through its hoops, which he did.  The purpose, as is indicated in the internal

4  records of Home Depot, was to buy Home Depot time to have Gonzalez return from vacation and

5  develop an "excuse" -- a bipolar "diagnosis" as a basis and reason to terminate Hoffman.

6     Hoffman has suffered significant and grave emotional distress from this offensive and

7  abhorrent behavior.   The conduct rises to the level of intentional infliction of emotional distress

8  that offends the senses of ordinary people.

9  **III.   LEGAL ARGUMENT**

10    **A. A DEMURRER TESTS THE LEGAL SUFFICIENCY OF THE ALLEGATIONS**

11  **IN THE COMPLAINT AND ACCEPTS AS TRUE THOSE ALLEGATIONS.**

12     Judicial policy favors resolving cases on their merits rather than through technical

13  challenges to the pleadings.   A demurrer raises issues of law, not fact, regarding the opposing

14  party's pleading.  *Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.  Pursuant to

15  California Code of Civil Procedure § 452, in ruling on a demurrer, all allegations in the complaint

16  *"must be liberally construed*, with a view to substantial justice between the parties."  California

17  Code of Civil Procedure § 452 (emphasis added).   A court is to assume all facts pled on the

18  complaint to be true and may not consider facts asserted in memorandum supporting the demurrer.

19  The court must accept as true all facts that are properly pled and must assume that the plaintiff will

20  be able to prove all of the facts alleged.  *Fundin v. Chicago Pneumatic Tool Co.* (1984) 152

21  Cal.App.3d 951, 955; *Dell E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593,

22  604 (stating "[f]or the purposes of a demurrer, all allegations pled in the complaint [or cross-

23  complaint] must be taken as true.")

24     Applying the aforesaid standards, it is evident that Defendants' demurrer must be overruled

25  in its entirety.

26

27

28

OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT

**B.    CLAIMS  FOR  INTENTIONAL  INFLICATION  OF  EMOTIONAL DISTRESS  ARE  NOT  BARRED  BY  THE  EXCLUSIVITY  OF  WORKERS' COMPENSATION OR FEHA.**

Defendants assert three principles in support of their demurrer to the Ninth Cause of Action: (1) that claims for infliction of emotional distress are barred by the exclusivity of workers' compensation; (2) that even if such claims were not barred, the allegations in the First Amended Complaint do not, as a matter of law, rise to the level of the types of claims that support a cause of action for intentional infliction of emotional distress; and (3) the claims are all based upon claims under FEHA, which provider for manager's immunity.  These arguments all fail.

The exclusivity of workers' compensation only bars claims that are "within the risk of normal employment activity.    When the conduct is outside the risk, then the workers' compensation preemption is not a bar.  *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 C4th 800, 819–820.  In the *Vacanti v. State Comp.* case, the court provided a thorough analysis of this principle.  The Court noted: "Even if the exclusivity provisions cover the alleged injury, plaintiffs may still pursue their causes of action if they fit within the 'narrow exception to the WCAB's jurisdiction' established in *Unruh [v. Truck Insurance Exchange* (1972) 7 Cal.3d 616, 629–631]."    The Court noted that this exception focuses on the alleged acts or motives that establish the elements of the cause of action and considers whether these acts or motives constitute "a risk reasonably encompassed within the compensation bargain."  *Shoemaker v.Myers* (1990) 52 Cal.3d 1, 16. If they do, then the exclusive remedy provisions govern and bar the cause of action. If they do not, then the exclusive remedy provisions are inapplicable because the malfeasor is *no longer* acting as an "employer," as understood in these provisions. (Labor Code §§ 3600, 3602, 3850.

The *Vacanti* court noted that there are several guiding principles when evaluating the preemption and claims that fall outside of it.  "When determining whether the exception applies to a cause of action, courts first determine whether the alleged acts that give rise to that cause of action are 'of the kind that [are] within the compensation bargain.' Vacanti, *supra*, at 820, *citing, Fermino v. Fedco* (1994) 7 Cal.4th 701, 718.  In the exclusivity context, motive refers to the purpose or reason behind the acts and *not* the intentional or negligent nature of these acts. (See

- 11 -

*ibid.*) Thus, courts should disregard any alleged intent beyond the intent to do the acts that establish the elements of the cause of action when determining whether these acts are encompassed within the compensation bargain. Such a focus is necessary in order to preserve the compensation bargain.

Accordingly, typical employer actions such as demotions, promotions, criticism of work practices, and termination do not, by themselves, exempt a cause of action from exclusivity. *Cole v. Fair Oaks Fire Protection Dist.* 1987) 43 Cal.3d 148, 160, *Shoemaker, supra,* 52 Cal.3d at p. 20. But, the Viscanti court found, "an employer or insurer may not use the exclusive remedy provisions as a 'get out of jail free' card by characterizing its acts as a normal employer or insurer activity. The critical issue is whether the alleged acts, bereft of their motivation, can ever be viewed as a normal aspect of the employer relationship or claims process. Where the tortious act is not closely connected to a normal employer or insurer action, it is not subject to exclusivity.

Here, telling an employee he is not fired (when the decision had been made to fire him), then sending him to the employer's assistance program under the false premise that if he sees these people, he will return to work. Then, having the EAP personnel invade the privacy rights of the employee by inquiring as to hospitalizations and mental health issues; and then "diagnosing" the employee involuntarily and by persons without qualifications to make such a "diagnosis." Is absolutely not part of the employment bargain. Finally, after the passage of 9 days of this "hell," telling the employee he can return to work only to then be terminated goes far outside the bounds of reasonableness and work related activity.

The elements of a cause of action for intentional infliction of emotional distress include: (a) *Extreme* and *outrageous* conduct by defendant; (b) *Intention* to cause or *reckless disregard* of the probability of causing emotional distress; (c) *Severe* emotional suffering; and (d) *actual and proximate causation* of the emotional distress. At the pleading stage, it is only necessary to plead each of these elements. After that point, the matter must be submitted to the jury. In *Wayte v. Rollins International, Inc.* (1985) 169 Cal.App.3d 1, 17, the Court reversed a decision not to submit similar allegations to the jury. The Court found: "The first amended complaint specifically alleges that the parent company represented to plaintiffs that Mr. Wayte, Jr. (the employee plaintiff's son), would be covered (under the employer's medical insurance), that plaintiffs relied

- 12 -

OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT

on these representations, that on September 23, 1974, defendants advised plaintiffs that he was not covered, and that by this denial of coverage RLC intended to and did cause plaintiffs severe emotional distress. Because the first amended complaint adequately alleged that RLC intended to and did cause Mrs. Wayte severe emotional distress." *Citing Kelly v. General Telephone Co.* (1982) 136 Cal.App.3d 278, 284, 287; and *Fletcher v. Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 386–394, 396–404. The court concluded, that "it was proper to submit that cause of action to the jury," with such allegations.

Another factually similar case is *Operating Engineers Local 3 v. Johnson* (2003) 110 CA4th 180, 190. In *Operating Engineers Local 3,* the supervisor was found to have invaded plaintiff's privacy by reprimanding her in front of others with no interest in the matter, directing her to write her own letter of reprimand, and disclosing the matter to a much larger number of additional employees. Like *Operating Engineers,* the conduct of each of the individual defendants, Beatriz Gonzalez, Morgan Gantt, Jesus Santiago and Eric Gonzalez were oppressive when they conspired to send Hoffman to EAP under the false pretenses that if he met with EAP and complied with what they told him, he would be able to return to work, when all the while, the decision had been made to terminate Hoffman. What is more, they invaded his privacy by having inquiries made as to his mental health and by having him "diagnosed" against his will by hacks who had no medical credentials to make such determination. These same people, Waissman and Kullman, then told Hoffman he was "released to return to work," when in reality he was only released to be terminated because Gonzalez had returned from vacation.

The facts alleged in the First Amended Complaint are oppressive and egregious. Hoffman suffered grave emotional distress from these acts. The demurrer must be overruled.

Finally, the claims do not fail simply because there are other claims in the complaint alleged under FEHA. Intentional misconduct by a supervisor, even retaliatory and discriminatory conduct, can be subject to liability outside of FEHA. *See, McClung v. Employment Development Department* (2004) 34 Cal.4th 467, 475; *Kovatch v. Cal. Casualty Mgmt* (1998) 65 Cal.App.4th 1256, disapproved on different grounds, *Aguilar v. Atlantic Richfield Co.* (2001) 28 Cal.4th 826. In this case, the specific facts upon which Plaintiff relies, which are set forth above, do not relate specifically to the FEHA claims of discrimination. Rather, they are specific claims related to

- 13 -

OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT

1  invasion of privacy and deception involved in Hoffman's last days of employment that while they

2  further evidence the discriminatory conduct, are actionable independently of the motivation of age

3  and disability discrimination identified in the FEHA claims.   For these reasons, the manager'

4  immunity does not apply.

5

6  **IV.     CONCLUSION**

7          For each of the foregoing reasons, the demurrer must be overruled.

8

9                                **YOUNESI & YOSS, LLP**

10

11  Dated:  December 29, 2014            By

12                                        Jan A. Yoss
                                    Attorneys for Plaintiff, **PAUL HOFFMAN**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT**

## PROOF OF SERVICE

STATE OF CALIFORNIA    )
                           )   ss.
COUNTY OF LOS ANGELES )

      I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) and not a party to the within action; my business address is 11355 W. Olympic Blvd., Ste. 200, Los Angeles, CA 90064.

      On **December 29, 2014,** I served the foregoing document described **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:  **SEE ATTACHED SERVICE LIST**

[ ]    **(BY MAIL: As indicated on the attached Service List)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    **(BY OVERNIGHT COURIER: As indicated on the attached Service List)** I caused the above referenced document(s) to be delivered to an overnight courier service, via **FEDERAL EXPRESS,** for delivery to the address indicated on the attached Service List..

[✓]    **(BY EMAIL:** As indicated on the attached Service List) I caused such document to be sent via email to the addressee and received a confirmed report indicating that this document was successfully transmitted to the party named above.

[ ]    **(BY PERSONAL SERVICE)** I caused such envelopes to be personally delivered  by GOLDEN STATE MESSENGERS to the offices of the addressees.

[ ]    **(BY FACSIMILE TRANSMISSION)** I caused such document to be sent via facsimile to the addressee and received a confirmed transmission report indicating that this document was successfully transmitted to the party named above.

[✓]    **(BY ELECTRONIC TRANSMISSION/COURT)** I transmitted a PDF version of this document by electronic mail to the party(s) identified on the service list using he e-mail address(es) and procedure provided pursuant to the Court's Electronic Filing Notification System, see, e.g., CCP section 1010.6 and CRC Rule 2.251.

      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on December 29, 2014 at Los Angeles, California.

Jan A. Yoss

- 15 -

**OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT**

1

*Hoffman v. Home Depot U.S.A., Inc.*

2

Case No. 30-2014-00727891

3

SERVICE LIST

4   Julie Choi
    Lacey Rainwater
5   LEE TRAN & LIANG
    601 S. Figueroa St., Ste. 3900
6   Los Angeles, CA 90017

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT

# EXHIBIT M

1    **LEE TRAN & LIANG LLP**
     Steven C. Gonzalez (Bar No. 191756)
2    Danielle R. Claxton (Bar No. 272003)
     601 S. Figueroa Street, Suite 3900
3    Los Angeles, CA 90017
     Tel: (213) 612-3737
4    Fax: (213) 612-3773

5    Attorneys for Defendants
     Home Depot U.S.A., Inc., Beatriz Gonzalez,
6    Morgan Gantt, And Jessie Santiago

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**01/05/2015** at 05:56:00 PM

Clerk of the Superior Court
By e Clerk,Deputy Clerk

7

8                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                          **FOR THE COUNTY OF ORANGE**

10

11   PAUL HOFFMAN,                          CASE NO.: 37-2014-00733252-CU-WT-CJC

12              Plaintiff,                   [Assigned for all purposes to The Hon.
                                             Frederick P. Aguirre]
13        vs.
                                             **REPLY BRIEF IN SUPPORT OF**
14   HOME DEPOT U.S.A., INC., doing business **DEFENDANTS GONZALEZ, GANTT,**
     as THE HOME DEPOT, a Delaware           **AND SANTIAGO'S DEMURRER TO**
15   Corporation, BEATRIZ GONZALEZ, an       **PLAINTIFF'S FIRST AMENDED**
     individual; MORGAN GANTT, an individual; **COMPLAINT**
16   JESSIE SANTIAGO, an individual; ERIC
     GONZALEZ, an individual and DOES 1      Complaint Filed:    July 10, 2014
17   through 50, inclusive                   Trial:              September 28, 2015

18              Defendants.                  Date:   January 12, 2015
                                             Time:   1:30 p.m.
19                                           Dept.:  C23
                                             Reservation Number: 72027835
20

21

22

23

24

25

26

27

28

─────────────────────────────────────────────────────────────────
REPLY BRIEF IN SUPPORT OF DEFENDANTS GONZALEZ, GANTT, AND SANTIAGO'S
DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1                  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.**     <u>**INTRODUCTION**</u>

3       Plaintiff Paul Hoffman's ("Plaintiff") Opposition to Defendants Beatriz Gonzalez, Morgan

4 Gantt, and Jessie Santiago's (collectively, "Defendants") Demurrer to Plaintiff's First Amended

5 Complaint ("FAC") fails to defeat the arguments in Defendants' Demurrer. First, the Opposition

6 conflates facts and defendants. Although most of the allegations in Plaintiff's intentional

7 infliction of emotional distress ("IIED") cause of action concern and involve *only* Defendant

8 Home Depot U.S.A., Inc. ("Home Depot"), Plaintiff attributes all events to Defendants Gonzalez,

9 Gantt, and Santiago without pleading facts to indicate the nature of each individually named

10 defendant's involvement. Second, Plaintiff's recovery is barred by the exclusivity provision of the

11 Workers' Compensation Act. While Plaintiff may believe that Defendants' conduct was unfair, it

12 is still within scope of the normal employee-employer relationship so that the exclusivity

13 provision applies. Third, even if recovery were not barred, Plaintiff did not plead facts sufficient

14 to state the elements of a prima facie case for IIED: outrageous conduct, intent, and damages. The

15 Opposition did not cite any allegations regarding intent or damages, showing that Plaintiff failed

16 to allege any such facts. Plaintiff did not plead facts to support the element of "outrageous

17 conduct." The alleged conduct that seems to be the focus of the IIED claim, asking Plaintiff

18 questions about his mental health after he had a severe panic attack on duty, was Home Depot's

19 conduct, not conduct that can be attributed to Gonzalez, Gantt, or Santiago. To the extent that

20 Gonzalez, Gantt, or Santiago interacted with Plaintiff, it was only to execute their managerial

21 duties. As a matter of law, engaging in personnel management conduct is not "outrageous."

22 Fourth, the IIED cause of action is an improper attempt to state causes of action against

23 individually named supervisors for purported discrimination or retaliation in violation of the Fair

24 Employment and Housing Act ("FEHA"). It is settled law that individual defendants do not have

25 personal liability for such claims. Because Plaintiff's allegations fail to state a cause of action,

26 Defendants ask this Court to sustain this Demurrer *without* leave to amend.

27

28

REPLY BRIEF IN SUPPORT OF DEFENDANTS GONZALEZ, GANTT, AND
SANTIAGO'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

II.    **ARGUMENT AND AUTHORITIES**

    A.    **Pursuant to the Workers' Compensation Act, Plaintiff Cannot Recover Damages for IIED Because Defendants' Alleged Conduct is Normal Employment Conduct**

Pursuant to Section 3602 of the California Labor Code, where workers' compensation is available to an employee, "the right to recover such compensation is ... the sole and exclusive remedy of the employee ... against the employer." Cal. Lab. Code § 3602. This provision covers "any injury ... arising out of the employment," including "purely emotional" injuries arising out of causes of action such as IIED. *See Livitsanos v. Superior Court*, 2 Cal. 4th 744, 747-56 (1992). Conduct involving termination, promotion, demotion, criticism of work practices, or negotiations as to grievances are "a normal part of the employment relationship," and hence recovery for actions based on this conduct is barred by the exclusive remedy provision of workers' compensation law. *See Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 160 (1987); *Miklosy v. Regents of Univ. of Calif.*, 44 Cal. 4th 876, 902 (2008). "**Even if such conduct may be characterized as intentional, unfair, or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions**." *Miklosy*, 44 Cal. 4th at 902, *citing Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990) (emphasis added).

Without citing authority to support his position, Plaintiff incorrectly argues that Defendants' alleged conduct is outside of scope of the normal employment relationship. He first argues that Home Depot terminating his employment on August 20, 2013 is outside the scope of the normal employment relationship because on August 12, 2013, Plaintiff asked Santiago and another employee if he "was being fired," and "they said no." (Opposition, p. 11; FAC ¶¶ 46-47, 56-57.) In fact, Gonzalez informing Plaintiff that Home Depot terminated his employment and Santiago earlier informing Plaintiff that he was not terminated are normal employment conduct. *See Miklosy*, 44 Cal. 4th at 883-85, 902 (holding that plaintiffs' termination is part of the employer-employee relationship). Also, Plaintiff voluntarily providing information to Home Depot *(not to Gonzalez, Gantt, or Santiago)* regarding his mental health is within the normal

-2-

1  employment relationship. *See Cole*, 43 Cal. 3d at 160. He did not provide this information until

2  after he suffered "a severe panic attack" while on duty at a Home Depot store. (FAC, ¶ 24.) His

3  mental and/or emotional stability impacts his ability or inability to perform his duties and interact

4  with customers. Plaintiff "may not avoid the exclusive remedy provisions of the Labor Code by

5  characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended

6  to cause emotional disturbance resulting in disability." *Id.*

7       **B.**    **Plaintiff Did Not Allege Facts Sufficient to Plead the Elements of an IIED**

8              **Cause of Action – Outrageous Conduct, Intent, and Damages**

9      Plaintiff is required, but failed, to plead facts to state a *prima facie* case for IIED. The

10  FAC did not allege facts showing that Defendants committed "outrageous conduct;" Defendants'

11  intention of causing or reckless disregard of the probability of causing emotional distress; or

12  Plaintiff's suffering severe or extreme emotional distress. *See Heller v. Pillsbury Madison &*

13  *Sutro*, 50 Cal. App. 4th 1367, 1388 (1996). The Opposition did not cite to factual allegations that

14  indicate that Defendants intended to harm Plaintiff or that Plaintiff suffered severe or extreme

15  emotional distress. Accordingly, Plaintiff concedes that he did not plead such facts. Lastly,

16  Plaintiff mischaracterizes facts and cites inapplicable case law to support his argument that

17  Defendants' alleged conduct amounts to "outrageous" conduct.

18      "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually

19  tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982).

20  Defendants' alleged conduct consisted of personnel management activity.

21      **Managing personnel is not outrageous conduct beyond the bounds of human**
22      **decency**, but rather conduct essential to the welfare and prosperity of society. **A**
23      **simple pleading of personnel management activity is insufficient to support a**
24      **claim of intentional infliction of emotional distress, even if improper motivation is alleged.** If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination.

25  *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) (emphasis added). Personnel

26  management includes "hiring and firing, job or project assignments, office or work station

27  assignments, promotion or demotion, performance evaluations, the provision of support, the

28

-3-
REPLY BRIEF IN SUPPORT OF DEFENDANTS GONZALEZ, GANTT, AND
SANTIAGO'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1   assignment or non-assignment of supervisory functions, deciding who will and who will not attend

2   meetings, [and] deciding who will be laid off." *Reno v. Baird*, 18 Cal. 4th 640, 647 (1998) *citing*

3   *Janken*, 46 Cal. App. 4th at 65-66.

4          Defendants' conduct is not "outrageous," but merely personnel management.  Gonzalez

5   and Plaintiff discussing the duration of Plaintiff's meal periods and modifying Plaintiff's schedule

6   (FAC ¶¶ 14, 17-19) is the personnel management conduct of scheduling and assignments.  Gantt

7   and Gonzalez meeting with Plaintiff regarding his performance, issuing a performance evaluation,

8   and placing Plaintiff on a performance improvement plan (FAC ¶¶ 22-26, 35) is within the scope

9   of performance evaluations, and is thus personnel management, not "outrageous conduct."  *See*

10  *Lawler v. Montblanc North America, LLC*, 704 F. 3d 1235, 1245-46 (9th Cir. 2013) (a CEO's

11  gruff, abrupt and intimidating manner of communicating criticisms did not qualify as "outrageous"

12  where conduct and criticisms related to store's business operations and employee's conduct as

13  manager).  Gantt critiquing Plaintiff's customer service skills (FAC ¶ 32) is also personnel

14  management.  *Id.*  Gantt asking Plaintiff to leave the store after another associate complained that

15  Plaintiff threatened him is hardly "outrageous."  Gantt diffused a tense situation, and given

16  concerns about potential workplace violence, this was a reasoned response to a claim that required

17  investigation.  Gantt and Santiago placing Plaintiff on leave and asking him to call Home Depot's

18  Employee Assistance Program (FAC ¶ 47) relates to conducting investigations, issuing discipline,

19  and evaluating performance.  Finally, Gonzalez informing Plaintiff that Home Depot terminated

20  his employment is not "outrageous."  *Buscemi v. McDonnell Douglas Corp.* 736 F.2d 1348, 1352

21  (9th Cir. 1984) (terminating an employee's employment is not "outrageous" conduct).

22         Seemingly conceding much of Defendants' position, as stated above and in their moving

23  papers, the Opposition focuses solely on Plaintiff providing information to Home Depot regarding

24  his mental health.  (Opposition, p. 13.)  Plaintiff first relies on *Wayte v. Rollins International, Inc.*,

25  169 Cal. App. 3d 1, 17 (1985) for the proposition that the facts alleged in the FAC are sufficient to

26  state a claim for IIED, and that the IIED claim must be adjudicated before a jury.  In *Watye*, the

27  Court held that an employee and his wife could allege a cause of action for intentional infliction of

28

-4-

emotional distress when the employer told the employee that the employee benefit plan would cover medical expenses for the couple's paraplegic son, the couple relied on that representation, and then the employer denied coverage. 169 Cal. App. 3d 1, 17 (1985). There is no similarity between the allegations in *Wayte* and the allegations here such that *Wayte* would impact the analysis in this case. Moreover, while the merits of the IIED cause of action should be decided by a jury, whether conduct can reasonably be found to be outrageous is a question of law determined by the courts. *Berkley v. Dowds*, 152 Cal. App. 4th 518, 534 (2007); *see also, Bock v. Hansen*, 225 Cal. App. 4th 215, 235 (2014); *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998) ("[A]ppellate courts have affirmed orders which sustained demurrers on the ground that the defendant's alleged conduct was not sufficiently outrageous.").

Plaintiff also heavily relies on an inapplicable case, *Operating Engineers Local 3 v. Johnson*, 10 Cal. App. 4th 180 (2003). There, the issue was whether breach of the constitutionally provided right to privacy was subject to the exclusivity provision of the Workers' Compensation Act. *Id.* at 184. The Court of Appeal affirmed the trial court's judgment because a jury found that the employer's exposition of an employee's performance issues to numerous employees without any interest in the matter was an improper invasion of the right to privacy, outside the scope of the normal employer-employee relationship, and thus, not subject to the exclusivity provision. *Id.* at 184, 192. Here, Plaintiff did not allege a cause of action for breach of the right to privacy, and even if he did, *Operating Engineers* is still inapplicable. Unlike the employer in *Operating Engineers*, Plaintiff voluntarily provided the subject information to Home Depot, and he does not allege that Defendants Gonzalez, Gantt, or Santiago forced him to disclose private information to them. Defendants were not alleged to have published the subject information to individuals without any concern in the matter. Without any such allegations, the facts in this case cannot be compared to the facts in *Operating Engineers*.

**C.**    **The IIED Cause of Action Attempts to Improperly Hold Individually Named Defendants Liable for Alleged FEHA Violations**

An aggrieved employee may not maintain a cause of action under the FEHA against individual supervisors or coworkers who allegedly discriminated or retaliated against him or her. The FEHA (California Government Code section 12940(h)) applies to retaliation by "any employer ... or person," and is interpreted to be consistent with section 12940(a), which prohibits discrimination by "an employer" and does not apply to supervisors and coworkers. *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158, 1167-68, 1173-74 (2008) (retaliation); *see also, Reno*, 18 Cal. 4th at 645 (discrimination). "It would be absurd to forbid a plaintiff to sue a supervisor under the FEHA, then allow essentially the same action under a different rubric." *Reno*, 18 Cal. 4th at 664. The Opposition does not dispute this argument. Instead, it argues that Plaintiff alleged facts against Gonzalez, Gantt, and Santiago that are distinct from the facts alleged in support of the FEHA causes of action. Plaintiff does not support his position with citations to the FAC, but generally refers to "claims related to the invasion of privacy and deception involved in Hoffman's last days of employment." (Opposition, 13-14.) The IIED cause of action mentions Plaintiff's privacy but does not allege facts related to "deception." (FAC ¶ 144.) Moreover, Plaintiff did not allege facts indicating that Gonzalez, Gantt, or Santiago invaded Plaintiff's privacy rights by asking him questions about his mental or physical health. (FAC ¶¶ 47-59.) Liz Waissman, Jeffrey Kullman, and Dr. Lahey were the only people who allegedly discussed Plaintiff's mental health with Plaintiff. (*Id.*) The arguments in the Opposition mischaracterize the facts and should be disregarded. The IIED is nothing but an attempt to hold individuals liable for discrimination or retaliation, which is improper as a matter of law.

///

///

REPLY BRIEF IN SUPPORT OF DEFENDANTS GONZALEZ, GANTT, AND SANTIAGO'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

**III.    <u>CONCLUSION</u>**

Pursuant to the foregoing discussion, Defendants Gonzalez, Gantt, and Santiago respectfully request that this Court sustain its Demurrer *without* leave to amend.

DATED: January 5, 2015                LEE TRAN & LIANG LLP

By: _____
        Steven C. Gonzalez
        Danielle R. Claxton
        Attorneys for Defendants
        Home Depot U.S.A., Inc., Beatriz Gonzalez,
        Morgan Gantt, and Jessie Santiago

REPLY BRIEF IN SUPPORT OF DEFENDANTS GONZALEZ, GANTT, AND
SANTIAGO'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

**PROOF OF SERVICE**

**STATE OF CALIFORNIA -- COUNTY OF ORANGE**

    I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 3900, Los Angeles, CA 90017.

    On **January 5, 2015**, I served the foregoing document(s) described as

**REPLY IN SUPPORT OF DEFENDANTS GONZALEZ, GANTT, AND SANTIAGO'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof in a sealed envelope, as follows:

John D. Younesi, Esq.                                 *Attorneys for Plaintiff Paul Hoffman*
Jan A. Yoss, Esq.
YOUNESI & YOSS, LLP
11355 W. Olympic Blvd., Suite 200
Los Angeles, California 90064
Telephone: (310) 478-5722
Facsimile: (310) 478-5650
Email: jdyounesi@younesi.com
        jyoss@younesi.com

**[X]**  **BY MAIL** I placed such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]  **BY ELECTRONIC MAIL** I transmitted the above listed document(s) using OneLegal, set forth above on this date.

Executed on **January 5, 2015**, at Los Angeles, California.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
    EDGAR MARTINEZ

# EXHIBIT N

1   **LEE TRAN & LIANG LLP**
    Steven C. Gonzalez (Bar No. 191756)

2     steven.gonzalez@ltlattorneys.com
    Danielle Claxton (Bar No. 272003)

3     danielle.claxton@ltlattorneys.com

4   601 S. Figueroa Street, Suite 3900
  Los Angeles, CA 90017

5   Tel: (213) 612-8900
  Fax: (213) 612-3773

6

7   Attorneys for Defendants
  Home Depot U.S.A., Inc., Beatriz Gonzalez,
  Morgan Gantt, Jessie Santiago, and

8   Eric Gonzalez

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**01/12/2015** at 03:44:00 PM
Clerk of the Superior Court
By e Clerk,Deputy Clerk

9          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                **FOR THE COUNTY OF ORANGE**

11

12   PAUL HOFFMAN,

13         Plaintiff,

14     vs.

15   HOME DEPOT U.S.A., INC., doing business as
  THE HOME DEPOT, a Delaware Corporation,
  BEATRIZ GONZALEZ, an individual; MORGAN

16   GANTT, an individual; JESSIE SANTIAGO, an
  individual; ERIC GONZALEZ, an individual and

17   DOES 1 through 50, inclusive

18         Defendants.

19

Case No.: 37-2014-00733252-CU-WT-CJC

[Assigned for all purposes to
The Hon. Frederick P. Aguirre]

**NOTICE OF RULING ON DEFENDANTS
GONZALEZ, GANTT, AND SANTIAGO'S
DEMURRER TO PLAINTIFF'S FIRST
AMENDED COMPLAINT**

Complaint Filed:     July 10, 2014
Trial:            September 28, 2015

20

21

22

23

24

25

26

27

28

---

NOTICE OF RULING ON DEFENDANTS' DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on January 12, 2015, in the above-entitled action, this

3    Court, Department C-23 of the Superior Court of the State of California, County of Orange,

4    located at 700 Civic Center Drive West, Santa Ana, CA 92701, adopted its Tentative Ruling as its

5    final ruling. The Court's ruling is attached hereto as Exhibit A, and incorporated into this notice

6    by this reference.

7

8    DATED: January 12, 2015                         LEE TRAN & LIANG LLP

9

10                                        By: _____

11                                           Steven C. Gonzalez
                                             Danielle Claxton
12                                           Attorneys for Defendants
                                             Home Depot U.S.A., Inc., Beatriz
                                             Gonzalez, Morgan Gantt, Jessie Santiago,
13                                           and Eric Gonzalez

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

NOTICE OF RULING ON DEFENDANTS' DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

# EXHIBIT A

## EXHIBIT A

### TENTATIVE RULINGS

#### DEPT: CJC – C23

#### Judge Frederick P. Aguirre

Date: January 12, 2015

| 7 | Hoffman vs. Home Depot U.S.A., Inc., Beatriz Gonzalez, Morgan Gantt, and Jessie Santiago<br><br>30-2014-00733252 | Defendants' demurrer to the 9th cause of action for intentional infliction of emotional distress is sustained with 20 days leave to amend.<br><br>Plaintiff has alleged claims of discrimination, retaliation, and harassment which are not grievances within the normal part of the employment relationship.  It cannot be said as a matter of law at this time that the claim for intentional infliction of emotional distress is borne from a normal employment relationship under the exclusive remedy of workers' compensation. The claim is therefore not barred as a matter of law.<br><br>Plaintiff does not allege sufficient factual statements as to what conduct he believes was so outrageous to exceed the bounds of that usually tolerated in a civilized community. Plaintiff confuses the matter in his opposition by stating that the facts plaintiff relies on to establish outrageous conduct do not relate to the FEHA claims of discrimination. Instead the claims of outrageous conduct are based on and related to his claims of invasion of privacy and deception involved in his last days of employment.  Review of the amended complaint reveals there is no claim for invasion of privacy or fraud/intentional deceit, nor is there specific allegations referred to in the 9th cause of action that would lead the court to fetter this out to determine that the first element for intentional infliction of emotional distress has been met.<br><br>Additionally, plaintiff has failed to plead that defendants' acted with the intention of causing, or they acted with reckless disregard of the probability of causing, plaintiff emotional distress. Plaintiff again alleges a blanket statement that Defendants' hostile work environment and retaliation was committed with knowledge that it would cause plaintiff severe physical and emotional distress and was caused with a wanton and reckless disregard. Plaintiff must plead facts which show an intent or reckless disregard on defendants' part to cause plaintiff emotional distress. It is insufficient that emotional distress may have resulted from outrageous conduct. The defendants must have had the intent or acted with reckless disregard. Plaintiff has not alleged facts to establish this element.<br><br>Finally, plaintiff has not alleged he suffered the last required element of severe emotional distress. In conclusory terms plaintiff alleges that he suffered and continues to suffer, "humiliation, mental anguish, and severe emotional and physical distress". This is simply a recitation of the element.<br><br>Defendants shall give notice of ruling. |

**PROOF OF SERVICE**
**STATE OF CALIFORNIA -- COUNTY OF ORANGE**

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 3900, Los Angeles, CA 90017.

On **January 12, 2015**, I served the foregoing document(s) described as

**NOTICE OF RULING ON DEFENDANTS GONZALEZ, GANTT, AND SANTIAGO'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof in a sealed envelope, as follows:

John D. Younesi, Esq.                    *Attorneys for Plaintiff Paul Hoffman*
Jan A. Yoss, Esq.
YOUNESI & YOSS, LLP
11355 W. Olympic Blvd., Suite 200
Los Angeles, California 90064
Telephone: (310) 478-5722
Facsimile: (310) 478-5650
Email: jdyounesi@younesi.com
        jyoss@younesi.com

[X]    **BY MAIL** I placed such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **January 12, 2015**, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
EDGAR MARTINEZ

---

NOTICE OF RULING ON DEFENDANTS' DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

# EXHIBIT O

1  John D. Younesi, Esq. (Bar No. 120339)
   Jan A. Yoss, Esq. (Bar No. 143978)
2  YOUNESI & YOSS, LLP
   11355 W. Olympic Blvd., Suite 200
3  Los Angeles, California 90064
   Telephone: (310) 478-5722 ✦ Facsimile: (310) 478-5650
4  Email: jdyounesi@younesi.com
         jyoss@younesi.com
5
6  Attorneys for Plaintiff, **PAUL HOFFMAN**
7
8              **SUPERIOR COURT OF CALIFORNIA**

9         **COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

10 **PAUL HOFFMAN,** an individual

   **Plaintiff,**

   vs.

   **HOME DEPOT U.S.A., INC.,** doing business as **THE HOME DEPOT,** a Delaware Corporation; **BEATRIZ GONZALEZ,** an individual; **MORGAN GANTT,** an individual; **JESSIE SANTIAGO,** an individual; **ERIC DOE,** an individual and DOES 1 to 50, Inclusive,

   **Defendants.**

   Case No. 37-2014-00733252-CU-WT-CJC
   [Honorable Frederick P. Aguirre, Dept. C23]

   **SECOND AMENDED COMPLAINT FOR:**
   **(1) HARRASSMENT BASED ON AGE IN VIOLATION OF GOV'T CODE SECTION 12940, ET. SEQ.**
   **(2) VIOLATION OF LABOR CODE SECTION 1102.5**
   **(3) HARRASSMENT BASED UPON ACTUAL OR PERCEIVED DISABILITY AND/OR MEDICAL CONDITION IN VIOLATION OF GOV'T CODE SECTION 12940, ET SEQ.**
   **(4) DISCRIMIATION BASED UPON AGE IN VIOLATION OF GOV'T CODE SECTION 12940 ET SEQ.**
   **(5) DISCRIMINATION BASED UPON ACUTAL OR PERCEIVED MEDICAL CONDITION AND/OR DISABILITY IN VIOLATION OF GOV'T CODE SECTION 12940. ET. SEQ.**
   **(6) RETALIATION IN VIOLATION OF GOV'T CODE SECTION 12940 ET SEQ.**
   **(7) FAILURE TO PREVENT HARRASSMENT, DISCRIMINATION AND RETALIATION IN VIOLATION OF GOV'T CODE SECTION 12940 ET SEQ.**
   **(8) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY; AND**
   **(9) INTENTIONAL INFLICATION OF EMOTIONAL DISRESS**

- 1 -
**SECOND AMENDED COMPLAINT**

1           Plaintiff Paul Hoffman hereby complains against Defendants and alleges against

2    them as follows:

3

4                      **GENERAL ALLEGATIONS**

5          1.     Plaintiff Paul Hoffman ("Hoffman" or "Plaintiff") is, and at all relevant times

6    mentioned herein was, an individual and resident of the County of Orange, State of California.

7          2.     Defendant Home Depot U.S.A., Inc., doing business as The Home Depot ("Home

8    Depot"), currently is, and at all times mentioned herein was, a corporation duly organized and

9    existing under the laws of the State of Delaware. Plaintiff is informed and believes and on that

10    basis alleges that Home Depot is licensed to do business in the State of California and has retail

11    store locations throughout the State of California, including in the County of Orange.

12          3.     Defendant Beatriz Gonzalez is, and at all times mentioned herein was, an individual

13    residing in the County of Orange, State of California.

14          4.     Defendant Morgan Gantt is, and at all times mentioned herein was, an individual

15    residing in the County of Orange, State of California.

16          5.     Defendant Jessie Santiago is, and at all times mentioned herein was, an individual

17    residing in the County of Orange, State of California.

18          6.     Defendant Eric Doe, is, and at all times mentioned herein was, an individual

19    residing in the County of Orange, State of California. Since the filing of this lawsuit, Plaintiff has

20    learned the last name of Eric Doe, which is Eric Gonzalez. Eric Doe was a manager at the Home

21    Depot store in which Plaintiff worked at the time of Plaintiff's termination in August 2013.

22          7.     The true names and capacities, whether individual, corporate, associate or otherwise

23    of Defendants named here in as Does 1 through 50, inclusive, are unknown to Plaintiff who

24    therefore sue said Defendants by such fictitious names and Plaintiff will amend this complaint to

25    show their true names and capacities when the same have been ascertained. Plaintiff is informed

26    and believes and thereon alleges, that said Doe Defendants, and each of them , participated in or is

27    responsible in some manner for the acts and occurrences herein alleged and for the damages

28

**SECOND AMENDED COMPLAINT**

suffered by her. The names of Does 1 through 50, inclusive, are incorporated by reference into all allegations concerning the named Defendants with the same force and effect as though fully set forth therein.

8.    Plaintiff is informed and on that basis alleges that each of the Defendants as acting as an agent of the other Defendants with respect to all actions alleged herein.

## JURISDICTION AND VENUE

9.    This action asserts claims under the California Fair Employment and Housing Act *Gov. Code § 12900 et seq.* The Court has jurisdiction over this action under article 6, § 10 of the California Constitution and *Code of Civil Procedure* § 410.10

10.    Venue is proper in this County under *Code of Civil Procedure* § 395 because, *inter alia*, one or more Defendants engages in business in this County and Defendants engaged in the practices complaint of in this County and one or more individual Defendants resides in this County.

## STATEMENT OF FACTS

11.    Hoffman started working at Home Depot in March 1999 in the Santa Ana Store, number 606. Hoffman is an exceptional person. He is hard-working, affable and well liked by both fellow associates and customers. Throughout the years, Hoffman received many accolades and customer service awards.

12.    In or about early 2013, Hoffman was first targeted, along with several other workers over 40 years old, for termination by the management of his store. The management claimed that Hoffman had been advanced to a position of a "specialist". Hoffman denied ever agreeing to such advancement. Hoffman and these other over-40 employees were given criteria for sales and other activity that they were supposed to meet in this role as a specialist.

13.    In late 2012, and early 2013, Hoffman saw the other older workers around him being let go for failure to meet these new sales guidelines. It was clear by some of the comments

- 3 -
**SECOND AMENDED COMPLAINT**

1  being made to Hoffman and the unreasonable sales and other benchmark criteria being foisted on

2  him, called the metrics, that Hoffman was similarly being singled-out for termination.

3       14.    In addition to being targeted for his age, Hoffman was also retaliated against by his

4  store's management for asserting his and other employee's rights to meal breaks pursuant to

5  company policy. In March 2013, the Santa Ana store manager, Beatriz Gonzalez, began requiring

6  all employees to take a one-hour off-the-clock lunch break, instead of the 30-minute break most of

7  them were taking. While Hoffman had taken an hour lunch break by choice most of the time he

8  had been with Home Depot, in 2012, he began taking only 30-minutes so he could end his shift 30-

9  minutes earlier and help his then-4th grade son with his homework.

10       15.    Others in the store also commented to Hoffman that the change in the policy to

11  require a 60-minute lunch break instead of allowing the employees to elect between a 30-minute

12  and a 60-minute lunch break was difficult for many of them with their other obligations, and that

13  the policy did not seem to make sense. The management was unresponsive.

14       16.    So, at the request of his fellow employees and to understand the company policy

15  better himself, Hoffman called corporate Human Resources to determine what the policy was.

16  Hoffman spoke with Rowanda Velonza. Ms. Velonza confirmed that the Home Depot policy was

17  that the associates were allowed to elect between a 30-minute and a 60-minute lunch. She also

18  confirmed that an individual store manager could not override this policy and require employees to

19  take only a 60-minute or only a 30-minute lunch. When Hoffman explained what was happening,

20  Ms. Velonza wanted him to transfer his to a manager. Afraid that the purported confidentiality of

21  the call would be compromised, Hoffman asked if she would call back.

22       17.    The next day, Gonzalez called Hoffman into his office and berated him saying,

23  "Oh, you're the only one who has to have a 30-minute lunch. I have to change all these schedules

24  just to accommodate you." Even when Hoffman began to fear for his job out of retaliation and

25  said he would take the 60-minute lunch, Gonzalez said, "Oh no, no it's too late now. It's already

26  done. We'll try it for a few months and see how it works." Hoffman explained to Gonzalez that

27  he was trying to help other associates who had asked him about the lunch policy, but she did not

28

**SECOND AMENDED COMPLAINT**

want to hear anything about how the employees felt.    Again, Hoffman said, "Change my lunch back to 60-minutes, I don't want to cause any problems." Again Gonzalez said, "No, no, no, too late now."

18.    In retaliation, Gonzalez changed Hoffman's schedule.    Now, instead of leaving a half-hour earlier to be able to help his son, Gonzalez simply had Hoffman come in a half-hour later, take his 30-minute lunch, and then leave at his old shift time.    He was no longer able to help his son with his school work.

19.    Gonzalez also scheduled Hoffman to work until 9:30 p.m. on Sunday nights.    On Sunday, however, the store closed at 8 p.m. The other associates who worked the closing shift stayed until 9:00 p.m. There was no night crew on Sunday night. Hoffman was the only associate scheduled to 9:30 p.m. An associate could not work until 9:30 p.m. without obtaining a prior written authorization, even if he was on the schedule until 9:30 p.m..    So, each Sunday, Hoffman would have to fill out a form and have it signed by his manager, Brian Chang.    When he did, Mr. Chang would invariable tell him that no one could stay to 9:30 p.m. Mr. Chang would have Hoffman come in a half hour earlier or just work 7 ½ hours.    If Hoffman forgot to get the paperwork signed, or could not locate Mr. Chang, Hoffman would receive a demerit.    His schedule was completely uncertain each Sunday.

20.    This same game was played with another associate who was terminated shortly after being moved to the phantom 9:30 p.m. shift end-time.    There is a pattern to Gonzalez's discriminatory behavior.

21.    Still trying to terminate Hoffman for performance-based reasons and angered by his reporting to corporate Human Resources his store's violation of company policy, in April 2013, Hoffman received his first negative annual review in 14 years!    Hoffman's review was curiously given by a very young assistant manager, Morgan Gantt ("Gantt"), another assistant manager named Mike, but whose last name Hoffman does not know, and Angela Gonzalez, a fellow associate.    It is very odd that this associate was present in the review because having another associate present does not comport with protocol and violates the confidentiality of the review

- 5 -

**SECOND AMENDED COMPLAINT**

1  process. Hoffman had only met Gantt once before the review in March of 2013. He had never

2  worked with his at all during the preceding year. In fact, Gantt had not even been in this particular

3  store in the prior year.

4      22.    When the review started, Gantt immediately began to tell Hoffman what a failure he

5  was and how he was not doing a good job or meeting the metric (the guidelines for specialists).

6  Home Depot has used the same rating system for the last 6-8 years (O=Outstanding, V=Valuable, I

7  or N=Needs Improvement). Despite the threshold for receiving O's being raised each year, without

8  fail, Hoffman was consistently an O or a V. Even in this scathing and out-of-character review,

9  Hoffman received the identical glowing customer service survey comments as he did every year,

10  which comments generally garnered him an O. Yet, Gantt rated Hoffman only a V.

11      23.    In response to the review being presented by someone who had no familiarity with

12  Hoffman's work, Hoffman asked who prepared the review and provided the comments. Gantt

13  stated only, "Managers." Despite being asked the question twice, Gantt did not dignify Hoffman

14  with a proper response by providing the name of a single manager who provided feedback.

15  Hoffman asked if Brian Chang, the manager he had for the last several years, had weighed in on

16  the review. Gantt would not respond. Hoffman asked for the managers who prepared the review

17  to come to the meeting so he could discuss their comments which he felt to be completely false.

18  His entreaties were ignored.

19      24.    This callous behavior by Home Depot management was troubling to Hoffman.

20  Never, in 14 years, had he received such a scathing review. It was even more distressful that the

21  review came from someone who was not even familiar with his work and who would not identify a

22  single manager who concurred in the rating. Such inequitable conduct would be highly disturbing

23  to anyone. Hoffman immediately had a severe panic attack. He believed he was having a heart

24  attack as he buckled over on the floor and had difficulty breathing, feeling constriction in his chest.

25  Hoffman asked for medical assistance, but none was provided. Hoffman called for the store

26  manager, Gonzalez, who came to the room and asked everyone else to leave. From his bent over

27  posture on his knees, Hoffman pleaded with Gonzalez to call 911, but Gonzalez completely

28

1   ignored his entreaties.

2       25.    After about 20 minutes, Hoffman's breathing became more regulated. Hoffman

3   asked Gonzalez if she was aware of the nature of his review. She began to read the document.

4   Without responding, she simply said, they needed to get Morgan, Miguel and Angela back in the

5   room and continue the review. Incredibly, Gonzalez had a 14-year employee in front of his with

6   whom she had worked for many years and knew well, who was in very clear physical and

7   psychological distress, and all she wanted to do was continue the farcical review.

8       26.    When Morgan and Angela had returned, without addressing in any way the

9   concerns Hoffman had with the review and the way in which it was being given, Gonzalez said

10  that Hoffman had to sign-up one credit card a week, one measure a week, and one RSW

11  appointment a week for the next 90 days. She then told Hoffman that he had a lot of open quotes

12  in the system and most of them looked like "fluff quotes." Importantly, within the next week, one

13  of the quotes in the system, one Gonzalez called a fluff quote, was sold for $2,000. Hoffman

14  pointed this out to Gonzalez, who had no response. Then, without explanation, a week after the

15  review, Gantt told Hoffman that rather than signing up 1 credit card, 1 measure and 1 RSW lead a

16  week, Hoffman had to do 1 a day for the next 30 days! She said he was being placed on a

17  Performance Improvement Plan (PIP).

18      27.    It is clear that the managers behind this effort to rid the Santa Ana store of older

19  workers knew the PIP set for Hoffman would be deemed unreasonable and they knew that

20  Hoffman's performance was such that they could not justify his termination. So they had to figure

21  out something else.

22      28.    Unable to trump up some story of performance problems after 14 years of

23  exemplary service, the management got desperate and orchestrated some of the most bizarre set of

24  facts that we have ever heard in our collective greater than 50 years of legal practice. The

25  management at Home Depot concocted "events" between Hoffman and other employees in an

26  effort to evoke an altercation or inappropriate behavior from Hoffman designed to provide

27  management with a reason to fire him. When Hoffman he did not respond, the management

28

**SECOND AMENDED COMPLAINT**

1   engaged in actions that were contrived and intentionally malicious, designed intentionally to cause

2   Hoffman distress.

3         29.    The first event was on May 17, 2013.  One of the employees from the Pro Desk,

4   Art, asked Hoffman if he would help him with the new Milgard software.  Hoffman agreed and

5   went with Art to the Millworks Desk.  Hoffman saw that Art was in the wrong program altogether

6   and showed Art how to navigate the new custom designs software system that had been installed.

7   Once Hoffman finished showing Art how to use the program with a sample patio door, Art went to

8   get his customer and asked Hoffman to stay nearby so Art could turn to Hoffman if he had any

9   further questions.  Hoffman agreed to help.  While at the desk, Hoffman was barraged with

10  customer calls and customers who were physically present and he masterfully let them all know he

11  would get to them as soon as possible and then proceeded to address each one of their needs.

12  When Art returned to the Millwork Desk, he came with another associate, Veronica, and the

13  customer.  Art began working with the customer on the right computer of the Millwork Desk.

14        30.    Hoffman was on the left computer about 10 feet away.  Hoffman was up and down

15  from the desk helping customers, showing them where things are, leaving to take customers to one

16  aisle or another to show them products, and then returning to answer the phone calls.  Hoffman

17  was involved with three or four separate matters when Art and Veronica turned and asked him a

18  question about the custom design Milgard software.  Hoffman was at least 8 feet away from their

19  computer at that time, but tried to look at the screen.  Hoffman had not come across the particular

20  option on the screen.  When Hoffman expressed that he was not yet familiar with the options being

21  shown, Veronica responded, in front of Art and their mutual customers, "You mean you do not

22  know the software?!"

23        31.    At this time, Hoffman was far from the computer and engrossed with his own

24  customers and the service he needed to provide to them.  He was trying his best to help two

25  struggling employees in addition to everything else he was doing.  He could not simply drop the

26  customers he was helping.  Hoffman did not respond to Veronica's inappropriate comment in front

27  of a customer, but, instead, continued to try and help -- again from greater than 8 feet away from

28

- 8 -

the computer. Veronica then said again, "You mean you do not know the software! You use it every day!" While Hoffman was still looking at the screen and occupied with yet another phone call and the special custom order he was working on himself, Veronica said a third time, "You do not know the software!"

32.    Rather than engage with Veronica, Hoffman determined it would be more productive for him to assist his own customers and he left the desk so to do so. Just before he did, Veronica called Gantt to come to the desk. Once Hoffman finished with the customer he was helping, he returned to the Millworks desk to see if he could help now that he could devote his undivided attention on Veronica's question on the Milgard software. When Hoffman returned to the Millwork Desk, Gantt was there. She accused Hoffman of not giving customer service and not helping out another associate. Gantt said in front of Veronica, Art, and the customer, that the new software had been in the system for a year, and that this is one of the problems with Hoffman, that he was not using the new software.

33.    The statement was categorically untrue in many ways. First, the software had not been in the system for a year, but only a few weeks. Second, Hoffman did use the system frequently, but apprised Gantt that it simply takes time to become familiar with all of the options and features. What was lost in this whole exchange -- which again was inappropriately staged and addressed in front of a customer -- was that neither Art, nor Veronica knew the system at all. What is more, Gantt, the accuser and an assistant manager, did not know the system or how to help Art or Veronica. The whole situation was contrived. Morgan then shouted, "Are you refusing to give a customer service?" Hoffman immediately responded, "Absolutely not!" He tried to explain that he had not seen this particular option before, but if given some time, he would likely be able to figure it out. Gantt then asked Hoffman to come back to the office, deciding that helping this particular customer now became secondary to reprimanding Hoffman.

34.    By the time they got to the office, Don, the Department Head, was already present. Gantt again accused Hoffman of not helping Art and his customer. Hoffman attempted to explain how he did help and was trying to help. He recounted how he had shown Art where the software

**SECOND AMENDED COMPLAINT**

1    was located on the computer and how Hoffman had run a sample patio door for Hoffman to help

2    Art understand how to use the program.  Hoffman even showed how he knew the answer to the

3    fixed window question that was on the screen, it was just taking him a few minutes to understand

4    the way in which the question was being asked in this new software program.  Hoffman had

5    received a few computer product knowledge (PK) classes on the new software, but like all the

6    employees, he did not yet have a mastery for the program, which mastery can only be gained from

7    experience and use of the program over a period of time.  Veronica and Gantt apparently believed

8    Hoffman was supposed to drop everything he was doing for other customers and place helping

9    Veronica and Gantt concerning their deficiencies with the program above all else.  That is not the

10    definition of good customer service.   After Hoffman explained what had happened from his

11    perspective, the confrontation ended.

12        35.    The next day, however, May 18, 2013, Hoffman came to work and Gantt called him

13    into the office again.  Kim, a representative from Atlanta Human Resources, was on the phone and

14    wanted to know about everything that happened the prior day.  It turns out that Gantt had written

15    Hoffman up for a "first and final" warning for being disrespectful and not helping another

16    associate.  Hoffman explained the situation from his perspective and that seemed to be the end of

17    it.  Such an incident clearly did not rise to the level of a "first and final" warning for a 14-year

18    employee.

19        36.    On August 11, 2013, management set up a situation designed to goad Hoffman into

20    an altercation, but Hoffman did not fall prey.  Consequently, they fabricated the events in question

21    and used this and a perceived disability/medical condition, as a basis to terminate Hoffman's

22    employment.

23        37.    At around 7:30 p.m. on August 11, 2013, Hoffman was at the Millwork Desk using

24    the computer on the left side of the desk to assist customers with window and door orders.  Miguel

25    Diaz, an associate in plumbing, was using the right side of the desk to address 2 full carts of mark-

26    downed product.  An associate named Armando, who Hoffman had never seen before, but learned

27    later had been with Home Depot for about six months, approached the left side of the Millwork

28

**SECOND AMENDED COMPLAINT**

1  Desk and stopped about three to four feet in front of Hoffman. He commanded Mr. Diaz to go to

2  Aisle 22 to help customers. Mr. Diaz responded that there were three other associates in plumbing

3  on duty and asked Armando if he could page one of them as Mr. Diaz was busy with the mark-

4  downs.

5      38.    Armando told Mr. Diaz again he had to go and turned to walk away. Mr. Diaz got

6  up and went to help the customer. Hoffman then said to Armando, "You should follow him and

7  show him the customer that needs help." Hoffman also said to Armando, "You should stand

8  behind him and listen to what he's saying so if the same question comes up tomorrow or in the

9  future, then you may be able to answer it." Armando responded by walking toward Hoffman,

10 sticking his finger out and saying, "You don't fucking tell me what to do." Hoffman then said,

11 "Okay. I won't tell you what to do, I'll show you what to do." Hoffman picked up the phone in

12 front of him and dialed 126, which is the number for plumbing. The phone was laying on the desk

13 on the right side where Miguel was sitting moments before. It rang and obviously no one was there

14 to answer it. Hoffman then said to Armando, "This will happen quite a bit, and when this happens,

15 this is what you do." Hoffman then dialed 676 to page overhead. Hoffman said, "Any associate in

16 plumbing, please call 325. Any associate in plumbing, please call 325." Hoffman hung up the

17 phone and he pointed toward Mr. Diaz down the aisle. Hoffman said to Armando, "If I was you,

18 that's where I would be right now, showing Miguel the specific customer that you said needed help

19 and trying to get PK (Product Knowledge) on whatever it is Miguel was talking about."

20     39.    Armando moved closer to Hoffman, lifted up the sleeve of his shirt to reveal a

21 tattoo on his arm and then he stuck his finger millimeters from Hoffman's nose and said, "You

22 don't want to fuck with this (referring to the tattoo), and you don't want to fuck with me." It

23 appeared that Armando was trying to signify that he had some sort of gang affiliation. Hoffman

24 stuck his hands up in the air and said, "I don't own a gun, the only knife I use is to cut up

25 vegetables, but however you want to deal with this, you let me know."

26     40.    At about this time, a bald Asian man dressed in white who appeared to be a

27 religious monk that Hoffman had noticed earlier waiting to be helped walked very close by the

28

1   desk and looked at Hoffman and Armando.  Hoffman had seen this person's interaction earlier with

2   the other customers he was with.  It was clear that this customer was unable to speak much English

3   and he did not appear to understand much English either.

4          41.    The man had no interaction with Armando or Hoffman.  He did not touch either one

5   of them and said nothing to either of them.  He simply passed by on his way to return to the others

6   in his group.  However, as soon as this man passed Hoffman and Armando, Armando changed his

7   expression.  Armando said, "Hey man, I'm sorry we're on the same team, we should be working

8   together. We're cool right? We're cool right?" Hoffman stuck out both of his hands with his palms

9   up and fists open and shook hands with Armando.  Hoffman responded, "Yes we're cool. My

10  name is Paul Hoffman, I work in the Millworks Department, which is Windows and Doors. and if

11  you ever need help in this department, you can come to me because I know I'll be in your

12  department cutting wood and helping people over there. Next time, you should take the time to

13  listen to what Miguel has to say about anything in plumbing. He really knows his stuff and you

14  could learn a lot from him." Armando said, "I have worked for Home Depot for a long time and I

15  know what I'm doing." He walked away.  That was all that had happened.

16         42.    After Armando left the area, Hoffman helped a family that had been waiting for

17  assistance to understand the measurements they needed for their door order before turning to the

18  guest described above who had walked by he and Armando earlier.  Hoffman then helped these

19  customers to buy a door and even helped them take the door to their car.

20         43.    When Hoffman returned to the store, Chris Pula, who is a Department Head,

21  approached Hoffman and after Mr. Pula discussed some issues with Hoffman concerning Mr.

22  Pula's daughter, Mr. Pula told Hoffman that he needed to go to training room.  When Hoffman

23  arrived, present was Gantt and Mr. Pula.  Gantt said that Armando's shift had ended, and he was

24  gone, but that he reported that he felt threatened by Hoffman.

25         44.    Gantt asked Hoffman to write down what had happened.  Hoffman wrote the story

26  down, although he did exclude the expletives that Armando used and his pointing to his tattoo,

27  because Hoffman did not want to inflame the issues and cause Armando to get in trouble.

28

**SECOND AMENDED COMPLAINT**

1  Hoffman's shift was scheduled to end at 8:00 p.m. and he needed to leave immediately to get home

2  to his children. He rushed through writing what had happened.

3       45.   Gantt, without even reviewing what Hoffman had written or noticing that it

4  indicated that Armando was the only aggressive person in the encounter, said to Hoffman, "I'd like

5  you to leave the store." Hoffman noted that his shift was ending in a matter of minutes, as it was

6  then approximately 8:00 p.m. Gantt stated that she thought Hoffman was scheduled to work until

7  9:30 p.m. Gantt had not noticed that Mike, one of the store managers, had approved a shift change

8  for Hoffman several days before. Hoffman clocked out and left.

9       46.   The next day, August 12, 2013, Hoffman reported to work at 1:30 p.m. He was

10  immediately told to wait in the office. He did so for forty minutes. Then, Gantt came in and said,

11  "We're ready for you." She took Hoffman to another office where they held a telephone

12  conference with Kim in the Atlanta Human Resources office. After the call, where the issues of

13  the prior day were discussed, Kim very clearly said, "I'm comfortable with Hoffman going on the

14  floor and working." The manager-on-duty, Eric, and Gantt, both agreed and Hoffman went to

15  work.

16       47.   A full five hours later, Eric and another manager, Jesse Santiago, summoned

17  Hoffman into the office again. Santiago told Hoffman that they reviewed the issue *again* and that

18  they were going to put Hoffman on leave without pay. When Hoffman asked if he was being fired,

19  they said no, but told him that he had to call a person named Liz Waissman within 24 hours. The

20  managers told Hoffman that Ms. Waissman works for Care Solutions, the Employee Assistance

21  Program ("EAP"), and that she would help Hoffman get back to work. As it turns out, the

22  decision has already been made to terminate Plaintiff and there was nothing he could do to get his

23  job back, but his managers lied to him and told him that if he went to EAP and spoke with its

24  representatives and did what they told him to do, he could get his job back.

25       48.   Hoffman, the dutiful employee that he is, and perhaps a bit naive, immediately

26  called Ms. Waissman. Hoffman began to answer Ms. Waissman's "assessment" questions,

27  although Ms. Waissman never told Hoffman the purpose of the questions. Then, the questions

28

- 13 -

**SECOND AMENDED COMPLAINT**

1  turned very personal. Ms. Waissman asked Hoffman if he had ever been hospitalized for mental
2  illness. Hoffman told Ms. Waissman, unqualifiedly, that he had not ever been hospitalized for any
3  issue. Ms. Waissman then told Hoffman that it was absolutely unbelievable to his that Hoffman
4  had never been hospitalized and that he had some of the greatest "coping skills she had ever seen."

5      49.    Hoffman did not understand the nature of these questions and was not comfortable
6  speaking with someone about these personal and strange questions over the phone. Hoffman
7  wanted to meet with Ms. Waissman in person and look his in the eyes to understand the nature of
8  what was being asked. Ms. Waissman refused, but told Hoffman to meet with Jeffrey Kullman,
9  another EAP employee, who Ms. Waissman called her eyes and ears. Ms. Waissman still did not
10 tell Hoffman the purpose of the questions she was asking or why Hoffman was speaking with her.
11 Hoffman, ever trusting, went to meet with Mr. Kullman. The next day, he spoke with Ms.
12 Waissman again.

13     50.    Ms. Waissman then blurted out that Mr. Kullman diagnosed Hoffman as bipolar,
14 with hypomania episodes. Mr. Kullman has no medical degree or training whatsoever.

15     51.    Ms. Waissman told Hoffman that if he wanted his job back he had to go to his
16 doctor, get a complete physical with blood tests, and get an appointment to see a psychiatrist. She
17 also told him to Google hypomania episodes and do some research and see if Hoffman believed
18 any of it applied to him. Ms. Waissman then callously stated to Hoffman that he had to "man up
19 and face it" (the "it" being she and Mr. Kullman's "diagnosis"). Ms. Waissman told Hoffman that
20 his next appointment with Mr. Kullman was a few days later and Hoffman had to bring a doctor's
21 card at that time that showed Hoffman was taking steps to see a psychiatrist. Hoffman also had to
22 bring his own research on hypomania. Hoffman, in a relative state of shock and still trusting
23 Home Depot management, said he would do it if it would get him back to work.

24     52.    On August 16, 2013, after Hoffman had scheduled an August 19, 2013 appointment
25 with his own doctor and completed the online research he was told to do, he returned to Mr.
26 Kullman. He obligingly told Mr. Kullman that he accepted their "diagnosis" and would work with
27 him and the other doctors to "deal" with these issues. Mr. Kullman told Hoffman to let Ms.

28

**SECOND AMENDED COMPLAINT**

1   Waissman know that Mr. Kullman said Hoffman was ready to return to work.

2       53.    On August 19, 2013, Hoffman left a message in the morning for Ms. Waissman and

3   then went to his appointment with his own doctor, Dr. John Lahey.   While Dr. Lahey has been

4   Hoffman's doctor for greater than 15 years (and never diagnosed him as bipolar), it turns out that

5   Dr. Lahey has been a workers' compensation doctor for Home Depot for greater than 10 years.   At

6   this visit, Dr. Lahey told Hoffman, "I want you to go to Home Depot right now and tell them

7   you're not sleeping well, you have shortness of breath, you have chest pains, and you need to see

8   the company doctor." Dr. Lahey told Hoffman that Home Depot would send Hoffman back to Dr.

9   Lahey and he will fill out all of the paperwork and put Hoffman on worker's compensation leave.

10      54.    Immediately thereafter, Hoffman went to his Home Depot store and saw Gonzalez,

11  the store general manager.  Hoffman explained that he was doing everything that was asked of him

12  to return to his position and that the doctor that Ms. Waissman sent him to, Dr. Lahey, needed

13  Hoffman to obtain approval from Home Depot for Hoffman to continue seeing Dr. Lahey.

14  Gonzalez feigned that she did not know what was going on and said she would make some calls

15  and get back to Hoffman.  Hoffman then left the store.  When he returned to his car, he had a

16  message from Ms. Waissman.  Ms. Waissman said she was going to call Mr. Kullman and then

17  start the paperwork for Hoffman to return to work.  She said that because Jesse Santiago was the

18  manager that put Hoffman on leave, he would be the one to call and tell Hoffman when he could

19  return to work.  She told Hoffman not to go to Home Depot in the interim.

20      55.    Hoffman attempted to call Ms. Waissman for the next three to four hours to tell his

21  what had transpired with Dr. Lahey and that Hoffman had already been to Home Depot. He never

22  reached Ms. Waissman and she did not return his messages in this time period.   Hoffman also

23  tried to call Gonzalez to update his on what Ms. Waissman had said, but the phone was busy for an

24  hour.  Ultimately, Ms. Waissman called Hoffman back.  It was clear she had spoken to Gonzalez,

25  or someone at the Home Depot store.  Ms. Waissman said to Hoffman, "There is no company

26  doctor in this case." Ms. Waissman told Hoffman he had to wait to hear from Jesse Santiago.

27  Gonzalez left a message at 6:45 p.m. that evening telling Hoffman that she would call him the next

28

**SECOND AMENDED COMPLAINT**

1   morning at 7 a.m.

2        56.    On August 20, 2013, Gonzalez did not call Hoffman in the morning.   Now,
3   Hoffman was suspicious as to what was happening.   He called Home Depot's corporate Human
4   Resources and spoke to a Sergio at (770) 433-8211.   Sergio transferred Hoffman to a James, who
5   was with the Associate's Advice and Counseling Group. A ticket number was assigned to the
6   call/claim, 6025187.   Hoffman spoke with James for about 20 minutes about what was going on.
7   James put Hoffman on hold at 9:25 a.m. and the call was disconnected.   At 9:46 a.m., Hoffman
8   was able to reach two other people in the Atlanta Human Resources, Ed and Jay, and he was told
9   that the store manager would be calling him by the end of the day with a final resolution.

10        57.    Gonzalez called around 5 p.m. and terminated Hoffman over the phone. She said
11   that their "finding" was that Armando and Hoffman had a physical fight and a customer had to
12   break it up.   Hoffman repeatedly asked Gonzalez if anyone consulted the cameras as this
13   accusation was simply not true.   Gonzalez did not respond in anyway concerning the cameras or
14   the videotape that would have shown that none of these accusations were accurate.   Instead, she
15   said that Hoffman had received a first and final warning from Gantt in May related to the alleged
16   failure to assist Art and Veronica with the computer and therefore they were terminating Hoffman.

17        58.    There is no written account from Armando as to what happened on this fateful day
18   and all of the other statements in Hoffman's file make no mention of a customer who was alleged
19   to have "broken up a fight," and certainly no identification as to the name of this purported
20   customer or any statement from him or her.

21        59.    The next day, August 21, 2013, Hoffman was called by Ms. Waissman who asked
22   him how he was doing.  Ms. Waissman claimed not to know that Hoffman was terminated.  Rather
23   than address any of what had happened, Ms. Waissman stated was that she hoped Hoffman would
24   keep his last appointment with Mr. Kullman.

25        60.    As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer
26   general and special damages, including severe and profound pain and emotional distress, anxiety,
27   depression, headaches, tension, and other physical ailments, as well as medical expenses, expenses

28

**SECOND AMENDED COMPLAINT**

1   for psychological counseling and treatment and past and future lost wages and benefits.

2         61.    As a result of the above alleged conduct, Plaintiff is entitled to past and future lost

3   wages, bonuses and benefits.

4         62.    Plaintiff claims general damages for emotional distress and aggravation in a sum in

5   to be determined at the time of trial, which sum Plaintiff alleges is excess of the jurisdictional

6   minimum of this court.

7         63.    Because the acts taken toward Plaintiff were carried out by managerial employees

8   acting in a deliberate, cold, callous, cruel and intentional manner, in conscious disregard of

9   Plaintiff's rights and in order to injure and damage him, Plaintiff requests that punitive damages be

10  levied against Defendants and each of them, in sums in excess of the jurisdictional minimum of

11  this Court.

12

13                                          **FIRST CAUSE OF ACTION**

14  **HARASSMENT BASED UPON AGE IN VIOLATION OF _GOV. CODE_ § 12940 _ET SEQ_**

15                              (Against The Home Depot, Inc. and Does 1-40)

16        64.    Plaintiff hereby incorporates paragraphs 1 through 59 as though set forth in full

17  herein to the extent consistent with this cause of action.

18        65.    The Home Depot is an employer subject to suit under the California Fair

19  Employment and Housing Act (hereinafter "FEHA"), _Government Code_ § 12940 _et seq._

20        66.    Plaintiff has timely filed charges for harassment, discrimination and retaliation

21  with the California Department of Fair Employment and Housing (hereinafter "DFEH") and he has

22  properly requested and received his Right-To-Sue Notice from the DFEH. _See_, **Exhibit 1**.

23        67.    FEHA requires employers to refrain from harassing an employee on the basis of

24  age, and to prevent harassment on the basis of age from occurring.

25        68.    Plaintiff is a member of a protected class as a person over the age of 40.

26        69.    Plaintiff is informed and believes that his age and/or some combination of his age

27  with other protected characteristics set forth in the other causes of action herein under Government

28

- 17 -

**SECOND AMENDED COMPLAINT**

1  code sec. 12920 and 12926, et seq. were motivating reasons and/or factors in the decision to

2  subject Plaintiff to the aforementioned harassment during the time Plaintiff was employed at the

3  Home Depot, Inc.

4       70.    Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store

5  in which he worked. As such their actions are attributed to Home Depot by the theory of

6  respondeat superior. These actions constitute unlawful discrimination in employment on account

7  of age in violation of FEHA, *Government Code* § 12900 *et seq.*, and the corresponding regulations

8  of the Fair Employment and Housing Commission in that said Defendants created a hostile work

9  environment. These acts were neither sporadic nor trivial and show a concerted pattern of

10  harassment of a repeated, routine and/or generalized nature.

11       71.    Said conduct violates FEHA and such violations were the proximate cause in

12  Plaintiff's damages as stated below.

13       72.    The damage allegations of paragraphs 60 to 63, inclusive, are herein incorporated

14  by reference.

15       73.    The foregoing conduct of Defendants individually, or by and through their

16  managing agents, was intended by Defendants to cause injury to the Plaintiff or was despicable

17  conduct carried on by the Defendants with a willful and conscious disregard of the rights of

18  Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

19  rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

20  entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

21  Defendants.

22       74.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

23  of attorneys' fees and costs, including expert fees pursuant to the FEHA.

24

25  **SECOND CAUSE OF ACTION**

26  **VIOLATION OF LABOR CODE SECTION 1102.5**

27  (Against Home Depot and Does 1 through 40)

28

- 18 -

**SECOND AMENDED COMPLAINT**

75. Plaintiff hereby incorporates the allegations in paragraphs 1 through 59 above as though set forth in full herein.

76. As set forth above, during Hoffman's employment, Gonzalez began requiring many employees to take a full hour meal break and work later shifts, instead of the half hour break mandated by law and the half hour break that employees could elect to take under Home Depot's policies. This practice not only violated Home Depot's policies and practices, but made many of the employees with children, particularly single parents like Hoffman, from attending to child care and education needs.

77. Hoffman complained first to Gonzalez and the other management at his Home Depot store. When nothing was done about it, at the request of his fellow employees, Hoffman complained to corporate Human Resources at Home Depot, essentially going over Gonzalez' head. Hoffman complained both of the illegality of requiring a one-hour lunch period, rather than a half-hour period and he complained that forcing the one hour lunch period was illegal because it breached the agreement Home Depot had with its employees under its written policies that they could take a one hour or a half-hour lunch at their election.

78. After Hoffman made this complaint, and Gonzalez was taken to task for engaging in the illegal activity, thereafter, Hoffman was harassed and then terminated, in part, as a result of retaliation for his making this complaint to Gonzalez's superiors and/or persons at Home Depot who were able to override Gonzalez's decisions.

79. Labor Code §1102.5(b) provides "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to . .., if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the

**SECOND AMENDED COMPLAINT**

1    employee's job duties."

2        80.     In retaliation for his complaints and refusal bringing the violation to the

3    attention of Gonzalez's supervisors and persons in Human Resources at the corporate Home Depot

4    office attention, Plaintiff was first subjected to a unreasonably hostile work environment in which

5    no employee would be expected to work.  Then, Plaintiff was terminated.  These actions violated

6    Labor Code §1102.5(b) and (c).

7        81.     Plaintiff has been damaged as a result of Home Depot's violation of Labor Code

8    §1102.5(b) and(c) through the loss of past and future income and general damages.

9        82.     Home Depot's actions in terminating Plaintiff were intentional and constitute

10   harassment, fraud and oppression and Plaintiff is entitled to an award of punitive damages against

11   Home Depot.

12       83.     Plaintiff has brought this claim in the interest of the public good and safety and

13   is entitled to an award of attorneys' fees upon prevailing on his claims.

14
15   **THIRD CAUSE OF ACTION FOR HARASSMENT**

16   **BASED UPON DISABILITY/MEDICAL CONDITION AND/OR PERCEIVED**

17   **DISABILITY/MEDICAL CONDITION IN VIOLATION OF *GOV. CODE* § 12940 *ET SEQ***

18            (Against The Home Depot, Inc. and Does 1-40)

19       84.     Plaintiff hereby incorporates paragraphs 1 through 59 as though set forth in full

20   herein to the extent consistent with this cause of action.

21       85.     The Home Depot is an employer subject to suit under FEHA, *Government Code* §

22   12940 *et seq.*

23       86.     Plaintiff has timely filed charges for harassment, discrimination and retaliation

24   with the DFEH and he has properly requested and received his Right-To-Sue Notice from the

25   DFEH.  *See*, **Exhibit 1**.

26       87.     FEHA requires employers to refrain from harassing employees on the basis of

27   medical condition, disability and/or perceived disability, including psychological and mental

28   disabilities and to prevent harassment on the basis of medical condition, disability and/or perceived

- 20 -
**SECOND AMENDED COMPLAINT**

1  disability or medical condition from occurring.

2      88.    Plaintiff is a member of a protected class as a person with a medical condition

3  and/or disability or a perceived medical condition and disability, including psychological

4  disability,  requiring an accommodation in order to perform the essential elements of his position.

5      89.    Plaintiff is informed and believes that his medical condition and/or disability or his

6  perceived medical condition and/or disability and/or some combination of his actual or perceived

7  medical condition and/or disability with other protected characteristics set forth in the other causes

8  of action herein under Government code sec. 12920 and 12926,  et seq. were motivating reasons

9  and/or factors in the decision to subject Plaintiff to the aforementioned harassment during the time

10  Plaintiff was employed at the Home Depot, Inc.

11      90.    Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store

12  in which he worked.  As such their actions are attributed to Home Depot by the theory of

13  respondeat superior.  These actions constitute unlawful discrimination in employment on account

14  of actual or perceived medical condition and/or disability in violation of FEHA, *Government Code*

15  *§ 12900 et seq.*, and the corresponding regulations of the Fair Employment and Housing

16  Commission in that said Defendants created a hostile work environment.  These acts were neither

17  sporadic nor trivial and show a concerted pattern of harassment of a repeated, routine and/or

18  generalized nature.

19      91.    Said conduct violates FEHA and such violations were the proximate cause in

20  Plaintiff's damages as stated below.

21      92.    The damage allegations of paragraphs 60 to 63, inclusive, are herein incorporated

22  by reference.

23      93.    The foregoing conduct of Defendants individually, or by and through their

24  managing agents, was intended  by Defendants to cause injury to the Plaintiff or was despicable

25  conduct carried on by the Defendants with a willful and conscious disregard of the rights of

26  Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

27  rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

28

- 21 -
**SECOND AMENDED COMPLAINT**

1   entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

2   Defendants.

3       94.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

4   of attorneys' fees and costs, including expert fees pursuant to the FEHA.

5

6   **FOURTH CAUSE OF ACTION**

7   **DISCRIMINATION BASED UPON AGE INVIOLATION OF *GOV. CODE § 12940 ET SEQ***

8   (Against The Home Depot, Inc. and Does 1-40)

9       95.    Plaintiff hereby incorporates paragraphs 1 through 59 as though set forth in full

10  herein to the extent consistent with this cause of action.

11      96.    The Home Depot is an employer subject to suit under FEHA, *Government Code* §

12  12940 *et seq.*

13      97.    Plaintiff has timely filed charges for harassment, discrimination and retaliation

14  with the DFEH and he has properly requested and received his Right-To-Sue Notice from the

15  DFEH. *See,* **Exhibit 1**.

16      98.    FEHA requires employers to refrain from discriminating against an employee on

17  the basis of age, and to prevent discrimination on the basis of age from occurring.

18      99.    Plaintiff is a member of a protected class as a person over the age of 40.

19      100.    Plaintiff is informed and believes that his age and/or some combination of his age

20  with other protected characteristics set forth in the other causes of action herein under Government

21  code secs. 12920 and 12926, et seq. were motivating reasons and/or factors in the decision to

22  subject Plaintiff to the aforementioned discrimination during the time Plaintiff was employed at the

23  Home Depot, Inc.

24      101.    Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store

25  in which he worked. As such their actions are attributed to Home Depot by the theory of

26  respondeat superior. These actions constitute unlawful discrimination in employment on account

27  of age in violation of FEHA, *Government Code* § 12900 *et seq.*, and the corresponding regulations

28

- 22 -

1  of the Fair Employment and Housing Commission in that said Defendants created a hostile work

2  environment.  These acts were neither sporadic nor trivial and show a concerted pattern of

3  discrimination of a repeated, routine and/or generalized nature.

4      102.    Said conduct violates FEHA and such violations were the proximate cause in

5  Plaintiff's damages as stated below.

6      103.    The damage allegations of paragraphs 60 to 63, inclusive, are herein incorporated

7  by reference.

8      104.    The foregoing conduct of Defendants individually, or by and through their

9  managing agents, was intended  by Defendants to cause injury to the Plaintiff or was despicable

10 conduct carried on by the Defendants with a willful and conscious disregard of the rights of

11 Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

12 rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

13 entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

14 Defendants.

15     105.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

16 of attorneys' fees and costs, including expert fees pursuant to the FEHA.

17

18          **FIFTH CAUSE OF ACTION FOR DISCRIMINATION**

19     **BASED UPON DISABILITY/MEDICAL CONDITION AND/OR PERCEIVED**

20 **DISABILITY/MEDICAL CONDITION IN VIOLATION OF *GOV. CODE* § 12940 *ET SEQ***

21          (Against The Home Depot, Inc. and Does 1-40)

22     106.    Plaintiff hereby incorporates paragraphs 1 through 59 as though set forth in full

23 herein to the extent consistent with this cause of action.

24     107.    The Home Depot is an employer subject to suit under FEHA, *Government Code* §

25 12940 *et seq.*

26     108.    Plaintiff has timely filed charges for harassment, discrimination and retaliation

27 with the DFEH and he has properly requested and received his Right-To-Sue Notice from the

28

**SECOND AMENDED COMPLAINT**

1  DFEH. *See,* **Exhibit 1.**

2      109.    FEHA requires employers to refrain from discriminating against an employee on

3  the basis of medical condition, disability and/or perceived disability, including psychological and

4  mental disability, and to prevent discrimination on the basis of medical condition or disability

5  and/or perceived disability or medical condition from occurring.

6      110.    Plaintiff is a member of a protected class as a person with a medical condition

7  and/or disability or a perceived medical condition and/or disability requiring an accommodation in

8  order to perform the essential elements of his position.

9      111.    Plaintiff is informed and believes that his medical condition and/or disability or his

10  perceived medical condition and/or disability and/or some combination of his actual or perceived

11  medical condition and/or disability with other protected characteristics set forth in the other causes

12  of action herein under Government code secs. 12920 and 12926, et seq., were motivating reasons

13  and/or factors in the decision to subject Plaintiff to the aforementioned harassment during the time

14  Plaintiff was employed at the Home Depot, Inc.

15      112.    Gonzalez, Gantt and Santiago were Plaintiff's supervisors and managers of the store

16  in which he worked.  As such their actions are attributed to Home Depot by the theory of

17  respondeat superior.  These actions constitute unlawful discrimination in employment on account

18  of medical condition and/or disability and/or perceived medical condition or disability in violation

19  of FEHA, *Government Code* § 12900 *et seq.*, and the corresponding regulations of the Fair

20  Employment and Housing Commission in that said Defendants created a hostile work

21  environment.  These acts were neither sporadic nor trivial and show a concerted pattern of

22  harassment of a repeated, routine and/or generalized nature.

23      113.    Said conduct violates FEHA and such violations were the proximate cause in

24  Plaintiff's damages as stated below.

25      114.    The damage allegations of paragraphs 60 to 63, inclusive, are herein incorporated

26  by reference.

27      115.    The foregoing conduct of Defendants individually, or by and through their

28

- 24 -
**SECOND AMENDED COMPLAINT**

1  managing agents, was intended by Defendants to cause injury to the Plaintiff or was despicable

2  conduct carried on by the Defendants with a willful and conscious disregard of the rights of

3  Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

4  rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

5  entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

6  Defendants.

7      116.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

8  of attorneys' fees and costs, including expert fees pursuant to the FEHA.

9

10                          **SIXTH CAUSE OF ACTION**

11      **FOR RETALIATION IN VIOLATION OF GOV'T CODE SECS. 12940 ET SEQ.**

12                  (Against Home Depot and Does 1 through 40)

13      117.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 59 above, as

14  though set forth in full.

15      118.    At all times hereto, FEHA was in full force and effect and was binding upon

16  Defendants and each of them.

17      119.    FEHA requires Defendants to refrain from retaliating against an employee for

18  engaging in protected activity.

19      120.    Plaintiff engaged in the protected activities of exercising his legal and contractual

20  right to take no more than a half hour lunch break and to assert the same rights of other employees

21  at Home Depot.

22      121.    Plaintiff suffered the adverse employment actions of discrimination, harassment,

23  failure to investigate, remedy and/or prevent discrimination, suspension, and termination, and was

24  harmed thereby.

25      122.    Plaintiff is informed and believes that his exercise of his right to only a half hour

26  meal break off the clock and enforcement of the contractual policy rights to same was a motivating

27  reason and/or factor in the decisions to subject him to the aforementioned adverse employment

28

- 25 -

**SECOND AMENDED COMPLAINT**

1    actions.

2       123.    Defendants violated the FEHA by retaliating against Plaintiff and terminating him

3    for attempting to exercise protected rights, as set forth above.

4       124.    Plaintiff is informed and believes, and based thereon alleges, that the above acts of

5    retaliation committed by Defendants were done with the knowledge, consent, and/or ratification of,

6    or at the direction of, each other Defendant and the other Managers.

7       125.    The above said acts of Defendants constitute violations of the FEHA, and were a

8    proximate cause in Plaintiff's damage as stated below.

9       126.    The damage allegations of Paragraphs 60 through 63, inclusive, are herein

10   incorporated by reference.

11      127.    The foregoing conduct of Defendants individually, or by and through their

12   managing agents, was intended  by Defendants to cause injury to the Plaintiff or was despicable

13   conduct carried on by the Defendants with a willful and conscious disregard of the rights of

14   Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

15   rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby

16   entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

17   Defendants.

18      128.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award

19   of attorneys' fees and costs, including expert fees pursuant to the FEHA.

20

21                          **SEVENTH CAUSE OF ACTION**

22                   **FAILURE TO EXERCISE REASONABLE CARE**

23   **TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION**

24                   **IN VIOLATION OF GOV. CODE § 12940(k)**

25                        (Against Home Depot and Does 1-40)

26      129.    Plaintiff hereby incorporates paragraphs 1 through 59 as though set forth in full

27   herein to the extent consistent with this cause of action.

28

- 26 -

**SECOND AMENDED COMPLAINT**

130.    At all times mentioned in this Complaint, FEHA, and in particular, Gov. Code § 12940(k) was in full force and effect. This subsection requires defendants to take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring.  Home Depot violated this provision by failing to take all reasonable steps necessary to prevent discrimination and harassment from occurring, and by failing to take prompt remedial action after having actual and constructive knowledge of the hostile work environment that existed in Plaintiff's store.

131.    Plaintiff has timely filed charges for harassment, discrimination and retaliation with the DFEH and he has properly requested and received his Right-To-Sue Notice from the DFEH with respect to each Defendant.  The Right-To-Sue Notice is attached hereto as **Exhibit 1.**

132.    The above said acts of Defendants constitute violations of FEHA, and were a proximate cause in Plaintiff's damage as stated below.

133.    The damage allegations of Paragraphs 60 through 63, inclusive, are herein incorporated by reference.

134.    The foregoing conduct of Defendants individually, or by and through their managing agents, was intended  by Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code sec. 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

135.    Pursuant to Government Code sec. 12965(b), Plaintiff requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

## EIGHTH CAUSE OF ACTION

## FOR WRONGFUL TERMINATION IN VIOLATION OF THE PUBLIC

(Against Home Depot and Does 1 through 40)

136.    Plaintiff hereby incorporates paragraphs 1 through 59 as though set forth in full

- 27 -

**SECOND AMENDED COMPLAINT**

1    herein to the extent consistent with this cause of action.

2       137.    At all times mentioned in this Complaint, FEHA was in full force and effect and

3    was binding on Defendants.  The law requires Defendants to refrain from , among other things,

4    discriminating against any employee on the basis of age, medical condition, disability and/or

5    perceived disability, and from retaliating against any employee who engages in protected activity.

6       138.    At all times mentioned in this complaint, it was a fundamental policy of the State of

7    California that Defendants cannot discriminate and/or retaliate against any employee on the basis

8    of age, medical condition, disability and/or perceived disability, or engagement in protected

9    activity.

10      139.    Plaintiff believes and thereon alleges that his age, medical condition disability

11   and/or perceived disability, as well as his engaging in protected activities and/or some combination

12   thereof, were factors in Defendants' conduct alleged hereinabove.

13      140.    Such harassment, discrimination and retaliation, resulting in the wrongful

14   termination of Plaintiff's employment on the basis of medical condition, disability and/or perceived

15   disability, Plaintiff's engagement in protected activity, and/some combination of these factors,

16   were in proximate cause in Plaintiff's damages as stated below.

17      141.    The damage allegations of Paragraphs 60 through 63, inclusive, are herein in

18   incorporated by reference.

19      142.    The foregoing conduct of Defendants individually, or by and through their

20   managing agents, was intended by the Defendants to cause injury to the Plaintiff or was despicable

21   conduct carried on by the Defendants with a willful and conscious disregard of the rights of

22   Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's

23   rights, such as to constitute malice, oppression or fraud under Civil Code sec. 3294, thereby

24   entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of

25   Defendants.

26

27

28

- 28 -

**SECOND AMENDED COMPLAINT**

## NINTH CAUSE OF ACTION

## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against Home Depot, Gonzalez, Gantt, Santiago, Eric Doe/Eric Gonzalez and Does 1 through 50)

143.    Plaintiff realleges and incorporates by reference paragraphs 1 through 60, with a particular emphasis on paragraphs 57-62 inclusive, as though set forth in full herein.

144.    Defendants, and each of them, intentionally and with malice engaged in outrageous conduct that was outside the bounds of any reasonable employment relationship and which was calculated to cause Plaintiff to suffer extreme humiliation, physical and mental anguish and emotional distress. This conduct included labeling Plaintiff as an unstable person that might "go postal," and forcing Plaintiff to go to the Employee Assistance Program under the false pretenses of getting back his job. Defendants determined to terminate Plaintiff on August 13, 2013, but falsely told him that if he called Employee Assistance Program ("EAP") and did what they told him, he would be able to return to his position. There was never any intention to give Plaintiff his position back. Instead, the purpose was to humiliate Plaintiff and cause him severe emotional distress, by having the persons at EAP, who are not even licensed psychologists or psychiatrists tell Plaintiff that he was bioplar with hypomanic episodes and have him engage in "research" of this bogus diagnosis, all under the false guise of gaining his position back. For 12 days, Defendants tortured Plaintiff by making him believe he had a psychosis. He had to subject himself to answering very personal medical questions (most likely in violation of HIPAA rules since the persons asking the questions were not licensed doctors, nor doctors from whom Plaintiff voluntarily sought treatment) and personal relationship questions to these EAP persons for no legitimate reason, as Defendants never intended to give Plaintiff back his position. Rather, they simply wanted to humiliate and psychologically defeat Plaintiff.

145.    This heinous conduct was done intentionally, with the knowledge that it would cause Plaintiff severe physical and emotional distress. Defendants could have notified Plaintiff that he was terminated. There was no need to set him up and make him go through the grueling agony of being told he had a very serious psychosis and that he should "man-up" and admit it. This cruel conduct was committed with a wanton and reckless disregard to the consequences to Plaintiff.

146.    As a direct and proximate result of the acts alleged above, Plaintiff has suffered, and continues to suffer, severe and extreme humiliation, mental anguish and emotional and physical distress and has been damaged thereby in an amount to be determined by the trier-of-fact, but which amount is alleged to be in excess of this Court's minimum jurisdiction.  Defendant has needed the assistance of psychological counseling to deal with the severe psychological damage that was done by Defendants conduct and he is seeking out such counseling.  He has constant nightmares about the accusations and feels physically ill every time he thinks about how he trusted Defendants that he would get his job back if only put himself through the hoops through which Defendants wanted him to jump.

147.    Defendants' conduct was willful, malicious and intended to oppress and cause injury to Plaintiff and, accordingly, he is entitled to an award of punitive damages under Civil Code section 3294.

**WHEREFORE**, Plaintiff  prays as follows:

## ON THE FIRST THROUGH EIGHTH CAUSES OF ACTION

1.    For special damages in an amount to be proven at the time of trial including lost past and future wages, earnings, retirement benefits and other employment benefits, and all other sums of money together with interest on these amounts;

2.    For general damages in an amount to be proven at the time of trial for emotional distress and mental pain and anguish;

3.    For pre-judgment and post-judgment interest at the maximum legal rate;

4.    For punitive damages in an amount to be proven at the time of trial; and

5.    For an award of attorneys' fees and costs of suit.

## ON THE NINTH CAUSE OF ACTION

1.    For general damages in an amount to be proven at the time of trial for extreme and severe emotional distress and mental pain and anguish; and

**SECOND AMENDED COMPLAINT**

2.    For punitive damages in an amount to be proven at the time of trial.

**ON ALL CAUSES OF ACTION**

For such further and other relief as this Honorable Court may deem just and proper.

YOUNESI & YOSS, LLP

Dated:  February 2, 2015        By:_____
                                    Jan A. Yoss
                    Attorneys for Plaintiff, **PAUL HOFFMAN**

**DEMAND FOR JURY TRIAL**

As to the matters complained herein against Defendants Plaintiff Paul Hoffman demands a trial by jury.

YOUNESI & YOSS, LLP

Dated:  February 2, 2015        By:_____
                                    Jan A. Yoss
                    Attorneys for Plaintiff, **PAUL HOFFMAN**

- 31 -
**SECOND AMENDED COMPLAINT**

**EXHIBIT 1**

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TTY 800-700-2320
www.dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR.
DIRECTOR PHYLLIS W. CHENG

**AMENDED**

Jun 18, 2014

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 274020-111001-R
Right to Sue: Hoffman / Home Depot U.S.A., Inc., Doing Business As The Home Depot

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing

# COMPLAINT OF EMPLOYMENT DISCRIMINATION

## BEFORE THE STATE OF CALIFORNIA

## DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

In the Matter of the Complaint of                    DFEH No. 274020-111001-R
Paul Hoffman, Complainant.

vs.

Home Depot U.S.A., Inc., Doing Business As The
Home Depot Respondent.
2455 PacesFerry Road
Atlanta,  Georgia 30339

Complainant alleges:

1. Respondent Home Depot U.S.A., Inc., Doing Business As The Home Depot is a Private Employer subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

2. On or around Aug 20, 2013, complainant alleges that respondent took the following adverse actions against complainant: Discrimination, Harassment, Retaliation Asked impermissible non-job-related questions, Denied a good faith interactive process, Denied a work environment free of discrimination and/or retaliation, Terminated, .  Complainant believes respondent committed these actions because of their: Age - 40 and over, Disability, Engagement in Protected Activity, Medical Condition - including Cancer .

3. Complainant Paul Hoffman resides in the City of Huntington Beach, State of California.  If complaint includes co-respondents please see below.

-1-
*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

**Co-Respondents:**

Beatriz Gonzalez
3500 Macarthur Blvd.
Santa Ana  California 92704

Morgan Gantt
3500 Macarthur Blvd.
Santa Ana  California 92704

Jesse Santiago
3500 Macarthur Blvd.
Santa Ana  California 92704

Eric Doe
3500 Macarthur Blvd.
Santa Ana  California 92704

-2-
*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

**Additional Complaint Details:**

I started working at Home Depot in March 1999 in the Santa Ana Store, number 606. Throughout the fourteen years, I received many accolades and customer service awards. In or about early 2013, I was first targeted, along with several other workers over 40 years old, for termination by the management of my store. The management claimed that I had been advanced to a position of a "specialist". I denied ever agreeing to such advancement. These other over-40 employees and I were given criteria for sales and other activity (like signing up people for credit cards) that we were supposed to meet in this role as a specialist. In late 2012, and early 2013, I saw the other older workers around me being let go for failure to meet these new rigorous and unattainable guidelines. It was clear by some of the comments being made to me and the unreasonable sales and other benchmark criteria being foisted on us, called the metrics, that I was similarly being singled-out for termination. In addition to being targeted for my age, I was also retaliated against by my stores management for asserting my and other employees rights to meal breaks pursuant to company policy. In March 2013, the Santa Ana store manager, Beatrice Gonzalez, began requiring all employees to take a one-hour off-the-clock lunch break, instead of the 30-minute break most of them were taking. While I had taken an hour lunch break by choice most of the time I had been with Home Depot, in 2012, I began taking only 30-minutes so I could end my shift 30-minutes earlier and help my then-4th grade son with his homework. Other employees has similar concerns. As a result, at the request of my fellow employees and to understand the company policy better myself, I called corporate Human Resources to determine what the policy was. I spoke with Rowanda Velonza. Ms. Velonza confirmed that the Home Depot policy was that the associates were allowed to elect between a 30-minute and a 60-minute lunch. She also confirmed that an individual store manager could not override this policy and require employees to take only a 60-minute or only a 30-minute lunch. When I explained what was happening, Ms. Velonza wanted me to transfer her to a manager. Afraid that the purported confidentiality of the call would be compromised, I asked if she would call back. The next day, Ms. Gonzalez called me into her office and berated me saying, Oh, youre the only one who has to have a 30-minute lunch. I have to change all these schedules just to accommodate you." Even when I began to fear for my job out of retaliation and said I would take the 60-minute lunch, Ms. Gonzalez said, Oh no, no its too late now. Its already done. Well try it for a few months and see how it works." I explained to Ms. Gonzalez that I was trying to help other associates who had asked me about the lunch policy, but she did not want to hear anything about how the employees felt. Again, I said, Change my lunch back to 60-minutes, I dont want to cause any problems. Again Ms. Gonzalez said, No, no, no, too late now. In retaliation, Ms. Gonzalez changed my schedule. Instead of leaving a

-3-

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

half-hour earlier to be able to help my son, Ms. Gonzalez simply had me come in a half-hour later, take my 30-minute lunch, and then leave at my old shift time. Ms. Gonzalez also scheduled me to work until 9:30 p.m. on Sunday nights. On Sunday, however, the store closed at 8 p.m. The other associates who worked the closing shift stayed until 9:00 p.m. There was no night crew on Sunday night. I was the only associate scheduled to 9:30 p.m. An associate could not work until 9:30 p.m. without obtaining a prior written authorization, even if he was on the schedule until 9:30 p.m.. So, each Sunday, I would have to fill out a form and have it signed by my manager, Brian Chang,. When I did, Mr. Chang would invariably tell me that no one could stay to 9:30 p.m. Mr. Chang would have me come in a half hour earlier or just work 7 hours. If I forgot to get the paperwork signed, or could not locate Mr. Chang, I would receive a demerit. This same game was played with another associate who was terminated shortly after being moved to the phantom 9:30 p.m. shift end-time. Then, in April 2013, I received my first negative annual review in 14 years! My review was curiously given by a very young and new assistant manager, Morgan Gantt, another assistant manager named Mike, but whose last name I do not know, and Angela Gonzalez, a fellow associate. It is very odd that this associate was present in the review because having another associate present does not comport with protocol and violates the confidentiality of the review process. I had only met Ms. Gantt once before the review in March of 2013. I had never worked with her at all during the preceding year. In fact, Ms. Gantt had not even been in this particular store in the prior year. When the review started, Ms. Gantt immediately began to tell me what a failure I was and how I was not doing a good job or meeting the metric (the guidelines for specialists). In response to the review being presented by someone who had no familiarity with my work, I asked who prepared the review and provided the comments. Ms. Gantt stated only, Managers. She would not give me any names. I asked if Brian Chang, the manager I had for the last several years, had weighed in on the review. Ms. Gantt would not respond. This conduct was disturbing to me. I immediately had a severe panic attack. I believed I was having a heart attack as I buckled over on the floor and had difficulty breathing, feeling constriction in my chest. I asked for medical assistance, but none was provided. I called for the store manager, Ms. Gonzalez, who came to the room and asked everyone else to leave. From my bent-over posture on my knees, I pleaded with Ms. Gonzalez to call 911, but Ms. Gonzalez completely ignored my entreaties. After about 20 minutes, my breathing became more regulated. I asked Ms. Gonzalez if she was aware of the nature of my review. She began to read the document. Without responding, she simply said, they needed to get Morgan, Miguel and Angela back in the room and continue the review. When Morgan and Angela had returned, without addressing in any way the concerns I had with the review and the way in which it was being given, Ms. Gonzalez said that I had to sign-up one credit card a week, one measure a week, and one RSW appointment a week for the next 90 days. She then told me that I had a lot of open quotes in the system and most of them looked like "fluff quotes." Importantly, within the next week, one of the quotes in the system, one Ms. Gonzalez called a fluff quote, was

-4-

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

sold for $2,000. I pointed this out to Ms. Gonzalez, who had no response. Then, without explanation, a week after the review, Ms. Gantt told me that rather than signing up 1 credit card, 1 measure and 1 RSW lead a week, I had to do 1 a day for the next 30 days! She said I was being placed on a Performance Improvement Plan (PIP). Then, the management at Home Depot concocted "events" between other employees and me in an effort to evoke an altercation or inappropriate behavior from me designed to provide management with a reason to fire me. The first event was on May 17, 2013. One of the employees from the Pro Desk, Art, asked me if I would help him with the new Milgard software. I agreed and went with Art to the Millworks Desk. I saw that Art was in the wrong program altogether and showed Art how to navigate the new custom designs software system that had been installed. Once I finished showing Art how to use the program with a sample patio door, Art went to get his customer and asked me to stay nearby so Art could turn to me if he had any further questions. I agreed to help. While at the desk, I was barraged with customer calls and customers who were physically present that required immediate attention. When Art returned to the Millwork Desk, he came with another associate, Veronica, and the customer. Art began working with the customer on the right computer of the Millwork Desk. I was on the left computer about 10 feet away. I was involved with three or four separate matters when Art and Veronica turned and asked me a question about the custom design Milgard software. I was at least 8 feet away from their computer at that time, but tried to look at the screen. I had not come across the particular option on the screen. When I expressed that I was not yet familiar with the options being shown, Veronica responded, in front of Art and their mutual customers, You mean you do not know the software?! At this time, I was far from the computer and engrossed with my own customers and the service I needed to provide to them. I was trying my best to help two struggling employees in addition to everything else I was doing. I could not simply drop the customers I was helping. I did not respond to Veronicas inappropriate comment in front of a customer, but, instead, continued to try and help -- again from greater than 8 feet away from the computer. Rather than engage with Veronica who was becoming agitated, I determined it would be more productive for me to assist my own customers and I left the desk so to do so. Just before I did, Veronica called Ms. Gantt to come to the desk. Once I finished with the customer I was helping, I returned to the Millworks desk to see if I could help now that I could devote my undivided attention on Veronicas question on the Milgard software. When I returned to the Millwork Desk, Ms. Gantt was there. She accused me of not giving customer service and not helping out another associate. Ms. Gantt said in front of Veronica, Art, and the customer, that the new software had been in the system for a year, and that this is one of the problems with me, that I was not using the new software. The statement was categorically untrue in many ways. First, the software had not been in the system for a year, but only a few weeks. Second, I did use the system frequently, but apprised Ms. Gantt that it simply takes time to become familiar with all of the options and features. Importantly, Ms. Gantt, a supposed supervisor, did not know the system or how to help Art or Veronica. The whole situation was contrived.

-5-

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

Morgan then shouted, Are you refusing to give a customer service? I immediately responded, ABSOLUTELY NOT! I tried to explain that I had not seen this particular option before, but if given some time, I would likely be able to figure it out. Ms. Gantt then asked me to come back to the office -- apparently helping this particular customer now became secondary to reprimanding me.   Conspicuously, by the time we arrived at the office, Don, the Department Head, was already present. Ms. Gantt again accused me of not helping Art and his customer. I attempted to explain how I did help and was trying to help.  I recounted how I had shown Art where the software was located on the computer and how I had run a sample patio door for me to help Art understand how to use the program. I even showed how I knew the answer to the fixed window question that was on the screen, it was just taking me a few minutes to understand the way in which the question was being asked in this new software program. Veronica and Ms. Gantt apparently believed I was supposed to drop everything I was doing for other customers and place helping Veronica and Ms. Gantt concerning their deficiencies with the program above all else.  That is not the definition of good customer service.  After I explained what had happened from my perspective, the confrontation ended.  The next day, however, May 18, 2013, I came to work and Ms. Gantt called me into the office again. Kim, a representative from Atlanta Human Resources, was on the phone and wanted to know about everything that happened the prior day.  It turns out that Ms. Gantt had written me up for a "first and final" warning for being disrespectful and not helping another associate.  I explained the situation from my perspective and that seemed to be the end of it.  It is really hard to imagine how the incident, no matter how it was recounted, could result in a first warning that was also a final warning for a 14-year employee with a stellar track record.  Nonetheless, I went about my work as usual, until the other shoe dropped. On August 11, 2013, management set up a situation designed to goad me into an altercation, but I did not fall prey.  Consequently, they fabricated the events in question and used this and a perceived medical condition, as a basis to terminate my employment.  At around 7:30 p.m. on August 11, 2013, I was at the Millwork Desk using the computer on the left side of the desk to assist customers with window and door orders.  Miguel Diaz, an associate in plumbing, was using the right side of the desk to address 2 full carts of marked-down product.  An associate named Armando, who I had never seen before, but learned later had been with Home Depot for about six months, approached the left side of the Millwork Desk and stopped about three to four feet in front of me.  He commanded Miguel to go to Aisle 22 to help customers.  Miguel responded that there were three other associates in plumbing on duty and asked Armando if he could page one of them as Miguel was busy with the mark-downs.  Armando told Miguel again he had to go and turned to walk away.  Miguel got up and went to help the customer. I then said to Armando, You should follow him and show him the customer that needs help.  I also said to Armando, You should stand behind him and listen to what hes saying so if the same question comes up tomorrow or in the future, then you may be able to answer it. Armando responded by walking toward me, sticking his finger out and saying, You dont fucking tell me what to do. I then said,

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

Okay. I wont tell you what to do, Ill show you what to do. I picked up the phone in front of him and dialed 126, which is the number for plumbing.  The phone was laying on the desk on the right side where Miguel was sitting moments before. It rang and obviously no one was there to answer it. I then said to Armando, This will happen quite a bit, and when this happens, this is what you do. I then dialed 676 to page overhead. I said, Any associate in plumbing, please call 325.  Any associate in plumbing, please call 325. I hung up the phone and I pointed toward Miguel down the aisle.  I said to Armando, If I was you, thats where I would be right now, showing Miguel the specific customer that you said needed help and trying to get PK (Product Knowledge) on whatever it is Miguel was talking about." Armando moved closer to me, lifted up the sleeve of his shirt to reveal a tattoo on his arm and then he stuck his finger millimeters from my nose and said, You dont want to fuck with this (referring to the tattoo), and you dont want to fuck with me. It appeared that Armando was trying to signify that he had some sort of gang affiliation.  I stuck my hands up in the air and said, I dont own a gun, the only knife I use is to cut up vegetables, but however you want to deal with this, you let me know. At about this time, a bald Asian man dressed in white who appeared to be a religious monk that I had noticed earlier waiting to be helped walked very close by the desk and looked at Armando and I.  I had seen this persons interaction earlier with the other customers he was with and it was clear that the man was unable to speak much English and he did not appear to understand much English either.  The man had no interaction with Armando or me.  He did not touch either one of us and said nothing to either of us.  He simply passed by on his way to return to the people he was with.  However, as soon as this man passed Armando and me, Armando changed his expression.  Armando said, Hey man, Im sorry were on the same team, we should be working together. Were cool right? Were cool right? I stuck out both of my hands with my palms up and fists open and shook hands with Armando.  I responded, Yes were cool. My name is Paul Hoffman, I work in the Millworks Department, which is Windows and Doors, and if you ever need help in this department, you can come to me because I know Ill be in your department cutting wood and helping people over there. Next time, you should take the time to listen to what Miguel has to say about anything in plumbing. He really knows his stuff and you could learn a lot from him. Armando said, I have worked for Home Depot for a long time and I know what Im doing. He walked away.  That was all that had happened.  After Armando left the area, I helped a family that had been waiting for assistance to understand the measurements they needed for their door order before turning to the Asian couple who were with the installer.  I then helped these customers to buy a door and even helped them take the door to their car. When I returned to the store, Chris Pula, who is a Department Head, approached me.   Mr. Pula told me  that I needed to go to training room.  When I arrived, present was Ms. Gantt and Mr. Pula.  Ms. Gantt said that Armandos shift had ended, and he was gone, but that Armando reported that he felt threatened by me.  Ms. Gantt asked me to write down what had happened.  I wrote the story down, although I did exclude the expletives and threat about the tattoo that Armando used, because I did not want to inflame the issues and

-7-

*Complaint – DFEH No. 274020-111001-R*

cause Armando to get in trouble. My shift was scheduled to end at 8:00 p.m. and I needed to leave immediately to get home to my children. I rushed through writing what had happened and did not include all of the detail. Ms. Gantt, without even reviewing what I had written or noticing that it indicated that Armando was the only aggressive person in the encounter, said to me, Id like you to leave the store. I noted that my shift was ending in a matter of minutes, as it was then approximately 8:00 p.m. Ms. Gantt stated that she thought I was scheduled to work until 9:30 p.m. Ms. Gantt had not noticed that Mike, one of the store managers, had approved a shift change for me several days before. I clocked out and left. The next day, August 12, 2013, I reported to work at 1:30 p.m. I was immediately told to wait in the office. I did so for forty minutes. Then, Ms. Gantt came in and said, "Were ready for you." She took me to another office where they held a telephone conference with Kim in the Atlanta Human Resources office. After the call, where the issues of the prior day were discussed, Kim very clearly said, "Im comfortable with Paul going on the floor and working." The manager-on-duty, Eric, and Ms. Gantt, both agreed and I went to work. A full five hours later, Eric and another manager, Jesse Santiago, summoned me into the office again. Mr. Santiago told me that they reviewed the issue again and that they were going to put me on leave without pay. When I asked if I was being fired, they said no, but told me that I he had to call a person named Liz Waissman within 24 hours. The managers told me that Ms. Waissman works for Care Solutions, the Employee Assistance Program ("EAP"), and that she would help me get back to work. I immediately called Ms. Waissman. I still did not understand what was really going on. I began to answer Ms. Waissmans "assessment" questions. Bear in mind, Ms. Waissman never told me the purpose of the questions. Then, the questions turned very personal. Ms. Waissman asked me if I had ever been hospitalized for mental illness. I told Ms. Waissman, unqualifiedly, that I had not ever been hospitalized for any issue. This repugnant woman actually had the audacity to respond that it was absolutely unbelievable to her that I had never been hospitalized and that I had some of the greatest "coping skills she had ever seen." I did not understand the nature of these questions and was not comfortable speaking with someone about these personal and strange questions over the phone. I wanted to meet with Ms. Waissman in person and look her in the eyes to understand the nature of what was being asked. Ms. Waissman refused, but told me to meet with Jeffrey Kullman, another EAP employee, who Ms. Waissman called her eyes and ears. Ms. Waissman still did not tell me the purpose of the questions she was asking or why I was speaking with her. I, therefore, went to meet with Mr. Kullman. The next day, I spoke with Ms. Waissman again. Ms. Waissman then blurted out that Mr. Kullman diagnosed me as bipolar, with hypomania episodes. Bear in mind that Mr. Kullman has no medical degree or training whatsoever. Ms. Waissman told me that if I wanted my job back I had to go to my doctor, get a complete physical with blood tests, and get an appointment to see a psychiatrist. She also told me to Google hypomania episodes and do some research and see if I believed any of it applied to me. Then, this woman, who just a few days before told me she was supposed to be helping me and

-8-

Complaint – DFEH No. 274020-111001-R

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

who spoke to me as if she actually cared about my employment status and mental health, told me that I had to "man up and face it." She told me that my next appointment with Mr. Kullman was a few days later and I had to bring a doctors card at that time that showed me that I was taking steps to see a psychiatrist. I also had to bring my own research on hypomania. In a relative state of shock and still trusting Home Depot management, I said I would do it if it would get me back to work. On August 16, 2013, after I had scheduled an August 19, 2013 appointment with my own doctor and completed the online research that I was told to do, I returned to Mr. Kullman. I obligingly told Mr. Kullman that I accepted their "diagnosis" and would work with him and the other doctors to "deal" with these issues. Mr. Kullman told me to let Ms. Waissman know that Mr. Kullman said I was ready to return to work. On August 19, 2013, I left a message in the morning for Ms. Waissman and then went to my appointment with my own doctor, Dr. John Lahey. While Dr. Lahey has been my doctor for greater than 15 years (and never diagnosed me as bipolar), it turns out that Dr. Lahey has been a workers compensation doctor for Home Depot for greater than 10 years. At this visit, Dr. Lahey told me, I want you to go to Home Depot right now and tell them youre not sleeping well, you have shortness of breath, you have chest pains, and you need to see the company doctor. Dr. Lahey told me that Home Depot would send me back to Dr. Lahey and he will fill out all of the paperwork and put me on workers compensation leave while I spoke with a lawyer about what Dr. Lahey perceived to be a strong employment case. In essence, Dr. Lahey saw what Home Depot was doing to me, both mentally and physically, and also the set-up that was happening in my job. Immediately thereafter, I went to my Home Depot store and saw Beatrice Gonzalez, the store general manager. I explained that I was doing everything that was asked of me to return to my position and that the doctor that Ms. Waissman sent me to, Dr. Lahey, needed me to obtain approval from Home Depot for me to continue seeing Dr. Lahey. Ms. Gonzalez feigned that she did not know what was going on and said she would make some calls and get back to me. I then left the store. When I returned to my car, I had a message from Ms. Waissman. Ms. Waissman said she was going to call Mr. Kullman and then start the paperwork for me to return to work. She said that because Jesse Santiago was the manager that put me on leave, he would be the one to call and tell me when I could return to work. She told me not to go to Home Depot in the interim. I attempted to call Ms. Waissman for the next three to four hours to tell her what had transpired with Dr. Lahey and that I had already been to Home Depot. I never reached Ms. Waissman and she did not return my messages in this time period. I also tried to call Ms. Gonzalez to update her on what Ms. Waissman had said, but the phone was busy for an hour. Ultimately, Ms. Waissman called me back. It was clear she had spoken to Ms. Gonzalez, or someone at the Home Depot store. Ms. Waissman said to me, There is no company doctor in this case. Ms. Waissman told me the I had to wait to hear from Jesse Santiago. Ms. Gonzalez left a message at 6:45 p.m. that evening telling me that she would call me the next morning at 7 a.m. On August 20, 2013, Ms. Gonzalez did not call me in the morning. Now, I was suspicious as to what was

-9-

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

happening. I called Home Depots corporate Human Resources and spoke to a Sergio at (770) 433-8211. Sergio transferred me to a James, who was with the Associates Advice and Counseling Group. A ticket number was assigned to the call/claim, 6025187. I spoke with James for about 20 minutes about what was going on. James put me on hold at 9:25 a.m. and the call was disconnected. At 9:46 a.m., I able to reach two other people in the Atlanta Human Resources, Ed and Jay, and I was told that the store manager would be calling me by the end of the day with a final resolution. Ms. Gonzalez called around 5 p.m. and terminated me over the phone. She said that their "finding" was that Armando and I had a physical fight and a customer had to break it up. I repeatedly asked Ms. Gonzalez if anyone consulted the cameras as this accusation was simply not true. Ms. Gonzalez did not respond in any way concerning the cameras or the videotape that would have shown that none of these accusations were accurate. Instead, she said that I had received a first and final warning from Ms. Gantt in May related to the alleged failure to assist Art and Veronica with the computer and therefore they were terminating me. There was no mention of this ruse and the charade that I had endured over the last week with Ms. Waissman and Mr. Kullman, that was designed to "return me to work". There was no discussion about my purported diagnosis as bipolar with hypomania and whether there was any accommodation that would enable me to perform the essential functions of my position. After 14 stellar years of employment, I was terminated over the phone after Human Resources in Atlanta said I should be returned to work, after I went to work for 5 hours the day after this bogus incident and after I jumped through every hoop that Home Depot put me through with regard to EAP and doctors. I have subsequently seen my personnel file and there is no statement in it from Armando and at an unemployment appeal hearing, there was an admission by Home Depot that they do not have one. There is no statement by any customer and the identity of this alleged customer that purportedly broke up a fight is nowhere in the records. Indeed, the statements by the various managers are all inconsistent as to what they claim happened. The cruel and tortured nature of what happened to me continued the next day, August 21, 2013, when I was called by Ms. Waissman who asked me how I was doing. Ms. Waissman claimed not to know that I was terminated. Rather than address the despicable nature of the termination in any way -- after all, just the Friday before Mr. Kullman told me to tell Ms. Waissman that I was okay to return to work and Ms. Waissman said I should hear from Mr. Santiago as to when I was to return -- all Ms. Waissman stated was that she hoped I would keep my last appointment with Mr. Kullman. While subsequent to these events, I saw a true psychiatrist who has found that I am not bipolar, because of the "diagnosis" of the EAP personnel from Home Depot, my termination was due, in part, to the perception of my medical condition and disability. My termination from Home Depot was both discriminatory and retaliatory. The management at the Santa Ana Home Depot wanted to get rid of all of the older, higher paid employees and made them "specialists," in order to set up stringent goals for them to meet. The management then systematically terminated those older workers for failure to meet these arbitrary

-10-

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

guidelines in a position many of them did not want. I proved too tough to terminate this way, because I generally met the benchmarks. When I championed the legal rights of all the employees related to the violation of meal breaks, I became an even bigger target for management who wanted to terminate me in retaliation -- at any cost. My personnel file identifies the attempts to trump up my dismissal. Local management attempted to terminate me on several occasions with either false reasons or trumped up ones, but either was unable to finish the hatchet job because they failed to follow some store protocol or the HR in the corporate office told them they had not properly documented matters for the termination. The local management kept at it doggedly, until they got the green light after the horrific events chronicled above.

-11-

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

## VERIFICATION

I, Paul Hoffman, am the Complainant in the above-entitled complaint.   I have read the foregoing complaint and know the contents thereof.   The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On Jun 18, 2014, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Huntington Beach, CA
Paul Hoffman

-12-

*Complaint – DFEH No. 274020-111001-R*

Date Filed: Jun 18, 2014

Date Amended: Jul 03, 2014



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency    GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**    DIRECTOR PHYLLIS W. CHENG
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TTY:800-700-2320
www.dfeh.ca.gov

**AMENDED**

Jun 18, 2014

Paul Hoffman
17706 Van Buren, #B
Huntington Beach California 92647

RE: Notice of Case Closure and Right to Sue
DFEH Matter Number: 274020-111001-R
Right to Sue: Hoffman / Home Depot U.S.A., Inc., Doing Business As The Home Depot

Dear Paul Hoffman,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective Jun 18, 2014 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GOVERNOR EDMUND G. BROWN JR.

DIRECTOR PHYLLIS W. CHENG

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TTY 800-700-2320
www.dfeh.ca.gov

**AMENDED**

Enclosures

cc:  Beatriz Gonzalez

Morgan Gantt

Jesse Santiago

Eric Doe

1

## PROOF OF SERVICE

2  STATE OF CALIFORNIA   )
                             )    ss.
3  COUNTY OF LOS ANGELES )

4       I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) and not a party to the within action; my business address is 11355 W. Olympic Blvd., Ste. 200, Los Angeles, CA 90064.

5

6       On **February 2, 2015, I** served the foregoing document described **SECOND AMENDED COMPLAINT** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:  **SEE ATTACHED SERVICE LIST**

7

8  [✓]   **(BY MAIL:  As indicated on the attached Service List)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

9

10

11  [  ]   **(BY OVERNIGHT COURIER:  As indicated on the attached Service List)** I caused the above referenced document(s) to be delivered to an overnight courier service, via **FEDERAL EXPRESS**, for delivery to the address indicated on the attached Service List..

12

13  [  ]   **(BY EMAIL:** As indicated on the attached Service List) I caused such document to be sent via email to the addressee and received a confirmed report indicating that this document was successfully transmitted to the party named above.

14

15  [  ]   **(BY PERSONAL SERVICE)** I caused such envelopes to be personally delivered  by GOLDEN STATE MESSENGERS to the offices of the addressees.

16

17  [  ]   **(BY FACSIMILE TRANSMISSION)** I caused such document to be sent via facsimile to the addressee and received a confirmed transmission report indicating that this document was successfully transmitted to the party named above.

18

19  [✓]   **(BY ELECTRONIC TRANSMISSION/COURT)** I transmitted a PDF version of this document by electronic mail to the party(s) identified on the service list using he e-mail address(es) and procedure provided pursuant to the Court's Electronic Filing Notification System, see, e.g., CCP section 1010.6 and CRC Rule 2.251.

20

21

22       I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on February 2, 2015 at Los Angeles, California.

23

24

25                              Koko Masako

26

27

28

**SECOND AMENDED COMPLAINT**

1

*Hoffman v. Home Depot U.S.A., Inc.*

2

Case No. 30-2014-00727891

3

**SERVICE LIST**

4

Danielle Claxton, Esq.
LEE TRAN & LIANG

5

601 S. Figueroa St., Ste. 3900
Los Angeles, CA  90017

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 33 -

**SECOND AMENDED COMPLAINT**

**EXHIBIT P**

1  **LEE TRAN & LIANG LLP**
   Steven C. Gonzalez (Bar No. 191756)
2  steven.gonzalez@ltlattorneys.com
   Anthony Sbardellati (Bar No. 246431)
3  anthony.sbardellati@ltlattorneys.com
   Lacey Rainwater (Bar No. 294710)
4  lacey.rainwater@ltlattorneys.com
5  601 S. Figueroa Street, Suite 3900
   Los Angeles, CA 90017
6  Tel: (213) 612-8900
   Fax: (213) 612-3773
7
8  Attorneys for Defendants
   HOME DEPOT U.S.A., INC., BEATRIZ
9  GONZALEZ, MORGAN GANTT, JESSIE
   SANTIAGO, and ERIC GONZALEZ

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**03/03/2015** at 12:30:00 PM
Clerk of the Superior Court
By Fidel Ibarra,Deputy Clerk

10
11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
12                    **FOR THE COUNTY OF ORANGE**

13 PAUL HOFFMAN,                           | CASE NO.: 30-2014-00733252-CU-WT-CJC
14         Plaintiff,                      | [Assigned for all purposes to
                                           | The Hon. Frederick P. Aguirre]
15     vs.                                 | **DEFENDANTS BEATRIZ GONZALEZ,**
16 HOME DEPOT U.S.A., INC., doing business as | **MORGAN GANTT, JESSIE SANTIAGO,**
   THE HOME DEPOT, a Delaware Corporation, | **AND ERIC GONZALEZ'S NOTICE OF**
17 BEATRIZ GONZALEZ, an individual;        | **HEARING ON DEMURRER; DEMURRER**
   MORGAN GANTT, an individual; JESSIE     | **TO PLAINTIFF'S SECOND AMENDED**
18 SANTIAGO, an individual; ERIC GONZALEZ, | **COMPLAINT; MEMORANDUM OF**
   an individual and DOES 1 through 50, inclusive | **POINTS AND AUTHORITIES**
19         Defendants.                     | [[Proposed] Order filed concurrently herewith]
20
21                                         | Complaint Filed: July 10, 2014
                                           | Trial:            None set
22                                         | Date:            ~~March 30, 2015~~ 06/01/2015
                                           | Time:            1:30 p.m.
23                                         | Dept.:           C23
                                           | Reservation:     72080737
24
25
26
27
28

---

DEFENDANTS BEATRIZ GONZALEZ, MORGAN GANTT, JESSIE SANTIAGO, AND ERIC GONZALEZ'S
DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

1  TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that on ~~March 30~~, June 01, 2015, at 1:30 p.m., or as soon thereafter as the

3  matter may be heard, in Department C23 of the above-titled Court located at 700 Civic Center

4  Drive West, Santa Ana, CA 92701, Defendants Beatriz Gonzalez, Morgan Gantt, Jessie Santiago,

5  and Eric Gonzalez (collectively, the "Individual Defendants"), will, and hereby do, demur

6  generally to the ninth cause of action for intentional infliction of emotional distress of the Second

7  Amended Complaint ("SAC") of Plaintiff Paul Hoffman ("Plaintiff") on file herein, pursuant to

8  Code of Civil Procedure section 430.10(e), on the grounds that it fails to state a cause of action.

9  The Individual Defendants request that the Court sustain the demurrer *without* leave to

10  amend for the following reasons: First, the IIED cause of action is based on the same allegations

11  that are the basis for Plaintiff's FEHA claims, and thus cannot be asserted against the Individual

12  Defendants, who were not Plaintiff's employer. Second, Plaintiff did not state facts sufficient to

13  show that the Individual Defendants' conduct was so "outrageous" as to exceed all bounds of that

14  usually tolerated in a civilized community. Third, Plaintiff did not allege facts sufficient to show

15  that the Individual Defendants intended to cause, or acted with reckless disregard of the

16  probability of causing, Plaintiff emotional distress. Finally, Plaintiff did not allege the last required

17  element of severe emotional distress with the requisite specificity.

18  The demurrer is based on this notice of hearing, the attached demurrer and memorandum

19  of points and authorities, and other pleadings and papers as may be presented at the hearing.

20

21  DATED: March 3, 2015            LEE TRAN & LIANG LLP

22

23  By: _____

24  STEVEN C. GONZALEZ
ANTHONY SBARDELLATI

25  LACEY RAINWATER
Attorneys for Defendants

26  HOME DEPOT U.S.A., INC., BEATRIZ
GONZALEZ, MORGAN GANTT, JESSIE

27  SANTIAGO., and ERIC GONZALEZ

28

---

1

DEFENDANTS BEATRIZ GONZALEZ, MORGAN GANTT, JESSIE SANTIAGO, AND ERIC GONZALEZ'S
DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

**DEMURRER**

Defendants Beatriz Gonzalez, Morgan Gantt, Jessie Santiago, and Eric Gonzalez (collectively, the "Individual Defendants"), hereby demurrer generally to the ninth cause of action for intentional infliction of emotional distress of the Second Amended Complaint ("SAC") of Plaintiff Paul Hoffman ("Plaintiff") on the following grounds:

**NINTH CAUSE OF ACTION**

1.    The cause of action for intentional infliction of emotional distress fails to state facts sufficient to constitute a cause of action (a general demurrer). Cal. Civ. Proc. Code § 430.10(e).

DATED: March 3, 2015                LEE TRAN & LIANG LLP


By: _____
     STEVEN C. GONZALEZ
     ANTHONY SBARDELLATI
     LACEY RAINWATER
     Attorneys for Defendants
     HOME DEPOT U.S.A., INC., BEATRIZ
     GONZALEZ, MORGAN GANTT, JESSIE
     SANTIAGO., and ERIC GONZALEZ

---

1

DEFENDANTS BEATRIZ GONZALEZ, MORGAN GANTT, JESSIE SANTIAGO, AND ERIC GONZALEZ'S
DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Paul Hoffman ("Plaintiff") brings this employment action against his former employer, Defendant Home Depot U.S.A., Inc. ("Home Depot") and his former managers, Defendants Beatriz Gonzalez, Morgan Gantt, Jessie Santiago, and Eric Gonzalez (collectively, the "Individual Defendants"). The only cause of action asserted against the Individual Defendants is intentional infliction of emotional distress ("IIED").

This Court sustained the Individual Defendants' previous demurrer to Plaintiff's cause of action for IIED on the grounds that (1) the IIED cause of action is based on the same allegations that are the basis for Plaintiff's FEHA claims, and thus cannot be asserted against the Individual Defendants, who were not Plaintiff's employer, (2) Plaintiff did not state facts sufficient to show that the Individual Defendants' conduct was so "outrageous" as to exceed all bounds of that usually tolerated in a civilized community, (3) Plaintiff did not allege facts sufficient to show that the Individual Defendants intended to cause, or acted with reckless disregard of the probability of causing, Plaintiff emotional distress, and (4) Plaintiff did not allege the last required element of severe emotional distress with the requisite specificity.

After sustaining the Individual Defendants' previous demurrer, the Court granted leave to amend, and on February 2, 2015, Plaintiff filed the Second Amended Complaint ("SAC"). The SAC includes a handful of new allegations, most of which are nothing more than broad-brush legal conclusions which are not specifically asserted against the Individual Defendants. Even with the new allegations, the SAC fails to state facts sufficient to constitute a cause of action for IIED against the Individual Defendants. Accordingly, the Individual Defendants request that this Court sustain their second demurrer *without* leave to amend.

### II.    STATEMENT OF FACTS

The allegations asserted against the Individual Defendants in both the First Amended Complaint and the SAC, which the Court already determined are insufficient to state a claim for IIED as a matter of law, are as follows:

1

- Beatriz Gonzalez began requiring all employees to take a one-hour off-the-clock lunch break, instead of the 30-minute break most of them were taking. SAC, ¶ 14.

- [Beatriz] Gonzalez called Hoffman into his [sic] office and said, "Oh, you're the only one who has to have a 30-minute lunch. I have to change all these schedules just to accommodate you." Plaintiff said he would take the 60-minute lunch, and Gonzalez said, "Oh no, it's too late now. It's already done. We'll try it for a few months and see how it works." SAC, ¶ 17.

- [Beatriz] Gonzalez changed Hoffman's schedule so that he started a half hour earlier, and worked until 9:30 p.m. on Sundays. SAC, ¶¶ 18-19.

- Gantt met with Plaintiff to go over his allegedly "scathing" performance review, in which he received a "V" for "valuable" instead of "O" for "outstanding." SAC, ¶ 21-22.

- When Plaintiff's "V-for-valuable" performance marks allegedly caused him to have a severe panic attack, [Beatriz] Gonzalez responded by asking everyone to leave the room. SAC, ¶ 24.

- After Plaintiff recovered from his alleged panic attack, [Beatriz] Gonzalez finished his performance review. SAC, ¶ 25.

- Gantt placed Plaintiff on a Performance Improvement Plan. SAC, ¶ 26.

- Gantt reprimanded Plaintiff for failing to provide customer service, failing to help another associate, and failing to use new software. SAC, ¶ 32-33.

- Gantt gave Plaintiff a "first and final" written warning for being disrespectful and not helping another associate. SAC, ¶ 35.

- After another associate reported that Plaintiff had physically threatened him, Gantt asked Plaintiff to write a statement regarding the incident. SAC, ¶ 44.

- After another associate reported that Plaintiff had physically threatened him, Gantt asked Plaintiff to leave the store minutes before his shift ended. SAC, ¶ 45.

- Gantt asked Plaintiff to come into the office to speak with human resources. SAC, ¶ 46.

- Santiago told Plaintiff he was going to be put on leave without pay. SAC, ¶ 47.

- When Plaintiff asked Santiago and Eric [Gonzalez] if he was being fired, they said no. SAC, ¶ 47.

- Santiago and Eric [Gonzalez] told Plaintiff to call Home Depot's employee assistance program. SAC, ¶ 47.

- Santiago and Eric [Gonzalez] told Plaintiff that if he contacted the employee assistance program and did what they told him to do, Plaintiff could get his job back. SAC, ¶ 47.

- [Beatriz] Gonzalez terminated Plaintiff's employment over the phone for engaging in a physical fight with an associate that was broken up by a customer. SAC, ¶ 57.

- [Beatriz] Gonzalez did not respond to Plaintiff's inquiries regarding whether there was videotape of the incident with the other associate. SAC, ¶ 57.

2

1    The only new allegations in the SAC, most of which are broad-brush legal conclusions not

2    specifically asserted against the Individual Defendants, are:

3
- As it turns out, the decision has [has] already been made to terminate Plaintiff and
4    there was nothing he could do to get his job back, but [Santiago and Eric Gonzalez]
     lied to him and told him that if he went to [employee assistance program] and spoke
5    with its representatives and did what they told him to do, he could get his job back.
     SAC, ¶ 47.

6
- Defendants, and each of them, intentionally and with malice engaged in outrageous
7    conduct that was outside the bounds of any reasonable employment relationship and
     which was calculated to cause Plaintiff to suffer extreme humiliation, physical and
8    mental anguish and emotional distress. This conduct included labeling Plaintiff as an
     unstable person that might "go postal," and forcing Plaintiff to go to the Employee
9    Assistance Program under the false pretenses of getting back his job. Defendants
     determined to terminate Plaintiff on August 13, 2013, but falsely told him that if he
10   called Employee Assistance Program ("EAP") and did what they told him, he would be
     able to return to his position. There was never any intention to give Plaintiff his
11   position back. Instead, the purpose was to humiliate Plaintiff and cause him severe
     emotional distress, by having the persons at EAP, who are not even licensed
12   psychologists or psychiatrists tell Plaintiff that he was bipolar with hypomanic episodes
     and have him engage in "research" of this bogus diagnosis, all under the false guise of
13   gaining his position back. For 12 days, Defendants tortured Plaintiff by making him
     believe he had a psychosis. He had to subject himself to answering very personal
14   medical questions (most likely in violation of HIPAA rules since the persons asking the
     questions were not licensed doctors, nor doctors from whom Plaintiff voluntarily
15   sought treatment) and personal relationship questions to these EAP persons for no
     legitimate reason, as Defendants never intended to give Plaintiff back his position.
16   Rather, they simply wanted to humiliate and psychologically defeat Plaintiff. SAC, ¶
     144.

17
- This heinous conduct was done intentionally, with the knowledge that it would cause
18   Plaintiff severe physical and emotional distress. Defendants could have notified
     Plaintiff that he was terminated. There was no need to set him up and make him go
19   through the grueling agony of being told he had a very serious psychosis and that he
     should "man-up" and admit it. This cruel conduct was committed with a wanton and
20   reckless disregard to the consequences to Plaintiff. SAC, ¶ 145.

21
- As a direct and proximate result of the acts alleged above, Plaintiff has suffered, and
     continues to suffer, severe and extreme humiliation, mental anguish and emotional and
22   physical distress and has been damaged thereby in an amount to be determined by the
     trier-of-fact, but which amount is alleged to be in excess of this Court's minimum
23   jurisdiction. Defendant has needed the assistance of psychological counseling to deal
     with the severe psychological damage that was done by Defendants conduct and he is
24   seeking out such counseling. He has constant nightmares about the accusations and
     feels physically ill every time he thinks about how he trusted Defendants that he would
25   get his job back if only put himself through the hoops through which Defendants
     wanted him to jump. SAC, ¶ 146.

26

27

28

3

III.    **ARGUMENT AND AUTHORITIES**

A.    **Standard for Demurrer**

A demurrer is proper when any grounds for objection to a complaint appear on its face. Cal. Civ. Proc. Code § 430.30(a). A court should sustain a demurrer where the allegations are insufficient to state a cause of action. *Crosstalk Productions, Inc. v. Jacobson*, 65 Cal. App. 4th 631, 635 (1998). Where no liability exists as a matter of law, a court should sustain the demurrer without leave to amend. *Schonfeldt v. State of California*, 61 Cal. App. 4th 1462, 1465 (1998).

B.    **The IIED Claim Is Based On The Same Allegations That Are The Basis For Plaintiff's FEHA Claims, And Thus Cannot Be Asserted Against Defendants, Who Were Not Plaintiff's Employer**

"[I]nfliction of emotional distress claims are merely alternative legal theories for holding defendants liable for the same conduct" that underlies a related intentional tort, and thus, such claims are "redundant" and must stand or fall with the related claim. *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1378-79 (2010). Here, the allegations supporting Plaintiff's IIED claim are the same allegations made in support of his Fair Employment and Housing Act (California Government Code section 12940(h)) ("FEHA") claims against Home Depot for harassment based on age, harassment based on disability or medical condition, age discrimination, disability discrimination, retaliation, failure to prevent harassment and discrimination, and wrongful termination.

Notably, Plaintiff does *not* assert those causes of action against the Individual Defendants, nor could he. As a matter of law, an aggrieved employee may not maintain a cause of action under the FEHA against individual supervisors or coworkers who allegedly discriminate or retaliate against him or her. The FEHA applies to retaliation by "any employer … or person," it is interpreted to be consistent with § 12940(a), which prohibits discrimination by "an employer" and does not apply to supervisors and coworkers. *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158, 1167-68, 1173-74 (2008) (retaliation); *see also, Reno v. Baird*, 18 Cal. 4th 640, 645 (1998) (discrimination).

Thus, Plaintiff cannot escape the FEHA's requirement that individuals may not be sued for discrimination or retaliation by alleging the very same claims couched in terms of intentional

4

1   infliction of emotional distress. "It would be absurd to forbid a plaintiff to sue a supervisor under

2   the FEHA, then allow essentially the same action under a different rubric." *Reno*, 18 Cal. 4th at

3   664. For example, in *Smith v. International Brotherhood of Electrical Workers*, 109 Cal. App. 4th

4   1637 (2003), the plaintiff sued his former union and a union manager for, among others, age and

5   disability discrimination under the FEHA, and intentional and negligent infliction of emotional

6   distress based on the same conduct. The court held that "because the emotional distress claims

7   arise out of conduct for which [the manager] cannot be held personally liable it follows he cannot

8   be held liable for the emotional distress claims either." *Id.* at 1658; *see also, Reno*, 18 Cal. 4th at

9   664 ("Because plaintiff may not sue [defendant] as an individual supervisor under the FEHA, she

10  may not sue her individually for wrongful discharge in violation of public policy.").

11         The same principles apply here. Because Plaintiff cannot maintain his FEHA claims

12  against the Individual Defendants, he may not maintain the same claims against them under the

13  thinly veiled guise of IIED. Accordingly, the Court should sustain the Individual Defendants'

14  demurrer *without* leave to amend.

15         **C.  The SAC Fails To State A Cause Of Action For IIED**

16         To state a cause of action for IIED, Plaintiff must allege (1) that the Individual Defendants'

17  conduct was outrageous; (2) that the Individual Defendants intended to cause, or acted with

18  reckless disregard of the probability of causing, Plaintiff emotional distress; (3) Plaintiff suffered

19  severe emotional distress; and (4) the Individual Defendant's conduct was a substantial factor in

20  cause Plaintiff's severe emotional distress. *Heller v. Pillsbury Madison & Sutro*, 50 Cal. App. 4th

21  1367, 1388 (1996).

22              a.       **Plaintiff Did Not State Facts Sufficient To Show That The Individual
                         Defendants' Conduct Was So "Outrageous" As To Exceed All Bounds**

23                       **Of That Usually Tolerated In A Civilized Community**

24         Whether conduct is outrageous is a question of law determined by the court. *Berkley v.*

25  *Dowds*, 152 Cal. App. 4th 518, 534 (2007); *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494

26  (1998) ("[A]ppellate courts have affirmed orders which sustained demurrers on the ground that the

27  defendant's alleged conduct was not sufficiently outrageous."). To be "outrageous," conduct must

28  be so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Davidson*

5

DEFENDANTS BEATRIZ GONZALEZ, MORGAN GANTT, JESSIE SANTIAGO, AND ERIC GONZALEZ'S
DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

1  *v. City of Westminster*, 32 Cal. 3d 197, 209 (1982). "Liability for intentional infliction of

2  emotional distress does not extend to mere insults, indignities, threats, annoyances, petty

3  oppressions, or other trivialities." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009).

4        Managing personnel is not outrageous conduct beyond the bounds of human decency, but

5  rather conduct essential to the welfare and prosperity of society. *Janken v. GM Hughes Elecs.*, 46

6  Cal. App. 4th 55, 80 (1996). A simple pleading of personnel management activity is insufficient to

7  support a claim of IIED, even if improper motivation is alleged. *Id.* If personnel management

8  decisions are improperly motivated, the remedy is a suit against the employer for discrimination.

9  *Id.* Firing an employee does not constitute outrageous conduct, even if the firing was without

10  cause. *Buscemi v. McDonnell Douglas Corp.* 736 F. 2d 1348, 1352 (9th Cir. 1984) (applying

11  California law). Discipline and criticism are a normal part of the employment relationship and do

12  not constitute outrageous conduct, even if intentional and malicious. *See Shoemaker v. Myers*, 52

13  Cal. 3d 1, 25 (1990) (supervisor allegedly saying he wanted to cause plaintiff "as much grief as

14  possible" did not support claim for IIED); *Lawler v. Montblanc North America, LLC*, 704 F. 3d

15  1235, 1245-46 (9th Cir. 2013) (applying California law, holding that a CEO's gruff, abrupt and

16  intimidating manner of communicating criticisms did not qualify as "outrageous" where conduct

17  and criticisms related to store's business operations and employee's conduct as manager).

18        Here, Plaintiff alleges that the Individual Defendants required Plaintiff to take a one-hour

19  lunch, changed Plaintiff's schedule to start a half hour earlier, reviewed Plaintiff's performance,

20  asked other employees to leave the room during Plaintiff's review, placed Plaintiff on a

21  performance improvement plan, reprimanded Plaintiff for performance-related reasons, disciplined

22  Plaintiff for being disrespectful, asked Plaintiff to write a statement and then leave the store after

23  threatening another employee, asked Plaintiff to call human resources, put Plaintiff on leave

24  without pay, told Plaintiff to call the employee assistance program, told Plaintiff that he could (but

25  not would) get his job back if he called the employee assistance program, and terminated Plaintiff.

26  These allegations fall under the umbrella of "personnel management actions." Thus, the

27  allegations do not constitute outrageous conduct as a matter of law, *even if the actions were*

28  *improperly motivated, intentional, or malicious.* Accordingly, Plaintiff's SAC fails to state facts

1  sufficient to show that the Individual Defendants' conduct was so "outrageous" as to exceed all

2  bounds of that usually tolerated in a civilized community, and Plaintiff's cause of action for IIED

3  must fail.

**b.  Plaintiff Did Not State Facts Sufficient To Show That the Individual Defendants Intended To Cause, Or Acted With Reckless Disregard Of The Probability Of Causing, Plaintiff Emotional Distress**

6  To state a cause of action for IIED, Plaintiff must allege that the Individual Defendants

7  intended to cause, or acted with reckless disregard of the probability of causing, Plaintiff

8  emotional distress. *Heller v. Pillsbury Madison & Sutro*, 50 Cal. App. 4th 1367, 1388 (1996). The

9  new allegations in Plaintiff's SAC regarding intent are the same type of conclusory statements that

10  the Court rejected when it sustained the Individual Defendants' previous demurrer. Simply

11  parroting the formulaic language of the intent element without any detail whatsoever

12  ("Defendants, and each of them, intentionally and with malice engaged in outrageous conduct ...";

13  "the purpose was to humiliate Plaintiff and cause him severe emotional distress "; "This heinous

14  conduct was done intentionally, with the knowledge that it would cause Plaintiff severe physical

15  and emotional distress"; "This cruel conduct was committed with a wanton and reckless disregard

16  to the consequences to Plaintiff") is insufficient to plead intent.

17  The only specific allegations in the SAC relate to actions taken by persons at the employee

18  assistance program, not the Individual Defendants. Persons at the employee assistance program

19  supposedly told Plaintiff that he was bipolar with hypomanic episodes, made Plaintiff believe he

20  had a psychosis, subjected him to personal medical questions, and told him to "man up" and admit

21  it. Even if true, these allegations do not even come close to showing intent on the part of the

22  Individual Defendants. Accordingly, Plaintiff's SAC fails to state facts sufficient to show that the

23  Individual Defendants intended to cause, or acted with reckless disregard of the probability of

24  causing, Plaintiff emotional distress, and Plaintiff's cause of action for IIED must fail.

**c.  Plaintiff Did Not State The Last Required Element Of Severe Emotional Distress With The Requisite Specificity**

26  To state a cause of action for IIED, Plaintiff must allege that Plaintiff suffered severe

27  emotional distress. *Heller v. Pillsbury Madison & Sutro*, 50 Cal. App. 4th 1367, 1388 (1996).

28

7

DEFENDANTS BEATRIZ GONZALEZ, MORGAN GANTT, JESSIE SANTIAGO, AND ERIC GONZALEZ'S
DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

1   "Severe emotional distress means … emotional distress of such substantial quantity or enduring

2   quality that no reasonable [person] in a civilized society should be expected to endure it." *Girard*

3   *v. Ball*, 125 Cal. App. 3d 772, 787–88 (1981).

4          Here, Plaintiff alleges in a conclusory and general manner that he "suffered, and continues

5   to suffer, severe and extreme humiliation, mental anguish and emotional and physical distress."

6   Plaintiff omits from the SAC even the slightest detail regarding the quantity or quality of his

7   alleged distress. Plaintiff further alleges that he has dreams about the accusations and feels

8   physically ill when he thinks about his termination; however, his distress is neither substantial nor

9   beyond that which a reasonable person should be expected to endure after losing their job.

10  Because Plaintiff did not state facts sufficient to establish Plaintiff's severe emotional distress,

11  Plaintiff's cause of action for IIED must fail.

12         **D.    The Demurrer Should Be Sustained Without Leave To Amend**

13         Generally, leave to amend a complaint should be granted if there is a "reasonable

14  possibility that the defect in the complaint can be cured by amendment […]." *Hendy v. Losse*, 54

15  Cal. 3d 723, 742 (1991). "The burden is on the plaintiff, however, to demonstrate the manner in

16  which the complaint might be amended." *Id.* Moreover, "[l]eave to amend *should* be denied where

17  the facts are not in dispute and the nature of the claim is clear, but no liability exists under

18  substantive law." *Lawrence v. Bank of Am.*, 163 Cal.App.3d 431, 436 (1985) (emphasis added);

19  *see also, Schonfeldt v. State of Cal.*, 61 Cal. App. 4th 1462, 1465 (1998) ("If there is no liability as

20  a matter of law, leave to amend should not be granted."). Furthermore, denial of leave to amend is

21  proper "when a complaint contains allegations that are fatal to a cause of action." *Banis*

22  *Restaurant Design, Inc. v. Serrano*, 134 Cal. App. 4th 1035, 1044 (2005). "[A] plaintiff cannot

23  avoid those defects simply by filing an amended complaint that omits the problematic facts or

24  pleads facts inconsistent with those alleged earlier." *Id.*

25         Here, Plaintiff has no basis for bringing an IIED claim against the Individual Defendants.

26  Even assuming that the Individual Defendants engaged in the conduct alleged by Plaintiff, the

27  Individual Defendants would have been acting in their capacity as employees of Home Depot and

28  not in their individual capacity. Thus, they cannot be personally liable for the alleged conduct

8

1   consisting merely of personnel management decisions. The only claims, if any at all, that Plaintiff

2   has are against his employer and not the Individual Defendants. Plaintiff cannot cure this fatal

3   defect by amendment.

4

5   **IV.    CONCLUSION**

6           Because Plaintiff's IIED cause of action is based on the same allegations that form the

7   basis of Plaintiff's FEHA claims, and thus cannot be asserted against the Individual Defendants,

8   and because Plaintiff's SAC fails to state facts sufficient to establish the elements of IIED, the

9   Individual Defendants request that this Court sustain the demurrer *without* leave to amend.

10

11  DATED: March 3, 2015                          LEE TRAN & LIANG LLP

12

13                                    By: _____

14                                        STEVEN C. GONZALEZ
                                          ANTHONY SBARDELLATI
15                                        LACEY RAINWATER
                                          Attorneys for Defendants
16                                        HOME DEPOT U.S.A., INC., BEATRIZ
                                          GONZALEZ, MORGAN GANTT, JESSIE
17                                        SANTIAGO., and ERIC GONZALEZ

18

19

20

21

22

23

24

25

26

27

28

                                    9

─────────────────────────────────────────────────────────────
DEFENDANTS BEATRIZ GONZALEZ, MORGAN GANTT, JESSIE SANTIAGO, AND ERIC GONZALEZ'S
DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

**PROOF OF SERVICE**

**STATE OF CALIFORNIA -- COUNTY OF ORANGE**

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 3900, Los Angeles, CA 90017.

On March 3, 2015, I served the foregoing document(s) described as

**DEFENDANTS BEATRIZ GONZALEZ, MORGAN GANTT, JESSIE SANTIAGO, AND ERIC GONZALEZ'S NOTICE OF HEARING ON DEMURRER; DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof in a sealed envelope, as follows:

John D. Younesi, Esq.                    *Attorneys for Plaintiff Paul Hoffman*
Jan A. Yoss, Esq.
YOUNESI & YOSS, LLP
11355 W. Olympic Blvd., Suite 200
Los Angeles, California 90064
Telephone: (310) 478-5722
Facsimile: (310) 478-5650
Email: jdyounesi@younesi.com
jyoss@younesi.com

[X]     **BY OVERNIGHT COURIER** I caused each envelope with fees prepaid shipped by Federal Express.

Executed on March 3, 2015, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

EDGAR MARTINEZ

# EXHIBIT Q

1  John D. Younesi, Esq. (Bar No. 120339)
   Jan A. Yoss, Esq. (Bar No. 143978)
2  YOUNESI & YOSS, LLP
   11355 W. Olympic Blvd., Suite 200
3  Los Angeles, California 90064
   Telephone: (310) 478-5722 ✦ Facsimile: (310) 478-5650
4  Email: jdyounesi@younesi.com
          jyoss@younesi.com
5
6  Attorneys for Plaintiff, PAUL HOFFMAN
7
8              SUPERIOR COURT OF CALIFORNIA
9       COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

10 PAUL HOFFMAN, an individual          Case No. 30-2014-00727891
                                        [Honorable Frederick P. Aguirre, Dept. C23]
11
                 Plaintiff,             PLAINTIFF'S MEMORANDUM OF
12                                      POINTS AND AUTHORITIES IN
        vs.                             OPPOSITION TO DEMURRER TO
13                                      SECOND AMENDED COMPLAINT
   HOME DEPOT U.S.A., INC., doing business
14 as THE HOME DEPOT, a Delaware
   Corporation; BEATRIZ GONZALEZ, an
15 individual; MORGAN GANTT, an        Date: March 30, 2015
   individual; JESSIE SANTIAGO, an     Time: 1:30 p.m.
16 individual; ERIC DOE, an individual and   Dept.: C-23
   DOES 1 to 50, Inclusive,
17                                      Trial Date:  September 28, 2015
18               Defendants.
19

20         Plaintiff Paul Hoffman ("Hoffman") hereby presents his opposition to the demurrer
21 of Beatriz Gonzalez, Morgan Gantt, Jesus Gonzalez (sued as Jessie Gonzalez) and Eric Gonzalez
22 (collectively, the "Demurring Defendants") as follows:
23
24
25
26
27
28

                                    - 1 -

1

## TABLE OF CONTENTS

2

3  I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

4  II.    RELEVANT ALLEGATIONS OF THE COMPLAINT . . . . . . . . . . . . . . . .    3

5         A.    BACKGROUND ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . .    3

6         B.    CRITICAL ALLEGATIONS TO THE IIED CLAIM. . . . . . . . . . . . .    4

7  III.   LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

8         A. A DEMURRER TESTS THE LEGAL SUFFICIENCY

9         OF THE ALLEGATIONS IN THE COMPLAINT AND

10        ACCEPTS AS TRUE THOSE ALLEGATIONS. . . . . . . . . . . . . . . . . . . .    9

11        B.    THE SECOND AMENDED COMPLAINT ADEQUATELY

12        PLEADS A CLAIM FOR IIED.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

13        C.    THE COURT HAS OVERRULED THE CLAIM

14              THAT THE ALLEGATIONS ARISE OUT OF THE

15              FEHA CLAIM AND MUST OVERRULE IT AGAIN. . . . . . . . . . . .    11

16 IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT

1

## TABLE OF AUTHORITIES

**Cases**

Alcorn v. Anbro Engineering, Inc. (1970) 2 Cal.3d 493 . . . . . . . . . . . . . . . . . . . . . . . .10

*Dell E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593 . . . . . . . . . . . . .9

*Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968 . . . . . . . . . . . . . . . . . . . . . .9

Fletcher v. Western National Life Ins. Co. (1970) 10 Cal.App.3d 376 . . . . . . . . . . . . . . . 9

*Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951 . . . . . . . . . . . . . . . .9

Golden v. Dungan (1971) 20 Cal.App.3d 295 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Kelly v. General Telephone Co. (1982) 136 Cal.App.3d 278 . . . . . . . . . . . . . . . . . . . . .9

*Kovatch v. Cal. Casualty Mgmt* (1998) 65 Cal.App.4th 1256 . . . . . . . . . . . . . . . . . . .12

Marina Point, Ltd. v.. Wolfson (1982) 30 Cal.3d 721 . . . . . . . . . . . . . . . . . . . . . . . . 10

*McClung v. Employment Development Department* (2004) 34 Cal.4th 467 . . . . . . . . . . . . . .11

Newby v. Alto Riveria Apartments (1976) 60 Cal.App.3d 288 . . . . . . . . . . . . . . . . . . . .10

*Operating Engineers Local 3 v. Johnson* (2003) 110 CA4th 180 . . . . . . . . . . . . . . . . . .10

*Wayte v. Rollins International, Inc.* (1985) 169 Cal.App.3d 1 . . . . . . . . . . . . . . . . . . .9

**Statutes**

California Code of Civil Procedure § 452. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

**Secondary Sources**

1 Rest.2d Torts, § 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

OPPOSITION TO DEMURRER TO FIRST AMENDED COMPLAINT

## I.    **INTRODUCTION**

The Demurring Defendants have demurred to the Ninth Cause of Action for Intentional Infliction of Emotional Distress.  As a preliminary matter, the demurrer makes a very blatant misrepresentation of the procedural history of the case in an overzealous effort to deny Plaintiff Paul Hoffman his day in Court on sufficiently pled allegations.  First, at page 1 of the points and authorities, lines 8-11, the Demurring Defendants contend that the Court previously sustained a demurrer to the First Amended Complaint on the basis that the allegations that form the basis for the Ninth Cause of Action for Intentional Infliction of Emotional Distress ("IIED") are the same as the allegations concerning violations of the Fair Employment and Housing Act ("FEHA") and because individual managers cannot be liable under FEHA, the Demurring Defendants cannot be liable for the IIED claim.  While the Demurring Defendants raised this argument in their demurrer to the First Amended Complaint, the Court did not address it and presumptively overruled the argument.  A review of the minute order reveals that the court specifically overruled the claim concerning workers compensation exclusivity, finding that, "It cannot be said as a matter of law at this time that the claim for intentional infliction of emotional distress is borne from a normal employment relationship."  January 12, 2015 minute order.  Rather, the Court sustained the demurrer solely on the basis that the First Amended Complaint needed clarity and further elaboration as to the extreme and outrageous conduct, the intentional or reckless nature of the acts and the extreme emotional distress.  *Id.*  The Court did not find that the claims were encompassed in the FEHA claim and barred as to these individual defendants.  Demurring Defendants' overreaching in this regard is telling as to their own belief that such argument has merit.

Despite Demurring Defendants claim that the *only* new allegations are in paragraphs 144-146, paragraphs 46-60 contain additional specificity as to the basis of the IIED allegations and elucidates the issues of the extreme and outrageous conduct and the intentional and reckless behavior of the Demurring Defendants.  Indeed, the IIED claim as identified in paragraphs 144-146 focuses on the post-termination behavior (not managerial decisions of personnel as contended by Demurring Defendants).  A time when the Demurring Defendants lied to Plaintiff about his

- 2 -

1  employment status (he had been fired but they did not "tell" him yet) and made Plaintiff engage in

2  humiliating and belittling psycho-babble and hack medical diagnoses in an alleged effort to return

3  to work, when there was **NEVER** any chance Hoffman would be returned to work.  They should

4  have just left him alone.  Terminated him.  Let him go in peace.  They didn't.  They toyed and

5  played with him like school house bullies, trying to mess with his mind.  Any jury would see these

6  facts and be horrifically offended by the conduct.  The Second Amended Complaint alleges

7  extreme and outrageous conduct.  It alleges intentional and reckless acts.  It alleges severe

8  emotional distress.  The demurrer must be overruled.

9

10  **II.    RELEVANT ALLEGATIONS OF THE COMPLAINT**

11         The following is a summary of the relevant allegations in the Second Amended Complaint

12  relevant to the only claim that is attacked by the demurrer, the claim for Intentional Infliction of

13  Emotional Distress:

14         A.    **BACKGROUND ALLEGATIONS**

15         Hoffman started working at Home Depot in March 1999 in the Santa Ana Store, number

16  606.  Hoffman is an exceptional person.  He is hard-working, affable and well liked by both fellow

17  associates and customers.  Throughout the years, Hoffman received many accolades and customer

18  service awards.  (Second Amended Complaint ("SAC") para. 11.)

19         In August 2014, Hoffman had an encounter with another sales associate, Armando, where

20  Hoffman felt threatened by Armando after trying to provide Armando (an employee who had only

21  been with Home Depot for 2 months) some advice.  The encounter ended without incident and the

22  two men apologized to each other and that was the end of it.  (SAC, paras. 35-40.)

23         Later that evening, however, Chris Pula, who is a Department Head, approached Hoffman

24  and after Mr. Pula discussed some issues with Hoffman concerning Mr. Pula's daughter, Mr. Pula

25  told Hoffman that he needed to go to the training room.  When Hoffman arrived, present was

26  Morgan Gantt ("Gantt") and Mr. Pula.  Gantt said that Armando's shift had ended, and he was

27  gone, but that he reported that he felt threatened by Hoffman.  (SAC, para. 42.)  Gantt asked

28

OPPOSITION TO DEMURRER TO SECOND AMENDED COMPLAINT

1  Hoffman to write down what had happened. Hoffman wrote the story down, although he did

2  exclude the expletives that Armando, because Hoffman did not want to inflame the issues and

3  cause Armando to get in trouble. Hoffman's shift was scheduled to end at 8:00 p.m. and he needed

4  to leave immediately to get home to his children. He rushed through writing what had happened.

5  (SAC, para. 44.) Gantt, without even reviewing what Hoffman had written or noticing that it

6  indicated that Armando was the only aggressive person in the encounter, said to Hoffman, "I'd like

7  you to leave the store." It was the end of Hoffman's shift and so he clocked out and left. (SAC,

8  para. 45.)

9      **B.    CRITICAL ALLEGATIONS TO THE IIED CLAIM**

10      The next day, August 12, 2013, Hoffman reported to work at 1:30 p.m. He was

11  immediately told to wait in the office. He did so for forty minutes. Then, Gantt came in and said,

12  "We're ready for you." She took Hoffman to another office where they held a telephone

13  conference with Kim in the Atlanta Human Resources office. After the call, where the issues of

14  the prior day were discussed, Kim very clearly said, "I'm comfortable with Hoffman going on the

15  floor and working." The manager-on-duty, Eric, and Gantt, both agreed and Hoffman went to

16  work. (SAC, para. 46.)

17      A full five hours later, Eric and another manager, Jesse Santiago, summoned Hoffman into

18  the office again. Santiago told Hoffman that they reviewed the issue *again* and that they were

19  going to put Hoffman on leave without pay. *When Hoffman asked if he was being fired, they*

20  *said no, but told him that he had to call a person named Liz Waissman within 24 hours. The*

21  *managers told Hoffman that Ms. Waissman works for Care Solutions, the Employee Assistance*

22  *Program ("EAP"), and that she would help Hoffman get back to work. As it turns out, the*

23  *decision has already been made to terminate Plaintiff and there was nothing he could do to get*

24  *his job back, but his managers lied to him and told him that if he went to EAP and spoke with its*

25  *representatives and did what they told him to do, he could get his job back.* (SAC, para. 47.)

26      Hoffman, the dutiful employee that he is, and perhaps a bit naive, immediately called Ms.

27  Waissman. Hoffman began to answer Ms. Waissman's "assessment" questions, although Ms.

28

OPPOSITION TO DEMURRER TO SECOND AMENDED COMPLAINT

Waissman never told Hoffman the purpose of the questions.  Then, the questions turned very personal.  *Ms. Waissman asked Hoffman if he had ever been hospitalized for mental illness. Hoffman told Ms. Waissman, unqualifiedly, that he had not ever been hospitalized for any issue.* Ms. Waissman then told Hoffman that it was absolutely unbelievable to his that Hoffman had never been hospitalized and that he had some of the greatest "coping skills she had ever seen." (SAC, para. 48.)

Hoffman did not understand the nature of these questions and was not comfortable speaking with someone about these personal and strange questions over the phone.  Hoffman wanted to meet with Ms. Waissman in person and look her in the eyes to understand the nature of what was being asked.  Ms. Waissman refused, but told Hoffman to meet with Jeffrey Kullman, another EAP employee, who Ms. Waissman called her eyes and ears.  Ms. Waissman still did not tell Hoffman the purpose of the questions she was asking or why Hoffman was speaking with her. Hoffman, ever trusting, went to meet with Mr. Kullman.  The next day, he spoke with Ms. Waissman again. (SAC, para. 49.)  *Ms. Waissman then blurted out that Mr. Kullman diagnosed Hoffman as bipolar, with hypomania episodes. Mr. Kullman has no medical degree or training whatsoever.*  (SAC, para. 50.)

*Ms. Waissman told Hoffman that if he wanted his job back he had to go to his doctor, get a complete physical with blood tests, and get an appointment to see a psychiatrist. She also told him to Google hypomania episodes and do some research and see if Hoffman believed any of it applied to him.  Ms. Waissman then callously stated to Hoffman that he had to "man up and face it" (the "it" being she and Mr. Kullman's "diagnosis").  Ms. Waissman told Hoffman that his next appointment with Mr. Kullman was a few days later and Hoffman had to bring a doctor's card at that time that showed Hoffman was taking steps to see a psychiatrist.  Hoffman also had to bring his own research on hypomania.*  Hoffman, in a relative state of shock and still trusting Home Depot management, said he would do it if it would get him back to work.  (SAC, para. 51.)

On August 16, 2013, after Hoffman had scheduled an August 19, 2013 appointment with

- 5 -

OPPOSITION TO DEMURRER TO SECOND AMENDED COMPLAINT

1   his own doctor and completed the online research he was told to do, he returned to Mr. Kullman.

2   He obligingly told Mr Kullman that he accepted their "diagnosis" and would work with him and

3   the other doctors to "deal" with these issues.  Mr. Kullman told Hoffman to let Ms. Waissman

4   know that Mr. Kullman said Hoffman was ready to return to work.  (SAC, para. 52.)  Importantly,

5   the Demurring Defendants had already determined that they would fire Hoffman, yet, they were

6   putting him through this humiliation and charade that he could get his job back of 14 years that he

7   loved.

8        On August 19, 2013, Hoffman went to his Home Depot store and saw the store manager,

9   Beatriz Gonzalez ("Gonzalez").  Hoffman explained that he was doing everything that was asked

10  of him to return to his position and that the doctor that Ms. Waissman sent him to, Dr. Lahey,

11  needed Hoffman to obtain approval from Home Depot for Hoffman to continue seeing Dr. Lahey.

12  *Gonzalez feigned that she did not know what was going on and said she would make some calls*

13  *and get back to Hoffman.  Gonzalez still did not tell Hoffman that he had been fired.*  (SAC,

14  para. 54.)

15       Hoffman then left the store.  When he returned to his car, he had a message from Ms.

16  Waissman.  Ms. Waissman said she was going to call Mr. Kullman and then start the paperwork

17  for Hoffman to return to work.  She said that because Jesse Santiago was the manager that put

18  Hoffman on leave, he would be the one to call and tell Hoffman when he could return to work.

19  She told Hoffman not to go to Home Depot in the interim.  (SAC, para. 54.)

20       Hoffman attempted to call Ms. Waissman for the next three to four hours to tell his what

21  had transpired with Dr. Lahey and that Hoffman had already been to Home Depot.  When he

22  reached Ms. Waissman, she told Hoffman he had to wait to hear from Jesse Santiago.  Gonzalez

23  left a message at 6:45 p.m. that evening telling Hoffman that she would call him the next morning

24  at 7 a.m.  (SAC, para. 55.)

25       On August 20, 2013, Gonzalez did not call Hoffman in the morning.  Now, Hoffman was

26  suspicious as to what was happening.  He called Home Depot's corporate Human Resources and

27  spoke first to a Sergio at (770) 433-8211, then James and then Ed and Jay. None of them told him

28

- 6 -

OPPOSITION TO DEMURRER TO SECOND AMENDED COMPLAINT

1  he was fired.  Instead, he was told that the store manager would be calling him by the end of the

2  day with a final resolution. (SAC, para. 56.)

3  Gonzalez called around 5 p.m. and terminated Hoffman over the phone. She said that their

4  "finding" was that Armando and Hoffman had a physical fight and a customer had to break it up.

5  Hoffman repeatedly asked Gonzalez if anyone consulted the cameras as this accusation was simply

6  not true.  Gonzalez did not respond in anyway concerning the cameras or the videotape that would

7  have shown that none of these accusations were accurate.  Instead, she said that Hoffman had

8  received a first and final warning from Gantt in May related to the alleged failure to assist Art and

9  Veronica with the computer and therefore they were terminating Hoffman.  (SAC, para. 57.)

10  Again, the reality was that Hoffman had been terminated by the managers that dealt with him on

11  August 7, 2014, with Gonzalez's approval, yet they subjected him to this horrific game of being

12  told terrible things about his mental and medical state by persons who were not even qualified to

13  make such diagnoses and under the false representation that if he did these humiliating things, he

14  would be able to return to work. (SAC, para. 58.)  Such action is nothing short of sadistic.

15  *As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer*

16  *general and special damages, including severe and profound pain and emotional distress,*

17  *anxiety, depression, headaches, tension, and other physical ailments, as well as medical*

18  *expenses, expenses for psychological counseling and treatment and past and future lost wages*

19  *and benefits.*  (SAC, para. 60.)

20  In paragraph 144, Plaintiff alleges "Defendants, and each of them, intentionally and with

21  malice engaged in outrageous conduct that was outside the bounds of any reasonable employment

22  relationship and which was calculated to cause Plaintiff to suffer extreme humiliation, physical and

23  mental anguish and emotional distress. *This conduct included labeling Plaintiff as an unstable*

24  *person that might "go postal," and forcing Plaintiff to go to the Employee Assistance Program*

25  *under the false pretenses of getting back his job.  Defendants determined to terminate Plaintiff*

26  *on August 13, 2013, but falsely told him that if he called Employee Assistance Program*

27  *("EAP") and did what they told him, he would be able to return to his position.  There was*

28

- 7 -

1   *never any intention to give Plaintiff his position back. Instead, the purpose was to humiliate*
2   *Plaintiff and cause him severe emotional distress, by having the persons at EAP, who are not*
3   *even licensed psychologists or psychiatrists tell Plaintiff that he was bioplar with hypomanic*
4   *episodes and have him engage in "research" of this bogus diagnosis, all under the false guise of*
5   *gaining his position back. For 12 days, Defendants tortured Plaintiff by making him believe he*
6   *had a psychosis. He had to subject himself to answering very personal medical questions (most*
7   *likely in violation of HIPAA rules since the persons asking the questions were not licensed*
8   *doctors, nor doctors from whom Plaintiff voluntarily sought treatment) and personal*
9   *relationship questions to these EAP persons for no legitimate reason, as Defendants never*
10  *intended to give Plaintiff back his position. Rather, they simply wanted to humiliate and*
11  *psychologically defeat Plaintiff.*

12      Plaintiff has alleged that "this heinous conduct was done intentionally, with the knowledge
13  that it would cause Plaintiff severe physical and emotional distress. Defendants could have notified
14  Plaintiff that he was terminated. There was no need to set him up and make him go through the
15  grueling agony of being told he had a very serious psychosis and that he should "man-up" and
16  admit it. This cruel conduct was committed with a wanton and reckless disregard to the
17  consequences to Plaintiff." (SAC, para. 145.)

18      Defendant has needed the assistance of psychological counseling to deal with the severe
19  psychological damage that was done by Defendants conduct and he is seeking out such counseling.
20  He has constant nightmares about the accusations and feels physically ill every time he thinks
21  about how he trusted Defendants that he would get his job back if only put himself through the
22  hoops through which Defendants wanted him to jump. (SAC, para. 146.)

23      In particular, the allegations in paragraphs 144 through 146 have been modified to address
24  the Court's prior concerns.

25
26  ///
27  ///
28

- 8 -

OPPOSITION TO DEMURRER TO SECOND AMENDED COMPLAINT

## II.     LEGAL ARGUMENT

### A.  A DEMURRER TESTS THE LEGAL SUFFICIENCY OF THE ALLEGATIONS IN THE COMPLAINT AND ACCEPTS AS TRUE THOSE ALLEGATIONS.

Judicial policy favors resolving cases on their merits rather than through technical challenges to the pleadings.  A demurrer raises issues of law, not fact, regarding the opposing party's pleading.  *Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.  Pursuant to California Code of Civil Procedure § 452, in ruling on a demurrer, all allegations in the complaint "*must be liberally construed*, with a view to substantial justice between the parties."  California Code of Civil Procedure § 452 (emphasis added).  A court is to assume all facts pled on the complaint to be true and may not consider facts asserted in memorandum supporting the demurrer.  The court must accept as true all facts that are properly pled and must assume that the plaintiff will be able to prove all of the facts alleged.  *Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955; *Dell E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604 (stating "[f]or the purposes of a demurrer, all allegations pled in the complaint [or cross-complaint] must be taken as true.")

Applying the aforesaid standards, it is evident that Defendants' demurrer must be overruled in its entirety.

### B.     THE SECOND AMENDED COMPLAINT ADEQUATELY PLEADS A CLAIM FOR IIED.

The elements of a cause of action for IIED include: (a) *Extreme* and *outrageous* conduct by defendant; (b) *Intention* to cause or *reckless disregard* of the probability of causing emotional distress; (c) *Severe* emotional suffering; and (d) a*ctual and proximate causation* of the emotional distress.  At the pleading stage, it is only necessary to plead each of these elements.  After that point, the matter must be submitted to the jury.  The court may not supplant the jury's determination by interjecting its own determination of the outrageousness of the conduct.  *Wayte v. Rollins International, Inc.* (1985) 169 Cal.App.3d 1, 17, *citing Kelly v. General Telephone Co.* (1982) 136 Cal.App.3d 278, 284, 287; and *Fletcher v. Western National Life Ins. Co.* (1970) 10

1   Cal.App.3d 376, 386–394, 396–404.

2   In a factually similar case to the case at bar, the Court found the allegations of the

3   complaint to be sufficient to withstand demurrer.  In *Operating Engineers Local 3 v. Johnson*

4   (2003) 110 CA4th 180, 190, a supervisor was found to have invaded plaintiff's privacy by

5   reprimanding her in front of others with no interest in the matter, directing her to write her own

6   letter of reprimand, and disclosing the matter to a much larger number of additional employees.

7   Outrageous conduct of the sort required by the cases interpreting the elements of an IIED

8   case "may arise from an abuse by the actor of a position or a relation with the other, which gives

9   him actual or apparent authority over the other, or power to affect his interests.... In particular,

10  police officers, school authorities, landlords, and collecting creditors have been held liable for

11  extreme abuse of their position." *Golden v. Dungan* (1971) 20 Cal.App.3d 295, 303, fn. 5 quoting

12  1 Rest.2d Torts, § 46, p. 74; see, also. *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496-

13  497 [an employer fired an African-American plaintiff while shouting racial epithets]; *Newby v.*

14  *Alto Riveria Apartments* (1976) 60 Cal.App.3d 288, 297-298 [a landlord shouted at and threatened

15  a tenant involved in a rent protest and ordered her out of her apartment within three days, and

16  when the tenant refused to vacate, said " 'Do you want to bet your life' "], disapproved of on other

17  grounds in *Marina Point, Ltd. v.. Wolfson* (1982) 30 Cal.3d 721, 740-741, fn. 9.

18  Like the Defendant in *Alcorn v. Anbro Engineering*, each of the Demurring Defendants was

19  a manager or supervisor with employment authority over Hoffman.  They abused this authority to

20  intentionally humiliate Hoffman.   There is no conceivable way that any reasonable person

21  evaluating the facts would conclude otherwise.  They had fired Hoffman on August 13, 2014.  Yet,

22  they told him repeatedly *AFTER* his termination to do certain things -- humiliating and

23  emotionally traumatizing things -- to return to work and never told him until some 7 days later that

24  he was fired.  He was never going to be returned to work.  Rather than just let him go, they had

25  pseudo-psychologists tell him he was bi-polar with manic episodes.  They wanted him to believe

26  he was medically ill and unfit.  How anyone could interpret such allegations as not involving

27  extreme and outrageous conduct that would shock the senses is unfathomable.

    Compounding this issue is the fact that Hoffman worked for Home Depot for 14 years. He loved

    his job.  They all knew it.  They preyed on Hoffman's vulnerability and his simple ways.  To use a

28

- 10 -

**OPPOSITION TO DEMURRER TO SECOND AMENDED COMPLAINT**

colloquial phrase, they absolutely "messed with his mind." Each of the Demurring Defendants absolutely knew what effect their conduct would have on Hoffman. They are worse than school house bullies. This is the type of behavior that causes people to commit suicide. The allegations establish intentional and reckless conduct by Demurring Defendants.

Hoffman has alleged his extreme emotional distress as a result of this conduct in paragraphs 144 and 145 of the Second Amended Complaint. He has sought psychological counseling. He has been unable to sleep and questions himself daily. He is in a constant state of depression. This is not a case of a person being upset that he was fired or reprimanded. The Ninth Cause of Action alleges that *after* he was fired, the Demurring Defendants toyed and played with him for their own sadistic pleasure. A jury should be presented with these facts and let the judicial system work as it should. Let a jury of the peers of both Plaintiff and the Demurring Defendants decide if such conduct was truly extreme and outrageous and if Plaintiff suffered significant emotional distress, as anyone would. The demurrer must be overruled.

## C. THE COURT HAS OVERRULED THE CLAIM THAT THE ALLEGATIONS ARISE OUT OF THE FEHA CLAIM AND MUST OVERRULE IT AGAIN.

As presented in the Introduction, this Court has already determined that the allegations involved in the Ninth Cause of Action do not fall within those alleged in the FEHA claims and are not the subsumed by them, despite Demurring Defendants' attempt to re-cast the allegations as such by their mischaracterization in the motion that the allegations in the FEHA claim form the basis of the IIED claim. As presented above, the allegations that are relevant to the IIED claim involve the Demurring Defendants' conduct *after* Hoffman was fired. They had nothing to do with his employment or the "business decision" to fire him. Simply because Demurring Defendants included the FEHA-based allegations in their summary of the factual assertions does not mean that these allegations are part of the IIED claim. The specific allegations are set forth above.

Intentional misconduct by a supervisor, even retaliatory and discriminatory conduct, can be subject to liability outside of FEHA. *See, McClung v. Employment Development Department* (2004) 34 Cal.4th 467, 475; *Kovatch v. Cal. Casualty Mgmt* (1998) 65 Cal.App.4th 1256,

- 11 -

1    disapproved on different grounds, *Aguilar v. Atlantic Richfield Co.* (2001) 28 Cal.4th 826.

2        Demurring Defendants' demurrer on this basis is essentially a motion for reconsideration

3    without new law or facts.   It is simply a re-hashing of the argument the Court did not find

4    persuasive previously.  The demurrer on this basis must be overruled.

5

6    IV.    **CONCLUSION**

7        For each of the foregoing reasons, the demurrer must be overruled.

8                                    YOUNESI & YOSS, LLP

9

10   Dated: March 17, 2015              By: _____

11                                    Jan A. Yoss
                                     Attorneys for Plaintiff, **PAUL HOFFMAN**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -

OPPOSITION TO DEMURRER TO SECOND AMENDED COMPLAINT

PROOF OF SERVICE

STATE OF CALIFORNIA    )
                       )  ss.
COUNTY OF LOS ANGELES  )

     I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action; my business address is 11355 W. Olympic Blvd., Ste. 200, Los Angeles, CA 90064.

     On **March 17, 2015,** I served the foregoing document described **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEMURRER TO SECOND AMENDED COMPLAINT** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows: **SEE ATTACHED SERVICE LIST**

[ ]    **(BY MAIL: As indicated on the attached Service List)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[✓]    **(BY OVERNIGHT COURIER: As indicated on the attached Service List)** I caused the above referenced document(s) to be delivered to an overnight courier service, via **FEDERAL EXPRESS,** for delivery to the address indicated on the attached Service List..

[ ]    **(BY EMAIL: As indicated on the attached Service List)** I caused such document to be sent via email to the addressee and received a confirmed report indicating that this document was successfully transmitted to the party named above.

[ ]    **(BY PERSONAL SERVICE)** I caused such envelopes to be personally delivered by GOLDEN STATE MESSENGERS to the offices of the addressees.

[ ]    **(BY FACSIMILE TRANSMISSION)** I caused such document to be sent via facsimile to the addressee and received a confirmed transmission report indicating that this document was successfully transmitted to the party named above.

[✓]    **(BY ELECTRONIC TRANSMISSION/COURT)** I transmitted a PDF version of this document by electronic mail to the party(s) identified on the service list using he e-mail address(es) and procedure provided pursuant to the Court's Electronic Filing Notification System, see, e.g., CCP section 1010.6 and CRC Rule 2.251.

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on March 17, 2015 at Los Angeles, California.

Jan A. Yoss

- 13 -

OPPOSITION TO DEMURRER TO SECOND AMENDED COMPLAINT

1

*Hoffman v. Home Depot U.S.A., Inc.*

2

Case No. 30-2014-00727891

3

SERVICE LIST

4

Anthony Sbardellati

Lacey Rainwater

5

LEE TRAN & LIANG

601 S. Figueroa St., Ste. 3900

6

Los Angeles, CA  90017

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 14 -

# EXHIBIT R

1  **Lee Tran & Liang LLP**
   Steven C. Gonzalez (Bar No. 191756)
2     steven.gonzalez@ltlattorneys.com
   Anthony Sbardellati (Bar No. 246431)
3     anthony.sbardellati@ltlattorneys.com
   Lacey Rainwater (Bar No. 294710)
4     lacey.rainwater@ltlattorneys.com
601 S. Figueroa Street, Suite 3900
5  Los Angeles, CA 90017
Tel:   (213) 612-8900
6  Fax:   (213) 612-3773

7  Attorneys for Defendant
HOME DEPOT U.S.A., INC., BEATRIZ
8  GONZALEZ, MORGAN GANTT, JESSIE
SANTIAGO, and ERIC GONZALEZ
9

10

11

12       **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

13          **FOR THE COUNTY OF ORANGE**

14

15  PAUL HOFFMAN,

16         Plaintiff,

17         vs.

18  HOME DEPOT U.S.A., INC., doing business
as THE HOME DEPOT, a Delaware
19  Corporation, BEATRIZ GONZALEZ, an
individual; MORGAN GANTT, an
20  individual; JESSIE SANTIAGO, an
individual; ERIC GONZALEZ, an individual
and DOES 1 through 50, inclusive,
21
       Defendants.
22

23

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

03/23/2015 at 04:05:00 PM
Clerk of the Superior Court
By e Clerk, Deputy Clerk

CASE NO.: 30-2014-00733252-CU-WT-CJC
Assigned for All Purposes to
Hon. Frederick P. Aguirre

**DEFENDANTS BEATRIZ GONZALEZ,
MORGAN GANTT, JESSIE SANTIAGO,
AND ERIC GONZALEZ'S REPLY IN
SUPPORT OF DEMURRER TO
PLAINTIFF'S SECOND AMENDED
COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES**

Date:    March 30, 2015
Time:   1:30 p.m.
Before:  Hon. Frederick P. Aguirre
Dept.:   C23

Reservation:  72080737

24

25

26

27

28

1

## I.    INTRODUCTION

2    The histrionic Opposition submitted by Plaintiff Paul Hoffman ("Plaintiff") merely repeats the

3 allegations made in support of the Second Amended Complaint's ("SAC") cause of action for

4 Intentional Infliction of Emotional District ("IIED") while ignoring the fact that the Court already

5 found the overwhelming majority of those allegations insufficient to state a claim as a matter of law.

6 As explained in the Demurrer filed by Defendants Beatriz Gonzalez, Morgan Gantt, Jessie Santiago,

7 and Eric Gonzalez (collectively, the "Individual Defendants"), the only new, substantive allegations

8 in the SAC are the last sentence of paragraph 47 and some additional allegations in paragraphs 144

9 through 146.  As explained below, the Oppositions' blatantly false contention that "paragraphs 46-

10 60" of the SAC "contain additional specificity as to the basis of the IIED allegations" quickly

11 unravels by comparing the First Amended Complaint ("FAC") with the SAC.

12    In any event, the new sentence in paragraph 47 does not specifically pertain to any of the

13 Individual Defendants.  The SAC's remaining additional allegations, set forth in paragraphs 144

14 through 146, are a mixture of generalized regurgitations of the previously rejected allegations and

15 new adjectives utilized to "dress up" those rejected allegations.  Simply put, Plaintiff's inability to

16 allege facts constituting outrageous conduct, intent and damages ***specifically attributable to the***

17 ***Individual Defendants*** is fatal to the SAC's cause of action for IIED.  The Opposition's lengthy and

18 dramatic repetition of those allegations—which are nearly identical to the previously rejected

19 allegations—does nothing to cure this deficiency.

20    Moreover, those allegations are redundant to the allegations supporting Plaintiff's Fair

21 Employment and Housing Act ("FEHA") claims, and his IIED claim fails for that reason as well.

22    At this point, after three chances, Plaintiff has clearly demonstrated that he simply cannot

23 adequately state a cause of action for IIED.  Accordingly, the Individual Defendants respectfully

24 request that the Court sustain their Demurrer without leave to amend, and allow this case to proceed

25 on the remaining claims in an orderly, efficient fashion.

26

## II.    DISCUSSION

27    Plaintiff's Opposition misleadingly states that "paragraphs 46-60" of the SAC "contain

28 additional specificity as to the basis of the IIED allegations . . ."  However, a side-by-side comparison

---

DEFENDANTS' REPLY IN SUPPORT OF DEMURRER

1  of the FAC and the SAC demonstrates that this assertion is completely false.  On the contrary, the

2  only new allegation contained in these paragraphs is the final sentence of paragraph 47, as the

3  Individual Defendants acknowledged in their Demurrer to the SAC.  The only other changes to

4  paragraphs 46 through 60 are corrections to typographical errors.  For example, paragraph 49 changes

5  the pronoun "his", used in the FAC, to "her", used in the SAC, when referring to third-party Liz

6  Waissman, who presumably is female.  Other than these changes, paragraphs 46 through 60 of the

7  SAC are identical to paragraphs 46 through 60 of the FAC.  As the Court previously ruled with

8  respect to those allegations, "Plaintiff does not allege sufficient factual statements as to what conduct

9  he believes was so outrageous to exceed the bounds of that usually tolerated in a civilized

10  community."  The same logic applies to the essentially identical allegations in the SAC, which

11  likewise do not suffice to state a cause of action for IIED.

12      With respect to the "new" allegations in paragraphs 47 and 144 through 146, they are either

13  not specifically asserted against the Individual Defendants, or are nothing more than regurgitations of

14  the previously rejected allegations, dressed up with newly added adjectives such as "extreme" to

15  modify the vague and ambiguous "humiliation" Plaintiff alleges he suffered.  FAC, ¶ 144; SAC, ¶

16  144 Moreover, the SAC fails to adequately plead the intent element of a claim for IIED insofar as it

17  directs its accusations against non-parties at the employee assistance program, e.g., Ms. Waissman,

18  and not the Individual Defendants.  Lastly, Plaintiff's boilerplate allegation of damages is insufficient

19  to plead that element of the IIED claim, which by itself provides a basis for sustaining the Individual

20  Defendants' Demurrer.

21      Lastly, the "new" allegations in paragraphs 47 and 144 through 146 of the SAC are

22  insufficient to save Plaintiff's cause of action for IIED even if the Court finds that they adequately

23  plead the elements of that claim, which the Individual Defendants dispute.  Specifically, those

24  allegations are redundant of the claims that supposedly support Plaintiff's FEHA claims, which

25  cannot be alleged against the Individual Defendants, as explained in detail in the Demurrer.

26  Accordingly, the IIED cause of action also fails on that basis.[1]

27  _____
[1]    The Opposition contends that the Individual Defendants misrepresented that the Court
28  sustained the demurrer to the FAC, in part, because they cannot be liable for IIED when the basis of
the allegations supporting that cause of action are the same as those forming the basis of Plaintiff's

1

2

### III.     CONCLUSION

3      For the foregoing reasons, and those set forth in the Demurrer, the Individual Defendants

4   respectfully request that the Court sustain their Demurrer to the Second Amended Complaint without

5   leave to amend.

6

7

DATED: March 23, 2015                     By: _A. Sbardellati_____

8                                              STEVEN C. GONZALEZ
                                               ANTHONY SBARDELLATI
9                                              LACEY RAINWATER
                                               Attorneys for Defendants
10                                             HOME DEPOT U.S.A., INC., BEATRIZ
                                               GONZALEZ, MORGAN GANTT, JESSIE
11                                             SANTIAGO., and ERIC GONZALEZ

12

13

14

15

16

17

18

19

20

21

22

23

24

25   FEHA claims.  The Opposition goes on to state that "the Court did not address" this argument, and
     then takes a leap of logic to conclude that the Court "presumptively overruled" it.  However, because
26   the FAC did not even plead facts sufficient to state the elements of a claim for IIED, the Court did not
     need to consider this argument when it sustained the demurrer to the FAC.  Thus, should the Court
27   determine that the SAC adequately pleads the elements of outrageous conduct, intent, and damages,
     then the Individual Defendants urge the Court to sustain their Demurrer on the separate ground that
28   these claims are redundant of Plaintiff's FEHA claims and, therefore, are not actionable against them.

1

**PROOF OF SERVICE**
**STATE OF CALIFORNIA -- COUNTY OF LOS ANGELES**

2

3

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 3900, Los Angeles, CA 90017.

4

On March 23, 2015, I served the foregoing document(s) described as

5

6

**DEFENDANTS BEATRIZ GONZALEZ, MORGAN GANTT, JESSIE SANTIAGO, AND ERIC GONZALEZ'S REPLY IN SUPPORT OF DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

7

on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof in a sealed envelope, as follows:

8

9

John D. Younesi, Esq.                    *Attorneys for Plaintiff Paul Hoffman*
Jan A. Yoss, Esq.

10

YOUNESI & YOSS, LLP
11355 W. Olympic Blvd., Suite 200

11

Los Angeles, California 90064
Telephone: (310) 478-5722

12

Facsimile: (310) 478-5650
Email: jdyounesi@younesi.com

13

jyoss@younesi.com

14

[X]    **BY ONE LEGAL ELECTRONIC SERVICE** I caused to be electronically served the above identified parties and counsel of record using the Court approved electronic service provider One Legal.

15

16

Executed on March 23, 2015, at Los Angeles, California.

17

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

18

19

20

_____
Lynette W. Suksnguan

21

22

23

24

25

26

27

28

# EXHIBIT S

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**05/07/2015** at 09:38:00 AM

Clerk of the Superior Court
By James M Haines, Deputy Clerk

1  **LEE TRAN & LIANG LLP**
   Steven C. Gonzalez (Bar No. 191756)
2  Steven.gonzalez@ltlattorneys.com
   Anthony Sbardellati (Bar No. 246431)
3  anthony.sbardellati@ltlattorneys.com
   Lacey Rainwater (Bar No. 294710)
4  lacey.rainwater@ltlattorneys.com
   601 S. Figueroa Street, Suite 3900
5  Los Angeles, CA 90017
   Tel: (213) 612-8900
6  Fax: (213) 612-3773

7

8  Attorneys for Defendants Home Depot U.S.A., Inc.
   (named and sued herein as Home Depot U.S.A.,
   Inc., doing business as The Home Depot),
9  Beatriz Gonzalez, Morgan Gantt, Jessie Santiago,
   and Eric Gonzalez

10

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                  **FOR THE COUNTY OF ORANGE**

13  PAUL HOFFMAN,                          | CASE NO.: 30-2014-00733252-CU-WT-CJC

14          Plaintiff,                      | [Assigned for all purposes to
                                            | The Hon. Frederick P. Aguirre]
15      vs.
                                            | **DEFENDANT HOME DEPOT U.S.A.,**
16                                          | **INC.'S ANSWER TO PLAINTIFF'S**
    HOME DEPOT U.S.A., INC., doing business as | **UNVERIFIED SECOND AMENDED**
17  THE HOME DEPOT, a Delaware Corporation, | **COMPLAINT**
    BEATRIZ GONZALEZ, an individual;
18  MORGAN GANTT, an individual; JESSIE    | Complaint Filed: July 10, 2014
    SANTIAGO, an individual; ERIC DOE, an  | Trial:          September 28, 2015
19  individual and DOES 1 through 50, inclusive

20          Defendants.

21

22

23

24

25

26

27

28

                                            DEFENDANT HOME DEPOT U.S.A., INC.'S ANSWER
                                    TO PLAINTIFF'S UNVERIFIED SECOND AMENDED COMPLAINT

Defendant Home Depot U.S.A., Inc. ("Defendant"), named and sued herein as Home Depot U.S.A., Inc., doing business as The Home Depot, hereby answers the unverified Second Amended Complaint ("SAC") filed by Plaintiff Paul Hoffman ("Plaintiff") as follows:

## GENERAL AND SPECIFIC DENIALS

Pursuant to the provisions of California Code of Civil Procedure section 431.30, Defendant denies, generally and specifically, each and every allegation contained in the SAC, and further denies that Plaintiff has been damaged in the amount or amounts alleged therein, or in any other amount, or at all, by reason of any act or omission on the part of Defendant, or by any act or omission by any agent or employee of Defendant. Defendant further denies, generally and specifically, that Plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Without admitting that it carries the burden of proof as to any of the issues raised thereby, Defendant asserts the following separate and distinct affirmative defenses to Plaintiff's SAC and each purported cause of action therein and prays for judgment as set forth below. Defendant also hereby gives notice that it intends to rely upon such other and further affirmative defenses as may become available during investigation and discovery in this action. Defendant reserves the right to amend this Answer to assert any such defenses based on such investigation and discovery.

## FIRST AFFIRMATIVE DEFENSE

### (FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED)

1.      The SAC and each cause of action contained therein fails to state a claim upon which relief may be granted.

-1-

## SECOND AFFIRMATIVE DEFENSE

### (STATUTE OF LIMITATIONS)

2.      The SAC, and each alleged cause of action contained therein, is barred by the applicable statute of limitations, including, but not limited to, Government Code sections 12960(d) and 12965(b); Code of Civil Procedure sections 335.1, 338 and 343.

## THIRD AFFIRMATIVE DEFENSE

### (UNCLEAN HANDS)

3.      Plaintiff's causes of action are barred, in whole or in part, pursuant to the doctrine of "unclean hands" because Plaintiff engaged in conduct which proximately caused or contributed to any and all injuries Plaintiff allegedly suffered.

## FOURTH AFFIRMATIVE DEFENSE

### (FAILURE TO MITIGATE DAMAGES)

4.      Plaintiff has failed to mitigate any damages allegedly caused to him by the acts in which Defendant allegedly engaged.

## FIFTH AFFIRMATIVE DEFENSE

### (FACTS INSUFFICIENT TO SUPPORT CLAIM FOR PUNITIVE DAMAGES)

5.      The SAC, and each and every purported cause of action alleged therein, fails to state facts sufficient to sustain the imposition of punitive damages against Defendant pursuant to California Civil Code section 3294.

## SIXTH AFFIRMATIVE DEFENSE

### (PUNITIVE DAMAGES UNCONSTITUTIONAL IN THIS ACTION)

6.      An award of punitive damages in this action would violate Defendant's due process and equal protection rights under the United States Constitution and the California Constitution.

-2-

1

### SEVENTH AFFIRMATIVE DEFENSE

2

### (AFTER-ACQUIRED EVIDENCE)

3        7.        Plaintiff is barred, in part or total, from recovery of any damages, based upon the

4    doctrine of after-acquired evidence.

5

6

### EIGHTH AFFIRMATIVE DEFENSE

7

### (ESTOPPEL)

8        8.        Plaintiff is estopped, by reason of his conduct and actions, from asserting each and

9    any of his alleged claims herein.

10

11

### NINTH AFFIRMATIVE DEFENSE

12

### (WAIVER)

13        9.        Plaintiff has waived the right, by reason of his conduct and actions, to assert his

14    alleged claims herein.

15

16

### TENTH AFFIRMATIVE DEFENSE

17

### (CAUSATION BY PLAINTIFF)

18        10.        Plaintiff's causes of action are barred, in whole or in part, because any damages or

19    injuries that Plaintiff allegedly suffered were caused by Plaintiff's own conduct and actions, and

20    not because of any unlawful conduct or actions by Defendant.

21

22

### ELEVENTH AFFIRMATIVE DEFENSE

23

### (LEGITIMATE, NON-DISCRIMINATORY OR NON-RETALIATORY BUSINESS

24

### REASON)

25        11.        Plaintiff's causes of action are barred, in whole or in part, because each

26    employment action of which Plaintiff complains, if it occurred, was taken for legitimate business

27    reasons that did not violate public policy or any statutory prohibition.

28

**TWELFTH AFFIRMATIVE DEFENSE**

**(APPROPRIATE REMEDIAL ACTION)**

12.    Defendant alleges that Plaintiff's SAC and each purported cause of action therein are barred, in whole or in part, because Defendant took all reasonable steps to prevent any alleged discrimination, harassment and/or retaliation once Defendant was made aware of Plaintiff's complaint(s), if Plaintiff in fact complained.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(AVOIDABLE CONSEQUENCES)**

13.    Defendant denies that it acted improperly and further denies that Plaintiff incurred any harm. However, assuming, arguendo, that Plaintiff was harmed, Plaintiff unreasonably failed to use the preventive and corrective measures that Defendant provided, and the reasonable use of Defendant's procedures would have prevented some or all of the harm that Plaintiff allegedly suffered.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(AT-WILL EMPLOYMENT)**

14.    Plaintiff's claims are barred because Plaintiff's term of employment was terminable at will, with or without cause, pursuant to California Labor Code section 2922.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(GOOD CAUSE)**

15.    If it is found that Plaintiff had a contractual right not to be terminated except for good cause, which Defendant expressly denies, Plaintiff was terminated for good cause.

DEFENDANT HOME DEPOT U.S.A., INC.'S
ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(JUSTIFICATION, GOOD FAITH)**

16.     Any acts alleged to have been committed by Defendant were committed in the exercise of good faith, with probable cause, were not arbitrary or capricious, were based upon legitimate factors, and were reasonable and justified under the circumstances. At all times relevant, Defendant acted with honesty of purpose and without any improper motive, purpose or means, and without any hatred, ill will, malice, or intent to injure.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(ACTS OUTSIDE SCOPE OF EMPLOYMENT)**

17.     If Defendant's employees or any of them committed the acts alleged in the SAC, although such is not admitted hereby or herein, such acts were committed outside the scope of employment and not by agents of Defendant, and thus, Defendant is not liable for such acts.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(SAME ACTION REGARDLESS OF PROTECTED CONDUCT)**

18.     Defendant denies that it unlawfully discriminated or retaliated against Plaintiff for engaging in protected conduct. Assuming, arguendo, that Plaintiff proves Defendant relied upon an illegal motivation, Defendant would have taken the same action even if it had not relied upon the improper ground.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(LACK OF AUTHORIZATION, RATIFICATION)**

19.     Defendant did not authorize, direct or participate in any alleged wrongful conduct. Any recovery on the SAC, or any purported cause of action alleged therein, is barred in whole or in part because Defendant did not aid, abet, counsel or encourage the alleged act(s).

-5-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TWENTIETH AFFIRMATIVE DEFENSE**

**(FAILURE TO EXHAUST)**

20.      Plaintiff's claims are barred by Plaintiff's failure to exhaust administrative remedies and/or internal grievance procedures.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(LACK OF KNOWLEDGE AS TO DISCRIMINATION OR RETALIATION)**

21.      Defendant alleges that Plaintiff's SAC and each purported cause of action therein are barred, in whole or in part, as Defendant had no knowledge that Plaintiff was subject to discrimination, harassment and/or retaliation, if any, as alleged in Plaintiff's SAC.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

**(NEGLIGENCE OF PLAINTIFF)**

22.      Plaintiff did not exercise ordinary care on his own behalf, and his own acts and omissions proximately caused and/or contributed to the loss, injury, damage, or detriment alleged by Plaintiff, and Plaintiff's recovery from Defendant, if any, should be reduced in proportion to the percentage of Plaintiff's negligence or fault.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**(COMPARATIVE FAULT)**

23.      Defendant is informed and believes and upon such information and belief alleges that the damage and injury, if any, allegedly suffered by Plaintiff was directly and proximately caused and/or contributed to by Plaintiff's own negligence and comparative fault, or the negligence and fault of other persons and entities and therefore, Plaintiff's recovery, if any there be against Defendant, should be offset, diminished and reduced in accord with the principles of comparative fault.

1

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

2

## (EXCLUSIVITY OF WORKERS' COMPENSATION ACT)

3      24.    Plaintiff's claims for emotional distress are barred, in whole or in part, by the

4  exclusivity provisions of the California Workers' Compensation Act, California Labor Code

5  section 3600 *et seq.*

6

7

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

8

## (CIVIL CODE SECTION 1431.2)

9      25.    Defendant alleges that any alleged emotional, mental and/or physical injury

10  suffered by Plaintiff was proximately caused by the acts and/or omissions of persons and entities

11  other than Defendant. Accordingly, Defendant is entitled to an allocation of any and all non-

12  economic damages pursuant to California Civil Code section 1431.2.

13

14      WHEREFORE, Defendant prays as follows:

15      1. That Plaintiff take nothing by reason of the Second Amended Complaint and that

16  judgment be rendered in favor of Defendant;

17      2. That Defendant be awarded its costs of suit and attorneys' fees incurred in defense of

18  this action; and

19      3. For such other and further relief as the Court deems proper.

20

21  DATED: May 7, 2015                    LEE TRAN & LIANG LLP

22

23                                          By: _____
                                                STEVEN C. GONZALEZ
24                                              ANTHONY D. SBARDELLATI
                                                LACEY RAINWATER
25                                              Attorneys for Defendants Home Depot U.S.A.,
                                                Inc. (named and sued herein as Home Depot
26                                              U.S.A., Inc., doing business as The Home Depot),
                                                Beatriz Gonzalez, Morgan Gantt, Jessie Santiago,
27                                              and Eric Gonzalez
28

-7-

**PROOF OF SERVICE**

**STATE OF CALIFORNIA -- COUNTY OF ORANGE**

    I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 3900, Los Angeles, CA 90017.

        On **May 7, 2015**, I served the foregoing document(s) described as

**DEFENDANT HOME DEPOT U.S.A., INC.'S ANSWER TO PLAINTIFF'S UNVERIFIED SECOND AMENDED COMPLAINT**

on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof in a sealed envelope, as follows:

John D. Younesi, Esq.              *Attorneys for Plaintiff Paul Hoffman*
Jan A. Yoss, Esq.
YOUNESI & YOSS, LLP
11355 W. Olympic Blvd., Suite 200
Los Angeles, California 90064
Telephone: (310) 478-5722
Facsimile: (310) 478-5650
Email: jdyounesi@younesi.com
       iyoss@younesi.com

**[X]**  **BY MAIL** I placed such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **May 7, 2015**, at Los Angeles, California.

        I declare under penalty of perjury under the laws of the State of California that the above is true and correct.


_____
    EDGAR MARTINEZ

# EXHIBIT T

1

2

3

4

5

6

7

8

**LEE TRAN & LIANG LLP**
Steven C. Gonzalez (Bar No. 191756)
Steven.gonzalez@ltlattorneys.com
Anthony Sbardellati (Bar No. 246431)
anthony.sbardellati@ltlattorneys.com
Lacey Rainwater (Bar No. 294710)
lacey.rainwater@ltlattorneys.com
601 S. Figueroa Street, Suite 3900
Los Angeles, CA 90017
Tel: (213) 612-8900
Fax: (213) 612-3773

Attorneys for Defendants
Home Depot U.S.A., Inc., Beatriz Gonzalez,
Morgan Gantt, Jessie Santiago, and Eric Gonzalez

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**06/03/2015** at 09:33:00 AM

Clerk of the Superior Court
By e Clerk,Deputy Clerk

9

10

11

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ORANGE**

12

13

14

15

16

17

18

19

| | |
|---|---|
| PAUL HOFFMAN, | CASE NO.: 30-2014-00733252-CU-WT-CJC |
| Plaintiff, | [Assigned for all purposes to the Hon. Hon. Frederick P. Aguirre, Dept. C23] |
| vs. | **NOTICE OF RULING SUSTAINING DEFENDANTS BEATRIZ GONZALEZ, MORGAN GANTT, JESSIE SANTIAGO, AND ERIC GONZALEZ'S DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| HOME DEPOT U.S.A., INC., doing business as THE HOME DEPOT, a Delaware Corporation, BEATRIZ GONZALEZ, an individual; MORGAN GANTT, an individual; JESSIE SANTIAGO, an individual; ERIC DOE, an individual and DOES 1 through 50, inclusive | |
| Defendants. | Action Filed:    July 10, 2014 Trial Date:    September 28, 2015 |

20

21

22

23

24

25

26

27

28

NOTICE OF RULING SUSTAINING DEFENDANTS' DEMURRER TO SECOND AMENDED COMPLAINT

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Beatriz Gonzalez, Morgan Gantt, Jessie Santiago, and Eric Gonzalez's (the "Individual Defendants") Demurrer to Plaintiff Paul Hoffman's ("Plaintiff") Second Amended Complaint ("Demurrer") came on for hearing in Department C23 of the Orange County Superior Court on June 1, 2015, at 1:30 p.m. Anthony Sbardellati appeared on behalf of Defendants. Jan Yoss appeared on behalf of Plaintiff.

At the hearing, the Court adopted its tentative ruling as the final ruling on the Demurrer, sustaining the Demurrer *without* leave to amend. There being no remaining causes of action asserted against the Individual Defendants, they are dismissed. The tentative ruling that became the final ruling of the court is attached hereto as **Exhibit A**. Counsel for the Individual Defendants was ordered to give notice.

DATED: June 2, 2015                              LEE TRAN & LIANG LLP

By: _____
Steven C. Gonzalez
Anthony D. Sbardellati
Lacey Rainwater
Attorneys for Defendants Home Depot U.S.A., Inc.,
Beatriz Gonzalez, Morgan Gantt, Jessie Santiago, and
Eric Gonzalez

NOTICE OF RULING SUSTAINING DEFENDANTS' DEMURRER TO SECOND AMENDED COMPLAINT

# Exhibit A

**TENTATIVE RULINGS**
**DEPT: CJC - C23**
**Judge Frederick P. Aguirre**
Date: June 01, 2015

*Hoffman vs. Home Depot U.S.A., Inc., Beatriz Gonzalez,*
*Morgan Gantt, Jessie Santiago, and Eric Gonzalez*

30-2014-00733252

6.

Defendants' demurrer to the 9th cause of action for intentional infliction of emotional distress is sustained without leave to amend after plaintiff was given the opportunity to plead sufficient facts to plead the requisite elements of the tort.

The newly added allegations of outrageous conduct continue to fail to allege outrageous conduct by the named individual defendants as a matter of law. The alleged conduct of requiring plaintiff to take a one-hour lunch, changing plaintiff's schedule to start a half hour earlier, reviewing plaintiff's performance, asking other employees to leave the room during Plaintiff's review, placing plaintiff on a performance improvement plan, reprimanding plaintiff for performance-related reasons, disciplining Plaintiff for being disrespectful, asking plaintiff to write a statement and then leave the store after threatening another employee, asking plaintiff to call human resources, and putting Plaintiff on leave without pay, do not amount to outrageous, extreme conduct or conduct performed with reckless disregard. This conduct, along with the newly alleged conduct of Santiago and Eric Gonzalez lying to plaintiff to get him to attend the Employee Assistance Program – amounts solely to "personnel management actions". The remaining new allegations in paragraph 144 are not alleged against the individual defendants.

Plaintiff has failed to plead that defendants' acted with the intent to cause or with reckless disregard of the probability of causing plaintiff emotional distress. Because the above conduct in and of itself does not constitute outrageous conduct, the inclusion of the obvious words of: "intentionally, with knowledge, severe, cruel, wanton and reckless disregard" are hollow. Plaintiff has merely regurgitated the required element of the cause of action for IIED. There remains a lack of conduct to illustrate any intent to cause plaintiff emotional distress.

Finally, plaintiff has not alleged he suffered the critical element of suffering severe emotional distress. The asserted distress is neither substantial nor beyond that which a reasonable person should be expected to endure after losing their job. Experiencing bad dreams absent other substantial, severe physical and emotional symptoms, after an unpleasant event does not equate to severe emotional distress that no reasonable person should be expected to endure. Plaintiff has continued to fail to allege any span or duration of the alleged distress so as to constitute the distress as being severe.

Defendants shall give notice of ruling.

**PROOF OF SERVICE**
STATE OF CALIFORNIA -- COUNTY OF ORANGE

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 3900, Los Angeles, CA 90017.

On **June 3, 2015**, I served the foregoing document(s) described as:

**NOTICE OF RULING SUSTAINING DEFENDANTS BEATRIZ GONZALEZ, MORGAN GANTT, JESSIE SANTIAGO, AND ERIC GONZALEZ'S DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

on the interested parties in this action.

John D. Younesi, Esq.                    *Attorneys for Plaintiff Paul Hoffman*
Jan A. Yoss, Esq.
YOUNESI & YOSS, LLP
11355 W. Olympic Blvd., Suite 200
Los Angeles, California 90064
Telephone: (310) 478-5722
Facsimile: (310) 478-5650
Email: jdyounesi@younesi.com
        jyoss@younesi.com

[X]    **BY MAIL** I placed such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **June 3, 2015**, at Los Angeles, California.

[X]    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ ]    (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

ERIK JIMENEZ RODRIGUEZ

1

PROOF OF SERVICE

# EXHIBIT U

1  LEE TRAN & LIANG LLP
   Steven C. Gonzalez (SBN 191756)
2  steven.gonzalez@ltlattorneys.com
   Anthony D. Sbardellati (SBN 246431)
3  anthony.sbardellati@ltlattorneys.com
   Lacey Rainwater (SBN 294710)
4  lacey.rainwater@ltlattorneys.com
   601 S. Figueroa Street, Suite 3900
5  Los Angeles, CA 90017
   Tel: (213) 612-8900
6  Fax: (213) 612-3773

7  Attorneys for Defendants
   Home Depot U.S.A., Inc., Beatriz Gonzalez,
8  Morgan Gantt, Jessie Santiago, Eric Gonzalez

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
02/27/2015 at 02:47:00 PM
Clerk of the Superior Court
By Debra Checco,Deputy Clerk

9
10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11              FOR THE COUNTY OF ORANGE

12  PAUL HOFFMAN,                          CASE NO.: 37-2014-00733252-CU-WT-CJC

13          Plaintiff,                     [Assigned for all purposes to The Hon.
                                           Frederick P. Aguirre]
14      vs.
                                           **STIPULATION FOR PROTECTIVE**
15  HOME DEPOT U.S.A., INC., doing business as   **ORDER RE: DISCOVERY OF**
    THE HOME DEPOT, a Delaware Corporation,  **CONFIDENTIAL DOCUMENTS AND**
16  BEATRIZ GONZALEZ, an individual; MORGAN  **TESTIMONY; ORDER THEREON**
    GANTT, an individual; JESSIE SANTIAGO, an
17  individual; ERIC DOE, an individual and DOES 1   Complaint Filed:    July 10, 2014
    through 50, inclusive                     Trial:  None set
18
            Defendants.
19
20
21
22
23
24
25
26
27
28

─────────────────────────────────────────────────────────
STIPULATION FOR PROTECTIVE ORDER RE: DISCOVERY OF CONFIDENTIAL DOCUMENTS AND
TESTIMONY; [PROPOSED] ORDER THEREON

1    IT IS HEREBY STIPULATED by and between the Parties herein (Plaintiff Paul Hoffman

2  and Defendants Home Depot, U.S.A., Inc., Beatriz Gonzalez, Morgan Gantt, Jessie Santiago, and

3  Eric Gonzalez), by and through their respective counsel of record, that in order to facilitate the

4  exchange of information and documents that may be subject to confidentiality limitations on

5  disclosure due to federal laws, state laws, and privacy rights, the Parties stipulate as follows:

6    1.    In this Stipulation and Protective Order, the words set forth below shall have the

7  following meanings:

8        a.    "Proceeding" means the above-entitled proceeding, *Paul Hoffman v. Home Depot*

9              *U.S.A., Inc., et al.* (Case No. 37-2014-00733252-CU-WT-CJC).

10       b.    "Court" means the Hon. Frederick P. Aguirre, or any other judge to which this

11             Proceeding may be assigned, including Court staff participating in such

12             proceedings.

13       c.    "Confidential" means any information that is in the possession of a

14  Designating Party who believes in good faith that such information is entitled to confidential

15  treatment under applicable law.

16       d.    "Confidential Materials" means any Documents, Testimony, or Information

17  as defined below designated as "Confidential" pursuant to the provisions of this Stipulation and

18  Protective Order.

19       e.    "Designating Party" means the Party that designates Materials as

20  "Confidential."

21       f.    "Disclose" or "Disclosed" or "Disclosure" means to reveal, divulge, give, or

22  make available Materials, or any part thereof, or any information contained therein.

23       g.    "Documents" means (i) any "Writing," "Original," and "Duplicate," as

24  those terms are defined by California Evidence Code Sections 250, 255, and 260, that have been

25  produced in discovery in this Proceeding by any person, and (ii) any copies, reproductions, or

26  summaries of all or any part of the foregoing.

27       h.    "Information" means the content of Documents or Testimony.

28       i.    "Testimony" means all depositions, declarations, or other testimony taken

---

STIPULATION FOR PROTECTIVE ORDER RE: DISCOVERY OF CONFIDENTIAL DOCUMENTS AND
TESTIMONY; [PROPOSED] ORDER THEREON

1    or used in this Proceeding.

2        2.    The Designating Party shall have the right to designate as "Confidential" any

3    Documents, Testimony, or Information that the Designating Party in good faith believes to contain

4    non-public information that is entitled to confidential treatment under applicable law.

5        3.    Nothing in this Stipulation and Protective Order shall be deemed to be a limit or

6    waiver of the attorney-client privilege, the work product privilege, or any other relevant privilege.

7    Further, inadvertent production of any privileged Documents, Testimony, or Information shall not

8    waive the privilege.  If any privileged Documents, Testimony, or Information is inadvertently

9    produced, the Party receiving the inadvertently produced Documents, Testimony, or Information

10   agrees that, upon request from the Party claiming the privilege, it shall promptly return all copies

11   of Documents and Testimony containing the privileged Information, delete any versions of the

12   Documents and Testimony containing the privileged Information on any database or computer

13   filing system it maintains, and make no use of the privileged Documents, Testimony, or

14   Information.

15       4.    Any Documents, Testimony, or Information to be designated as "Confidential"

16   must be clearly so designated before the Document, Testimony, or Information is Disclosed or

17   produced. The parties may agree that the case name and number are to be part of the

18   "Confidential" designation. The "Confidential" designation should not obscure or interfere with

19   the legibility of the designated Information.

20           a.    For Documents (apart from transcripts of depositions or other pretrial or

21   trial proceedings), the Designating Party must affix the legend "Confidential" on each page of any

22   Document containing such designated Confidential Material.

23           b.    For Testimony given in depositions the Designating Party may:

24               i.    identify on the record, before the close of the deposition, all

25           "Confidential" Testimony, by specifying all portions of the Testimony that qualify

26           as "Confidential";

27               ii.    designate the entirety of the Testimony at the deposition as

28           "Confidential" (before the deposition is concluded) with the right to identify more

STIPULATION FOR PROTECTIVE ORDER RE: DISCOVERY OF CONFIDENTIAL DOCUMENTS AND
TESTIMONY; [PROPOSED] ORDER THEREON

1    specific portions of the Testimony as to which protection is sought within thirty

2    (30) days following receipt of the deposition transcript. In circumstances where

3    portions of the deposition Testimony are designated for protection, the transcript

4    pages containing "Confidential" Information may be separately bound by the court

5    reporter, who must affix to the top of each page the legend "Confidential," as

6    instructed by the Designating Party; or

7        iii.        designate specific portions of the Testimony as "Confidential," in

8    writing, at any time up until twenty (20) days after receipt of the Testimony.

9        c.        For Information produced in some form other than Documents, and for any

10    other tangible items, including, without limitation, compact discs, or DVDs, the Designating Party

11    must affix in a prominent place on the exterior of the container or containers in which the

12    Information or item is stored the legend "Confidential." If only portions of the Information or item

13    warrant protection, the Designating Party, to the extent practicable, shall identify the

14    "Confidential" portions.

15        5.        The inadvertent production by any of the undersigned Parties or non-Parties to the

16    Proceedings of any Document, Testimony, or Information during discovery in this Proceeding

17    without a "Confidential" designation, shall be without prejudice to any claim that such item is

18    "Confidential" and such Party shall not be held to have waived any rights by such inadvertent

19    production. In the event that any Document, Testimony, or Information that is subject to a

20    "Confidential" designation is inadvertently produced without such designation, the Party claiming

21    that such item is "Confidential" shall give written notice of such inadvertent production within

22    twenty (20) days of discovery of the inadvertent production, together with a further copy of the

23    subject Document, Testimony, or Information designated as "Confidential" (the "Inadvertent

24    Production Notice"). Upon receipt of such Inadvertent Production Notice, the Party that received

25    the inadvertently produced Document, Testimony, or Information shall promptly destroy the

26    inadvertently produced Document, Testimony, or Information and all copies thereof, or, at the

27    expense of the producing Party, return such together with all copies of such Document,

28    Testimony, or Information to counsel for the producing Party and shall retain only the

1  "Confidential"-designated Materials. Should the receiving Party choose to destroy such

2  inadvertently produced Document, Testimony, or Information, the receiving Party shall notify the

3  producing Party in writing of such destruction within ten (10) days of receipt of written notice of

4  the inadvertent production. This provision is not intended to apply to any inadvertent production

5  of any Information protected by attorney-client or work product privileges. In the event that this

6  provision conflicts with any applicable law regarding waiver of confidentiality through the

7  inadvertent production of Documents, Testimony, or Information, such law shall govern.

8       6.    In the event that counsel for a Party receiving Documents, Testimony, or

9  Information in discovery designated as "Confidential" objects to such designation with respect to

10  any or all of such items, said counsel shall advise counsel for the Designating Party, in writing, of

11  such objections, the specific Documents, Testimony, or Information to which each objection

12  pertains, and the specific reasons and support for such objections (the "Designation Objections").

13  Counsel for the Designating Party shall have thirty (30) days from receipt of the written

14  Designation Objections to either (a) agree in writing to de-designate Documents, Testimony, or

15  Information pursuant to any or all of the Designation Objections and/or (b) file a motion with the

16  Court seeking to uphold any or all designations on Documents, Testimony, or Information

17  addressed by the Designation Objections (the "Designation Motion"). Pending a resolution of the

18  Designation Motion by the Court, any and all existing designations on the Documents, Testimony,

19  or Information at issue in such Motion shall remain in place. The Designating Party shall have the

20  burden on any Designation Motion of establishing the applicability of its "Confidential"

21  designation. In the event that the Designation Objections are neither timely agreed to nor timely

22  addressed in the Designation Motion, then such Documents, Testimony, or Information shall be

23  de-designated in accordance with the Designation Objection applicable to such material.

24       7.    Access to and/or Disclosure of Confidential Materials designated as "Confidential"

25  shall be permitted only to the following persons:

26       a.    the Court;

27       b.    named individual Parties, subject to the procedures set forth in paragraph 8

28  of this Stipulation and Protective Order;

c.      (1) Attorneys of record in the Proceedings and their affiliated attorneys, paralegals, and clerical and secretarial staff employed by such attorneys who are actively involved in the Proceedings and are not employees of any Party. (2) In-house counsel to the undersigned Parties and the paralegal, clerical, and secretarial staff employed by such counsel. Provided, however, that each non-lawyer given access to Confidential Materials shall be advised that such Materials are being Disclosed pursuant to, and are subject to, the terms of this Stipulation and Protective Order and that they may not be Disclosed other than pursuant to its terms;

d.      those officers, directors, partners, members, employees, and agents of all non-designating Parties that counsel for such Parties deems necessary to aid counsel in the prosecution and defense of this Proceeding, subject to the procedures set forth in paragraph 8 of this Stipulation and Protective Order;

e.      court reporters in this Proceeding (whether at depositions, hearings, or any other proceeding);

f.      fact witnesses providing testimony by deposition or at any court proceeding in this action, subject to the procedures set forth in paragraph 8 of this Stipulation and Protective Order;

g.      mock jury participants, subject to the procedures set forth in paragraph 8 of this Stipulation and Protective Order;

h.      outside experts or expert consultants consulted by the undersigned Parties or their counsel in connection with the Proceeding, whether or not retained to testify at any oral hearing, subject to the procedures set forth in paragraph 8 of this Stipulation and Protective Order. It shall be the obligation of counsel, upon learning of any breach or threatened breach of this Stipulation and Protective Order by any such expert or expert consultant, to promptly notify counsel for the Designating Party of such breach or threatened breach; and

i.      any other person that the Designating Party agrees to in writing, subject to the procedures set forth in paragraph 8 of this Stipulation and Protective Order.

8.      Access to and/or Disclosure of Confidential Materials designated as "Confidential" to persons set forth in sub-paragraphs 7(b), (d), (f), (g), (h), and (i) of this Stipulation and

Protective Order shall occur only under the conditions set forth below:

        a.      prior to the Disclosure of Confidential Materials, the Party providing the access and Disclosure shall advise that person that, pursuant to this Stipulation and Protective Order, he or she may not divulge such information to any other individual;

        b.      any person who receives Confidential Materials pursuant to sub-paragraphs 7(b), (d), (f), (g), (h), and (i), shall execute an Agreement in the form annexed hereto as Exhibit A. Each original, executed Agreement shall be maintained in the files of the Party providing the access and Disclosure; and

        c.      the Party providing the access and Disclosure of Confidential Materials pursuant to sub-paragraphs 7(b), (d), (f), (g), (h), and (i), shall maintain a list specifically identifying the persons to whom the Confidential Materials was Disclosed and the Bates number and/or other means sufficient to identify such Confidential Materials.

        9.      Confidential Materials shall be used by the persons receiving them only for the purposes of preparing for, conducting, participating in the conduct of, and/or prosecuting and/or defending the Proceeding, and not for any other legal action, or for any business, commercial, competitive, personal, publicity, media, or other purpose, except that nothing herein shall preclude Defendant Home Depot U.S.A., Inc. (or a subsidiary of it)  from pursuing legal or other business action in discovered instances of misconduct as to its own employees or ensuring that its employees are acting in accordance with the law.  No Party or non-party to whom Confidential Materials are disclosed shall copy, transcribe, or otherwise reproduce in written or any other form any part or portion of any Confidential Materials except as necessary for purposes of the litigation.

        10.      Any Party to the Proceeding (or other person subject to the terms of this Stipulation and Protective Order) may ask the Court, after appropriate notice to the other Parties to the Proceeding, to modify or grant relief from any provision of this Stipulation and Protective Order.

        11.      Entering into, agreeing to, and/or complying with the terms of this Stipulation and Protective Order shall not:

        a.      operate as an admission by any person that any particular Document,

1  Testimony or Information marked "Confidential" contains or reflects trade secrets, proprietary,

2  confidential, or competitively sensitive business, commercial, financial or personal information; or

3        b.    prejudice in any way the right of any Party (or any other person subject to

4  the terms of this Stipulation and Protective Order):

5             i.    to seek a determination by the Court of whether any particular

6        Confidential Material should be subject to protection as "Confidential" under the

7        terms of this Stipulation and Protective Order; or

8             ii.    to seek relief from the Court on appropriate notice to all other

9        Parties to the Proceeding from any provision(s) of this Stipulation and Protective

10       Order, either generally or as to any particular Document, Material, or Information.

11       12.    Any Party to the Proceeding who has not executed this Stipulation and Protective

12  Order as of the time it is presented to the Court for signature may thereafter become a Party to this

13  Stipulation and Protective Order by its counsel's signing and dating a copy thereof and filing the

14  same with the Court, and serving copies of such signed and dated copy upon the other Parties to

15  this Stipulation and Protective Order.

16       13.    Any Information that may be produced by a non-Party witness in discovery in the

17  Proceeding pursuant to subpoena or otherwise may be designated by such non-Party as

18  "Confidential" under the terms of this Stipulation and Protective Order, and any such designation

19  by a non-Party shall have the same force and effect, and create the same duties and obligations, as

20  if made by one of the undersigned Parties hereto. Any such designation shall also function as a

21  consent by such producing Party to the authority of the Court in the Proceeding to resolve and

22  conclusively determine any motion or other application made by any person or Party with respect

23  to such designation, or any other matter otherwise arising under this Stipulation and Protective

24  Order.

25       14.    If any person subject to this Stipulation and Protective Order who has custody of

26  any Confidential Materials receives a subpoena or other process ("Subpoena") from any

27  government or other person or entity demanding production of Confidential Materials, the

28  recipient of the Subpoena shall promptly give notice of the same by electronic mail transmission,

STIPULATION FOR PROTECTIVE ORDER RE: DISCOVERY OF CONFIDENTIAL DOCUMENTS AND
TESTIMONY; [PROPOSED] ORDER THEREON

1  followed by either express mail or overnight delivery to counsel of record for the Designating

2  Party, and shall furnish such counsel with a copy of the Subpoena. Upon receipt of this notice, the

3  Designating Party may, in its sole discretion and at its own cost, move to quash or limit the

4  Subpoena, otherwise oppose production of the Confidential Materials, and/or seek to obtain

5  confidential treatment of such Confidential Materials from the subpoenaing person or entity to the

6  fullest extent available under law. The recipient of the Subpoena may not produce any Documents,

7  Testimony or Information pursuant to the Subpoena prior to the date specified for production on

8  the Subpoena.

9        15.    Nothing in this Stipulation and Protective Order shall be construed to preclude

10  either Party from asserting in good faith that certain Confidential Materials require additional

11  protection. The Parties shall meet and confer to agree upon the terms of such additional protection.

12        16.    If, after execution of this Stipulation and Protective Order, any Confidential

13  Materials submitted by a Designating Party under the terms of this Stipulation and Protective

14  Order is Disclosed by a non-Designating Party to any person other than in the manner authorized

15  by this Stipulation and Protective Order, the non-Designating Party responsible for the Disclosure

16  shall bring all pertinent facts relating to the Disclosure of such Confidential Materials to the

17  immediate attention of the Designating Party.

18        17.    This Stipulation and Protective Order is entered into without prejudice to the right

19  of any Party to knowingly waive the applicability of this Stipulation and Protective Order to any

20  Confidential Materials designated by that Party. If the Designating Party uses Confidential

21  Materials in a non-Confidential manner, then the Designating Party shall advise that the

22  designation no longer applies.

23        18.    Confidential Materials shall not be filed in the public record of this Proceeding.

24  Where any Confidential Materials, or Information derived from Confidential

25  Materials, is included in any motion or other proceeding governed by California Rules of Court,

26  Rules 2.550 and 2.551, the party shall follow those rules. With respect to discovery motions or

27  other proceedings not governed by California Rules of Court, Rules 2.550 and 2.551, the

28  following shall apply: If Confidential Materials or Information derived from Confidential

STIPULATION FOR PROTECTIVE ORDER RE: DISCOVERY OF CONFIDENTIAL DOCUMENTS AND
TESTIMONY; [PROPOSED] ORDER THEREON

1 | Materials are submitted to or otherwise disclosed to the Court in connection with discovery

2 | motions and proceedings, the same shall be separately filed under seal with the clerk of the Court

3 | in an envelope marked: "CONFIDENTIAL – FILED UNDER SEAL PURSUANT TO

4 | PROTECTIVE ORDER AND WITHOUT ANY FURTHER SEALING ORDER REQUIRED."

5 |       19.    The Parties shall meet and confer regarding the procedures for use of Confidential

6 | Materials at trial and shall move the Court for entry of an appropriate order.

7 |       20.    The restrictions set forth in this Stipulation and Protective Order shall not apply to:

8 |             a.    Documents, Information, and Testimony that was, is or becomes public

9 | knowledge through its authorized release by a person or entity who rightfully obtained and

10 | possesses such information during the normal course of business, and not in violation of this

11 | Stipulation and Protective Order; or

12 |             b.    Defendant Home Depot U.S.A., Inc. (or its subsidiaries), with respect to its

13 | own Documents, Information, or Testimony or Information received or created during the normal

14 | course of its own business.

15 |       Whether information that becomes a matter of public record in any other manner may still

16 | be subject to protection as "Confidential" shall be determined according to the standards and

17 | procedures set forth in paragraphs 2 through 6 of this Stipulation and Protective Order.  The owner

18 | of Confidential Materials shall be able to seek protection of any such Documents, Information,

19 | and Testimony in accordance with paragraph 5 of this Stipulation and Protective Order even if it

20 | did not produce that information in discovery.

21 |       21.    Nothing in this Stipulation and Protective Order shall prohibit any Party from

22 | objecting to the production or Disclosure of Confidential Materials solely on the grounds that such

23 | information is confidential or sensitive, or on any other grounds.  Furthermore, nothing in this

24 | Stipulation and Protective Order shall preclude the parties from objecting to the admissibility or

25 | use of Confidential Materials.

26 |       22.    Nothing in this Stipulation and Protective Order shall affect the admissibility into

27 | evidence of Confidential Materials, or abridge the rights of any person to seek judicial review or to

28 | pursue other appropriate judicial action with respect to any ruling made by the Court concerning

1   the issue of the status of Protected Material.

2       23.    This Stipulation and Protective Order shall continue to be binding after the

3   conclusion of this Proceeding and all subsequent proceedings arising from this Proceeding, except

4   that a Party may seek the written permission of the Designating Party or may move the Court for

5   relief from the provisions of this Stipulation and Protective Order. To the extent permitted by law,

6   the Court shall retain jurisdiction to enforce, modify, or reconsider this Stipulation and Protective

7   Order, even after the Proceeding is terminated.

8       24.    Upon written request made within thirty (30) days after the settlement or other

9   termination of the Proceeding, the undersigned Parties shall have thirty (30) days to either (a)

10  promptly return to counsel for each Designating Party all Confidential Materials and all copies

11  thereof (except that counsel for each Party may maintain in its files, in continuing compliance with

12  the terms of this Stipulation and Protective Order, all work product, and one copy of each pleading

13  filed with the Court, (b) agree with counsel for the Designating Party upon appropriate methods

14  and certification of destruction or other disposition of such Confidential Materials, or (c) as to any

15  Documents, Testimony, or other Information not addressed by sub-paragraphs (a) and (b), file a

16  motion seeking a Court order regarding proper preservation of such Materials. To the extent

17  permitted by law the Court shall retain continuing jurisdiction to review and rule upon the motion

18  referred to in sub-paragraph (c) herein.

19      25.    After this Stipulation and Protective Order has been signed by counsel for all

20  Parties, it shall be presented to the Court for entry. Counsel agree to be bound by the terms set

21  forth herein with regard to any Confidential Materials that have been produced before the Court

22  signs this Stipulation and Protective Order.

23  / / /

24  / / /

25

26

27

28

STIPULATION FOR PROTECTIVE ORDER RE: DISCOVERY OF CONFIDENTIAL DOCUMENTS AND
TESTIMONY; [PROPOSED] ORDER THEREON

26.    The Parties and all signatories to the Certification attached hereto as Exhibit A agree to be bound by this Stipulation and Protective Order pending its approval and entry by the Court. In the event that the Court modifies this Stipulation and Protective Order, or in the event that the Court enters a different Protective Order, the Parties agree to be bound by this Stipulation and Protective Order until such time as the Court may enter such a different Order. It is the Parties' intent to be bound by the terms of this Stipulation and Protective Order pending its entry so as to allow for immediate production of Confidential Materials under the terms herein.

This Stipulation and Protective Order may be executed in counterparts.


DATED: February 25, 2015                 LEE TRAN & LIANG LLP



                                         By: _____
                                              Steven C. Gonzalez
                                              Anthony D. Sbardellati
                                              Lacey Rainwater
                                              Attorneys for Defendants Home Depot U.S.A.,
                                              Inc., Beatriz Gonzalez, Morgan Gantt, Jessie
                                              Santiago, and Eric Gonzalez




DATED: February 25, 2015                 YOUNESI & YOSS, LLP



                                         By: _____
                                              John D. Younesi
                                              Jan A. Yoss
                                              Attorneys for Plaintiff
                                              Paul Hoffman


STIPULATION FOR PROTECTIVE ORDER RE: DISCOVERY OF CONFIDENTIAL DOCUMENTS AND
TESTIMONY; [PROPOSED] ORDER THEREON

1

## <u>ORDER</u>

2        GOOD CAUSE APPEARING, the Court hereby approves this Stipulation and Protective

3  Order.

4        IT IS SO ORDERED.

5  **Date Judge Signed: February 27, 2015**    _____

6                                              HON. FREDERICK P. AGUIRRE
                                               JUDGE OF THE SUPERIOR COURT
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

**AGREEMENT RE CONFIDENTIAL DISCOVERY MATERIALS**

I hereby acknowledge that    I, _____[NAME], _____[POSITION AND EMPLOYER], am about to receive Confidential Materials supplied in connection with the Proceeding, *Paul Hoffman v. Home Depot U.S.A., Inc., et al.* (Case No. 37-2014-00733252-CU-WT-CJC).

I certify that I understand that the Confidential Materials are provided to me subject to the terms and restrictions of the Stipulation and Protective Order filed in this Proceeding. I have been given a copy of the Stipulation and Protective Order; I have read it, and I agree to be bound by its terms and to subject myself personally to the jurisdiction of the Superior Court of California for the County of Los Angeles for the purpose of enforcing its terms. I understand that Confidential Materials, as defined in the Stipulation and Protective Order, including any notes or other records that may be made regarding any such materials, shall not be Disclosed to anyone except as expressly permitted by the Stipulation and Protective Order.  I will not copy or use, except solely for the purposes of this Proceeding, any Confidential Materials obtained pursuant to this Protective Order, except as provided therein or otherwise ordered by the Court in the Proceeding.

I further understand that I am to retain all copies of all Confidential Materials provided to me in the Proceeding in a secure manner, and that all copies of such Materials are to remain in my personal custody until termination of my participation in this Proceeding, whereupon the copies of such Materials will be returned to counsel who provided me with such Materials.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this ____ day of _____, _____ at _____.

By: _____
Signature

_____
(Type or print name of individual)

_____
(Name of Employer)

STIPULATION FOR PROTECTIVE ORDER RE: DISCOVERY OF CONFIDENTIAL DOCUMENTS AND
TESTIMONY; [PROPOSED] ORDER THEREON

**PROOF OF SERVICE**

**STATE OF CALIFORNIA -- COUNTY OF ORANGE**

I am employed in the county of Los Angeles State of California.  I am over the age of 18 and not a party to the within action; my business address is: 601 S. Figueroa Street, Suite 3900, Los Angeles, CA 90017.

On **February 25, 2015**, I served the foregoing document(s) described as

**STIPULATION FOR PROTECTIVE ORDER RE: DISCOVERY OF CONFIDENTIAL DOCUMENTS AND TESTIMONY; [PROPOSED] ORDER THEREON**

on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof in a sealed envelope, as follows:

John D. Younesi, Esq.                          *Attorneys for Plaintiff Paul Hoffman*
Jan A. Yoss, Esq.
YOUNESI & YOSS, LLP
11355 W. Olympic Blvd., Suite 200
Los Angeles, California 90064
Telephone: (310) 478-5722
Facsimile: (310) 478-5650
Email: jdyounesi@younesi.com
         jyoss@younesi.com

**[X]**   **BY MAIL** I placed such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **February 25, 2015,** at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
EDGAR MARTINEZ

STIPULATION FOR PROTECTIVE ORDER RE: DISCOVERY OF CONFIDENTIAL DOCUMENTS AND TESTIMONY; [PROPOSED] ORDER THEREON